1  Jahan C. Sagafi   (Cal. Bar No. 224887)
2  Rachel Dempsey (Cal. Bar No. 310424)
   OUTTEN & GOLDEN LLP
3  One California Street, 12th Floor
   San Francisco, California 94111
4  Telephone: (415) 638-8800
   Facsimile: (415) 638-8810
5  jsagafi@outtengolden.com
   rdempsey@outtengolden.com
6
7  Ossai Miazad*
   Michael N. Litrownik*
8  685 Third Avenue, 25th Floor
   New York, NY 10017
9  Telephone: (212) 245-1000
   Facsimile: (646) 509-2060
10 om@outtengolden.com
   mlitrownik@outtengolden.com
11
12 *Attorneys for Plaintiff and the Proposed Class*
13
14              UNITED STATES DISTRICT COURT
15            NORTHERN DISTRICT OF CALIFORNIA
                 SAN FRANCISCO DIVISION
16
17 EDUARDO PEÑA, individually and on behalf    **COMPLAINT FOR VIOLATIONS OF**
   of all others similarly situated,           **42 U.S.C. § 1981 AND THE EQUAL**
18                                              **CREDIT OPPORTUNITY ACT, 15 U.S.C.**
               Plaintiff,                       **§ 1691, *et seq.***
19
          v.
20                                              **CLASS ACTION**
   WELLS FARGO BANK, N.A.,
21                                              **DEMAND FOR JURY TRIAL**
               Defendant.
22
23
24
25
26
27
28

Plaintiff Eduardo Peña ("Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, brings the following allegations against Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"):

### INTRODUCTION AND SUMMARY OF CLAIM

1.     Plaintiff brings this case against Wells Fargo for unlawful alienage discrimination in violation of the Civil Rights Act of 1866, as codified by 42 U.S.C. § 1981 ("Section 1981"), and for failure to provide him written notice of his credit denial with an accurate statement of the reasons for the denial in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* ("ECOA").

2.     Wells Fargo's auto loan line of business, as a matter of policy, treats non-United States citizens who reside in the United States and hold Deferred Action for Childhood Arrivals ("DACA") status as categorically ineligible for auto loans even where such DACA applicants have valid Social Security numbers and federal work authorization and regardless of their creditworthiness and ability to satisfy the bank's auto loan underwriting criteria.  Wells Fargo's policy of denying aliens with DACA status the opportunity to contract for credit is discriminatory and unlawful under Section 1981.

3.     In addition, Wells Fargo fails to provide DACA recipients who are denied auto loans a written notice of adverse action with an accurate statement of the reasons for their denial, in violation of ECOA.

4.     Wells Fargo's discriminatory auto loan policies are of a piece with the bank's broader discriminatory consumer lending policies.  Plaintiff is similarly ineligible for a Wells Fargo student loan, unsecured credit card, personal loan, and small business loan due to his status under DACA.[1]

5.     Wells Fargo has a long history of credit discrimination claims against it.  Seven years ago, the bank settled a lending discrimination case brought by the Department of Justice for $175 million.[2]  The same year, the bank paid Tennessee towns $432 million to settle lending discrimination

---

[1]     Dena Aubin, *Immigrants denied credit by Wells Fargo may sue bank, judge says*, Reuters (August 4, 2017), https://www.reuters.com/article/us-wells-fargo-immigration/immigrants-denied-credit-by-wells-fargo-may-sue-bank-judge-says-idUSKBN1AK1VK.

[2]     Rick Rothacker and David Ingram, *Wells Fargo to pay $175 million in race discrimination*

claims.[3]  More recently, the cities of Oakland, Sacramento, and Philadelphia separately sued the bank for steering African American and Hispanic borrowers into high-cost loans even though they qualified for loans on less onerous terms.[4]

6.        The discrimination claims against Wells Fargo have extended outside the lending realm. Two years ago, the bank paid out $35.5 million to settle a class action lawsuit alleging that it discriminated against African-American financial advisors.[5]

## PARTIES

### *Plaintiff Eduardo Peña*

7.        Plaintiff Eduardo Peña is a resident of Berwyn, Illinois.  He is employed as a tax manager.

8.        Mr. Peña was born in Mexico and obtained status under DACA along with a Social Security number and federal work authorization in or around 2012.  He has since renewed his DACA status approximately three times.

