Jahan C. Sagafi   (Cal. Bar No. 224887)
Rachel Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810
jsagafi@outtengolden.com
rdempsey@outtengolden.com

Brian James Shearer*
Craig L. Briskin*
JUSTICE CATALYST LAW
718 7th Street NW
Washington, D.C. 20001
Telephone:  (518) 732-6703
brianshearer@justicecatalyst.org
cbriskin@justicecatalyst.org

*Attorneys for Plaintiff and the Proposed Class
(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

EDUARDO PEÑA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

WELLS FARGO BANK, N.A.,

Defendant.

**Case No. 19-cv-04065-MMC**

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO WELLS FARGO'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Date: December 13, 2019
Time: 9:00 a.m.
Courtroom: 7
Judge: Hon. Maxine M. Chesney

Complaint: July 16, 2019
First Amended Complaint: September 27, 2019

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ............................................................................................. 1

    A.     Facts ..................................................................................................... 1

    B.     Plaintiff's Complaint .......................................................................... 2

III.    LEGAL STANDARD ..................................................................................... 3

IV.     ARGUMENT .................................................................................................. 4

    A.     Plaintiff States a Claim Under Section 1981 ..................................... 4

    B.     Plaintiff States a Claim Under ECOA ................................................ 6

        1.     Failing to Send An Accurate Adverse Action Notice Violates ECOA ....... 7

        2.     Incomplete or Inaccurate Adverse Action Notices Violate the ECOA ....... 9

    C.     Plaintiff States a Claim Under FCRA ................................................. 12

        1.     Plaintiff Plausibly Alleges a FCRA Violation ........................................... 13

        2.     The Existence of a "Credit Transaction," Alone, Does Not Constitute a Permissible Purpose if the Creditor Did Not Intend to Use the Consumer Report "In Connection With" It ............... 14

        3.     Plaintiff Has Pleaded Sufficient Facts to Support a Willful Violation ..... 17

V.      CONCLUSION ............................................................................................... 18

**TABLE OF AUTHORITIES**

| Case | Page(s) |
|---|---|

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................3

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1988) ...................................................................3

*Banks v. JPMorgan Chase Bank, N.A.,*
No. 14 Civ. 06429, 2015 WL 2215220 (C.D. Cal. May 11, 2015) ........11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................3

*Bouton v. Ocean Props., Ltd.,*
No. 16 Civ. 80502, 2017 WL 4792488 (S.D. Fla. Oct. 23, 2017) .........17

*Carroll v. Exxon Co., USA,*
434 F. Supp. 557 (E.D. La. 1977) .........................................................10

*Chen v. Chase Bank USA, N.C.,*
393 F. Supp. 3d 850 (N.D. Cal. 2019) .............................................9, 11

*Christian v. Wal-Mart Stores, Inc.,*
252 F.3d 862 (6th Cir. 2011) ...................................................................4

*Cole v. U.S. Capital, Inc.,*
389 F.3d 719 (7th Cir. 2004) .................................................................16

*Dufay v. Bank of Am.,*
94 F.3d 561 (9th Cir. 1996) ...................................................................12

*Edwards v. Toys "R" Us,*
527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) ......................................18

*Errico v. Pac. Capital Bank, N.A.,*
753 F. Supp. 2d 1034 (N.D. Cal. 2010) .................................................11

*Fischl v. GMAC,*
708 F.2d 143 (5th Cir. 1983) .............................................................9, 10

*In re Gen. Motors CP4 Fuel Pump Litig.,*
393 F. Supp. 3d 871 (N.D. Cal. 2019) .....................................................8

*Green v. Central Mortg. Co.,*
148 F. Supp. 3d 852 (N.D. Cal. 2013) ...................................................11

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009)...............................................................................................6

*Hall v. City of Santa Barbara*,
    833 F.2d 1270 (9th Cir. 1986) ...........................................................................3

*Hilton v. Pagani Worldwide, LLC*,
    No. 19 Civ. 01848, 2019 WL 4729603 (N.D. Cal. July 30, 2019)......................6

*Intri-Plex Techs., Inc. v. Crest Grp., Inc.*,
    499 F.3d 1048 (9th Cir. 2007) ........................................................................3, 4

*Jenkins v. McKeithen*,
    395 U.S. 411 (1969)..............................................................................................3

*Juarez v. Nw. Mut. Ins. Co.*,
    69 F. Supp. 3d 364 (S.D.N.Y. 2014)................................................................5, 6

*Kuntz v. Bank of Am. N.A.*,
    No. 19 Civ. 02946, 2019 WL 3983045 (N.D. Cal. Aug. 21, 2019).....................11

*Legge v. Nextel Commc'ns, Inc.*,
    No. 02 Civ. 8676, 2004 WL 5235587 (C.D. Cal. June 25, 2004) .........................7

*Lindsey v. SLT L.A.*,
    447 F.3d 1138 (9th Cir. 2006) .............................................................................4

*Makreas v. Moore Law Grp., A.P.C.*,
    No. 11 Civ. 2406, 2011 WL 3047634 (N.D. Cal. July 25, 2011)...................16, 17

*Mamisay v. Experian Info. Sols. Inc.*,
    No. 16 Civ. 5684, 2017 WL 3387476 (N.D. Cal. 2017).....................................18

*Myers v. Stoneleigh Recovery Assocs.*,
    No. 11 Civ. 1753, 2012 WL 1356752 (E.D. Cal. Apr. 18, 2012) ........................16

*Nat'l Ass'n of African-Am.-Owned Media v. Charter Comms., Inc.*,
    915 F.3d 617 (9th Cir. 2019) ...............................................................................6

*Nayab v. Capital One Bank (USA), N.A.*,
    No. 17-55944, 2019 WL 5608837 (9th Cir. Oct. 31, 2019) ..........................13, 14

*NL Indus., Inc. v. Kaplan*,
    792 F.2d 896 (9th Cir. 1986) ................................................................................3

*Norris v. Bayview Loan Servicing, LLC*,
    No. 15 Civ. 6413, 2015 WL 6745048 (C.D. Cal. Oct. 26, 2015).......................8, 9

*Para v. United Carolina Bank,*
    No. 97 Civ. 54 (E.D.N.C. Aug. 26, 1998) ........................................11

