# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:97-CV-54-BR(1)

| | |
|---|---|
| TRUDY LYNN PARA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| UNITED CAROLINA BANK, ) | |
| ) | |
| Defendant. ) | |

Defendant United Carolina Bank's motion for summary judgment is before the Court.

On 12 March 1997, plaintiff Trudy Lynn Para (Para) filed a complaint alleging that United Carolina Bank (United) violated the Equal Credit Opportunity Act (ECOA), 15 U.S.C. 1691 et seq., and its implementing regulation, Regulation B, 12 C.F.R. 202, et seq., in its denial of four loan requests submitted by Para between November 1992 and April 1995. Defendant filed an answer on 25 June 1997. The parties took several depositions, and, on 1 June 1998, defendant submitted a motion for summary judgment and a supporting memorandum. On 24 June 1998, plaintiff filed an opposition to that motion, and on 10 July 1998, defendant filed a reply. The parties have fully briefed the issues and the motion is now ripe for review.

## I. FACTS

Plaintiff applied for four loans from defendant between November 1992 and April 1995. On 15 November 1992, plaintiff submitted an application for a Small Business Association (S.B.A.) loan in the amount of $368,240. (Compl. ¶ 18.) In July or August of 1994, plaintiff requested a loan in the amount of $250,000. (Compl. ¶¶ 24-25.) No later than 1 December 1994, plaintiff requested a loan in the amount of $186,000. (Compl. ¶¶ 30-31.) On 3 April 1995, plaintiff submitted a request seeking an $80,000 loan. (Compl. ¶ 41.) Plaintiff made each of these requests in an attempt to gain funding for a restaurant she wanted to build and operate on property that she owned. United denied each of plaintiff's loan requests. (Compl. ¶¶ 18, 26-27, 35, and 44.) Plaintiff alleges that she worked with representatives of defendant throughout the loan application processes and that she took actions based on their representations to her in order to refine her proposal into one that the bank could approve. For example, she claims that she sold a deli that she owned and operated in order to have more cash on hand pursuant to a suggestion made by a bank employee. (Opp'n at 5; Compl. ¶¶ 26, 28.) In addition, she states that she ultimately changed her concept from a restaurant to a sports bar in order to down-size her project and lessen the required capital. (Opp'n at 7; Compl. ¶¶ 39-41.)

2

Plaintiff claims that defendant violated the ECOA and Regulation B by failing to inform her of its action on her loan applications within 30 days; by failing to provide her with specific reasons for its adverse actions on her applications; by failing to inform her in writing of her entitlement to such reasons; and by failing to provide a written statement of section 701(a) of the ECOA along with the name and address of the Federal Deposit Insurance Corporation. (Compl. ¶ 58.) Plaintiff also claims that, in denying each of her four loan applications, United discriminated against her on the basis of sex and marital status in violation of the ECOA. (Compl. ¶ 62.) Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and other equitable relief the court deems just, including the approval of her loan.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate in those cases in which there is no genuine dispute as to a material fact, and in which it appears that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); <u>Haavistola</u> v. <u>Community Fire Company of Rising Sun, Inc.</u>, 6 F.3d 211, 214 (4th Cir. 1993). Summary judgment should be granted in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." <u>Id.</u> In making this determination, the court draws all permissible inferences from the underlying facts in the light most

3

favorable to the party opposing the motion. "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).

### III. STATUTE OF LIMITATIONS

The ECOA requires a creditor

> [w]ithin thirty days (or such longer reasonable time as specified in the regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, [to] notify the applicant of its action on the application.

15 U.S.C. § 1691(d)(1); Reg. B, 12 C.F.R. § 202.9(a)(1)(i). The creditor must provide "[e]ach applicant against whom adverse action is taken . . . a statement of reasons for such action." 15 U.S.C. § 1691(d)(2). The creditor can satisfy its ECOA obligation by either: (1) providing a statement of reasons in writing as a matter of course to an applicant against whom an adverse action is taken; or (2) giving an applicant written notification of the adverse action, which notification also discloses the applicant's right to a statement of reasons therefor and the identity of the person or office from which such a statement could be obtained. 15 U.S.C. § 1691(d)(2)(A) and (B). "A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken." 15 U.S.C. § 1691(d)(3).

