**MCGUIREWOODS LLP**
Jamie D. Wells (SBN 290827)
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

K. Issac deVyver (*admitted pro hac vice*)
Karla Johnson (*admitted pro hac vice*)
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
Telephone: 412.667.6000
Facsimile: 412.667.6050

Attorneys for Defendant
WELLS FARGO BANK, N.A.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO PEÑA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | CASE NO: 3:19-cv-04065-MMC<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: December 13, 2019<br>Time: 9:00 AM<br>Courtroom: 7<br><br>Complaint Filed: July 16, 2019<br>First Amended Complaint: September 27, 2019<br><br>**Hon. Judge Maxine M. Chesney** |

# TABLE OF CONTENTS

| | | Page |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 2 |
| | A. Plaintiff Fails to State a Claim for Violation of Section 1981 | 2 |
| | B. Plaintiff Fails to State a Claim Under the Equal Credit Opportunity Act | 4 |
| | C. Plaintiff Fails to State a Claim Under the Fair Credit Reporting Act | 6 |
| III. | CONCLUSION | 9 |

DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anaya v. Vugt*,
   No. 16-cv-01094-SKO (PC), 2017 WL 4679808 (E.D. Cal. Oct. 18, 2017) ................................9

*Anderson v. Wachovia Mortg. Corp.*,
   621 F.3d 261 (3d Cir. 2010) ....................................................................................................3

*Carroll v. Exxon Co., U.S.A.*,
   434 F. Supp. 557 (E.D. La. 1977) ...........................................................................................5

*Christian v. Wal-Mart Stores, Inc.*,
   252 F.3d 862 (6th Cir. 2011) ...................................................................................................3

*Cole v. U.S. Capital, Inc.*,
   389 F.3d 719 (7th Cir. 2004) ...................................................................................................8

*Demay v. Wells Fargo Home Mortg., Inc.*,
   279 F. Supp. 3d 1005 (N.D. Cal. 2017) ...............................................................................7, 9

*In re eBay Seller Antitrust Litigation*,
   No. C07-01882 JF (HRL), 2010 WL 2106004 (N.D. Cal. May 25, 2010) ..............................3

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) ...................................................................................6

*Jugoz v. Experian Info. Sols., Inc.*,
   No. 16-CV-05687-MMC, 2017 WL 2720184 (N.D. Cal. June 23, 2017) ...............................9

*Lindsey v. SLT Los Angeles, LLC*,
   447 F.3d 1138 (9th Cir. 2006) .................................................................................................3

*Nayab v. Capital One Bank (USA), N.A.*,
   942 F.3d 480 (9th Cir. 2019) ...................................................................................................7

*Nordberg v. Trilegiant Corp.*,
   445 F. Supp. 2d 1082 (N.D. Cal. 2006) ..................................................................................4

*Norris v. Bayview Loan Servicing, LLC*,
   No. CV-15-06413-MWF (DTBx), 2015 WL 6745048 (C.D. Cal. Oct. 26, 2015) ..................6

*On Command Video Corp. v. Lodgenet Entertainment Corp.*,
   976 F.Supp. 917 (N.D. Cal.1997) ...........................................................................................2

*Peikoff v. Paramount Pictures Corp.*,
   No. 15-CV-00068-VC, 2015 WL 13650922 (N.D. Cal. Mar. 26, 2015) .................................9

*Perez v. Wells Fargo Bank, N.A.*,
  Case No. 17-cv-00454-MMC ................................................................................................2

*Powell v. Pentagon Federal Credit Union*,
  No. 10 CV 785, 2010 WL 3732195 (N.D. Ill. Sept. 17, 2010) ......................................5

*Ruiz v. Samuel I. White, P.C.*,
  No. 09-cv-688, 2009 WL 10687930 (E.D. Va. Nov. 9, 2009)........................................5

*Smith v. Bob Smith Chevrolet, Inc.*,
  275 F. Supp. 2d 808 (W.D. Ky. 2003) ......................................................................8

