# Exhibit E

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITZIE PEREZ, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>   Defendant. | Case No.17-cv-00454-MMC   (EDL)<br><br>**ORDER ON SCOPE OF DISCOVERY REGARDING CLASS AND THE PROPER APPLICATION OF THE COURT'S ESI CHECKLIST**<br><br>Re: Dkt. Nos. 88, 102 |

On October 23, 2017, this putative class action by six Deferred Action for Childhood Arrivals recipients against Wells Fargo for alleged credit discrimination in denying them credit was referred to this Court to resolve the parties' discovery disputes. Since that time, the parties have filed four separate joint discovery letters, as well as a stipulation and proposed order concerning the production of electronically stored information ("ESI"). See Dkt. Nos. 88, 96, 97, 102, 107.[1] On December 13, 2017, the Court held a hearing during which it considered three of these discovery-related filings.

The parties filed their first joint discovery letter on November 16, 2017. See Dkt. No. 88. In the letter, the parties set forth their disputes regarding the scope of class discovery and the related production of organizational charts, and the status of the parties' efforts to meet and confer regarding ESI and the Northern District of California's Rule 26(f) ESI checklist. To summarize, Plaintiffs have requested discovery from Defendant regarding its lending policies and practices with respect to non-U.S. citizens on every line of credit that it offers going back to 2013, as well as extensive and detailed discovery about its ESI related to all such lines of credit. Defendant has

---

[1] The parties also filed separate administrative motions to seal portions of briefs and attached exhibits related to supplemental briefing the Court ordered on the parties' November 16, 2017 joint discovery letter. The Court resolved those motions to seal separately. See Dkt. Nos. 113 & 114.

objected to this discovery request as irrelevant and disproportionate and argued that Plaintiffs are not entitled to class discovery on credit lines that Plaintiffs did not apply for, arguing that Plaintiffs' individual claims cannot be typical of the proposed class. The proposed class is defined as: "All persons within the jurisdiction of the United States who were denied the right to contract for a loan or other financial product by Wells Fargo because they were not U.S. citizens . . . " Dkt. No. 72, Second Amended Complaint, ¶ 80. Plaintiffs have also asked Defendant to provide them with extensive information about the different ESI systems that Defendant maintains across all of its credit lines. Objecting that Plaintiffs are not entitled to discovery of ESI on all of its credit lines, Defendant has declined to provide Plaintiffs with any ESI information.

The parties' disputes about the scope of class discovery and the sharing of information regarding ESI systems highlight the closely intertwined nature of discovery and the substantive legal issues in any given case. It is fundamental that the scope of discovery is defined by "any party's claim or defense" and must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In an uncomplicated lawsuit raising limited and straightforward issues of law and fact, the discovery process can be similarly uncomplicated. The parties might find it easy to identify the relevant claims and defenses, class action issues may not arise, and the parties can readily define the scope of discovery. In more complex lawsuits, however, particularly those raising novel issues of law or the scope of the potential class and what ESI is discoverable and where it can be found, the rules and procedures governing the discovery process demand a more nuanced approach in which the parties engage in an ongoing process to define and refine the scope of the viable claims and defenses and conduct discovery accordingly. Under these circumstances, the exchange of discovery is an iterative process whereby discovery should usually take place in phases as the case is refined over time. Here, the parties' polarized maximalist versus minimalist positions coupled with their unwillingness to engage in this iterative process underlies the discovery disputes that are presently before the Court.

Accordingly, before addressing the rest of the parties' discovery disputes, it is necessary to resolve the dispute over the scope of class discovery because of its cascading effects on discovery as a whole, including ESI issues. The Ninth Circuit has a relatively permissive standard for the

scope of class discovery prior to class certification, and the determination of whether and to what extent it should be permitted is within the discretion of the district court. See Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977). "[T]he plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985).

Here, Plaintiffs seek to represent a putative class of all non-U.S. citizens who were denied any type of credit by Defendant during the class period. The Court is not inclined to deny Plaintiffs the opportunity to obtain evidence to aid in determining whether a class action can be maintained and its scope in terms of lines of business, but Plaintiffs have not carried their burden to show that the requested discovery for each and every type of credit that Defendant offers is "likely to produce substantiation of the class allegations."

