# Exhibit 1

| | |
|---|---|
| Jahan C. Sagafi (Cal. Bar No. 224887) | Brian James Shearer* |
| Rachel Dempsey (Cal. Bar No. 310424) | Craig L. Briskin* |
| OUTTEN & GOLDEN LLP | JUSTICE CATALYST LAW |
| One California Street, 12th Floor | 718 7th Street NW |
| San Francisco, CA 94111 | Washington, D.C. 20001 |
| Telephone: (415) 638-8800 | Telephone: (518) 732-6703 |
| Facsimile: (415) 638-8810 | brianshearer@justicecatalyst.org |
| jsagafi@outtengolden.com | cbriskin@justicecatalyst.org |
| rdempsey@outtengolden.com | |

*admitted *pro hac vice*

*Attorneys for Plaintiff and the Proposed Class*
*(Additional Counsel on Signature Page)*

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| EDUARDO PEÑA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | **Case No. 19-cv-04065-MMC**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE A PARTIAL MOTION FOR RECONSIDERATION UNDER CIVIL LOCAL RULE 7-9 AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: N/A<br>Time: N/A<br>Courtroom: N/A<br>Judge: Hon. Maxine M. Chesney<br><br>Complaint: July 16, 2019<br>First Amended Complaint: September 27, 2019 |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, Plaintiff Eduardo Peña will, and hereby does, move the Honorable Maxine M. Chesney, U.S. District Judge, for an order under Civil Local Rule 7-9 granting Plaintiff leave to move for partial reconsideration of the Court's order granting in part and denying in part Defendant Wells Fargo's Motion to Stay or Bifurcate Discovery, and specifically limited to that portion of the order granting Wells Fargo's request to bifurcate discovery (the "bifurcation order"). ECF No. 54. Mr. Peña also requests that the Court construe this motion and any opposition filed by Wells Fargo as Plaintiff's motion for partial reconsideration, grant reconsideration, vacate the bifurcation order, and then issue an order that Wells Fargo show cause in writing whether the factual contentions it made to obtain the bifurcation order had evidentiary support.

Mr. Peña seeks leave on two grounds: (1) that a material difference in fact exists from that presented to the Court by Wells Fargo to obtain the bifurcation order; and (2) new material facts have emerged since the bifurcation order, both of which undermine the basis for the bifurcation order. The existent and emergent material facts include an email exchange between Plaintiff and a Wells Fargo loan representative regarding Plaintiff's application and the basis for his denial, copies of Plaintiff's manually and properly signed SSA-89 form in both parties' possession, and material from Plaintiff's loan file that Wells Fargo produced on January 9, 2020. Taken together, this evidence directly contradicts the factual contentions made by Kent Gerloff and affirmed in briefing by Wells Fargo, ECF Nos. 40, 40-1, to obtain the bifurcation order. Wells Fargo has always been in possession of all such relevant material, but only began producing it last week.

This motion will be based upon this Notice of Motion and Motion and Memorandum of Points and Authorities thereto, as well as the Declaration of Michael N. Litrownik, together with any exhibits.

| | |
|---|---|
| Dated: January 15, 2020 | Respectfully submitted, |
| | By: */s/ Michael N. Litrownik* |
| |     Michael N. Litrownik |

Ossai Miazad*
Michael N. Litrownik*
OUTTEN & GOLDEN LLP
685 Third Ave., 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
om@outtengolden.com
mlitrownik@outtengolden.com

Jahan C. Sagafi (Cal. Bar No. 224887)
Rachel Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California St., 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
jsagafi@outtengolden.com
rdempsey@outtengolden.com

Brian James Shearer*
Craig L. Briskin*
JUSTICE CATALYST LAW
718 7th Street NW
Washington, D.C. 20001
Telephone: 518-732-6703
brianshearer@justicecatalyst.org
cbriskin@justicecatalyst.org

Benjamin D. Elga*
JUSTICE CATALYST LAW
81 Prospect Street
Brooklyn, NY 11201
Telephone: 518-732-6703
belga@justicecatalyst.org

*admitted *pro hac vice*

*Attorneys for Plaintiff and the Proposed Class*

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ............................................................. 2

III. LEGAL STANDARD ................................................................................................... 4

IV. ARGUMENT ............................................................................................................. 4

    A.    The Existence and Emergence of Material Facts Undermine the Grounds for the Bifurcation Order. ........................................................................................ 5

