UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| EDUARDO PEÑA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 19-cv-04065-MMC-TSH<br><br>**JOINT DISCOVERY DISPUTE LETTER REGARDING REDACTIONS** |

Pursuant to the Court's Discovery Standing Order, the parties certify that they have met and conferred by both telephone and email in an attempt to resolve this dispute. The parties also informally sought guidance from the Court on January 3, 2020, and then met and conferred again by telephone on January 8. The parties remain at impasse over this dispute.

Respectfully submitted,

Dated: January 23, 2020

*/s/ Michael N. Litrownik*             */s/ K. Issac deVyver*
Michael N. Litrownik                   K. Issac deVyver

Counsel for Plaintiff                     Counsel for Defendant

**Plaintiff's Position:** Plaintiff requests that the Court set a bright-line rule prohibiting the parties from redacting portions of otherwise responsive documents or withholding attachments or any other parts of an email chain for *any reason* except to protect privilege, work product, or personally identifiable information ("PII"). The Court should resolve this issue now, before the bulk of Wells Fargo's document production in this litigation begins, because (1) Wells Fargo has stated that it intends to redact from otherwise responsive documents or email families information concerning other credit lines that it contends is irrelevant to this matter; (2) Wells Fargo's decision to make these redactions flouts the significant time and resources counsel expended in *Perez v. Wells Fargo Bank*, N.A., No. 17 Civ. 454 (N.D. Cal. 2017) (Chesney, J.) (the "*Perez* litigation") twice raising and resolving this issue before former Magistrate Judge Laporte, both times in favor of Plaintiff's position here; (3) the vast weight of authority, including all Ninth Circuit authority, prohibits redactions for any purpose other than to protect privilege, work product, or PII; and (4) establishing a bright-line rule now at the outset of the litigation strongly advances the goals of efficiency and resource conservation, as well as other aims of Fed. R. Civ. P. 1.

As background, Plaintiff, a DACA recipient, brings class action claims challenging Wells Fargo's denial of his application for a direct auto loan as alienage discrimination in violation of 42 U.S.C. § 1981 ("Section 1981"), and related claims under ECOA and FCRA. ECF No. 27 (First Amended Complaint). Plaintiff served written discovery on November 15 and 26, 2019. On December 23, 2019, Judge Chesney granted in part and denied in part Wells Fargo's motion to dismiss, sustaining Plaintiff's Section 1981 claim while dismissing Plaintiff's ECOA and FCRA claims with leave to replead. ECF No. 54.[1] Judge Chesney also granted Wells Fargo's request to bifurcate discovery such that discovery on Plaintiff's individual claims be conducted prior to classwide discovery. *Id.*

Plaintiff raises this dispute now because Judge Laporte resolved this precise question—twice—in the *Perez* litigation. There, Wells Fargo made extensive redactions to otherwise responsive documents in its first document production, which Wells Fargo contended contained irrelevant information. *Perez*, ECF No. 102 (Dec. 7, 2017 Joint Discovery Letter). The *Perez* plaintiffs contended that such redactions scrubbed context and explanatory information from key documents, impaired their ability to use them at depositions, and were contrary to the weight of authority. *Id.* After the parties briefed and appeared for a hearing on this issue, Judge Laporte permitted redactions to protect only privilege or work product. *Perez*, ECF No. 120 at 7.

***Despite this clear ruling, Wells Fargo continued to make relevance redactions to hundreds of additional documents*** to obscure what it claimed was information related to other credit lines that Judge Chesney had dismissed from the *Perez* litigation, forcing the *Perez p*laintiffs to *again* seek relief from Judge Laporte. *Perez*, ECF No. 237 (December 27, 2018 Joint Discovery Letter). Judge Laporte reaffirmed her prior order prohibiting all relevance redactions, remarking that "[t]he delay and distrust caused by Defendant's decision to redact this recent batch of documents are the precise reasons why relevancy redactions are ill advised" and that "[t]he parties' protective order is sufficient to protect the confidentiality of information associated with these other lines of business." *Perez*, ECF No. 240 at 2.[2] Judge Laporte also admonished Wells

---

[1] Pursuant to Judge Chesney's order, ECF No. 54, Plaintiff filed a Second Amended Complaint on January 17, 2020 that repleaded both claims. ECF No. 66.

[2] Judge Laporte ignored Wells Fargo's "compromise" proposal, *see Perez*, ECF No. 237 at 4-5, that Wells Fargo re-review any redactions the *Perez* plaintiffs believed were improperly applied.