### *Defendant*

9.        Wells Fargo is an American multinational banking and financial services company headquartered in San Francisco, California.  It is the fourth largest bank in the United States.

10.        Wells Fargo Bank, N.A. is a South Dakota corporation authorized to do business in this state.

---

*probe*, Reuters (July 12, 2012), https://www.reuters.com/article/us-wells-lending-settlement/wells-fargo-to-pay-175-million-in-race-discrimination-probe-idUSBRE86B0V220120712.
[3]        Rick Rothacker, *Wells Fargo Settles Discriminatory Lending Suit, Pays Tennessee Towns Memphis, Shelby $432 Million*, Huffington Post (May 29, 2012), https://www.huffpost.com/entry/wells-fargo-discriminatory-lending_n_1554533.
[4]        Ben Lane, *Sacramento sues Wells Fargo over lending discrimination*, HousingWire (Feb. 28, 2018), https://www.housingwire.com/articles/42637-sacramento-sues-wells-fargo-over-lending-discrimination; Ben Lane, *Federal court: Wells Fargo must face Oakland's mortgage discrimination lawsuit*, HousingWire (July 19, 2018), https://www.housingwire.com/articles/43718-federal-court-wells-fargo-must-face-oaklands-mortgage-discrimination-lawsuit.
[5]        Mason Braswell,  *Wells Fargo Advisors to Pay $35.5 Million to Settle Race Discrimination Suit*, AdvisorHub (Jan. 3, 2017), https://advisorhub.com/wells-fargo-advisors-pay-35-5-million-settle-race-discrimination-suit/.

11.     Wells Fargo Bank, N.A. is a national bank and the primary United States operating subsidiary of Wells Fargo.

12.     Wells Fargo Bank, N.A. offers consumers a range of financial and credit products, including private student loans, credit cards, small business loans and credit products, personal loans, auto loans, and home mortgages.

13.     Wells Fargo Bank, N.A., by soliciting, conducting, and transacting business in the state of California, engages in continuous, permanent, and substantial activity within the state.

14.     Wells Fargo Bank, N.A. is not a federal enclave and therefore is subject to Plaintiffs' Section 1981 claim.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over Plaintiffs' Section 1981 and ECOA claims pursuant to 28 U.S.C. § 1331.  This Court also has subject matter jurisdiction over Plaintiff's ECOA claims pursuant to 15 U.S.C. § 1691e(f).

16.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and Wells Fargo conducts business within this district.

18.     Intradistrict assignment:  Pursuant to N.D. Cal. Local Rules 3-2(c) and (d), intradistrict assignment to the San Francisco Division is proper because a substantial part of the events which give rise to the claims asserted herein occurred at Wells Fargo's headquarters located in San Francisco County.

**BACKGROUND**

19.     On June 15, 2012, President Obama announced that the Department of Homeland Security ("DHS") would no longer remove certain young immigrants under its authority to grant deferred action as embodied in DACA.

20.     DACA's purpose, according to President Obama, was to "[stop] expel[ling] talented young people, who . . . [have] been raised as Americans; understand themselves to be part of this country . . . [and] who want to staff our labs, or start new businesses, or defend our country."[6]

21.     DACA is a form of deferred action, a discretionary grant of authorized stay by the federal government.  Deferred action granted through DACA is valid for two years and is subject to renewal thereafter.

22.     DACA mandates that persons who are granted deferred action will be eligible to obtain an Employment Authorization Document (an "EAD" or "federal work permit") and a Social Security number.  In other words, those granted deferred action and in possession of an EAD are legally authorized to work in the United States and can prove their identity.

23.     Over 800,000 individuals have been initially approved for DACA status in the United States, around 80% of whom were born in Mexico.[7]

24.     There is no federal or state law or regulation that restricts banks from providing financial products to customers because the customer is an alien.  Under federal law, alienage is merely one factor among many used to verify enough information to confirm the true identity of the customer.