*Perez v. Wells Fargo & Co.,*
    No. 17 Civ. 00454, 2017 WL 3314797 (N.D. Cal. Aug. 3, 2017)............................5

*Perez v. Wells Fargo Bank, N.A.,*
    No. 17 Civ. 00454 (N.D. Cal. filed Jan. 30, 2017) ...........................2, 5

*Perryman v. JPMorgan Chase Bank, N.A.,*
    No. 16 Civ. 00643, 2015 WL 444210 (E.D. Cal. 2016) ........................11

*Powell v. Pentagon Federal Credit Union,*
    No. 10 Civ. 785, 2010 WL 3732195 (N.D. Ill. Sept. 17, 2010)........................9, 10

*Pyle v. First Nat'l Collection Bureau,*
    No. 12 Civ. 288, 2012 WL 1413970 (E.D. Cal. Apr. 23, 2012)........................16

*Rodriguez v. Procter & Gamble Co.,*
    338 F. Supp. 3d 1283 (S.D. Fla. 2018) ........................................5

*Romo v. Wells Fargo Bank, N.A.,*
    No. 15 Civ. 03708, 2016 WL 3523779 (N.D. Cal. June 28, 2016) ........................12

*Ruiz v. Samuel I. White, P.C.,*
    No. 09 Civ. 668, 2009 WL 10687930 (E.D. Va. Nov. 9, 2009) ........................10, 11

*Safeco Ins. Co. of Am. v. Burr,*
    551 U.S. 47 (2007) ........................................17

*Smith v. Bob Smith Chevrolet, Inc.,*
    275 F. Supp. 2d 808 (W.D. Ky. 2003) ........................................15

*Smith v. Flagstar Bank FSB,*
    No. 18 Civ. 05131, 2019 WL 631537 (N.D. Cal. Feb. 14, 2019)............................4

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV*
    *Television Litig.,*
    758 F. Supp. 2d 1077 (S.D. Cal. 2010)........................................8

*Syed v. M-I, LLC,*
    853 F.3d 492 (9th Cir. 2017) ........................................17

*Taylor v. First Advantage Background Servs., Corp.,*
    207 F. Supp. 3d 1095 (N.D. Cal. 2016) ........................................18

*Treadway v. Gateway Chevrolet Oldsmobile, Inc.,*
    362 F.3d 971 (7th Cir. 2004) ........................................10

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*,
   931 F.3d 966 (9th Cir. 2019) ................................................12

*United States v. Redwood City*,
   640 F.2d 963 (9th Cir. 1981) ................................................3

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) ................................................6

*Vasquez v. Bank of Am. N.A.*,
   No. 13 Civ. 02902, 2013 WL 6001924 (N.D. Cal. Nov. 12, 2013)........................11

**Statutes**

15 U.S.C. § 1681b ................................................13, 14, 15

15 U.S.C. §§ 1681n, 1681o ................................................13

15 U.S.C. § 1691 ................................................7, 10

**Other Authorities**

12 C.F.R. pt. 1002, Supp. I, § 1002.9 ................................................7, 9

12 C.F.R. § 1002.2 ................................................7, 12

12 C.F.R. § 1002.9 ................................................7

# I. INTRODUCTION

This case is about Wells Fargo's unlawful discrimination against Plaintiff Eduardo Peña pursuant to its policy and practice of excluding non-citizen applicants with Deferred Action for Childhood Arrivals ("DACA") and valid Social Security numbers ("SSNs") from the opportunity to be considered for direct auto loans. Wells Fargo also unlawfully failed to disclose to Mr. Peña the real reason for his credit denial, and unlawfully conducted a hard pull of his consumer report without a permissible purpose. Wells Fargo's conduct violates 42 U.S.C. § 1981 ("Section 1981"), the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA"), as implemented by 12 C.F.R. § 1002.9 ("Regulation B"), and the Fair Credit Reporting Act, 15 U.S.C. § 1681b(f) ("FCRA").

Mr. Peña has sufficiently pleaded his Section 1981 claim by identifying Wells Fargo's facially discriminatory policy of denying DACA applicants direct auto loans on the basis of alienage (or lack of U.S. citizenship), *i.e.*, because they are non-citizens with DACA. He has sufficiently pleaded his ECOA claim by alleging that the adverse action notice Wells Fargo sent him did not accurately disclose the reasons for his denial of credit. And he adequately pleaded his FCRA claim by alleging that Wells Fargo conducted a hard pull of his consumer report despite knowing that its lending policy made him ineligible for a direct auto loan, thereby negating any permissible purpose it had to pull his consumer report.

Wells Fargo's Motion to Dismiss, ECF No. 39, ignores or misrepresents the facts Mr. Peña alleges, advances legal theories that have been soundly rejected in this District, and asks that the Court impose a heightened pleading standard far beyond what is required to move past the pleadings stage. Because Mr. Peña has more than adequately pled his claims, the Court should deny Wells Fargo's motion.

# II. BACKGROUND

## A. Facts

Mr. Peña is a DACA recipient with employment authorization and a valid Social Security number ("SSN") who, in November 2018, applied to Wells Fargo for a direct auto loan. ECF

No. 27 (First Amended Complaint ("FAC")) ¶¶ 48-49.  As part of the application, Wells Fargo asked him for his citizenship status and Mr. Peña selected the option for "non-resident alien."  *Id.* ¶ 49.  After Mr. Peña submitted his application, a Wells Fargo customer service representative contacted him and requested several pieces of information, including a copy of his Social Security card and his work permit, which Mr. Peña provided.  *Id.* ¶ 51.  Wells Fargo then informed Mr. Peña that he "could not be approved for an auto loan," stating the reason as "because his DACA status expired within the loan period."  *Id.*