Plaintiff applied for her first three loans on 15 November 1992, in July or August 1994, and no later than 1 December 1994. Under § 1691(d)(1) of the ECOA, plaintiff should have received

4

notice of United's adverse actions on those applications by 15 December 1992, 30 September 1994, and 30 December 1994, respectively. According to 15 U.S.C.A. § 1691e(f), any action brought under the ECOA shall be brought no later than two years from the date of the occurrence of the violation. For purposes of analyzing plaintiff's procedural ECOA claims, the dates by which defendant was required to provide notice of the bank's adverse actions are appropriately considered to be the dates of the occurrence of the alleged violations. Those dates are: 15 December 1992, 30 September 1994, and 30 December 1994. Plaintiff filed her complaint on 12 March 1997. Because the alleged violations regarding the first three loans occurred well before 12 March 1995, defendant's motion for summary judgment pertaining to plaintiff's claims regarding those loans will be allowed.

Plaintiff's argument that the statutory period should be equitably tolled is unpersuasive. Regardless of whether defendant approved any of plaintiff's subsequent loans, the approval of any of those loans would not remedy a procedural violation of the ECOA with respect to an earlier loan. A creditor's failure to respond to a loan request within thirty days as required by statute cannot be cured by that creditor's approval of a subsequent loan request from the same applicant.

### IV. PLAINTIFF'S 3 APRIL 1995 LOAN APPLICATION

Plaintiff submitted her fourth loan application on 3 April 1995. That application was denied on 19 April 1995, and plaintiff acknowledges that she received an ECOA notice with respect to that

5

loan within two days of 19 April 1995. (Para Dep. at 85.) Plaintiff contends however, that the ECOA notice that she received did not satisfy the ECOA requirements. First, she argues that the notice did not set forth the "actual, specific reasons" for United's adverse action with respect to that loan request. Second, she alleges that United failed to inform her in writing that she was entitled to such reasons. Third, she argues that United did not provide a written statement of the provisions of Section 701(a) of the ECOA in the form required. The court will address each of these arguments in turn.

A. <u>Defendant's Statement of Specific Reasons</u>

As noted, a statement of reasons provided by a creditor meets ECOA requirements only if it "contains the specific reasons for the adverse action taken." 15 U.S.C. § 1691(d)(3). United provided a document to Para within two days of 19 April 1995 entitled "Equal Credit Opportunity Act Notice." (Para Dep., Ex. 5.) On that notice, United stated that it had denied her application for the following specific reasons: "[l]ack of established earnings record" and "[i]nadequate capital or assets." (Id.) Consequently, in compliance with the statute and regulations, United did provide specific reasons for its denial of Para's loan request. See 12 C.F.R. § 202.9 (b)(2)(statement of reasons must be specific and indicate the principal reason(s) for the adverse action).

Para claims, however, that these specific reasons are not the "true" reasons the loan application was denied. (Opp'n at 18.) While Para is free to assert a substantive discrimination claim

6

based on what she believes are the "true" reasons United denied her application (id.), an assertion that the specific reasons provided by United are not the "true" reasons her loan was denied does not, standing alone, amount to a violation of the regulation requiring the enumeration of specific reasons for an adverse action.[1] Para has, in fact, asserted a discrimination claim pursuant to the ECOA, and the allegedly "true" reasons for which United denied her claim are appropriately dealt with in the context of that claim.

To the extent that plaintiff argues that defendant violated the ECOA by failing to identify the primary or principal reason for denial, i.e., Mr. Glenn Humbert's alleged view that the sports bar concept was "too risky" (Opp'n at 18), plaintiff's claim is

---

[1] At least two courts have held that lenders have failed to satisfy the notice requirements of the ECOA when their decisions to deny credit were motivated by specific reasons other than those stated in the ECOA notices provided to applicants. In Fischl v. GMAC, 708 F.2d 143 (5th Cir. 1983), the court held that the specific reason cited by the defendant - "credit references are insufficient" - did not satisfy the regulations where a combination of specific factors actually contributed to the adverse decision. In that case, the lender denied the application because of the brevity of plaintiff's credit history and the excessiveness of the amount he wished to finance when measured against the size of his current credit obligations. Likewise, in Carroll v. Exxon Co., U.S.A., 434 F. Supp. 557 (E.D. La. 1977), the court held that Exxon failed to satisfy the notice requirements where it listed only one of more than five factors contributing to the denial of an application for credit in response to an applicant's request for specific reasons. In both cases, the courts held that the lenders failed to satisfy the informative purposes of the Act.
    Those cases are distinguishable from Para's case. Here, Para claims primarily that defendant's "true" reason for denying her loans was based on the fact that she was an unmarried female. Even if plaintiff's allegations were true, discriminatory animus is clearly not a specific reason a lender might be expected to include in an ECOA notice. Unlike the defendants in Fischl and Carroll, United has satisfied the informative requirements of the Act by setting forth the reasons for which it denied plaintiff's loan and thereby allowing plaintiff the opportunity to challenge those reasons. While plaintiff's ability to show that defendant's stated reasons for denial were unfounded may help her establish a substantive violation of the ECOA, mere allegations that defendant did not state its true, allegedly discriminatory basis for denial does not bring plaintiff's claim within the ambit of cases such as Fischl and Carroll.