**STATUTES**

12 C.F.R. § 202.5(e) ................................................................................................6

15 U.S.C. § 1681b(a)(3) ..........................................................................................7

15 U.S.C §1691(d)(3) ..............................................................................................4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff opposes Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss but fails to substantively respond to the core arguments warranting dismissal. Instead, Plaintiff merely reiterates his insufficient factual allegations and advances new legal theories, which are not at issue and are completely irrelevant to the arguments raised in Wells Fargo's Motion to Dismiss. For example, Plaintiff attempts to change the basis of his claim for violation of the Equal Credit Opportunity Act ("ECOA") by arguing that the adverse action letter Plaintiff undisputedly received failed to provide a detailed explanation for the decline. Yet there are no such allegations in Plaintiff's operative First Amended Complaint. Plaintiff's Amended Complaint brings an ECOA notice claim based on the assertion that the adverse action letter was allegedly false, not incomplete. Plaintiff's efforts to bring a new claim in order to avoid dismissal should be rejected.

Furthermore, Plaintiff's Opposition makes clear that all of his claims are built on the assumption that Wells Fargo supposedly has a policy that categorically denies direct auto financing to DACA recipients. As set forth in Wells Fargo's Motion to Dismiss and herein, the First Amended Complaint ("FAC") is devoid of any factual detail or support for that allegation. Stated differently, each and every one of Plaintiff's claims is based on a conclusory assumption for which he has failed to allege sufficient facts and that assumption accordingly cannot be accepted as true. At bottom, Plaintiff has not moved the needle as to his failure to plead sufficient facts to state a claim against Wells Fargo for violations of Section 1981 of the Civil Rights Act, the ECOA, and the Fair Credit Reporting Act ("FCRA"). Plaintiff also fails to show how any amendment could overcome these glaring deficiencies, particularly when Plaintiff's claims necessarily fail as a matter of law. For these reasons, which are set forth further below, Wells Fargo's Motion to Dismiss should be granted with prejudice.

## II. ARGUMENT

### A. Plaintiff Fails to State a Claim for Violation of Section 1981

In his Opposition, Plaintiff argues that he has stated "a claim for relief under Section 1981 because he alleges that (a) he was a non-citizen with DACA, work authorization, and a valid SSN; (b) he applied for a direct auto loan; and (c) Wells Fargo denied him credit because it makes non-citizens with DACA facially ineligible for direct auto loans under Wells Fargo [sic] lending policy." Opp. 4-5. Plaintiff's claim rises and falls on his unsupported contention that "Wells Fargo's direct auto line of business, as a matter of policy, treats non-United States citizens who reside in the United States and hold [DACA] status as ineligible for auto loans even where such DACA applicants have valid Social Security numbers and federal work authorization and regardless of their creditworthiness and ability to satisfy the bank's auto loan underwriting criteria." FAC ¶ 2.

Like the First Amended Complaint, Plaintiff's Opposition does nothing to advance this theory. Plaintiff alleged no actual facts in the FAC about the policy, including what the policy states and how it allegedly "categorically excludes" DACA recipients based on their alienage. Indeed, the Opposition confirms that the only "fact" supporting Plaintiff's claim is that there is a separate class action pending against Wells Fargo, *Perez v. Wells Fargo Bank, N.A.*, Case No. 17-cv-00454-MMC, which does not involve Plaintiff or his claims. Plaintiff relies on *Perez* to argue that those proceedings—which again, have nothing to do with Plaintiff and further, have nothing to do with a direct auto financing—are somehow dispositive on Plaintiff's claims here. Opp. 5 ("Wells Fargo ignores the well-pled facts of the complaint and applicable authority, including this Court's *Perez* decision.").[1] They are not. Nor does an unrelated and separate action against Wells Fargo remove

---

[1] Plaintiff cannot rely on confidential documents Wells Fargo produced in discovery in *Perez* to establish his claims. The protective order in *Perez* makes clear that the protected material shall not be used in any other litigation proceedings, and their actions should not be countenanced. *Perez*, Dkt. No. 83 ("A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case ***only*** for prosecuting, defending, or attempting to settle this litigation.") (emphasis added). Attempting to rely on confidential documents produced in *Perez*, either to bring his claims or avoid dismissal, is clear violation of the protective order. *See, e.g.*, *On Command Video Corp. v. Lodgenet Entertainment Corp.*, 976 F.Supp. 917, 920-22 (N.D. Cal.1997) (where plaintiffs in federal court commenced lawsuit against same defendant in state court and used protected information, Court found plaintiffs in contempt, stating, "[t]he purpose of

Plaintiff's obligation to adequately plead facts sufficient to state a Section 1981 claim—which he has failed to do here.