There is no dispute that discovery is warranted regarding the three lines of credit that the six named Plaintiffs applied for -- student loans, business direct, and credit cards -- and therefore discovery should continue apace as to those three credit lines. Contrary to Defendant's position, however, the credit policies already produced to Plaintiffs that Defendant submitted for the Court's review do not preclude a broader class beyond these three types of credit. Although Plaintiffs have not yet carried their burden to show that class discovery is warranted for every credit product offered by Defendant, and may well ultimately not be able to do so, some additional class discovery is warranted now regarding the lines of credit for which individuals in the proposed class likely applied. As discussed at the hearing, this initial phase of class discovery may also be conducted on Defendant's business lines involving auto loans, personal loans, and certain of its mortgages. Recognizing that the types of mortgages offered by Defendant are numerous and varied, with some less likely to be the subject of claims by the proposed class members, the parties are further ordered to meet and confer on the appropriate subset of mortgage loans that will be discoverable, taking into account the Court's comments that determining the appropriate subset of mortgages depends in large part on the harm that individuals in the proposed class were most likely to suffer as a result of the discrimination that Plaintiffs allege. To

summarize, class discovery is allowed to proceed as to the following credit lines: student loans, business direct, credit cards, auto loans, personal loans, and certain mortgage loans (as further defined during the parties' subsequent meet and confer).  Defendant is also ordered to produce organizational charts for these same six lines of credit to aid Plaintiffs in determining potentially relevant custodians and common decisionmakers across related lines of business.

The Court orders this initial, limited class discovery without prejudice to Plaintiffs' ability to seek expanded class discovery if they are able to make the prima facie showing justifying additional discovery as set forth in Mantolete.  This may include a showing of the particular harm that was likely sustained by members of the organizational Plaintiff, the California League of United Latin American Citizens, such as the types of loans that members sought from Defendant but were denied, which Plaintiffs did not address in the course of briefing this discovery dispute.  See, e.g., Gray v. Golden Gate Nat. Recreational Area, 279 F.R.D. 501, 503 (N.D. Cal. Aug. 30, 2011) (noting evidence that members of the disability rights organizational plaintiff experienced the alleged access barriers at the Golden Gate Natural Recreational Area parks and therefore were properly part of certified class of individuals with disabilities who were denied access due to barriers at those same parks); Rocky Ford Housing Authority v. Dep't of Ag., 427 F. Supp. 118, 124-25, 127 (D.D.C. 1977) (reviewing evidence that demonstrated that some organizational plaintiffs had standing and their motions for class certification could be granted where they had been approved to receive particular funding for multifamily housing projects).

Moreover, the Court notes that discrimination claims may be based on a theory of deterrence, at least in some contexts.  See Tabor v. Hilti, Inc., 703 F.3d 1206, 1226 (10th Cir. 2013) (citing Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 326 (1977)).  Thus, Plaintiffs may potentially claim that but for having been improperly denied certain types of credit by Defendant based on their immigration status, they would have also applied to Defendant for other types of credit, such as an auto loan.  At this point, however, Plaintiffs have not pursued this theory of discrimination, much less made any showing that they were deterred from applying for additional types of credit.

With respect to the dispute regarding the status of the parties' ESI discussions, both sides

have taken extreme and unsupportable positions in their previous ESI conferences.  An overarching theme of the Northern District of California's ESI checklist, as described in its introduction, is that discussions about ESI "should be framed in the context of the specific claims and defenses involved."  See United States District Court, Northern District of California, "Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information" ("ESI Checklist"), available at http://www.cand.uscourts.gov/eDiscoveryGuidelines.  Thus, the ESI Checklist envisions a dynamic and iterative process undertaken cooperatively by the parties in good faith, where "[t]he usefulness of particular topics on the checklist, and the timing of discussion about these topics, may depend on the nature and complexity of the matter."  Id.

Further, the ESI Checklist outlines topics for the practical application to Rule 26(f) conferences of the more general guidance provided by the Northern District of California's Guidelines for the Discovery of Electronically Stored Information.  These guidelines emphasize that the Court "expects cooperation on issues relating to . . . ESI" and that Rule 26's proportionality standard "should be applied to the discovery plan . . . including . . . ESI."  See United States District Court, Northern District of California, "Guidelines for the Discovery of Electronically Stored Information," available at http://www.cand.uscourts.gov/eDiscoveryGuidelines.  Rule 1 was amended in 2015 to make clear that it is the responsibility of the parties, not just the court, to employ the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding," and that they should cooperate to achieve those goals.  See Fed. R. Civ. P. 1, Advisory Committee Notes to the 2015 Amendment.

In light of these goals and practice points, it was unreasonable for Plaintiff to contend that the ESI checklist mandates that Defendant provide upfront comprehensive, detailed information about the ESI systems across *every* line of its extensive, varied lending business, including lines that no one in the putative class (or member of the organizational Plaintiff) may have ever applied for, or even been discouraged from applying for, before resolving which specific lines would be the subject of class discovery, at least initially.  For example, Plaintiffs requested that Defendant provide information on the following categories of ESI across all lines of credit it offers: (1) email

systems, including type, backup and/or archival processes; (2) instant messaging programs; (3) mobile devices; (4) hard drives and other personal storage; (5) shared directories; (6) loan application databases; (7) Wiki sites and/or internal portals; and (8) websites, active and historical. Plaintiffs insisted on this demand even though the ESI Checklist expressly calls for consideration of the "[i]dentification of systems from which discovery will be prioritized," among other things. See Northern District of California, ESI Checklist.