        1.    Wells Fargo's Factual Contentions Regarding Mr. Peña's Direct Auto Loan Application and Denial. ................................................................. 5

        2.    Mr. Peña's Email Exchanges with Wells Fargo. ........................................ 7

        3.    Mr. Peña's Loan File Affirms the Email Exchanges .................................. 9

    B.    The Court Should Reconsider and Vacate the Bifurcation Order. ...................... 10

    C.    At the Minimum, This Evidence Confirms the Futility of Litigating Mr. Peña's Individual Claim. ........................................................................................ 12

    D.    Wells Fargo Should be Ordered to Show Cause Regarding these Factual Discrepancies. ......................................................................................... 12

V. CONCLUSION .......................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Bd. of Trustees of the Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*,
    No. 05 Civ. 04158, 2008 WL 706251 (N.D. Cal. Mar. 5, 2008) (Patel, J.).............................12

*Garcia v. Resurgent Capital Servs., LP*,
    No. 11 Civ. 1253, 2012 WL 1138672 (N.D. Cal. Apr. 4, 2012) (Chen, J.) ..........................13

*Intri-Plex Techs., Inc. v. Crest Grp., Inc.*,
    499 F.3d 1048, 1052 (9th Cir. 2007) ...................................................................................11

*Jamieson v. Slater*,
    No. 06 Civ. 1524, 2006 WL 3421788, at *5 (D. Ariz. Nov. 27, 2006) ..................................11

*Johnson v. United Cont'l Holdings, Inc.*,
    No. 12 Civ. 2730, 2013 WL 2252030 (N.D. Cal. May 22, 2013) (Chesney, J.) .................5, 11

*Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*,
    331 F.3d 1041 (9th Cir. 2003) ..............................................................................................1

*Simpson v. GMAC Mortg., LLC*,
    No. 18 Civ. 02111, 2018 WL 5846349 (N.D. Cal. Nov. 6, 2018) (Chesney, J.)....................13

**Other Authorities**

Civil Local Rule 7-9............................................................................................................1, 4, 10

Fed. R. Civ. P. 23(c)(1)(A) ......................................................................................................12

Model Rules of Professional Conduct 3.3(a)(1) .......................................................................11

Model Rules of Professional Conduct 8.3 ................................................................................11

SSA-89 Form
    https://www.ssa.gov/forms/ssa-89.pdf (last visited Jan. 15, 2020)..........................................6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Motions for reconsideration serve the important function of preventing "manifest injustice" and ensuring that courts are able to consider new evidence. *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) ("Reconsideration is indicated in the face of the existence of new evidence, an intervening change in the law, or as necessary to prevent manifest injustice."); *see also* Civil L.R. 7-9(b) (affirming these principles for reconsideration of interlocutory orders). Here, Wells Fargo has secured an order from the Court bifurcating discovery such that discovery on Mr. Peña's individual claims be conducted first. ECF No. 54 at 6. Wells Fargo obtained the bifurcation order based on a series of factual contentions, implications, and conclusions made to the Court in its Motion to Stay or Bifurcate Discovery that both existing and emergent evidence demonstrate did not have evidentiary support. ECF Nos. 40, 40-1 (the "Gerloff Decl.").

This evidence establishes that, contrary to Wells Fargo's assertions, Mr. Peña did not fail to submit properly signed documentation that would have let his application advance and was not denied a direct auto loan on that basis. The evidence instead demonstrates that Mr. Peña submitted the properly signed forms he was asked to submit, informed Wells Fargo that he had DACA, and was asked by Wells Fargo for a *U.S. visa*, which he did not and could have, as a DACA recipient. Because he could not submit a copy of a *visa* he held, Wells Fargo denied his application. This evidence is consistent with the claims pleaded in Plaintiff's First Amended Complaint and with his theory of the case, which is that Wells Fargo denied him an auto loan because of his status as a DACA recipient, i.e., that his DACA status meant he was ineligible for the loan.