Fargo, finding that Rule 37(b) applied because Wells Fargo failed to "comply with the Court's order prohibiting relevancy redactions," but declined to impose sanctions. *Id.*

This Court's January 3, 2020 informal guidance that relevance redactions are improper reflects the well-established rule in the Ninth Circuit that a party may not unilaterally redact documents based on its subjective view of relevancy. *Accord Live Nation Merchandise, Inc. v. Miller*, No. 13 Civ. 3936, 2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014) (Cousins, M.J.) ("unilateral redaction is disfavored"); *Krausz Indus., Ltd v. Romac Indus., Inc.*, No. 10 Civ. 1204, 2011 WL 13100750, at *3 (W.D. Wash. Aug. 10, 2011) (relevance redactions are "improper, especially when a protective order is in place").[3] This clear rule recognizes that, "[e]ven when implemented with restraint and in good faith, the practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured. It also tends to make documents confusing or difficult to use." *In re Medeva Sec. Litig.*, No. 93 Civ. 4376, 1995 WL 943468, at *3 (C.D. Cal. May 30, 1995).

There are no valid objections to complying with this well-established rule. The parties' protective order, ECF No. 59, will sufficiently protect confidential or sensitive business information, including any trade secrets or information about other credit lines.[4] And a ruling now will strongly advance the goals of Rule 1, efficiency, and the conservation of judicial resources, and mitigate any prejudice and delay to Plaintiff, because applying redactions is typically the most time-consuming and therefore burdensome step in a producing party's ESI review workflow. In the *Perez* case, Plaintiff lost many months in discovery time raising this issue, twice, and then awaiting the re-production of unredacted documents.

Wells Fargo's sole objection appears to be that it needs to redact information regarding other credit lines because it alleges that Outten & Golden LLP[5] misused documents the bank produced in the *Perez* litigation to bring or prosecute this case. For several reasons, this allegation is baseless. First, it is unsupported by the evidence. Plaintiff has asserted claims in this matter *based on his own first-hand allegations of being denied credit because he had DACA*. *See* ECF No. 27 (First Amended Complaint) ¶ 51 ("the representative told him he as ineligible for the loan because his DACA status expired within the loan period"). Nowhere does Plaintiff use or rely on any material from *Perez*, and Judge Chesney has sustained Plaintiff's Section 1981 claim based on his own allegations. ECF No. 54. Second, Plaintiff did not use any confidential material in opposing Wells Fargo's motion to stay or for bifurcation or for any other purpose. Plaintiff's counsel only brought to the Court's attention the *existence* of material in *Perez* that called into question that factual contentions made by Wells Fargo in supports of its request for a stay or bifurcation, consistent with their ethical obligations, but counsel explicitly stated that Plaintiff "is not able to *use* this material here because it is subject to a protective order in the *Perez* case." ECF No. 41 at 6 (emphasis added) (citing Model Rules Prof'l Conduct 3.3(a)(1) and 8.3; *Jamieson v. Slater*, No. 06 Civ. 1524, 2006 WL 3421788, at *5 (D. Ariz. Nov. 27, 2006) (Rule

---

[3] *See also Perez*, ECF No. 102 at 2 (citing nationwide authority).
[4] *See Holman v. Experian Info. Solutions, Inc.*, No. 11 Civ. 180, 2012 WL 2501085, at *6 (N.D. Cal. June 27, 2012) (Ryu, M.J.) (ordering the production of unredacted documents where "any confidential financial or proprietary business information is sufficiently protected by the procedures set forth in the protective order entered in this case"); *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 617 (N.D. Cal. 2006) (Lloyd, M.J.) (ordering the production of unredacted agreement claimed to contain confidential financial information and trade secrets subject to protective order).
[5] Co-counsel for Plaintiff here.

8.3(a) "authorizes and requires" reporting of ethical concerns)).[6] Third, if Wells Fargo legitimately believed that Outten & Golden LLP violated the protective order in the *Perez* case, its recourse, *which it has not taken*, is to move to enforce the protective order, not to unreasonably withhold discovery through relevance redactions in a different case and needlessly increase the cost of litigation. *See, e.g., LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, No. 11 Civ. 4494, 2013 WL 5949629, at *4 (N.D. Cal. Nov. 6, 2013) (Orrick, J.) (Rule 37 provides the proper mechanism for enforcing a discovery order, including a protective order). That Wells Fargo has not sought to enforce the protective order in *Perez* strongly suggests that it is manufacturing this objection purely for this dispute.

Finally, Plaintiff cannot offer any proposed compromises because it is Wells Fargo's firm obligation to comply with well-established discovery rules that prohibit a party from arbitrarily deciding what to redact from otherwise responsive documents based on unfounded concerns and baseless allegations. And Plaintiff cannot accept any compromise that simply kicks the dispute down the road because of the inevitable discovery delay and prejudice that would occur.