25.     For instance, the Federal Financial Institutions Examination Council ("FFIEC") provides uniform principles and standards to offer guidance for federal regulators.  The FFIEC annually publishes

---

[6]     President Obama, Remarks by the President on Immigration (June 15, 2012), *available at* http://www.whitehouse.gov/the-press-office/2012/06/15/remarks-president-immigration (last visited July 16, 2019).
[7]     USCIS, Approximate Active DACA Recipients: Country of Birth As of February 28, 2019, *available at* https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/2_Approximate_Active_DACA_Recipients_Demographics_-_Feb_28_2019.pdf (last visited July 16, 2019).

the Bank Secrecy Act/Anti-Money Laundering Examination Manual for Money Services, which contains a compliance program called the Customer Identification Program ("CIP"), as required by section 326 of the USA PATRIOT Act, 31 U.S.C. § 5318. Pursuant to CIP, institutions providing financial services, including banks, must have a written policy in place to enable them to form a reasonable belief that they know the true identity of each customer. The goal behind this requirement is to prevent the funding of terrorism both inside and outside of the United States.[8]

26.     According to the Bank Secrecy Act/Anti-Money Laundering Examination Manual, a bank's CIP must contain account-opening procedures detailing the identifying information that must be obtained from each customer. At a minimum, the bank must obtain the following information from each customer before opening an account: 1) name, 2) date of birth, 3) address, and 4) identification number (*e.g.*, Social Security number, taxpayer identification number or an alien identification number).[9]

27.     The bank's procedure must also describe when it will use documents, non-documentary methods, or a combination of both. Federal banking agencies expect that banks will review an unexpired government-issued form of identification from most customers. The identification must include evidence of the customer's nationality or residence and bear a photograph or similar safeguard.[10]

28.     Compliance with the CIP is to ensure that a bank verify enough information to form a reasonable belief that it knows the true identity of the customer.[11]

---

[8]     *See* 12 C.F.R. § 208.63(b), § 211.5(m), § 211.24(j) (Board of Governors of the Federal Reserve System); 12 C.F.R. § 326.8(b) (Federal Deposit Insurance Corporation); 12 C.F.R. § 748.2(b) (National Credit Union Administration); 12 C.F.R. § 21.21 (Office of the Comptroller of the Currency); 12 C.F.R. § 563.177(b) (Office of Thrift Supervision); and 31 C.F.R. § 103.121 (FinCEN).
[9]     Fed. Fin. Inst. Examination Council, Bank Secrecy Act/Anti-Money Laundering Examination Manual, Regulatory Requirements, Customer Identification Program (2010), *available at* https://bsaaml.ffiec.gov/manual/RegulatoryRequirements/01 (last visited July 16, 2019).
[10]     *Id.*
[11]     *Id.*

29.     "Opening an account" and a financial services "customer" for purposes of the Bank Secrecy Act/Anti Money Laundering Examination Manual for Money Services includes an individual who has applied for a loan application.[12]

### STATEMENT OF FACTS

**Plaintiff Peña**

30.     Mr. Peña is a DACA recipient with an Employment Authorization Document (an EAD or federal work permit) and a valid Social Security number.

31.     In or around November 2018, Mr. Peña submitted an online application for an auto loan through the Wells Fargo website because he and his wife wanted to purchase a second car.  When the online application requested that he enter his citizenship status, Mr. Peña selected the option for non-resident alien.

32.     After Mr. Peña submitted his application, he received a phone call from a Wells Fargo representative to process the loan.  The Wells Fargo representative provided him with additional paperwork to complete and asked him for a copy of his Social Security card.  When Mr. Peña provided his Social Security card, the Wells Fargo representative asked him for a copy of his work permit.  When he provided his work permit, the representative told him he was ineligible for the loan because his DACA status expired within the loan period.  Mr. Peña explained that his status would be renewed and that work authorization under DACA is for two-year periods.  The representative told Mr. Peña that he could not be approved for an auto loan.

33.     Wells Fargo did not consider Mr. Peña's actual creditworthiness for the auto loan or his ability to meet its underwriting criteria for the loan.

34.     Wells Fargo conducted a hard credit check on Mr. Peña's credit as a part of his application.  His credit score was 748.  This hard credit check resulted in a derogatory mark on Mr. Peña's credit report.

---

[12] *Id.*

35.     Mr. Peña then requested that Wells Fargo send him a written explanation for his auto loan denial, but never received one that accurately stated the reason for his denial of credit.

36.     Mr. Peña suffered harm as a result of Wells Fargo's denial of his auto loan application and failure to provide him with an accurate written explanation for the denial.

**Wells Fargo's Policies Are Unlawful and Harm Plaintiff**

37.      Wells Fargo's policy of making Plaintiff ineligible to contract for credit because Plaintiff is neither a U.S. citizen nor permanent resident is a violation of 42 U.S.C. § 1981.