Wells Fargo denied Mr. Peña an auto loan pursuant to its direct auto loan line of business policy that makes DACA recipients ineligible for auto loans.  *Id.* ¶¶ 2, 55.  The bank's lending policy for direct auto loans is similar to the bank's other consumer lending policies which likewise make DACA recipients ineligible for student loans, personal loans, unsecured credit cards, and small business loans.  *Id.* ¶ 5.  Although Mr. Peña asked the Wells Fargo representative for a written explanation as to why he had been denied, Wells Fargo never sent him a notice that disclosed the accurate reason for his denial.  *Id.* ¶ 53.  Before denying his application, Wells Fargo conducted a hard credit pull of his consumer report from one or more credit bureaus.  *Id.* ¶ 50.  Since Wells Fargo knows it will deny DACA applicants the opportunity to be considered for direct auto loans as a matter of policy, it has no reason to obtain their consumer reports as part of their application.  *Id.* ¶ 57.  At the very least, Wells Fargo should have known since January 2017 that it was denying DACA applicants loans for reasons entirely unrelated to their credit information contained in their consumer reports because of the litigation in *Perez v. Wells Fargo Bank, N.A.*, No. 17 Civ. 00454 (N.D. Cal. filed Jan. 30, 2017) (Chesney, J.).  *Id.* ¶ 61.  Despite the *Perez* litigation, Wells Fargo has not changed its policy and practice of pulling consumer reports for DACA applicants when they apply for credit, including direct auto loans, for which they are ineligible.  *Id.* ¶ 62.

## B.     Plaintiff's Complaint

Mr. Peña, individually and on behalf of three proposed classes, brings three claims.  First, he challenges his discriminatory denial as alienage discrimination under Section 1981.  *Id.* ¶¶ 55,

78-86.  Mr. Peña also brings class action claims under ECOA arising out of Wells Fargo's

unlawful failure to provide written notice of the accurate reason for the denial, *id.* ¶¶ 87-91, and

class action claims under FCRA arising out of Wells Fargo's unlawful decision to conduct a hard

credit pull of Mr. Peña's consumer report without any intention of using—and in fact not

using—that report to determine his eligibility for the auto loan, *id.* ¶¶ 92-98.

## III.  <u>LEGAL STANDARD</u>

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, the Court must accept a complaint's allegations as true, and draw all reasonable

inferences in the plaintiff's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *see also NL

Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986) (same).  The plaintiff need only state

"enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007), which means pleading "factual content [that] allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009).  "[W]hen a complaint adequately states a claim, it may not be

dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary

support for his allegations or prove his claim to the satisfaction of the factfinder."  *Twombly*, 550

U.S. at 563 n.8.

Dismissal under Rule 12(b)(6) is proper only where there is either a "lack of a cognizable

legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri

v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  In the Ninth Circuit, dismissal

motions under Rule 12(b)(6) are viewed with disfavor and are granted only in exceptional cases.

*See Hall v. City of Santa Barbara,* 833 F.2d 1270, 1274 (9th Cir. 1986) ("It is axiomatic that

[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."

(internal quotation marks omitted)); *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir.

1981) ("[I]t is only the extraordinary case in which dismissal is proper.").

District courts may not consider materials outside the pleadings when assessing a motion

to dismiss under Rule 12(b)(6).  *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052

(9th Cir. 2007) (setting forth the well-settled principle that "a court may not consider material beyond the complaint," such as declarations, on a motion to dismiss); *Smith v. Flagstar Bank FSB*, No. 18 Civ. 05131, 2019 WL 631537, at *2 (N.D. Cal. Feb. 14, 2019) (same).  But where a defendant presents extraneous material in support of its motion to dismiss or for judgment on the pleadings, Rule 12(d) authorizes a court, if it does not exclude such material, to treat that dismissal motion as a motion for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).  "All parties must then be given a 'reasonable opportunity to present all the material that is pertinent to the motion,' including the opportunity to take reasonable discovery to meet the issues raised by the extraneous material."  *Smith*, 2019 WL 631537, at *2, *4 (applying Rule 12(d) to convert defendant's motion to dismiss to a motion for summary judgment and ordering immediate discovery because defendant attached extraneous material to its motion bearing on an important factual dispute).

## IV.  <u>ARGUMENT</u>

### A.  **Plaintiff States a Claim Under Section 1981.**

Wells Fargo violated Section 1981 by intentionally excluding Mr. Peña and other non-citizen applicants with DACA from the opportunity to contract for direct auto loans.  To state a claim under Section 1981, a plaintiff must allege that (1) she is "a member of protected class," (2) that she "attempted to contract for certain services," and (3) she "was denied the right to contract for those services."  *Lindsey v. SLT L.A.*, 447 F.3d 1138, 1145 (9th Cir. 2006).  The plaintiff must also show that she "was deprived of services while similarly situated persons outside the protected class were not."  *Id.* (quoting *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2011)).  The Ninth Circuit has indicated that the last element may be relaxed in certain circumstances—*i.e.*, the plaintiff need only show that she "received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory."  *Id.* (quoting *Christian*, 252 F.3d at 872).

Mr. Peña states a claim for relief under Section 1981 because he alleges that (a) he was a non-citizen with DACA, work authorization, and a valid SSN; (b) he applied for a direct auto

loan; and (c) Wells Fargo denied him credit because it makes non-citizens with DACA facially ineligible for direct auto loans under Wells Fargo lending policy. ECF No. 27 (FAC) ¶¶ 2, 5, 48-51, 55. This Court and others have sustained Section 1981 claims on a similar set of facts. *See Perez v. Wells Fargo & Co.*, No. 17 Civ. 00454, 2017 WL 3314797, at *1-4 (N.D. Cal. Aug. 3, 2017) (Chesney, J.) (sustaining Section 1981 alienage discrimination claims on behalf of DACA recipients denied other credit products by Wells Fargo because they were ineligible for that credit under Wells Fargo's lending policies); *see also Rodriguez v. Procter & Gamble Co.*, 338 F. Supp. 3d 1283, 1286-87 (S.D. Fla. 2018) (sustaining Section 1981 hiring discrimination claim on behalf of DACA recipient ineligible for employment); *Juarez v. Nw. Mut. Ins. Co.*, 69 F. Supp. 3d 364, 368-70 (S.D.N.Y. 2014) (same). These courts also all held that even if defendant had legitimate business reasons for their ineligibility policies, those reasons could not be determined on a motion to dismiss. *Perez*, 2017 WL 3314797, at *6; *Rodriguez*, 338 F. Supp. 3d at 1287; *Juarez*, 69 F. Supp. 3d 364 at 371 n.10.