7

similarly unfounded. A loan is risky for a lending institution if various specific factors, such as those enumerated by defendant in the ECOA notice mailed to plaintiff on 19 April 1995, are present. It does not appear from the materials submitted by the parties that the riskiness of plaintiff's proposition was a reason for denial discrete from those reasons identified within the ECOA notice. Also, in his statement to the F.D.I.C., Mr. Humbert related his concern about the success of plaintiff's sports bar idea to his belief that he could not use her financial performance with respect to the deli as a reliable indicator of how a sports bar venture would perform. In other words, defendant's concern that the venture would be risky was tied to plaintiff's lack of an established earnings record regarding the type of business for which she sought the loan at issue, (Opp'n Ex. A at 14), a specific reason listed by defendant on the ECOA notice provided to plaintiff.

In sum, defendant provided specific reasons for its denial of plaintiff's loan request, and plaintiff's contention that discrimination, rather than defendant's enumerated reasons, was the "true" reason behind its denial of plaintiff's loan request does not state a claim for a procedural violation of the ECOA notice requirements.

B. <u>Plaintiff's Entitlement to Statement of Specific Reasons</u>

Para has also asserted that United failed to inform her in writing that she was entitled to a statement of specific reasons for the denial of her loan application. As noted above, however,

8

a creditor may meet its ECOA obligation by providing *either* a written statement of specific reasons or a notice of the adverse action which discloses the applicant's right to such a statement and the identity of the person or office from which such a statement can be obtained. 15 U.S.C. § 1691(d)(2)(A) and (B). Because United provided a statement of specific reasons for denial with respect to the 3 April 1995 loan application, United did not have an obligation to provide an additional written statement notifying plaintiff of her right to such a statement.

C. <u>Written Notice of Section 701(a)</u>

Finally, plaintiff argues that United did not provide a written statement of the provisions of Section 701(a) of the ECOA in the form required. The regulations require that a creditor include a statement of Section 701(a) of the Act in its notification of an adverse action. 12 C.F.R. § 202.9(a)(2). The regulations further provide that, "[t]o satisfy the disclosure requirements of paragraph (a)(2) of this section regarding section 701(a) of the Act, the creditor shall provide a notice that is substantially similar to the following:

> The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is (name and address as specified by the appropriate agency listed in Appendix A of this regulation)."

9

12 C.F.R. § 202.9(b)(1). The document included as Exhibit 5 to Para's deposition includes almost identical language to that quoted above. The document also identifies the Federal Deposit Insurance Corporation (FDIC) as the federal agency administering compliance with the Act, providing an address and phone number at which the agency could be reached.

The notice provided by United complied with all of the ECOA's regulatory and statutory requirements, and consequently, defendant's motion for summary judgment pertaining to Para's ECOA claim regarding the 3 April 1995 loan application will be allowed.

### V. SEX AND MARITAL STATUS DISCRIMINATION UNDER THE ECOA

Plaintiff has asserted that United denied each of her loans based on sex and marital status discrimination in violation of the ECOA. (Compl. ¶ 62.) Plaintiff's substantive ECOA claims pertaining to defendant's denials of her first two loan requests are barred by the statute of limitations. 15 U.S.C. § 1691e(f). According to the facts as alleged by plaintiff, defendant actually denied her third loan in approximately the third week of March 1995. (Compl. ¶¶ 35, 37.) Because she filed her claim on 12 March 1997, plaintiff's substantive discrimination claim pertaining to the third loan falls within the two-year statute of limitations. Likewise, plaintiff's fourth loan request was denied on 19 April 1995, within the statutory period. The court will address the sex and marital status discrimination claim only as it relates to plaintiff's third and fourth loan applications.

The ECOA prohibits a creditor from discriminating against an applicant, with respect to any aspect of a credit transaction, on the basis of sex or marital status. 15 U.S.C. § 1691(a)(1). Under the regulations, "discriminate" means to treat an applicant less favorably than other applicants. 12 C.F.R. § 202.2(n). "To satisfy ordinary principles of proof, [a plaintiff] must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact." Evans v. Technologies Applications & Service Co., 80 F.3d 954, 959 (4th Cir. 1996). "[D]isparate treatment claims brought under . . . federal anti-discrimination statutes . . . may be proved either directly, or indirectly using the McDonnell Douglas burden-shifting method." Sieberns v. Wal-Mart Stores, Inc., 125 F.3d 1019, 1022 (7th Cir. 1997).