The Opposition recites the elements of a Section 1981 claim but that only confirms that the Amended Complaint entirely fails to plead facts sufficient to state a claim. *See* Opp. 4 ("a plaintiff must allege that (1) she is a member of a protected class, (2) that she attempted to contract for certain services, and (3) she was denied the right to contract for those services") (citing *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006)) (internal quotations omitted). The Ninth Circuit also "requires that such services remained available to similarly-situated individuals who were not members of the plaintiff's protected class." *Lindsey*, 447 F.3d at 1145. Plaintiff relies on *Lindsey* to argue that this fourth element "may be relaxed in certain circumstances" [Opp. 4], but the Ninth Circuit did not decide that issue in *Lindsey*. 447 F.3d at 1145 (applying all four elements without deciding whether the fourth element must be relaxed in many or all cases arising in a commercial, non-employment context because the plaintiff offered clear evidence on summary judgment that a similarly-situated group of a different protected class was offered the contractual services which were denied to the plaintiff). Regardless, Plaintiff has not—and cannot—plead facts sufficient to show that he was denied services while similarly situated persons outside the protected class were not or that he "received services in a markedly hostile manner and in a manner in which a reasonable person would find objectively discriminatory." Opp. 4 (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2011)) (internal quotations omitted).[2] While Plaintiff self-servingly

---

the Order is to limit the use of confidential information to this case. By using such information to file a separate lawsuit in another forum, plaintiff violated the plain terms of the Protective Order."); *In re eBay Seller Antitrust Litigation*, No. C07-01882 JF (HRL), 2010 WL 2106004, at *1 (N.D. Cal. May 25, 2010) (plaintiff's counsel would have been in violation of the protective order by reviewing or "mining" eBay's confidential documents with an eye toward evaluating the documents' potential relevance and possible use in other litigation).

[2] Because lending discrimination cases are unique in that the plaintiff may face obstacles in showing that other, similarly situated individuals were permitted to contract for services, some courts have essentially replaced that element with "otherwise qualified." In *Anderson v. Wachovia Mortg. Corp.*, the Third Circuit Court of Appeals held that to successfully establish a prima facie case of lending discrimination under Section 1981, a plaintiff must prove that: (a) he or she is a member of a protected class of individuals; (b) he or she applied and was qualified for credit made available by the defendant; (c) the defendant either (1) denied the application, or (2) approved the application subject to unreasonable or overly burdensome conditions; and (d) there exists additional evidence

concludes that he "has sufficiently pleaded that Wells Fargo denied him the loan because of an essential characteristic of his status as a non-citizen with DACA"—he has not. Based on the *facts* in the FAC, Plaintiff has alleged that there was an issue with his documentation—and nothing more. Opp. 5 (Plaintiff alleges that a Wells Fargo representative informed him that "he was ineligible for the [auto] loan because his DACA status expired within the loan period."). Plaintiff also notably omits his adverse action letter or any allegations as to what the letter said, which undermines his assertions that there was a violation of Section 1981.

In short, Plaintiff has failed to plead sufficient facts to state a Section 1981 claim. The only facts that Plaintiff has alleged is that he was denied auto financing and is a DACA recipient. From those facts, Plaintiff is asking the Court to make the unwarranted inference that Wells Fargo has a policy of refusing to offer direct auto financing to all DACA recipients—that is not enough to state a claim for a violation of Section 1981.

**B.      Plaintiff Fails to State a Claim Under the Equal Credit Opportunity Act**

At its core, Plaintiff's ECOA claim is premised on one single claim—namely, that the adverse action letter Plaintiff undisputedly received was inaccurate because it did not state that he was denied credit due to his DACA status. FAC ¶ 53 (Plaintiff "never received one that *accurately* stated the reason for his denial of credit.") (emphasis added). As set forth in Wells Fargo's Motion to Dismiss, this Court has not recognized a claim for an ECOA violation based on the accuracy of the adverse action letter. D.E. 39 (Wells Fargo's Motion to Dismiss) at 8-9.