Plainly, that demand was overbroad and premature in its scope and timing. Moreover, it was not consistent with the general requirement that all discovery be "proportional to the needs of the case" considering the relevant factors enumerated in Rule 26(b), including "the issues at stake in the action" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." See Fed. R. Civ. P. 26(b)(1). Rule 26(b) was amended in 2015 and, as the Advisory Committee explained in the notes that accompanied the change, the amendment "restore[d] the proportionality factors to their original place in defining the scope of discovery" and "[t]his change reinforces the . . . obligation of the parties to consider these factors in making discovery requests, responses, and objections." Fed. R. Civ. P. 26(b), Advisory Committee Notes to the 2015 Amendment. "The parties share the responsibility to honor these limits on the scope of discovery." Id.

For these same reasons, it was equally unreasonable for Defendant to refuse to provide at least some information upfront on the ESI systems associated with the lines of credit that are obviously relevant to Plaintiffs' claims, including the credit card, business direct, and student loans products which Plaintiffs applied for and were denied. Defendant's blanket assertion at least ab initio that it should not be required to search for or produce *any* emails is similarly misplaced, as there are likely some relevant emails that must be produced in this and indeed almost all cases litigated today.

The parties' dogged positions ignored the ESI Checklist's common sense instruction that they consider "[w]hether it is appropriate to conduct discovery of ESI in phases," so that sources of ESI that are "most likely" to contain discoverable information are included in the early phases of discovery and sources of ESI that are "less likely" to contain discoverable information are

either "postponed or avoided." See Northern District of California, ESI Checklist. This suggestion is consonant with Rule 26's requirement that the parties consider "whether discovery should be conducted in phases or be limited to or focused on particular issues" when developing their Rule 26(f) discovery plan. See Fed. R. Civ. P. 26(f)(3)(B). See also Northern District of California Guideline 2.02 (explaining that the parties should consider "[t]he phasing of discovery so that discovery occurs first from sources most likely to contain relevant and discoverable information . . . "). By insisting on their unreasonable demands and forsaking this practical approach to discovery, the parties unnecessarily delayed the exchange of electronic discovery in this case for months.

The purpose of the ESI Checklist is to guide the exchange of ESI-related information in light of the parties' claims and defenses and in proportion to the needs of the case given "[t]he likely benefit of the proposed discovery." See Northern District of California, ESI Checklist. The Court has ordered the parties to begin discovery on six lines of Defendant's business, so the parties' ESI discussions should be commensurate with that order. Applying the significant guidance that the Court provided at the hearing and discussed above, the parties must meet and confer in the first instance about how to begin conducting discovery of ESI in this case with reference to the issues outlined in the ESI Checklist.

The parties also filed a joint discovery letter on December 7, 2017, regarding Defendant's production of documents that it unilaterally redacted on the grounds of relevance. See Dkt. No. 102. As stated on the record, Defendant may not redact documents based on relevance but may redact on the basis of assertions of privilege or work product protection. If Defendant produces redacted documents or withholds documents on the grounds of privilege or any other protective doctrine, Defendant must provide Plaintiffs with a privilege log that meets the requirements of this Court's standing order on discovery. Defendant is ordered to produce unredacted copies of any documents that it previously produced to Plaintiffs in redacted form by no later than December 29, 2017.

The Court also reviewed the parties' stipulation and proposed order concerning the mechanics of the production of ESI, filed on December 11, 2017, which the Court noted generally

1   is appropriate but appears to contain a typographical error.  See Dkt. No. 107.  As discussed at the
2   hearing, the parties are ordered to either file a revised stipulation and proposed order or inform the
3   Court that no revisions are required, which must be filed by no later than December 22, 2017.
4          This order resolves the joint discovery letters that were filed at docket numbers 88 and
5   102.  With respect to the December 6, 2017 joint discovery letter regarding Plaintiffs' objections
6   to Defendant's nonparty subpoena filed at docket number 96, the parties are ordered to meet and
7   confer regarding the issue of whether the Court has the authority to resolve the objections under
8   Rule 45 or whether they must first be raised in the court where compliance with the subpoena is
9   required.  The parties are directed to file an update with the Court by no later than December 28,
10  2017 regarding how they intend to proceed with that dispute.  The Court has scheduled a hearing
11  for January 9, 2018 to resolve the remaining joint discovery letter that was filed on December 6,
12  2017 at docket number 97.

**IT IS SO ORDERED.**

Dated: December 21, 2017



ELIZABETH D. LAPORTE
United States Magistrate Judge