Wells Fargo has not explained, even at Mr. Peña's request, why it misrepresented the material facts it submitted to the Court to obtain the bifurcation order in the face of the abundant evidence set forth below, and Mr. Peña does not believe any excuse or mistake could suffice to explain the serious factual discrepancies. For the reasons set forth below, the Court should grant

Mr. Peña's request for leave to move for partial reconsideration, construe this motion and any opposition filed by Wells Fargo as Plaintiff's motion for partial reconsideration, grant reconsideration, vacate the bifurcation order, and then issue an order that Wells Fargo show cause in writing whether its factual contentions had evidentiary support.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Peña, a DACA recipient, brings class action claims challenging Wells Fargo's denial of his application for a direct auto loan as alienage discrimination in violation of 42 U.S.C. § 1981 ("Section 1981"), and related claims under ECOA and FCRA arising out of that denial. ECF No. 27 (First Amended Complaint or "FAC"). On October 28, 2019, Wells Fargo moved under Rule 12(b)(6) to dismiss Plaintiff's FAC and under Rule 26(c) to stay discovery pending final disposition of the motion to dismiss, and in the alternative, to bifurcate discovery such that discovery on Plaintiff's individual claims be conducted prior to classwide discovery. ECF Nos. 39, 40.

On October 31, 2019, Mr. Peña located in his Gmail account several email exchanges, including attachments, he had with a Wells Fargo Bilingual-Inbound Sales Specialist named Leticia Benitez Lopez regarding his application, the forms he submitted, and the basis for his credit denial. Declaration of Michael N. Litrownik (the "Litrownik Decl.") ¶ 3. Among these documents was Mr. Peña's manually and properly signed SSA-89 form.[1] *Id.* ¶ 4. Mr. Peña produced these emails and attachments to Wells Fargo as part of the exchange of initial disclosures on December 9, 2019. *Id.* ¶ 5. On November 15, 2019, the parties held their Rule 26(f) conference. *Id.* ¶ 7. Later the same day, Mr. Peña served his First Set of Requests for Production of Documents, which sought documents related only to Mr. Peña's individual loan application and denial, including emails between Mr. Peña and Wells Fargo, the relevant lending policies under which his application was considered and denied, any audio recordings of telephone calls between Mr. Peña and Wells Fargo, and any other documents reviewed and

---

[1] Mr. Peña modified this document before sending it to his counsel by whiting out his Social Security number. *Id.* ¶ 4.

considered by Mr. Gerloff in preparing his declaration.  *Id.* ¶ 8.

On December 23, 2019, this Court granted in part and denied in part Wells Fargo's motion to dismiss, sustaining Plaintiff's Section 1981 claim while dismissing Plaintiff's ECOA and FCRA claims with leave to replead.  ECF No. 54.[2]  This Court also granted Wells Fargo's request to bifurcate discovery such that discovery on Plaintiff's individual claims be conducted before classwide discovery.  *Id.* at 6-7.  The Court's bifurcation order rested solely on the declaration submitted by Wells Fargo lending manager Kent Gerloff in support of bifurcation, which the Court characterized as stating that Wells Fargo's "denial of plaintiff's loan application was for a reason unrelated to plaintiff's status as a DACA recipient, specifically plaintiff's asserted 'failure to provide appropriate documentation,' described as 'a properly signed SSA-89' and a copy of a 'valid work permit, visa, *or* DACA authorization.'"  ECF No. 54 at 6 (emphasis added) (citing ECF No. 40-1 (Gerloff Decl.) ¶¶ 14-17).

On Monday, January 6, 2020, Plaintiff informed Wells Fargo that he intended to seek leave to move for partial reconsideration of the Court's bifurcation order because the grounds on which it was based were contradicted by the email exchanges and properly signed SSA-89 form Plaintiff had located and produced.  Litrownik Decl. ¶ 9.  Mr. Peña also requested Wells Fargo's consent for the motion.  *Id.* ¶ 10.  On January 7, Mr. Peña outlined in detail to Wells Fargo, at Wells Fargo's request, how the email exchanges and properly signed SSA-89 form called into question the factual contentions made by Mr. Gerloff and Wells Fargo that formed the basis for the Court's bifurcation order.  *Id.* ¶ 11.  Mr. Peña also noted that Wells Fargo has always had access to all relevant documents (these email exchanges, Mr. Peña's application file, and the relevant lending policies) and requested that if Wells Fargo believed that any of these documents supported or refuted or otherwise related to this issue, the bank should bring them to Mr. Peña's attention immediately.  *Id.*  Wells Fargo asked for several days to respond, until January 10, to which Mr. Peña agreed.  *Id.* ¶ 12

---

[2]  Pursuant to the Court's order, Plaintiff will file a Second Amended Complaint on January 17, 2020, and will replead both claims.