**Defendant's Position**

As a starting point, Wells Fargo is not intending to, nor does it take the position that it is entitled to, "arbitrarily [decide] what to redact from otherwise responsive documents based on" subjective decisions regarding relevance, as Plaintiff represents. This discovery dispute specifically relates to Wells Fargo's policies and procedures, or attachments to emails, specifically involving Wells Fargo's other lines of business that are not at issue in this litigation. Further, Wells Fargo raised this issue with Plaintiff months ago and proposed to raise it with Judge Chesney at the case management conference (before discovery issues were referred to Your Honor). Wells Fargo never told Plaintiff that it would only produce documents with redactions and expressly agreed to meet and confer with Plaintiff and raise the issue with the Court *prior* to making any redactions (other than for privilege or PII). Wells Fargo has not produced any documents with redactions nor does it know whether any such redactions will be necessary given the Court's bifurcation order on discovery.[7] Dkt. 54.

In the *Perez* litigation, Wells Fargo redacted portions of documents relating specifically to Wells Fargo's mortgage and auto lending lines of business. Wells Fargo's redactions were made pursuant to Judge Chesney's August 15, 2018 order that discovery as to those business lines was not to go forward. *Perez*, Dkt. 228 ("Wells Fargo need not provide discovery as to its mortgage loan and automobile loan practices."). Despite Judge Chesney's Order precluding discovery on Wells Fargo's mortgage loan and automobile loan practices and dismissal of those claims, the *Perez* plaintiffs continued to demand this discovery by seeking to have redactions of otherwise relevant

---

[6] Plaintiff's concern that Wells Fargo relied on false or misleading statements to obtain the bifurcation order has grown substantially since then given the existence and emergence of evidence that explicitly calls Wells Fargo's factual contentions into question. *See* ECF No. 63 (Plaintiff's Motion for Leave to File Partial Motion for Reconsideration of Bifurcation Order).

[7] Discovery as to the merits of Plaintiff's claims against Wells Fargo are limited to whether Plaintiff submitted a complete application and not Wells Fargo's alleged policies and procedures. Dkt. No. 54 (Motion to Bifurcate Order) at 6:18-21 ("Contrary to plaintiff's argument, discovery as to the merits of such limited issue, i.e., whether plaintiff did submit a completed application, does not overlap with the class claim that defendant has a policy denying automobile loans to DACA recipients.").

documents removed. Wells Fargo presumed the *Perez* plaintiffs' demands for discovery on these dismissed claims was nothing more than a deliberate attempt to uncover internal, proprietary information of Wells Fargo with the intent to bring claims against Wells Fargo related to those lines of business. Wells Fargo raised this very concern with the Court in *Perez*.[8]

Wells Fargo's concerns have been confirmed. Wells Fargo produced its documents in *Perez* without redactions, as ordered by the Court on January 8, 2019, and Plaintiff subsequently filed this lawsuit related to Wells Fargo's direct auto line of business using what appears to be information Plaintiff's counsel learned of, and misconstrued from Wells Fargo's unredacted information in *Perez*. Plaintiff's First Amended Complaint makes unfounded allegations that there exists a policy that makes DACA recipients "ineligible" for direct auto financing, with no factual support other than reference to the *Perez* litigation. Dkt. 27, ¶ 5. *See, e.g.*, *On Command Video Corp. v. Lodgenet Enter. Corp.*, 976 F.Supp. 917, 920-22 (N.D. Cal.1997) (federal court plaintiffs commenced lawsuit against same defendant in state court and used protected information, Court found plaintiffs in contempt, stating, "[t]he purpose of the Order is to limit the use of confidential information to this case. By using such information to file a separate lawsuit in another forum, plaintiff violated the plain terms of the Protective Order."); *In re eBay Seller Antitrust Litig.*, No. C07-01882 JF (HRL), 2010 WL 2106004, at *1 (N.D. Cal. May 25, 2010) (plaintiff's counsel would have been in violation of the protective order by reviewing or "mining" confidential documents with an eye toward potential relevance for possible use in other litigation).

Moreover, there can be no dispute that Plaintiff has attempted to prosecute this case using confidential information from *Perez* in violation of the protective order.[9] For example, in opposing Wells Fargo's motion to bifurcate, Plaintiff argued he was "concerned that Mr. Gerloff's declaration contains factual contentions that do not have evidentiary support" as purportedly shown by confidential documents that Wells Fargo produced in discovery in *Perez*, which Plaintiff's counsel offered to submit to the Court for *in camera* review in this case. Dkt. 41 at 6:2-14. Plaintiff made this argument in order to challenge, and raise doubt with the Court about, Wells Fargo's motion and the evidence cited therein. While Plaintiff may not have attached confidential information from *Perez*, he undisputedly relied upon confidential information to oppose the motion and again cited such information in seeking reconsideration of the order bifurcating discovery.[10] Plaintiff's actions violated the *Perez* protective order, and support the limited redactions requested.

---

[8] Judge Laporte noted in her order that she did not credit Wells Fargo's concerns about the *Perez* plaintiffs' use of the information. *Perez,* Dkt. 240 ("The Court need not speculate as to Plaintiffs' interest in the redactions…").