38.     Wells Fargo's failure to provide Plaintiff with a written notice of adverse action with an accurate statement of the reasons for his denial of credit is a violation of 15 U.S.C. § 1591 and 12 C.F.R. § 1002.9(a).

39.     There is an actual and substantial controversy between Plaintiff and Wells Fargo.

## CLASS ACTION ALLEGATIONS

40.      Plaintiff brings his class allegations under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of two nationwide classes, each consisting of all non-United States citizens who resided in the United States and held DACA status at the time they applied for a Wells Fargo auto loan ("DACA Residents") from July 16, 2017 through the date of final judgment in this action ("Covered Period").

41.     Plaintiff brings class allegations under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of DACA Residents in the Covered Period who were declined an auto loan by Wells Fargo (the "Section 1981 Class").

42.     Plaintiff also brings class allegations under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of DACA Residents in the Covered Period who were declined an auto loan by Wells Fargo and

did not receive a written notice of adverse action with an accurate statement of the reasons for the denial (the "ECOA Class").

43.     Plaintiff is a member of both the Section 1981 Class and ECOA Class (collectively, "Class Members").

44.     Class Members are so numerous that joinder of all of them is impracticable.  Wells Fargo has offices throughout the United States and is one of the largest auto lenders in the country, and over 800,000 individuals have been approved for DACA status since 2012.

45.     There are questions of law and fact common to each Class, and these questions predominate over any questions affecting only individual members.  Common questions include, among others: (1) whether Wells Fargo maintains policies that make Plaintiff and Class Members ineligible for auto loans due to Plaintiff's and Class Members' alienage; (2) whether Wells Fargo's policies as set forth above deprive Plaintiff and Class Members of the right to contract in violation of Section 1981; (3) whether Wells Fargo has failed to provide Class Members with written explanations of the accurate reasons for their denial of credit in violation of ECOA; (4) whether Plaintiff and Class Members suffered harm by reason of Wells Fargo's unlawful policies; (5) whether Plaintiff and Class Members are entitled to punitive damages or any other type of damages; (6) whether Plaintiff and Class Members are entitled to equitable and injunctive relief, and if so, what equitable and injunctive relief is warranted; and (7) the scope of a resulting permanent injunction.

46.     Plaintiff's claims are typical of the claims of the Class Members: (1) Plaintiff was within the jurisdiction of the United States and held DACA status; (2) Plaintiff applied to Wells Fargo for an auto loan; (3) Plaintiff was declined credit because he did not meet Wells Fargo's citizenship requirements; and (4) Plaintiff did not receive a written notice stating the accurate reasons for his denial of credit.  Each of these claims is substantially shared by every Class Member.  Each of the claims arises from the same course of conduct by Wells Fargo, and the relief sought is common.

47.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members.  Plaintiff has no conflict with any Class Member.  Plaintiff is committed to the goal of having

Wells Fargo change its business practices to stop discriminating against Plaintiff and others who hold DACA status and to ensure Wells Fargo's compliance with ECOA's written notification requirement.

48.     Plaintiff has retained counsel competent and experienced in complex lending discrimination class actions.

49.     The universe of people affected by Wells Fargo's unlawful policies is ascertainable through Wells Fargo's company records, logs, and data and therefore the proposed class is ascertainable.

50.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Wells Fargo has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory, equitable, and injunctive relief with respect to Plaintiff and the Class Members as a whole. Wells Fargo makes Class Members ineligible for auto loans due to their alienage and Wells Fargo also fails to provide Class Members with accurate written notice as to the reasons for their auto loan denials. The Class Members are entitled to declaratory, equitable, and injunctive relief to end Wells Fargo's common, unfair, and discriminatory policies.

51.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members is impracticable. The Class Members have been damaged and are entitled to recovery because of Wells Fargo's common, unfair, and discriminatory policies and unlawful practices. Damages are capable of measurement on a classwide basis. The propriety and amount of punitive and other damages are based on Wells Fargo's conduct, making these issues common to Class Members. Plaintiffs and the Class Members will rely on common evidence to resolve their legal and factual questions, including the applicable auto loan credit and underwriting policies and any auto loan policies and practices regarding the sending, or not, of written explanations of the accurate reasons for denial of credit. There are no pending actions raising similar claims. Wells Fargo engages in continuous, permanent, and substantial activity in California. There will be no undue difficulty in the management of this litigation as a class action

**FIRST CLAIM FOR RELIEF**
**Alienage Discrimination**
**(42 U.S.C. § 1981)**

52.    Plaintiff incorporates by reference the allegations in all preceding paragraphs.

53.    Plaintiff brings this claim on his own behalf and on behalf of the Section 1981 Class.

54.    Plaintiff is a person within the jurisdiction of the United States.

55.    Plaintiff is an alien with DACA status.

56.    Plaintiff has the right to make and enforce contracts in the United States and is entitled to the full and equal benefits of the law.