Wells Fargo ignores the well-pled facts of the complaint and applicable authority, including this Court's *Perez* decision, and argues that "Plaintiff has alleged no actual facts" about Wells Fargo's discriminatory lending policy and that Wells Fargo only "considered Plaintiff's permanence of residence [*i.e.*, the expiration of his work authorization] when deciding whether to extend credit to him." ECF No. 39 at 11-12. This argument fails for several reasons. Most importantly, Mr. Peña alleges that a Wells Fargo representative informed him that "he was ineligible for the [auto] loan because his DACA status expired within the loan period." ECF No. 27 (FAC) ¶ 51. It is a defining and essential feature of DACA that it must be renewed every two years. *Id*. ¶¶ 22-23, 51. Therefore, unlike in cases where a "classification was on the basis of a characteristic . . . that was merely correlated with a protected trait," here, "the classification alleged here is expressly based on a protected trait." *Juarez*, 69 F. Supp. 3d at 371.

Mr. Peña has sufficiently pleaded that Wells Fargo denied him the loan because of an essential characteristic of his status as a non-citizen with DACA. As Judge Forrest explained in *Juarez*, in sustaining that plaintiff's Section 1981 hiring discrimination claim:

An employer cannot implement a policy, "Members of protected class P need not apply," and then successfully argue that the policy was not motivated by any animus toward the protected class. Similarly, the employer cannot implement a policy that expressly discriminates against members of a protected class (here, lawfully present aliens) with characteristic X (here, lack of LPR [lawful permanent residency] status) and then, when a rejected candidate files a lawsuit, successfully argue that case should be dismissed because the discrimination was on the basis of X rather than the protected trait. Such an argument fails at pleadings stage irrespective of the nature of characteristic X: X could be a particular eye color ("Aliens with blue eyes need not apply") or X could be, as here, a particular immigration status ("Aliens without LPR status need not apply"). The important point is that the alleged policy facially singles out a protected subclass for adverse treatment.

*Juarez*, 69 F. Supp. 3d at 370-71. The same is true here.

The Court may also sustain Mr. Peña's Section 1981 claim under a less demanding mixed-motive standard. The Ninth Circuit recently confirmed that Section 1981 claims may be pled under a mixed-motive standard, concluding that the text of Section 1981 "permits a departure from the but-for causation standard" that the Supreme Court required for ADEA and Title VII retaliation claims. *Nat'l Ass'n of African-Am.-Owned Media v. Charter Comms., Inc.*, 915 F.3d 617, 623-26 (9th Cir. 2019), *cert. granted in part,* 139 S. Ct. 2693 (2019) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362-63 (2013)). Thus, "[i]f discriminatory intent plays *any* role in a defendant's decision not to contract with a plaintiff, even if it is merely one factor and not the sole cause of the decision, then that plaintiff has not enjoyed the same right as a white citizen." *Id.* at 626. Mr. Peña's allegation that he was denied credit because Wells Fargo lending policy makes non-citizens with DACA applications ineligible for credit therefore easily satisfies a mixed-motive standard. *See, e.g.*, *Hilton v. Pagani Worldwide, LLC*, No. 19 Civ. 01848, 2019 WL 4729603, at *1 (N.D. Cal. July 30, 2019) (denying motion to dismiss Section 1981 claim where plaintiff alleged he "was told by a manager that racial considerations motivated the loss of some work responsibilities") (citing *Charter Comms., Inc.*, 915 F.3d at 627)).

## B. Plaintiff States a Claim Under ECOA.

Under ECOA and Regulation B, Wells Fargo must provide a statement of reasons to any

applicant for credit who is the subject of an "adverse action." 15 U.S.C. § 1691(d)(2). "Refusal to grant credit" is the quintessential adverse action requiring notice. 12 C.F.R. § 1002.2(c)(1). Here, Wells Fargo denied Mr. Peña's application because he was a non-citizen with DACA. ECF No. 27 (FAC) ¶¶ 2, 5, 51. Therefore, Wells Fargo was legally obligated to send him a written adverse action notice explaining that his application was denied because he was a non-citizen with DACA. Plaintiff's allegation, which must be taken as true, is that "Wells Fargo violated ECOA by failing to provide a notice of adverse action that accurately states the reasons for its denial of auto loans to Mr. Peña and members of the ECOA Class." ECF No. 27 (FAC) ¶ 90. This allegation of a failure to disclose is sufficient to state a claim under ECOA.

### 1. Failing to Send An Accurate Adverse Action Notice Violates ECOA.

ECOA's adverse action notice requirement requires a creditor to provide a "statement of reasons" that "contain[s] the specific reasons for the adverse action taken." 15 U.S.C. § 1691(d)(3). The "statement of reasons for adverse action required by [Regulation B] must be specific and indicate the *principal reason(s)* for the adverse action." 12 C.F.R. § 1002.9(b)(2) (emphasis added). In turn, "[t]he specific reasons disclosed . . . must relate to and *accurately describe* the factors actually considered or scored by a creditor." 12 C.F.R. pt. 1002, Supp. I, § 1002.9, ¶ 9(b)(2).2, Official Interpretation (emphasis added).

Mr. Peña's allegations easily state a violation of these requirements. He alleged that he applied to Wells Fargo for a direct auto loan in November 2018. ECF No. 27 (FAC) ¶ 49. Wells Fargo then told Mr. Peña over the phone that "he could not be approved for an auto loan," because "his DACA status expired within the loan period." *Id.* ¶ 51. Oral disclosure does not satisfy ECOA's notice requirements. *Legge v. Nextel Commc'ns, Inc.*, No. 02 Civ. 8676, 2004 WL 5235587, at *5 (C.D. Cal. June 25, 2004) ("[O]ral notice is disallowed under ECOA."). Mr. Peña then "requested that Wells Fargo send him a written explanation for his auto loan denial, but never received one that accurately stated the reason for his denial of credit," *i.e.* his DACA status. ECF No. 27 (FAC) ¶¶ 53, 89.