A. *Direct Evidence of Discrimination*

Plaintiff has not provided direct evidence of discrimination based on sex or marital status. First, as defendant notes, plaintiff's own deposition testimony does not provide evidence or even a forecast of evidence that would establish sex or marital status discrimination. Asked what facts she relied upon to make her claim of discrimination, plaintiff replied:

> It is my belief that as a (sic) applicant to a bank with the credibility that I had with my financial background, with my experience in the restaurant business, with the reputation that I had in the area, with the availability of people that would support the business, such as customers and employees, and the fact that I had money and collateral to support the loan, and the loans were denied without reason. . . . I believe that if I were a 30 year old man walking into the bank in the same position, the loan would have been approved.

11

(Para Dep. at 95, 96.) Plaintiff could not identify any documents that would support a claim of sex and marital status discrimination (Para Dep. at 97), nor could she identify any witnesses who could testify to such discrimination. (Id.) Moreover, plaintiff acknowledged in her deposition that defendant has approved eleven loans for her in the past (Para Dep. at 100), at least one of which was a substantial business loan for approximately $67,500 (Compl. ¶ 7), and at least one of which took place in April 1995, the same month the fourth loan at issue in this case was denied. (Para Dep. at 99-101.) The existence of those loans undermines plaintiff's claims that the bank refused to loan her money for her proposed business venture based on her sex and marital status.

Plaintiff claims that she had a conversation in March 1995 with Mr. Humbert pertaining to the loan she submitted in November or December 1994, during which Mr. Humbert posed questions prohibited by the statute and regulations. Plaintiff stated: "it was an issue with Mr. Humbert as to . . . my daughter's age, where's she schooled, what my marital status was, whether there was possibly a co-applicant." (Para Dep. at 96.) Plaintiff alleges that Mr. Humbert asked "who she was dating" and "whether she was getting serious in her relationship with such person." (Compl. ¶ 38.) Plaintiff further testified that Mr. Humbert "had known that [she'd] been dating Mr. Turner for quite some time and ask[ed] [her] whether [she] had anticipated getting married." (Para Dep. at 81.) Para stated at her deposition that the questions she was asked at the March 1995 meeting were the only factual basis she had

12

for alleging sex and marital status discrimination. (Para Dep. at 96.) Those comments, however, fail to constitute direct evidence of sex and marital status discrimination.

Regulation B permits a creditor to obtain certain information from an individual applicant for secured credit, including information pertaining to the applicant's marital status. 12 C.F.R. § 202.5(d)(1). A creditor may also inquire about "the number and ages of an applicant's dependents or about dependent-related financial obligations or expenditures, provided such information is requested without regard to sex, marital status, or any other prohibited basis." 12 C.F.R. § 202.5(d)(4). Because a creditor is permitted to ask such questions for limited purposes, the mere fact that Mr. Humbert asked the questions is not direct evidence of discrimination. At most, the questions could constitute circumstantial evidence, and plaintiff must establish a prima facie case of discrimination under the ECOA to proceed with a claim based on circumstantial evidence. Furthermore, circumstantial evidence "must be of sufficiently probative force to raise a genuine issue of material fact." Evans, 80 F.3d at 957.

Before turning to the requirements for plaintiff's prima facie case, the court notes that, as circumstantial evidence, the questions posed by Mr. Humbert do not, considered in the context in which they were spoken as described by plaintiff, give rise to an inference of discrimination. As such, the questions do not constitute evidence of sufficiently probative force to raise a genuine issue of material fact. Plaintiff has made it clear in

13

her deposition that, during the course of the March 1995 meeting regarding the third loan request, Mr. Humbert conveyed to her the bank's concern that plaintiff had no way of repaying the loan because she had sold her restaurant and consequently had no cash flow. (Para Dep. at 81.) The FDIC report submitted by plaintiff also indicates that Mr. Humbert thought the bank might be able to approve a loan for plaintiff if she could secure a guarantor for at least the first two years of the repayment period. (Opp'n Ex. A at 13-14.) It is clear from Para's testimony and exhibits that Mr. Humbert posed the questions regarding plaintiff's marital status and dependents in the context of plaintiff's cash flow problems, her lack of adequate capital, and her consequent need for a guarantor to ensure repayment of any loan extended by the bank. Accordingly, the questions were not posed in a discriminatory fashion and were permissible under the regulations.