Essentially conceding he has failed to state a claim, Plaintiff tries to change his theory by arguing that Wells Fargo's adverse action letter did not contain the specific reasons for the adverse action taken as required by 15 U.S.C § 1691(d)(3). Opp. 7. This theory is not pled in Plaintiff's Amended Complaint and Plaintiff cannot amend his claim in his Opposition. *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1090 (N.D. Cal. 2006) (court would not consider a new theory of liability raised for the first time in opposition to a motion to dismiss). Indeed, what Plaintiff clearly

---

to demonstrate a causal nexus between the harm and plaintiff's membership in the protected class, from which a reasonable juror could infer, in light of common experience, that the defendant acted with discriminatory intent. 621 F.3d 261, 265 (3d Cir. 2010).

alleges is an *inaccurate denial*. FAC ¶ 53 (letter did not "accurately" state the reason for the denial); Opp. 1 ("Wells Fargo also unlawfully failed to disclose to [Plaintiff] the *real reason* for his credit denial . . .") (emphasis added). Even assuming Plaintiff had pled a claim for insufficient, not inaccurate notice, his claim would still fail. Plaintiff does not attach the adverse action letter, nor does he allege what the notice of adverse action said, nor does he alleged what he contends it should have said, nor does his allege why the letter fails to have a sufficient detailed explanation for the decline. *See generally* FAC. Thus, even under his alternative theory, which Plaintiff has not properly alleged, he has still failed to state claim.

Plaintiff maintains "[i]t is well-settled that false, inaccurate, vague, or incomplete adverse action notices violate ECOA" [Opp. 9], yet all of the cases cited in Plaintiff's Opposition are based on insufficient notice allegations—which is not alleged here. For example, in *Carroll v. Exxon Co., U.S.A.*, 434 F. Supp. 557, 563 (E.D. La. 1977), the court found that the plaintiff established her ECOA notice claim on summary judgment because the defendant's decline letter did not disclose a number of factors that contributed to the denial of plaintiff's credit card. The court accordingly found that the defendant's adverse action letter failed to comply with the notification requirements. *Id.* The court did not make any findings as to an allegedly false or inaccurate decline reason and whether that amounted to an ECOA violation, as Plaintiff suggests in his Opposition. *See* Opp. 10. And in *Powell v. Pentagon Federal Credit Union*, No. 10 CV 785, 2010 WL 3732195, at *5, n.4 (N.D. Ill. Sept. 17, 2010), the discussion of "inaccurate and misleading" reasons in the letter was in the context of an ECOA *discrimination* claim, not a notice claim. *Id.* (citing consideration of "railroad disability income").

Despite his now reinvented ECOA claim, and as stated above, Plaintiff's ECOA claim alleges that the decline reason stated in adverse action letter was *inaccurate* not incomplete. Under the case law, that is a discrimination claim which Plaintiff cannot bring since immigration status considerations are permitted under the ECOA. *See e.g. Ruiz v. Samuel I. White, P.C.*, No. 09-cv-688, 2009 WL 10687930, at *4 (E.D. Va. Nov. 9, 2009) ("allegations of falsity [in an adverse action letter] are properly adjudicated in the context of an ECOA *discrimination* claim, not an ECOA *notice*

DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

claim"); *see also* 12 C.F.R. § 202.5(e) (The official interpretations of the Regulation B *permit* creditors to "inquire about the permanent residency and immigration status of an applicant or any other person in connection with a credit transaction."). Plaintiff's attempt to distinguish *Ruiz* misses the mark.

The remainder of Plaintiff's arguments all miss the mark. These include Plaintiff's arguments regarding oral disclosure [Opp. 7], an alleged heightened pleading standard [Opp. 8-9], standing to bring an ECOA notice claim without being a protected class [Opp. 11-12], and inadvertent error defense. Opp. 12. First, Plaintiff argues that an oral disclosure does not satisfy ECOA's notice requirements [Opp. 7] but Wells Fargo never argued that it satisfied ECOA's notice requirements by providing oral notice nor does Plaintiff raise any ECOA notice claims based on an oral notice. Second, Wells Fargo cited *Norris v. Bayview Loan Servicing, LLC*, No. CV-15-06413-MWF (DTBx), 2015 WL 6745048, at *9 (C.D. Cal. Oct. 26, 2015) and *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1090 (S.D. Cal. 2010) as examples from other statutory schemes dealing with vague allegations of inaccuracy in a footnote, not as a pleading standard applicable to the ECOA. Third, Wells Fargo's Motion to Dismiss makes clear that one can bring an ECOA notice claim without being a protected class, while an ECOA discrimination claim must be based on a protected class. Motion at 8-10. This is not in dispute. Lastly, Wells Fargo never argued an inadvertent error defense in the Motion to Dismiss. None of these arguments are responsive to Wells Fargo's Motion to Dismiss and are nothing more than a transparent attempt to create confusion where there is none.