3

On January 9, Wells Fargo finally produced the contents of Mr. Peña's loan file, but has yet to produce any other documents, including the emails Mr. Peña located in the form in which they are maintained on Wells Fargo's encrypted email system, the relevant lending policies, the audio recordings of the telephone calls between Mr. Peña and Wells Fargo (other than one call in which Wells Fargo simply asked for information about Mr. Peña's application), and any other documents reviewed and considered by Mr. Gerloff in preparing his declaration. *Id.* ¶¶ 6, 13-14. On January 10, Wells Fargo informed Mr. Peña that it "appreciated the time to investigate [his] allegations," but would not agree to vacate the bifurcation order. *Id.* ¶ 15. On January 13, Mr. Peña informed Wells Fargo that he also intended to rely on the materials produced by Wells Fargo on January 9 in support of this motion for leave. *Id.* ¶ 16.

## III. LEGAL STANDARD

Motions for reconsideration are governed by Civil Local Rule 7-9, which provides that, before final judgment, a party must obtain leave of Court to file a motion for reconsideration of any interlocutory order on any ground set forth in Civil Local Rule 7-9(b). Civil L.R. 7-9(a). Civil Local Rule 7-9(b), in turn, requires that "[t]he moving party [] specifically show reasonable diligence in bringing the motion" and also satisfy one of the three grounds outlined in subsection (b). Here, Plaintiff seeks leave on the basis that "a material difference in fact . . . exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought" and "that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order." Civil L.R. 7-9(b)(1). Plaintiff also seeks leave on the basis of "[t]he emergence of new material facts . . . occurring after the time of such order." *Id.* 7-9(b)(2).

## IV. ARGUMENT

As an initial matter, Mr. Peña has shown "reasonable diligence" in bringing this motion. The Court issued its bifurcation order on December 23, 2019, right before the winter holidays. ECF No. 54. Two weeks later, *see supra*, Mr. Peña sought Wells Fargo's consent for this motion and outlined the specific factual contentions that he believed the email exchanges called into

4

PLAINTIFF'S MOTION FOR
LEAVE TO FILE A PARTIAL MOTION
FOR RECONSIDERATION
CASE NO.: 19-CV-04065-MMC

question. Wells Fargo requested several days to respond, which Mr. Peña provided. Wells Fargo responded that it would not consent to the motion on January 10. Mr. Peña now brings this motion only five days later.

### A. The Existence and Emergence of Material Facts Undermine the Grounds for the Bifurcation Order.

This case presents the type of extraordinary circumstances—explicitly and demonstrably false factual contentions made by a defendant to obtain a bifurcation order—that warrant reconsideration and vacation of that order. Because Mr. Peña presents both evidence known to the parties at the time of the bifurcation order and evidence that has emerged since the bifurcation order, the Court may rely on either Civil Local Rule 7-9(b)(1) or (b)(2), or both, to grant Plaintiff's request for leave. *See, e.g.*, *Johnson v. United Cont'l Holdings, Inc.*, No. 12 Civ. 2730, 2013 WL 2252030, at *2 (N.D. Cal. May 22, 2013) (Chesney, J.) (granting the plaintiff's request for reconsideration of a dismissal with prejudice on the basis of existent evidence that contradicted the defendants' factual contentions, even though the plaintiff "makes no showing, nor could he, that the information now offered was not available at the time plaintiffs filed their opposition to defendants' motion to dismiss").

#### 1. Wells Fargo's Factual Contentions Regarding Mr. Peña's Direct Auto Loan Application and Denial.

The Court bifurcated discovery because of Wells Fargo's factual contentions that Plaintiff failed to submit the "appropriate documentation" in support of his application and that Plaintiff was therefore denied an auto loan for that reason and not for reasons related to his status as a DACA recipient. ECF No. 54 at 6. Specifically, Wells Fargo, through the Gerloff Declaration, asserted the following:

- ¶¶ 1-6: Mr. Gerloff, who has been employed by Wells Fargo as a Lending Manager for Wells Fargo Auto since 2006, based his declaration on his "personal knowledge" and his "review of Mr. Peña's application for direct auto financing and related documents, his credit report, and Wells Fargo account notes for his application…."

- ¶¶ 7-11: After Mr. Peña applied for direct auto financing, Wells Fargo requested that he submit a signed SSA-89 form[3] and Social Security card. "Both items were received on November 30, [2018]," but "a review indicated that the SSA-89 form was not physically signed and the Social Security card was for work purposes only."

- ¶ 12: "Social Security cards for work purposes only require a copy of the applicant's valid work permit *or* visa to move forward in the application process" (emphasis added).