[9] The protective order in *Perez* makes clear that the protected material shall not be used in any other litigation proceedings, and their actions should not be countenanced. *Perez,* Dkt. 83 ("A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case ***only*** for prosecuting, defending, or attempting to settle this litigation.") (emphasis added).

[10] Dkt. 63 (Reconsideration) at n.4 ("contentions made by Wells Fargo in support of its request for a stay or bifurcation did not appear to be consistent with material produced in the *Perez* litigation…"); *See also* Dkt. 43 (Opp. to MTD) at 2:18-22 ("Wells Fargo should have known since January 2017 that it was denying DACA applicants loans for reasons entirely unrelated to their credit … because of the litigation in *Perez*…"); *Id.* at 2:22-24 ("Despite the *Perez* litigation, Wells Fargo has not changed its policies and practice of pulling consumer reports for DACA applicants when they apply for credit, including direct auto loans, for which they are ineligible.").

Numerous cases support a party redacting irrelevant parts of confidential and sensitive documents. *See, e.g., Eclat Pharm., LLC v. W.-Ward Pharm. Corp.*, No. CV 13-6252, 2014 WL 12591094, at *5 (C.D. Cal. Apr. 3, 2014) (permitting redactions of irrelevant information from relevant documents "upon the production of a declaration … indicating that all documents to be produced pursuant to this Order, and all documents that have already been produced, have been thoroughly reviewed … and only wholly non-responsive information has been redacted"); *Bear Creek Cranberry Co. v. Cliffstar Corp.,* No. 10-CV-00770, 2011 WL 2882078, at *3 (W.D.N.Y. July 15, 2011) ("courts have found redaction appropriate where the information redacted was not relevant to the issues in the case"); *Abbott v. Lockheed Martin Corp.,* No. 06-cv-0701, 2009 WL 511866, at *2 (S.D. Ill. Feb. 27, 2009) ("redaction is a proper method of challenging relevance" and permitting redaction of information as to defined benefit plans where defined contribution plans were at issue in the litigation); *Spano v. Boeing Co.,* No. 3:06-cv-00743, 2008 WL 2020532, at *1 (S.D. Ill. May 9, 2008) (allowing redactions where the redacted portions of the documents were not relevant to the issues of the case); *Aumann Auctions, Inc. v. Phillips,* No. 8:07CV431, 2008 WL 3893242, at *5 (D. Neb. Aug. 21, 2008) (denying the plaintiff's motion to compel redacted information because the information had no bearing on the issues in the case); *Gates v. Rohm and Haas Co.,* No. 06-1743, 2007 WL 295416, at *1 (E.D. Pa. Jan. 29, 2007) (allowing a party to redact documents prior to class certification because "the redacted material will not advance the preparation for or resolution of the class certification issues"); *Beauchem v. Rockford Products Corp.,* No. 01C50134, 2002 WL 1870050, at *2 (N.D. Ill. Aug. 13, 2002) (the court conducted an *in camera* review of the redactions and found that redaction was appropriate).[11]  Even further, Plaintiff has come forward with no reasoning as to why non-responsive attachments related to other lines of business should be produced.  *See, e.g., GPP Inc. v. Guardian Prot. Prods.,* Case No. 1:15-cv-00321-SKO, 2016 U.S. Dist. LEXIS 88926, *2-3 (E.D. Cal. July 8, 2016) (relevance of each document in a family should be assessed separately and denying motion to compel).

The court in *Saint-Gobain Ceramics & Plastics, Inc. v. II-VI, Inc*. analyzed the specific circumstances of the case to decide whether such redactions were appropriate and noted that the assertion that redactions based on non-responsiveness are *per se* improper was not supported by case law.  No. 518CV01798CASSHK, 2019 WL 1460619, at *2 (C.D. Cal. Feb. 1, 2019). The court reasoned that the small number of redactions and the fact that the redactions did not obscure the document's context weighed in favor of permitting the redactions. *Id.*

Your Honor advised that while relevance redactions are generally impermissible, the redacting party needs "something more" to convince Your Honor that they should be permitted. As set forth herein, Wells Fargo's concern regarding the continued misuse of confidential information relating to its other lines of business—which there can be no dispute is not relevant—meets this threshold. Given that the protective order in *Perez* did not provide adequate protection to Wells Fargo in that case, there is no reason to believe that a protective order will safeguard Wells Fargo here.

---

[11]  Indeed, some of Plaintiff's own authority undercuts his extreme position that redactions based on relevancy are never appropriate. For example, in *Williston Basin Interstate Pipeline Co.*, the district court did not decide whether the justifications provided by defendant were sufficient but rather ordered an *in camera* review of the documents to determine whether the redactions in fact only involved irrelevant material.  270 F.R.D. at 459.