57.    Wells Fargo intentionally discriminated against Plaintiff and the Section 1981 Class on the basis of alienage by denying them the opportunity to contract for credit.

58.    Wells Fargo's intentional discrimination against Plaintiff and the Section 1981 Class interfered with their right to make and enforce contracts for credit.

59.    Wells Fargo's policies of denying credit based on Plaintiff's and the Section 1981 Class Members' alienage harmed them and constitutes unlawful alienage discrimination in the making and enforcing of contracts in violation of 42 U.S.C. § 1981.

60.    Plaintiff and the Section 1981 Class have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive and equitable relief sought in this action is the only means of securing complete and adequate relief.  Plaintiff and the Class Members are now suffering, and will continue to suffer, irreparable injury from Wells Fargo's discriminatory acts and omissions.

**SECOND CLAIM FOR RELIEF**
**Failure to Provide Written Notice of Reason for Denial**
**(15 U.S.C. § 1691 and 12 C.F.R. § 1002.9(a))**

61.    Plaintiff incorporates by reference the allegations in all preceding paragraphs.

62.    Plaintiff brings this claim on his own behalf and on behalf of the ECOA Class.

63.    Plaintiff is a person within the jurisdiction of the United States.

64.    Plaintiff is an alien with DACA status.

65.     Plaintiff applied to Wells Fargo for an auto loan, was declined that loan by Wells Fargo, and did not receive a written explanation stating the accurate reasons for the denial.

66.     Wells Fargo violated ECOA by failing to provide a notice of adverse action that accurately stated the reasons for its denial of auto loans to Plaintiff and members of the ECOA Class.

67.     Plaintiff and members of the ECOA Class are entitled to actual damages resulting from Wells Fargo's violation of ECOA, punitive damages, and equitable and declaratory relief, as well as the recovery of costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and Class Members pray for relief as follows:

68.     Certification of the case as a class action on behalf of the Section 1981 Class and ECOA Class.

69.     Designation of Plaintiff Peña as a representative on behalf of the Section 1981 Class and the ECOA Class.

70.     Designation of Plaintiff's counsel of record as Class Counsel;

71.     A declaratory judgment that the practices complained of herein are unlawful and violate Section 1981 and ECOA;

72.     Actual damages and nominal damages;

73.     A preliminary and permanent injunction against Wells Fargo and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein, and requiring them to comply with ECOA's written notice requirement;

74.     Exemplary and punitive damages in an amount commensurate with Wells Fargo's ability to pay and to deter future conduct;

75.     Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

76.     Pre-judgment and post-judgment interest, as provided by law; and

1    77.    Such other and further legal and equitable relief as this Court deems necessary, just, and

2  proper.

3

4  Dated: San Francisco, California          Respectfully submitted,
        July 16, 2019

5                                      By:    /s/ Jahan C. Sagafi
                                           OUTTEN & GOLDEN LLP
6
                                           Jahan C. Sagafi (Cal. Bar No. 224887)
7                                          Rachel Dempsey (Cal. Bar No. 310424)
                                           One California Street, 12th Floor
8                                          San Francisco, California 94111
                                           Telephone: (415) 638-8800
9                                          Facsimile: (415) 638-8810
                                           jsagafi@outtengolden.com
10                                         rdempsey@outtengolden.com

11

12

13

14

15                                         Ossai Miazad*
                                           Michael N. Litrownik*
16                                         685 Third Avenue, 25th Floor
                                           New York, NY 10017
17                                         Telephone:  (212) 245-1000
                                           Facsimile:   (646) 509-2060
18                                         om@outtengolden.com
                                           mlitrownik@outtengolden.com
19

20                                         *to seek pro hac vice admission

21                                         *Attorneys for Plaintiffs and the proposed Class*

22

23

24

25

26

27

28                                         13