Wells Fargo argues that Mr. Peña admits he received an adverse action letter from Wells

Fargo but provides "absolutely no facts about the substance of the adverse action letter at all." ECF No. 39 at 13. But Mr. Peña alleges an ECOA violation based on what Wells Fargo did not disclose, not what it did—in other words, that the bank failed to disclose the *actual and accurate reasons* for his credit denial. Wells Fargo also argues that Mr. Peña must plead the "inaccuracy" of the adverse action letter with more particularity, but the cases it relies on are inapposite. First, neither case involves claims under ECOA. *See Norris v. Bayview Loan Servicing, LLC*, No. 15 Civ. 6413, 2015 WL 6745048, at *3-5 (C.D. Cal. Oct. 26, 2015) (no ECOA claim); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1086-87, 1090 (S.D. Cal. 2010) (same). Second, *In re Sony* principally involves fraudulent misrepresentation and concealment claims, which are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b). 758 F. Supp. 2d at 1088. Because Mr. Peña's ECOA claim does not sound in fraud, *i.e.*, does involve his reliance on Wells Fargo's affirmative misrepresentations regarding the reason for his credit denial, it is not subject to a heightened pleading requirement. *See* ECF No. 39 at 10-11 (Wells Fargo agrees that Rule 8's pleading standard applies to ECOA claims, not Rule 9's heightened standard).

Moreover, even in the context of heightened fraud pleading standards, which are not applicable here, the manner in which plaintiffs plead omissions or failures to disclose differs significantly from how they plead affirmative misrepresentations. *See, e.g.*, *In re Gen. Motors CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 878 (N.D. Cal. 2019) ("Where a fraudulent act is pleaded as an omission, a lower level of specificity is required. . . . [A] plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim, and such a claim will not be dismissed purely for failure to precisely state the time and place of the [omission].") (citations and quotation marks omitted). *Norris* reinforces this conclusion. There, the court dismissed claims, with leave to amend, that asserted certain statements were "inaccurate," with nothing more. 2015 WL 6745048, at *9. But it *denied* dismissal of claims that alleged a "fail[ure] to send a timely written acknowledgement . . . and a timely response," *i.e.* a failure to disclose. *Id.*

at *8. A review of the complaint in *Norris* shows that, for these sustained omission claims, which are analogous to the ECOA claim here, the *Norris* plaintiff simply pleaded that, "as of the filing of this complaint, the Defendant has failed to timely and completely provide any of the requested information to Plaintiff." Ex. A (Complaint in *Norris v. Bayview Loan Servicing, LLC,* No. 15 Civ. 6413 (C.D. Cal. filed Aug. 21, 2015) (ECF No. 1-1)), at ¶¶ 134-35, 148, 160-61.[1]

## 2. Incomplete or Inaccurate Adverse Action Notices Violate the ECOA.

Wells Fargo also claims that ECOA adverse action notices need not include the actual or accurate reason for denying credit, *i.e.*, that any "specific reason" is sufficient, even if false. ECF No. 39 at 8. This radical interpretation, which would allow Wells Fargo to misinform millions of consumers of the actual and accurate reasons they were denied credit, directly contradicts Regulation B's requirement that creditors provide the "*principal reason*" for the adverse action, 12 C.F.R. § 1002.9(b)(2) (emphasis added), and "*accurately describe*" the factors considered by the creditor. 12 C.F.R. pt. 1002, Supp. I, § 1002.9, ¶ 9(b)(2).2, Official Interpretation (emphasis added).

It is well-settled that false, inaccurate, vague, or incomplete adverse action notices violate ECOA. *See Fischl v. GMAC,* 708 F.2d 143, 146 (5th Cir. 1983) (ECOA violated where a creditor sent an adverse action notice inaccurately explaining that the consumer's "credit references are insufficient," when in fact, consumer was denied because of brevity of credit history and excessiveness of the amount he wished to finance); *Chen v. Chase Bank USA, N.C.*, 393 F. Supp. 3d 850, 855-56 (N.D. Cal. 2019) (sustaining ECOA claim on a motion to dismiss where the adverse action notice inadequately stated only that there was a "previous unsatisfactory relationship with this bank," without further detail); *Powell v. Pentagon Federal Credit Union*, No. 10 Civ. 785, 2010 WL 3732195, at *5, n.4 (N.D. Ill. Sept. 17, 2010) ("Although the letters do suggest that Pentagon gave appropriate notice to Powell under the

---

[1] All exhibits are attached to the accompanying Declaration of Ossai Miazad.

ECOA, Powell maintains that the reason stated in the letter, *i.e.* the credit report, is inaccurate and misleading. ECOA claims on this ground are actionable."); *Carroll v. Exxon Co., USA*, 434 F. Supp. 557, 562 (E.D. La. 1977) (ECOA violated where creditor denied consumer's application because the applicant did not have a credit card or savings account, was employed for only one year, and had no dependents, but inaccurately stated that the reason for denial was a lack of credit).

ECOA's requirement that adverse action notices contain accurate reasons for credit denials serves two purposes: (1) to discourage creditors from discriminating by forcing them to have to explain their adverse decisions, and (2) to provide denied applicants a mechanism to know why they were denied and either receive the educational benefit necessary to improve their credit, or have an opportunity to rectify a mistake. *Fischl*, 708 F.2d at 146; *see also Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 977 (7th Cir. 2004). ECOA's adverse action notice requirements are plainly independent of its anti-discrimination requirements.[2] If Wells Fargo could omit or misstate the truthful and accurate "reasons for the adverse action taken," 15 U.S.C. § 1691(d)(3), the law could not achieve its purpose.

Wells Fargo cites two unpublished, out-of-circuit decisions to support its argument that adverse action notices need not accurately describe the reasons for the denial. Neither is persuasive. In *Ruiz v. Samuel I. White, P.C.*, No. 09 Civ. 668, 2009 WL 10687930 (E.D. Va. Nov. 9, 2009), the court noted in dicta that "the notice provision makes no requirement regarding falsity or truth," but this erroneous statement follows the court's conclusion that no adverse action occurred and that the adverse action notice was accurate. *Id.* at *4. Moreover, the *Ruiz* court failed to grapple with the explicitly contrary language of the Official Interpretation or Regulation B, which require that adverse action notices contain the *actual* reasons for the adverse action. *Cf. id.* (reading the statute to not require the actual specific reasons for the denial). The *Ruiz* court also failed to reference the "inadvertent error" defense, as discussed

---

[2]     Because Plaintiff has not alleged a discrimination claim under ECOA, the Court should ignore section IV.B.3 of Wells Fargo's Motion to Dismiss, ECF No. 39 at 9-10.