B. <u>Plaintiff's Prima Facie Case</u>

To establish a prima facie case of discrimination under the ECOA in the absence of direct evidence, plaintiff must offer proof that: 1) she is a member of a protected class; 2) she applied for and was qualified for a loan; 3) despite her qualifications she was rejected; and 4) males or married females of similar credit stature were given loans, or treated more favorably than plaintiff in the application process. <u>Gross</u> v. <u>United States Small Business Association</u>, 669 F. Supp. 50, 53 (N.D.N.Y. 1987), aff'd, 867 F.2d 1423 (2nd Cir. 1988). Although plaintiff is a woman who was unmarried when defendant denied the loan requests she had

14

submitted, it is unclear from plaintiff's allegations whether she was qualified for the loans she sought.

Assuming without deciding for purposes of plaintiff's prima facie case that she was "qualified" for the loans she sought, plaintiff still bears the burden of showing that defendant's denial of the loan was based on a discriminatory motive. To do so, plaintiff must offer evidence or a forecast of evidence sufficient to establish that males or married females of similar credit stature were given loans. Plaintiff has not satisfied that burden.

Plaintiff has offered meager evidence to demonstrate that males or unmarried females were given loans or were treated more favorably in the application process. In her complaint, plaintiff states that, "upon information and belief, other banking customers of Defendant, including male and married female applicants, who meet Defendant's lending guidelines, are granted loans." (Compl. ¶ 64.) When questioned in her deposition about the allegation in paragraph 64 of her complaint, plaintiff acknowledged that she did not have any specific applicants to support that allegation. (Para Dep. at 97.)

Plaintiff elicited deposition testimony from Mr. Humbert to the effect that the bank had "made loans to people who were entering new businesses they had never been involved in before" (Humbert Dep. at 80) when those people met "the credit criteria or the underwriting guidelines" (Humbert Dep. at 81); and that the bank made a loan in 1994 or 1995 to a "person who did not have the seventy-five percent loan-to-value ratio." (Humbert Dep. at 112.)

15

The sex or marital status of those people is not stated, nor have any creditor files been offered or forecast in support of that testimony or of plaintiff's general allegation. See <u>Sayers</u> v. <u>General Motors Acceptance Corp.</u>, 522 F. Supp. 835, 839 (W.D. Mo. 1981) (plaintiff established prima facie case of sex discrimination under ECOA by introducing into evidence at trial credit files of approximately 25 males who had been extended credit by defendant in spite of the fact that they, like plaintiff, had delinquent credit obligations in their credit histories). Moreover, defendant denied plaintiff's loan because she had inadequate capital and assets, i.e., could not make the required 25% down payment, and because she lacked an established earnings record, i.e., was starting a business in which she had not previously been involved. To show that she was treated less favorably than males or married females similarly situated to herself, she would need to show either: 1) that the bank approved loans to males or unmarried females that the bank considered to have inadequate capital and assets and a lack of established earnings records; or 2) that the bank considered males or married females with similar capital and assets, i.e., loan-to-value ratios, as the plaintiff and similar earnings records as the plaintiff to be eligible for loans. Plaintiff has not produced any evidence to establish the prima facie case necessary to support an ECOA claim, and, as such, defendant's motion for summary judgment on that claim will be allowed.

**CONCLUSION**

For the reasons stated above, defendant's motion for summary judgment pertaining to plaintiff's claims for procedural violations of the ECOA regarding defendant's denials of her 15 November 1992, her July/August 1994, and her 1 December 1994 loan requests is ALLOWED, and those claims are DISMISSED. Because plaintiff has failed to raise a genuine issue of material fact with respect to her claim alleging procedural violations of the ECOA with respect to the 3 April 1995 loan request, defendant's motion for summary judgment regarding that claim is also ALLOWED, and the claim is DISMISSED.

Plaintiff's claims for substantive violations of the ECOA pertaining to defendant's denial of her November 1992 and July/August 1994 loan requests are barred by the two-year statute of limitations. With respect to the denial of her third and fourth loan requests, plaintiff's failure to establish a prima facie case of sex or marital status discrimination under the ECOA entitles defendant to judgment as a matter of law. Defendant's motion for summary judgment on the substantive ECOA claims is ALLOWED, and the discrimination claims are DISMISSED. All claims having been dismissed, this action is DISMISSED.

This 25 August 1998.

W. EARL BRITT
Senior United States District Judge

tlp/ucb/jcd