Plaintiff has failed to state a valid claim against Wells Fargo for violation of the ECOA. For these reasons, and those set forth further in Wells Fargo's Motion, Plaintiff's claim should be dismissed with prejudice.

**C.    Plaintiff Fails to State a Claim Under the Fair Credit Reporting Act**

As set forth in Wells Fargo's Motion to Dismiss and conceded in Plaintiff's Opposition, creditors, like Wells Fargo, may access a consumer's credit report "(1) in connection with a credit transaction . . . involving the extension of credit to, or review or collection of an account of, [that]

consumer; or (2) pursuant to a legitimate business need for the information." *Demay v. Wells Fargo Home Mortg., Inc.*, 279 F. Supp. 3d 1005, 1009 (N.D. Cal. 2017) (citing 15 U.S.C. § 1681b(a)(3)) (internal quotations omitted). Plaintiff admits that the alleged credit pull was in connection with his application to Wells Fargo for direct auto financing—*i.e.* the credit pull was in connection with a credit transaction, initiated by Plaintiff, involving the extension of credit to Plaintiff—as expressly permitted under Section 1681b(a)(3). *See e.g.* FAC ¶ 50 ("At some point after Mr. Peña submitted his application, Wells Fargo conducted a hard credit check and pull of his consumer report from one or more credit bureaus."); Opp. 13 (admitting that Plaintiff "and other DACA applicants did attempt to enter into a credit transaction with Wells Fargo by applying for an auto loan").

Plaintiff attempts to overcome this fatal flaw by arguing that Wells Fargo denied Plaintiff's credit because of his DACA status "and not on any information contained in his consumer report." Opp. 13. Plaintiff asserts that Wells Fargo did not intend to use his credit report in connection with his direct auto application [Opp. 14] and even goes so far as to make the bold and entirely unsupported assertion that "Wells Fargo did not intend to use [the credit report] ***at all***." Opp. 14 (emphasis added). Plaintiff contends that this alone gives rise to a viable FCRA claim. *Id.* ("[Plaintiff] need only allege facts giving rise to a reasonable inference that Wells Fargo obtained a consumer report for a purpose not authorized by the statute; he need not allege Wells Fargo's unauthorized purpose.") (citing *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019).[3] Plaintiff is wrong.

Plaintiff has entirely failed to plead any facts in support of his self-serving conclusion that Wells Fargo did not use, and never intended to use, Plaintiff's credit report when reviewing Plaintiff's application for a direct auto financing. Instead, Plaintiff relies on the existence of a purported exclusionary policy, for which he has pled no facts in support of its existence, to argue that "[Wells Fargo] had no reason to obtain or review consumer reports on DACA applicants." Opp.

---

[3] Plaintiff's reliance on *Nayab* is also misguided. Unlike Plaintiff, Nayab did not initiate any credit transaction with the defendant and was not involved in any credit transaction with the defendant involving the extension of credit. *Nayab*, 942 F.3d 480. Based on these facts, the court found that Nayab pled facts sufficient to give rise to a reasonable inference that the defendant obtained Nayab's credit for an improper purpose. *Id.*

15. Again, Plaintiff cannot rely on allegations as to alleged policies from another litigation in an effort to bolster his claims here. What is more, Plaintiff's allegation that there was an issue with the expiration date of his paperwork [FAC ¶51] undercuts his central claim that Wells Fargo automatically denied him credit because of his DACA status and thus, undercuts his notion that Wells Fargo had no permissible purpose for obtaining his credit report. Plaintiff should not be able to rely on his conclusion that Wells Fargo did not review his credit report, and thus had no permissible purpose for allegedly pulling it, while simultaneously pleading that there was an issue with the expiration date of his paperwork, while also refusing to plead any facts regarding the content of the adverse action letter.