- ¶ 13: "Had Mr. Peña provided a valid DACA authorization to Wells Fargo, that would have satisfied the work authorization *or* visa requirement, and Mr. Peña would have been allowed to advance in the application process and be considered for direct auto financing" (emphasis added).

- ¶ 14: "Mr. Peña [Plaintiff] never provided a properly signed SSA-89 [form], or valid work permit, visa, *or* DACA authorization" (emphasis added).

- ¶ 15: "The requested financing from Mr. Peña was reviewed by Wells Fargo's underwriting group, and the underwriter's notes reflect that there was possible approval for the financing."

- ¶ 16: "As a result of Mr. Peña's failure to provide appropriate documentation to permit the application process to move forward, his application sat for a period of time and underwriting could not move forward with this request for direct auto financing."

- ¶ 17: "[Mr. Peña's] application was declined on December 19, 2018 because his United States residency status could not be verified, due to his failure to send in a properly signed SSA-89 [form] or valid work permit, visa *or* DACA authorization for review and verification by Wells Fargo." ECF No. 40-1 at 2 (emphasis added); *see*

---

[3] An SSA-89 form authorizes the Social Security Administration to release verification of an individual's Social Security number. *See* https://www.ssa.gov/forms/ssa-89.pdf (last visited Jan. 15, 2020).

*also* ECF No. 40 (Motion to Stay or Bifurcate Discovery) at 9-10 ("Plaintiff's failure to provide documentation to validate his immigration status was the reason for his application denial….").

2. **Mr. Peña's Email Exchanges with Wells Fargo.**

On October 31, 2019, Mr. Peña located in his Gmail account several email threads that he had on November 29 and 30, 2018 with Ms. Benitez Lopez regarding his auto loan application. Mr. Peña produced these emails to Wells Fargo on December 9, 2019 as part of his initial disclosures. The primary email exchange is attached as **Exhibit A** to the Litrownik Declaration. Plaintiff's manually signed SSA-89 form, an attachment to an email in the primary exchange, is attached as **Exhibit B**. The remaining two email threads, which appear to be duplicative, are attached as **Exhibit C**. Mr. Peña has produced the email exchanges to the extent that they are in his possession, custody, or control. The nature of Wells Fargo's SecureMail configuration, however, is such that Mr. Peña can only view images and does not have access to the underlying message files, including certain attachments. As such, Mr. Peña has produced images from this source to the extent possible. Although Mr. Peña requested production of his email exchanges with Wells Fargo in the form in which Wells Fargo maintains them on November 15, 2019, Wells Fargo has not yet produced them. Litrownik Decl. ¶ 14.

***The emails demonstrate that the factual assertions made by Mr. Gerloff and Wells Fargo to obtain the bifurcation order did not have evidentiary support, as set forth below***.

- Mr. Gerloff and Wells Fargo asserted that Mr. Peña "never provided a properly signed SSA-89 [form]," which was one of the grounds for the denial of his application. ECF No. 40-1 (Gerloff Decl.) ¶¶ 14, 16-17, 20; ECF No. 40 at 10.
  - But the email exchange confirms that Mr. Peña first provided to Wells Fargo an electronically signed SSA-89 form and Social Security card on November 29, 2018 at 8:13 p.m. ("Hi Leticia, As requested, attached is the signed form and copy of my social security card. Thank you! Eddie"). Ex. A at E_PENA000006.
  - The next morning, November 30, Wells Fargo sent Mr. Peña an automated

7

request that he print and manually sign the SSA-89 form. Mr. Peña did so and submitted it on November 30, 2018 at 12:45 p.m. Ex. A at E_PENA000003-5. That properly and manually signed SSA-89 form was in Mr. Peña's possession and he produced it. Ex. B (manually signed SSA-89 form, dated Nov. 30, 2018).

- o Mr. Gerloff *omits* in his declaration the November 30 request from Wells Fargo for Mr. Peña's manually signed SSA-89 form, and *omits* that Mr. Peña provided the manually signed form on November 30, 2018.

- Mr. Gerloff and Wells Fargo asserted that Mr. Peña was asked to submit his "DACA authorization," "work permit, or "work authorization," and contended that, had Mr. Peña done so, "that would have satisfied the work authorization *or* visa requirement, and Mr. Peña would have been allowed to advance in the application process and be considered for direct auto financing." ECF No. 40-1 (Gerloff Decl.) ¶¶ 12-14, 16-17, 20 (emphasis added); ECF No. 40 at 10.