10

below; if it had, it would have recognized that a defense for certain kinds of errors is only rational if there is liability based on other kinds of errors, like inaccuracy. Under the plain language of ECOA and its regulations, the correct reading is that ECOA's requirement to disclose the "specific reasons" for an adverse action means creditors must disclose truthful and accurate reasons for the adverse action, and not false ones.

The *Ruiz* court's reasoning was based in part on *Para v. United Carolina Bank*, No. 97 Civ. 54, (E.D.N.C. Aug. 26, 1998) (order granting motion for summary judgment), at 6-7, *see* Ex. B, which erroneously concluded that a plaintiff can only bring a claim based on the falsity of an adverse action notice where she also pleads an ECOA discrimination claim. This is a view that no other court has adopted, and one called into question by two in-District opinions, not cited by Wells Fargo, which conclude that ECOA discrimination and notice claims are distinct. *See Chen*, 393 F. Supp. 3d at 852 ("There are two different potential ECOA violations: claims for discrimination . . . and claims for inadequate notice. . . . These are separate causes of action with their own elements."); *Kuntz v. Bank of Am. N.A.*, No. 19 Civ. 02946, 2019 WL 3983045, at *1 (N.D. Cal. Aug. 21, 2019) (membership in a protected class is not an element of a claim of inadequate notice under § 1691(d) of the ECOA).

District courts in the Ninth Circuit follow this reasoning. *See Banks v. JPMorgan Chase Bank, N.A.*, No. 14 Civ. 06429, 2015 WL 2215220, at *5 (C.D. Cal. May 11, 2015) (denying motion to dismiss plaintiff's Section 1691(d) ECOA claim and holding that "neither the borrower's membership in a protected class nor the lender's discrimination is an element of a claim under 15 U.S.C. § 1691(d)"); *see also Perryman v. JPMorgan Chase Bank, N.A.*, No. 16 Civ. 00643, 2015 WL 444210, at *7 (E.D. Cal. 2016) (holding that the elements of an ECOA discrimination claim do not apply to the ECOA's procedural notice and response requirements); *Green v. Central Mortg. Co.*, 148 F. Supp. 3d 852, 879 (N.D. Cal. 2013) (same); *Vasquez v. Bank of Am. N.A.*, No. 13 Civ. 02902, 2013 WL 6001924, at *10-12 (N.D. Cal. Nov. 12, 2013) (same); *Errico v. Pac. Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1042 (N.D. Cal. 2010) ("As a preliminary matter, a procedural violation of the notice provisions of ECOA may provide the

11

basis for a cause of action even without regard to allegations of discrimination.") (citing *Dufay v. Bank of Am.*, 94 F.3d 561 (9th Cir. 1996)).

Finally, the only defense available under ECOA for an inaccurate adverse action notice—the "inadvertent error" defense—reinforces ECOA's requirement that notices accurately state the reason(s) for the credit denial and confirms that Congress intended advertently erroneous and inaccurate adverse action notices to be actionable under ECOA. *See* 12 C.F.R. § 1002.16(c) ("A creditor's failure to comply with . . . § 1002.9 [the adverse action notice requirement] is not a violation if it results from an inadvertent error. On discovering an error under § 1002.9 . . . , the creditor shall correct it as soon as possible."). An "inadvertent error" is a defined term limited to a "mechanical, electronic, or clerical error that a creditor demonstrates was not intentional and occurred notwithstanding the maintenance of procedures reasonably adapted to avoid such errors." 12 C.F.R. § 1002.2(s). In any event, Wells Fargo has failed to raise this defense in its Motion to Dismiss and the defense is not apparent from the face of Plaintiff's FAC. *See generally* ECF Nos. 27, 39.[3] Therefore, it may not properly be considered here. *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) ("[D]ismissal based on an affirmative defense is permitted when *the complaint* establishes the defense.").

### C. Plaintiff States a Claim Under FCRA.

Mr. Peña adequately pleaded a violation of FCRA by alleging that Wells Fargo conducted a hard credit pull of his consumer report, even though the bank knew that it would not and did not use the report to determine eligibility for a transaction, *i.e.*, to determine his creditworthiness for the direct auto loan for which he applied. ECF No. 27 (FAC) ¶¶ 3, 50, 52, 57-60. Mr. Peña also adequately pleads that Wells Fargo's FCRA violation was willful because the bank has been on notice for almost three years that its exclusion of DACA recipients from

---

[3] And because Wells Fargo has not raised it here, it may raise not raise it again in a motion under Rule 12(b)(6). *Romo v. Wells Fargo Bank, N.A.*, No. 15 Civ. 03708, 2016 WL 3523779, at *2 (N.D. Cal. June 28, 2016).

eligibility from credit means that it has no intention of using their consumer reports to determine eligibility for the credit they sought. *Id.* ¶ 61. Thus, under any reading of FCRA, Wells Fargo did not have a permissible purpose for conducting the hard credit pull of his consumer report. *Id.* ¶¶ 61-63.

FCRA prohibits a person from using or obtaining "a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under [15 U.S.C. § 1681b]." 15 U.S.C. § 1681b(f). Permissible purposes are only those listed in the statute "and no other." 15 U.S.C. § 1681b(a); *see also Nayab v. Capital One Bank (USA), N.A.*, No. 17-55944, 2019 WL 5608837, at *2 (9th Cir. Oct. 31, 2019) (identifying the permissible purposes in § 1681b(a) as the only exceptions to the prohibition from obtaining a consumer report in § 1681b(f)).

The relevant permissible purposes here are where a person "intends to use the information . . . in connection with a credit transaction" or has another "legitimate business need for information in connection with a business transaction that is initiated by the consumer." 15 U.S.C. § 1681b(a)(3)(A), (F). Consumers have a right to recover for willful or negligent noncompliance with this requirement. 15 U.S.C. §§ 1681n, 1681o.