Plaintiff also once again spends pages on irrelevant arguments, including Plaintiff's arguments regarding a creditor's "unlimited blank check to access and *reaccess* a consumer credit report long after the typical issues of eligibility, price, and financing were determined" [Opp. 15 (citing *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808 (W.D. Ky. 2003))], which is illusory. Opp. 16. In *Smith*, the court found, on summary judgment, that the defendant did not have a "legitimate business need" to pull the plaintiff's credit report after the parties created a contract for the car's price and the plaintiff paid that price in full because "it was not, as a practical matter, part of the transaction which [the] Plaintiff initiated." *Smith*, 275 F. Supp. 2d at 819. Unlike *Smith*, this case has nothing to do with an alleged credit pull unrelated to the original transaction Plaintiff initiated. Again, Plaintiff's allegations make clear that Plaintiff's credit was pulled in connection with his application to Wells Fargo and thus, squarely permitted under Section 1681b(a)(3). The decision in *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004) is also irrelevant to the issues before the Court. The *Cole* court found that a promotional offer of $300 in credit on a car purchase, at interest rates that might vary from 3.0 to 24.9%, and with no indication of how interest would be compounded or of the repayment schedule, had no real value to the consumer, and that the release of the consumer's credit report in connection with that offer was not a permissible release in connection with any "firm offer of credit," and thus, were sufficient to state claim under FCRA. 389 F.3d 719. None of those facts are at issue here. Plaintiff's attempt to detract from the main issues

and his own admissions by relying on inapposite legal theories such as the foregoing, does nothing but show his claims are inadequately pled.

In addition, Plaintiff's Opposition asserts that he is now abandoning his claim for negligent violation of FCRA, even though this claim was just added in the First Amended Complaint. Opp. 17, n.5. Plaintiff's negligent violation claims should accordingly be dismissed with prejudice. Plaintiff's claim for a willful violation should also be dismissed. Once again, Plaintiff's claim rises and falls based on an alleged Wells Fargo policy of categorically denying DACA recipients direct auto financing for which Plaintiff has failed to allege sufficient facts such that the Court can accept the existence of that alleged policy as true. To the extent Plaintiff argues that this is a question of fact inappropriate for resolution on a motion to dismiss, it fails. *See, e.g., Peikoff v. Paramount Pictures Corp.*, No. 15-CV-00068-VC, 2015 WL 13650922, at *1 (N.D. Cal. Mar. 26, 2015) (finding no support of a willful violation of FCRA and granting motion to dismiss with prejudice on that basis); *Demay*, 279 F. Supp. 3d at 1010-11 (noting that an allegation that defendant's actions "were willful ... because Defendant was aware of the FCRA's prohibitions on impermissibly pulling consumers' credit reports" was conclusory and could not support a claim for a willful violation); *Jugoz v. Experian Info. Sols., Inc.*, No. 16-CV-05687-MMC, 2017 WL 2720184, at *7 (N.D. Cal. June 23, 2017) (dismissing FCRA claim for willful violation because plaintiff alleged no facts in support of that legal conclusion).

In sum, Plaintiff has failed to plead the requisite elements to state a FCRA claim. His third claim necessarily fails as a result.

### III. CONCLUSION

Plaintiff's failure to state a claim is not simply a matter of inartful pleading that can be cured by amendment. Rather, under the instant facts and circumstances, Plaintiff is incapable of articulating any legally-cognizable claim against Wells Fargo. *Anaya v. Vugt*, No. 16-cv-01094-SKO (PC), 2017 WL 4679808, at *1 (E.D. Cal. Oct. 18, 2017) ("dismissal is appropriate and leave to amend need not be granted as the defects in Plaintiff's pleading cannot be corrected through

amendment."). Accordingly, Wells Fargo respectfully requests that the Court grant its motion to dismiss *without leave to amend*.

DATED: December 2, 2019          **MCGUIREWOODS LLP**

By:    */s/ K. Issac deVyver*
      K. Issac deVyver
      Attorneys for Defendant
      WELLS FARGO BANK, N.A.