  - o But the email exchange confirms that Wells Fargo had a work authorization AND visa requirement and the use of "*or*" in the above representations was false and misleading.

  - o The emails reveal that after Mr. Peña submitted his properly and manually signed SSA-89 form, *Wells Fargo requested on November 30, 2018 only* that he submit a copy of his "VISA WITH EXPIRATION DATE." Ex. A at E_PENA000001-2.

  - o As a DACA recipient, Mr. Peña had work authorization, but by definition could not and did not have a U.S. visa, which is a permit to lawfully travel to, enter, and remain in the United States. Litrownik Decl. ¶¶ 17-19.

  - o Accordingly, Mr. Peña responded by email to Wells Fargo's request that he submit his visa by noting that he had DACA and asked whether that would disqualify him. Ex. A at E_PENA000001-2. Mr. Peña and Ms. Benitez Lopez then spoke by phone at least once. Litrownik Decl. ¶ 6.

  - o Mr. Peña then responded again by email after the phone call: "Hi Leticia, Per our

call today, since I will be rejected, could I please get a written response explaining my rejection? Thank you, Eddie." Ex. A at E_PENA000001-2.

This email exchange confirms several material and essential facts that were misrepresented or omitted by Wells Fargo and Mr. Gerloff: (1) Wells Fargo's eligibility policy for non-resident aliens like Mr. Peña was definitively *not* a "work authorization *or* visa requirement"; the bank's policy appeared to require either BOTH work authorization and a visa, OR only a visa; (2) accordingly, Mr. Peña was ineligible for direct auto financing because he was a non-resident alien with work authorization but without a visa, *i.e.*, a DACA recipient; (3) Mr. Peña, like other DACA recipients, could *not* have possibly satisfied the eligibility policy because he did not have a visa; and (4) Wells Fargo's policy appears to require that the loan terms of non-resident aliens with visas not exceed the expiration date of the visa. Ex. A at E_PENA000001-2 ("LOAN TERM MUST NOT EXCEED EXPIRATION DATE OF VISA.").

***Most importantly***, this email exchange *confirms*, contrary to Mr. Gerloff and Wells Fargo, that Mr. Peña was not denied credit because (1) he failed to submit a properly and manually signed SSA-89 form, or (2) because he failed to submit evidence he had DACA or work authorization. Instead, the emails confirm that Mr. Peña was denied credit because, as a DACA recipient, he did not and could not satisfy the bank's non-resident alien *visa* requirement.

### 3. Mr. Peña's Loan File Corroborates the Email Exchanges

The contents of Mr. Peña's loan file, which Wells Fargo produced on January 9, 2020, several weeks after the Court's December 23, 2019 bifurcation order, also squarely contradict the factual contentions made by Mr. Gerloff and Wells Fargo and corroborate Mr. Peña's version of events. Most importantly, ***Wells Fargo itself produced the properly and manually signed copy of the SSA-89 form that Mr. Peña submitted on November 30, 2018 that was in the bank's possession, consistent with Mr. Peña's email exchange with Ms. Benitez Lopez.*** *See* Ex. D (WF-PENA-00000030-31). The existence of this properly signed form in both what Mr. Peña located and produced and what Wells Fargo produced after the bifurcation order proves that Wells Fargo had *no* evidentiary support for the factual contention that "Mr. Peña never provided

a properly signed SSA-89 [form]." ECF No. 40-1 (Gerloff Decl.) ¶ 14.

Wells Fargo also produced the notes file for Mr. Peña's application in a spreadsheet form. Ex. E (WF-PENA-00000001). Although the notes file is filled with jargon, it further confirms that Mr. Gerloff and Wells Fargo had no evidentiary support for the factual contention that Mr. Peña could have advanced in the application had he only submitted his "DACA authorization" or "valid work permit." Row 47 of the spreadsheet, dated November 30, 2018, confirms that Mr. Peña informed Wells Fargo that he had DACA and a work permit. *Id.* ▮▮▮ ▮▮▮ Row 41, from the same date, confirms that Wells Fargo then only sought Mr. Peña's *visa* and that its policy was to only make direct auto loans available to non-resident aliens with visas, as long as the loan term did not exceed the expiration date of the visa, consistent with the email exchange between Mr. Peña and Ms. Benitez Lopez. *Id.* ▮▮▮
▮▮▮
▮▮▮
▮▮▮
▮▮▮