## 1. Plaintiff Plausibly Alleges a FCRA Violation.

Mr. Peña plausibly alleged that Wells Fargo obtained his consumer report without a permissible purpose because it "did not use—and knew it would not use—any of the consumer or creditworthiness information obtained to determine Plaintiff's eligibility for credit." ECF No. 27 (FAC) ¶ 94. Wells Fargo knew of its policy to deny loans to all DACA recipients. *Id.* ¶ 61. It nonetheless permitted online loan applications from DACA recipients like Mr. Peña. *Id.* ¶ 49. At the outset, in its online application, Wells Fargo asks applicants whether they are non-resident aliens. *Id.* ¶ 49. If they select yes, as Mr. Peña did, a Wells Fargo representative collects their SSNs and work permits. *Id.* ¶ 51. Then, based on its knowledge of Mr. Peña holding DACA, and not on any information contained in his consumer report, Wells Fargo denied Mr. Peña credit. *Id.* Thus, Wells Fargo knew it would deny Mr. Peña's and other DACA applicants'

applications for credit due to their status as non-citizen with DACA, and that it would not need their consumer reports to determine their eligibility for credit. Despite this knowledge, Wells Fargo nonetheless obtained consumer reports on those consumers, including Mr. Peña, invading their privacy and harming them. *Id.* ¶¶ 50, 58, 62.

While Mr. Peña and other DACA applicants did attempt to enter into a credit transaction with Wells Fargo by applying for an auto loan, Wells Fargo did not "intend[] to use [their consumer report] information in connection with" their loan applications. 15 U.S.C. § 1681b(a)(3)(A). Instead, Wells Fargo did not intend to use them at all, or perhaps it had a different unauthorized intention for the consumer reports. Mr. Peña need only allege facts giving rise to a reasonable inference that Wells Fargo obtained a consumer report for a purpose not authorized by the statute; he need not allege Wells Fargo's unauthorized purpose. *Nayab*, 2019 WL 5608837, at *7-11 (reversing dismissal when district court "plac[ed] the burden of pleading Defendant's actual unauthorized purpose on Plaintiff"). Plaintiff has done so, alleging willful noncompliance. ECF No. 27 (FAC) ¶¶ 63, 97.

### 2. The Existence of a "Credit Transaction," Alone, Does Not Constitute a Permissible Purpose if the Creditor Did Not Intend to Use the Consumer Report "In Connection With" It.

Wells Fargo makes two arguments as to why the Court should dismiss Mr. Peña's FCRA claim: (1) he did not allege enough facts to support a FCRA claim by failing to adequately assert that Wells Fargo had a facial policy of denying DACA recipients, and (2) there was a "credit transaction," and therefore there was a permissible purpose even if the consumer report was not used "in connection with" it.[4] Mr. Peña has addressed the first argument in Section IV.A above.

Wells Fargo's second argument also fails because it rests on the erroneous claim that once a consumer applies for a loan, a bank has an unfettered and unending right to pull their

---

[4] In footnote 4 of its Motion to Dismiss, ECF No. 39 at 12, Wells Fargo says it has not found authority supporting a FCRA violation because someone did not receive the credit they applied for. That argument is irrelevant and a strawman. Wells Fargo is liable not for declining Plaintiff credit on the basis of his credit bureau information, but for pulling his credit information and not using it to determine his eligibility for credit in the first instance.

consumer report even if it does not intend to use the report in relation to that loan application.

Wells Fargo's argument fails under the plain language of FCRA and the weight of authority.

FCRA is clear that Wells Fargo *only* had a permissible purpose if it "intend[ed] to use the information . . . in connection with" credit applications, or it otherwise "ha[d] a legitimate business need for the information in connection with a business transaction." 15 U.S.C. § 1681b(a)(3)(A) and (F). Key to either inquiry is whether Wells Fargo intended to use the consumer report "in connection with" the auto loan application.

Because it is the bank's own lending policy, Wells Fargo understood that DACA recipients were ineligible for direct auto loans. ECF No. 27 (FAC) ¶ 61. It therefore had no reason to obtain or review consumer reports on DACA applicants. In *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808 (W.D. Ky. 2003), the defendant pulled the plaintiff's consumer report in connection with a dispute over a discount relating to an automobile purchase transaction. *Id.* at 817. The court found that the defendant pulled the consumer report specifically to determine how much more money it could collect from the plaintiff, which was not a permissible purpose. *Id.* The fact that there was a business transaction between the plaintiff and defendant did not control because the defendant did not pull the consumer report to assess eligibility for that transaction. The court explained:

> [Defendant's] interpretation of the phrase "in connection with" is limitless. Under its reading, so long as any company had a reason to question any part of a transaction, it could access a consumer's credit report "in connection with a business transaction" that at some point was "initiated by the consumer." That is, five weeks, five months, or five years down the line, [defendant] could access Plaintiff's credit report if some dispute ever arose about the contracted price. In the Court's view, such an interpretation would give commercial entities an unlimited blank check to access and *reaccess* a consumer credit report long after the typical issues of eligibility, price, and financing were determined. Neither the specific language nor the overall scope of the FCRA can be said to support such an interpretation.

*Id.* The *Smith* court focused on the fact that Congress envisioned that consumer reporting agencies would disseminate consumer reports for the purpose of assessing eligibility. *Id.* at 816. Here, Wells Fargo did not use the consumer report to assess Mr. Peña's eligibility for credit. It

had no need for the report, and thus it did not have a permissible purpose.

Similarly, in *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004), the court analyzed whether a lender could offer a small amount of credit in order to construct a permissible purpose pertaining to a firm offer of credit under 15 U.S.C. § 1681b(c)(1)(B)(i). *Id.* at 725-26. The court found that the plaintiff had stated a claim that an offer of credit that amounts to a "sham made to justify access to the consumer credit reports" was not a permissible purpose under FCRA. *Id.* at 728. The court's analysis rested, in part, on the fact that "it [was] far from clear . . . that the offer of credit will be honored even if the consumer meets the conditions set forth in the offer." *Id.* Courts therefore expect companies to actually use the consumer report for the purported permissible purpose (in the present case, to assess eligibility for the loan). Here, because DACA recipients are facially ineligible for credit, the purported "credit transaction" at issue is similarly illusory.