### B. The Court Should Reconsider and Vacate the Bifurcation Order.

The evidence Mr. Peña has submitted amply satisfies two grounds for reconsideration under Civil Local Rule 7-9(b). First, it demonstrates a material difference in fact from that which was presented to the Court before entry of the bifurcation order. Civil L.R. 7-9(b)(1). Specifically, it squarely contradicts the factual representations made by Wells Fargo to obtain the bifurcation order and demonstrates that (1) Mr. Peña submitted a properly and manually signed SSA-89 form and was not denied an auto loan on that basis; (2) Wells Fargo requested that Mr. Peña submit his *visa*, not his "DACA authorization" or "work permit," consistent with its policy that only non-resident aliens with visas were eligible for direct auto loans; and (3) Mr. Peña was denied credit because, as a DACA recipient, he did not and could not submit a visa and therefore failed to meet the bank's non-resident alien eligibility policy. This evidence also confirms Mr.

Peña's theory of the case that Wells Fargo makes DACA recipients facially ineligible for direct auto financing.

Although Mr. Peña was in possession of the email exchanges at the time of the bifurcation order because he located them shortly after Wells Fargo filed its motion to stay or bifurcate discovery, Mr. Peña did not use the email exchanges in his opposition to the motion to stay because he reasonably believed that binding Ninth Circuit precedent prohibited a party from using "material beyond the complaint" to bring or oppose any motion under Rule 12(b)(6), *see* ECF No. 54 at 4 (citing *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007)), and that this rule extended to opposing accompanying motions to stay discovery. *See* ECF No. 41 (Plaintiff's Opposition) at 5 ("Wells Fargo's attachment of extraneous material to its Motion to Stay Discovery is unfair and prejudicial because a plaintiff has no recourse under the federal or local rules when a defendant attaches extraneous material bearing directly on its pending motion to dismiss to a motion to stay discovery. The Court should not consider the Gerloff Decl.").[4] This Court has granted reconsideration in similar circumstances based on the difference in material facts presented to the Court. *See Johnson*, 2013 WL 2252030, at *2.

But even if the Court does not rely on the email exchanges, it may rely on the emergent material produced last week by Wells Fargo, specifically Mr. Peña's manually and properly signed and dated SSA-89 form, Ex. D, which confirms the lack of evidentiary support for Wells Fargo's contention that Mr. Peña failed to send in a properly signed SSA-89 form and that was one of the reasons his application was denied. ECF No. 40-1 (Gerloff Decl.) ¶ 17; ECF No. 40 at 10. The Court may also rely on the application notes file produced last week by Wells Fargo,

---

[4] Outten & Golden LLP, one of Plaintiff's counsel, also noted its ethical concerns that the factual contentions made by Wells Fargo in supports of its request for a stay or bifurcation did not appear to be consistent with material produced in the *Perez* litigation, but counsel for Plaintiff here explicitly stated that Plaintiff "is not able to *use* this material here because it is subject to a protective order in the *Perez* case." ECF No. 41 at 6 (emphasis added) (citing Model Rules Prof'l Conduct 3.3(a)(1) and 8.3; *Jamieson v. Slater*, No. 06 Civ. 1524, 2006 WL 3421788, at *5 (D. Ariz. Nov. 27, 2006) (Rule 8.3(a) "authorizes and requires" reporting of ethical concerns)).

which demonstrates that the bank's policy was that non-resident aliens must have a *visa*, not just work authorization. Ex. E (Rows 41, 47, and 75). This material unquestionably constitutes "new material facts . . . occurring after the time of" the bifurcation order under Civil Local Rule 7-9(b)(2). *See, e.g.*, *Bd. of Trustees of the Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*, No. 05 Civ. 04158, 2008 WL 706251, at *1-3 (N.D. Cal. Mar. 5, 2008) (Patel, J.) (granting the plaintiff's motion for leave for reconsideration based on the emergence of new facts that undermined the basis for the court's claim construction order).