None of the cases cited by Wells Fargo support the proposition that it may systemically pull loan applicants' consumer reports with no intention of using them. *Myers v. Stoneleigh Recovery Assocs.*, No. 11 Civ. 1753, 2012 WL 1356752 (E.D. Cal. Apr. 18, 2012) only supports the proposition that a financial institution can perform a hard pull where it *does* have reason to believe it needs that report, which is not the case here. The court stated that "[w]hether Plaintiff may or may not owe the debt at issue is irrelevant *as long as Defendant had reason to believe it [had a permissible purpose].*" *Id.* at *5 (emphasis added). Here, by contrast, Plaintiff pleads that Wells Fargo pulled consumer reports it had no intention of using, and therefore did not need. Similarly, in *Makreas v. Moore Law Grp., A.P.C.*, No. 11 Civ. 2406, 2011 WL 3047634 (N.D. Cal. July 25, 2011) (Chesney, J.) and *Pyle v. First Nat'l Collection Bureau*, No. 12 Civ. 288, 2012 WL 1413970 (E.D. Cal. Apr. 23, 2012), the courts dismissed permissible purpose allegations under FCRA due to "conclusory allegations." For example, in *Makreas*, this Court dismissed the plaintiff's FCRA claim because the plaintiff simply asserted that there was no permissible purpose for the credit pull. 2011 WL 3047634, at *2. This Court held this was too conclusory of an allegation because the defendant was a debt collector, which would often have a

16

permissible purpose in the normal course of business. *Id.* By contrast, Mr. Peña has pleaded his FCRA claim with particularity: he explains *why* there was *no connection* between Wells Fargo pulling his consumer report and the loan transaction—that his DACA status made him facially ineligible for the loan, and that Wells Fargo was well aware of this policy but engaged in a systemic practice of nonetheless pulling consumer reports on DACA recipients who had applied for credit.

### 3. Plaintiff Has Pleaded Sufficient Facts to Support a Willful Violation.[5]

To prove a willful violation, a plaintiff must show the defendant knowingly or recklessly violated FCRA. *Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017). The Supreme Court held in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. The Ninth Circuit has further refined this standard. In *Syed*, the court clarified that "[a] lack of 'guidance' [in the form of case law or official interpretations] does not itself render [a defendant's] interpretation reasonable." 853 F.3d at 504. It also stated that a defendant acts recklessly when the text at issue "is not subject to a range of plausible interpretations." *Id.* at 505. In short, the plaintiff's interpretation of the law must be unambiguous. *Id.*

Wells Fargo attempts to distort this requirement into a heightened pleading standard. That is not what it is. It is a safe harbor where a company follows a plausible alternative reading of the "statutory duty" set forth in FCRA. *See Bouton v. Ocean Props., Ltd.*, No. 16 Civ. 80502, 2017 WL 4792488, at *19 (S.D. Fla. Oct. 23, 2017) (citing cases); *see also Syed*, 853 F.3d at 506 (analyzing only the possible readings of the "statutory duty"). In arguing that Mr. Peña has not alleged willfulness, Wells Fargo has only contested the factual pleadings in the complaint and has not presented a plausible alternative legal interpretation of the applicable "statutory duty"

---

[5] Plaintiff does not intend to assert that Wells Fargo's FCRA violation was negligent and will amend his complaint at an appropriate time to reflect this narrowing of his FCRA claim.

17

that applies in the context of the alleged facts. That, alone, is enough to reject Wells Fargo's argument.

Mr. Peña also amply alleged knowing and reckless conduct. Mr. Peña alleged that Wells Fargo executives and compliance personnel had actual knowledge of the bank's lending policy that makes DACA applicants ineligible for credit because *they created the policy*. ECF No. 27 (FAC) ¶ 61. Further, Wells Fargo's knowledge is a matter of public record. A different set of plaintiffs filed suit against Wells Fargo nearly three years ago, in January 2017, for discriminating against DACA recipients in connection with other consumer lines of credit. *Id.* At that time, nearly two years before Mr. Peña sought an auto loan, Wells Fargo had actual knowledge of its lending policies across several credit lines that made DACA recipients ineligible for consumer credit and it could have prevented its direct auto loan application processes from pulling their consumer reports when it knew it had no intention of using them. But it failed it do so.

Any plausible alternative reading of FCRA by Wells Fargo is an issue of fact inappropriate for resolution on a motion to dismiss. *Taylor v. First Advantage Background Servs., Corp.*, 207 F. Supp. 3d 1095, 1110 (N.D. Cal. 2016) ("Courts in this circuit have found that '[w]illfulness under the FCRA is generally a question of fact for the jury.'") (alteration in original) (quoting *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007))) (citing cases); *see also Mamisay v. Experian Info. Sols. Inc.*, No. 16 Civ. 5684, 2017 WL 3387476, at *6 (N.D. Cal. 2017). The only argument Wells Fargo makes, other than inappropriately disagreeing with Plaintiff's factual allegations, is that FCRA does not prevent a creditor from pulling an applicant's consumer report where it has no intention of using it as part of the eligibility decision. That is plainly wrong. FCRA requites a "permissible purpose," and Mr. Peña alleges that Wells Fargo did not have one here.

## V.   <u>CONCLUSION</u>

For these reasons, the Court should deny Wells Fargo's Motion to Dismiss.

Dated: New York, NY
November 18, 2019

Respectfully submitted,

By: /s/ Ossai Miazad

**OUTTEN & GOLDEN LLP**
Ossai Miazad*
Michael N. Litrownik*
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone:     (212) 245-1000
Facsimile:     (646) 509-2060
om@outtengolden.com
mlitrownik@outtengolden.com

Jahan C. Sagafi (Cal. Bar No. 224887)
Rachel Dempsey (Cal. Bar No. 310424)
One California Street, 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
jsagafi@outtengolden.com
rdempsey@outtengolden.com

Brian James Shearer*
Craig L. Briskin*
**JUSTICE CATALYST LAW**
718 7th Street NW
Washington, D.C. 20001
Telephone: 518-732-6703
brianshearer@justicecatalyst.org
cbriskin@justicecatalyst.org

Benjamin D. Elga*
81 Prospect Street
Brooklyn, NY 11201
Telephone: 518-732-6703
belga@justicecatalyst.org

*admitted pro hac vice

*Attorneys for Plaintiff and the proposed Class*