### C. At the Minimum, This Evidence Confirms the Futility of Litigating Mr. Peña's Individual Claim.

Even if the Court does not accept that the evidence submitted here by Mr. Peña demonstrates that Wells Fargo did not have evidentiary support for the factual contentions it made to obtain the bifurcation order, the evidence demonstrates, at a minimum, that Wells Fargo will not be able to obtain summary judgment on Mr. Peña's individual claim on the basis of "plaintiff's asserted 'failure to provide appropriate documentation.'" ECF No. 54 at 6. Accordingly, sustaining the bifurcation order and delaying prosecution of this proposed Rule 23 class action to let Wells Fargo move for summary judgment on an individual claim that it cannot possibly win on the asserted basis[5] would needlessly increase the cost of litigation, divert the parties from litigating class certification issues, which Rule 23 mandates should be decided "[a]t an early practicable time," and cause significant prejudice to Mr. Peña and the putative class. Fed. R. Civ. P. 23(c)(1)(A).

### D. Wells Fargo Should be Ordered to Show Cause Regarding these Factual Discrepancies.

Finally, this motion raises serious concerns whether Wells Fargo misled Mr. Peña and the Court to obtain the bifurcation order through factual misrepresentations about Plaintiff's application the basis for his denial. Even after Mr. Peña requested that Wells Fargo provide an

---

[5] Although Plaintiff does not believe that the bifurcation order can stand, if it does, he reserves his right to cross-move for summary judgment on his individual claims.

explanation and produce documents that support, refute, or otherwise bear on the issues he raised as to the grounds for the bifurcation order, Wells Fargo has only produced Mr. Peña's loan file and one audio recording.

On any reading, the evidence Mr. Peña has submitted demands an explanation as to how Wells Fargo could have been so wrong as to the facts around Mr. Peña's application, which forms he submitted or did not submit, whether he could have "advanced" in the process (i.e., what the bank's actual lending eligibility policy is with respect to DACA recipients), and the basis for his credit denial. The Court should therefore issue an order directing Wells Fargo to show cause in writing and explain each factual discrepancy described herein and why sanctions should not be imposed for any factual contentions made by Wells Fargo or Mr. Gerloff that lack evidentiary support. *See Simpson v. GMAC Mortg., LLC*, No. 18 Civ. 02111, 2018 WL 5846349, at *1 (N.D. Cal. Nov. 6, 2018) (Chesney, J.) (ordering party to show cause why it should not be sanctioned for failing to appear at a hearing and ordering it to explain deficiencies in its pleading); *Garcia v. Resurgent Capital Servs., LP*, No. 11 Civ. 1253, 2012 WL 1138672, at *1 (N.D. Cal. Apr. 4, 2012) (Chen, J.) (after reviewing the record, ordering defendant's counsel to show cause why it "should not be sanctioned for making factual contentions without evidentiary support as required by Rule 11(b)").

## V. CONCLUSION

For these reasons, the Court should grant Mr. Peña's request for leave to move for reconsideration of the bifurcation order, construe the request for leave as a motion for reconsideration, grant reconsideration on the record presented here and vacate the order, and order Wells Fargo to show cause as to two matters: a written explanation regarding each factual discrepancy described herein, and why sanctions should not be imposed for any factual contentions made that lack evidentiary support.

| | | |
|---|---|---|
| Dated: | New York, NY<br>January 15, 2020 | Respectfully submitted,<br><br>By: /s/ *Michael N. Litrownik*<br>    Michael N. Litrownik |

                        Ossai Miazad*
                        Michael N. Litrownik*
                        OUTTEN & GOLDEN LLP
                        685 Third Ave., 25th Floor
                        New York, NY 10017
                        Telephone: (212) 245-1000
                        Facsimile: (646) 509-2060
                        om@outtengolden.com
                        mlitrownik@outtengolden.com

                        Jahan C. Sagafi (Cal. Bar No. 224887)
                        Rachel Dempsey (Cal. Bar No. 310424)
                        OUTTEN & GOLDEN LLP
                        One California St., 12th Floor
                        San Francisco, California 94111
                        Telephone: (415) 638-8800
                        Facsimile: (415) 638-8810
                        jsagafi@outtengolden.com
                        rdempsey@outtengolden.com

                        Brian James Shearer*
                        Craig L. Briskin*
                        JUSTICE CATALYST LAW
                        718 7th Street NW
                        Washington, D.C. 20001
                        Telephone: 518-732-6703
                        brianshearer@justicecatalyst.org
                        cbriskin@justicecatalyst.org

                        Benjamin D. Elga*
                        JUSTICE CATALYST LAW
                        81 Prospect Street
                        Brooklyn, NY 11201
                        Telephone: 518-732-6703
                        belga@justicecatalyst.org

                        *admitted *pro hac vice*

                        *Attorneys for Plaintiff and the Proposed Class*