Jahan C. Sagafi   (Cal. Bar No. 224887)
Rachel Dempsey (Cal. Bar No. 310424)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
jsagafi@outtengolden.com
rdempsey@outtengolden.com

Ossai Miazad (*pro hac vice*)
Michael N. Litrownik (*pro hac vice*)
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
om@outtengolden.com
mlitrownik@outtengolden.com

*Attorneys for Plaintiff and the Proposed Classes*

Jamie D. Wells (SBN 290827)
**McGuireWoods LLP**
Two Embarcadero Center
Suite 1300
San Francisco, CA  94111-3821
Telephone:  415.844.9944
Facsimile:  415.844.9922

K. Issac deVyver (*pro hac vice*)
Karla Johnson (*pro hac vice*)
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
Telephone: 412.667.6000
Facsimile: 412.667.6050

*Attorneys for Wells Fargo Bank, N.A.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| EDUARDO PEÑA, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK, N.A.,<br><br>            Defendant. | Case No. 19 Civ. 04065 (MMC)(TSH)<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:        January 31, 2020<br>Time:        10:30 a.m.<br>Courtroom:  7<br>Judge:       The Hon. Maxine Chesney |

Plaintiff Eduardo Peña ("Plaintiff") and Defendant Wells Fargo Bank, N.A. ("Wells Fargo") jointly submit this Joint Case Management Statement and Proposed Order pursuant to the August 12, 2019 Case Management Scheduling Order, ECF No. 22; the Standing Order for All Judges of the Northern District of California, ECF No. 22-2; the Order Granting Defendant's Administrative Motion to Continue the Case Management Conference, ECF No. 31; the Order Continuing the Case Management Conference, ECF No. 48; Civil Local Rule 16-9; the Northern District of California's ESI Guidelines and Checklist; and Federal Rule of Civil Procedure 26(f).

Counsel for the parties have worked together cooperatively to try to find common ground where possible and, where not possible, have set forth their respective positions. The parties conducted their Rule 26(f) conference by telephone on November 15, 2019. The Initial Case Management Conference ("CMC") is scheduled for January 31, 2020.

## I.    Jurisdiction and Service

Plaintiff filed his initial Complaint on July 16, 2019, ECF No. 1, his First Amended Complaint ("FAC"), on September 27, 2019, ECF No. 27, and his Second Amended Complaint ("2AC") on January 17, 2020. ECF No. 66. Plaintiff's 2AC asserts three Rule 23 class claims against Wells Fargo: (1) unlawful alienage discrimination in violation of the Civil Rights Act of 1866, as codified by 42 U.S.C. § 1981 ("Section 1981"); (2) failure to provide him accurate and truthful written notice of the reasons for his credit denial in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* ("ECOA"); and (3) obtaining his consumer report without a permissible purpose for doing so in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). *Id.*

On October 28, 2019, Wells Fargo filed a Motion to Dismiss Plaintiff's FAC. ECF No. 39. Wells Fargo also filed a Motion to Stay, or in the alternative, Bifurcate Discovery on the same date. ECF No. 40. Plaintiff opposed both motions and Wells Fargo replied. ECF Nos. 41, 42, 43, 46. On December 23, 2019, the Court granted in part and denied in part Wells Fargo's Motion to Dismiss, sustaining Plaintiff's Section 1981 claim while dismissing Plaintiff's ECOA and FCRA claims with leave to replead. ECF No. 54. Pursuant to that order, as noted above, Plaintiff filed his

2AC on January 17, 2020. ECF No. 66. The Court also denied Wells Fargo's motion to stay all discovery but granted Wells Fargo's request to bifurcate discovery such that discovery on Plaintiff's individual claims be conducted before classwide discovery. ECF No. 54 at 6-7.

The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 because the claims arise under 42 U.S.C. § 1981, ECOA, and FCRA. Venue is proper in this Court under 28 U.S.C. § 1391(b). Wells Fargo has been served. No issues have been raised regarding personal jurisdiction.

## II.   Facts

### A.   Plaintiff's Statement of Facts:

As set forth in Plaintiff's Second Amended Complaint and the attached exhibits, ECF No. 66, Plaintiff Eduardo Peña, a non-citizen with Deferred Action for Childhood Arrivals ("DACA"), federal work authorization, and a valid Social Security number ("SSN"), brings this lawsuit against Wells Fargo for unlawfully excluding him and other DACA recipients with valid SSNs the opportunity to be considered for direct auto loans. Because DACA recipients like Plaintiff have valid SSNs and federal work authorization, no law, rule, or regulation prevents Wells Fargo from considering their applications for direct auto loans, evaluating their creditworthiness, and deciding whether to extend them credit *based on their individualized credit risk*. But Wells Fargo does not consider DACA recipients' applications or creditworthiness on an individualized basis; instead, its auto lending policy makes DACA recipients facially ineligible for credit and the bank denies them credit on this basis. DACA recipients are ineligible for credit because Wells Fargo's eligibility policy requires that non-resident aliens—of which DACA recipients form a substantial percentage—have a U.S. visa in order to advance in the application process. *See* ECF No. 66-2 (email exchange regarding Plaintiff's application confirming that Wells Fargo required that he submit a U.S. visa to advance in the application process). United States visas are permits for foreign citizens to lawfully travel to, enter, and remain in the United States that DACA recipients by definition do not have.

This conduct violates Section 1981 because it is discrimination against a subset of non-

citizens by denying them the opportunity to contract for credit. Plaintiff brings this Section 1981 claim on behalf of himself and a nationwide class of DACA recipients similarly denied the opportunity to be considered for a direct auto loan. Wells Fargo's conduct is unlawful and unfair because DACA recipients, by definition, have lived in the U.S. since they were young children. They have gone to school, college, and graduate school in the U.S. They are employed; they have started families and businesses. They have deep ties to their communities and contribute to them in innumerable ways.

Wells Fargo also unlawfully obtains the consumer reports of Plaintiff and other DACA applicants even though it has no intention of using the reports to determine their eligibility for credit. Wells Fargo does not disclose on its website or when applicants complete the application that non-resident aliens are only eligible for credit if they have U.S. visas, and does not inquire of applicants who select non-resident alien status whether they have visas. By permitting non-resident alien applicants such as DACA recipients to complete and submit applications for credit even though they are facially ineligible, Wells Fargo contravenes the permissible purpose requirement of FCRA. This conduct is a willful violation of FCRA and an invasion of privacy because Wells Fargo had no permissible purpose for conducting the credit pull and obtaining Plaintiff's consumer report. Plaintiff brings this FCRA claim on behalf of himself and a nationwide class of DACA recipients whose consumer reports were similarly obtained by Wells Fargo and not used for eligibility purposes.

Finally, after Plaintiff was told by phone that he would be denied because he had DACA, he requested that Wells Fargo provide him a written explanation for his credit denial. Wells Fargo sent Plaintiff an adverse action notice, which is attached as Exhibit C to the Second Amended Complaint. ECF No. 66-3. This notice misrepresented the reason he was denied credit, which was that he had DACA, i.e., was a non-resident alien who could not provide a U.S. visa. This conduct violates ECOA because Wells Fargo inaccurately and falsely stated the reasons Plaintiff was denied credit. Plaintiff brings this ECOA claim on behalf of himself and a nationwide class of DACA recipients to whom Wells Fargo falsely and inaccurately stated the reasons they were

denied credit in the adverse action notices they received.

**B.** **Wells Fargo's Statement of Facts:**

Despite the Court's Order granting in part Wells Fargo's Motion to Dismiss, Plaintiff continues to allege the exact same three claims in his Second Amended Complaint, two of which were already dismissed and one has been bifurcated: (1) Wells Fargo violated Section 1981 because it denied him direct auto financing based on a policy of categorically denying direct auto financing to DACA recipients, (2) Wells Fargo violated ECOA when it sent him an adverse action letter indicating that he was denied direct auto financing for reasons that were not an "accurate" explanation for the denial, and (3) Wells Fargo violated FCRA by obtaining his credit report without a permissible purpose because it never intended to offer him direct auto financing because of his DACA status. The lynchpin of Plaintiff's claims is that Wells Fargo denied him financing based on a purported policy of "categorically" refusing to offer direct auto financing to DACA recipients.

Contrary to Plaintiff's assertions, and as set forth in a Declaration attached to Wells Fargo's Motion to Stay or Bifurcate Discovery, Wells Fargo's investigation indicates that Plaintiff was not denied direct auto financing because of his DACA status, but rather because he failed to provide appropriate work authorization paperwork, as stated in the adverse action letter. If Plaintiff had provided the requested documentation, regardless of his DACA status, he would have been permitted to continue with his application. As to the allegations in the First Amended Complaint and as re-asserted in this Second Amended Complaint, because his entire case is based on an incorrect factual premise, Plaintiff has again failed to state a claim.

Plaintiff's Section 1981 claim is built on the assumption that Wells Fargo supposedly has a policy that categorically denies direct auto financing to DACA recipients, but the Second Amended Complaint is devoid of any factual detail or support for such a claim because no such purported policy was ever applied to him.

Plaintiff's ECOA claim likewise fails to state a claim. Plaintiff alleges that Wells Fargo sent him an adverse action letter when it denied him financing that was false because it did not

state that the true reason he was denied credit was based on Wells Fargo's exclusionary policy against DACA recipients. But Plaintiff has not alleged facts to show how this was purportedly inaccurate. Without these facts, Plaintiff has failed to state a claim. In any event, the weight of the authority is that an ECOA claim for an allegedly "false" adverse action letter does not exist in the context of a notice claim and fails as a matter of law.

Finally, Plaintiff's FCRA claim is equally deficient. Plaintiff alleges that Wells Fargo violated the FCRA by pulling his credit report in connection with his loan application. Although the FCRA expressly authorizes Wells Fargo to pull credit reports in connection with consumer transactions—like Plaintiff's loan application here—Plaintiff nevertheless contends the alleged credit pull was for an improper purpose because Wells Fargo did not use Plaintiff's credit report to determine his eligibility for direct auto financing. Plaintiff however, does not plead any facts in support of this claim. Nor does he plead any facts demonstrating that Wells Fargo's purported misconduct was willful or negligent—as he must to state an FCRA claim.

## III.   Legal Issues

### A.   Plaintiff's Statement:

The disputed points of law are whether Wells Fargo's alleged conduct violates (1) Section 1981, (2) ECOA, and (3) FCRA; and (4) whether a class should be certified as to each claim under Federal Rule of Civil Procedure 23.

### B.   Wells Fargo's Statement:

Anticipated disputed points of law include whether: (1) Plaintiff has alleged sufficient facts to state a claim for violation of Section 1981, the ECOA, and the FCRA, (2) an ECOA claim for an allegedly "false" adverse action letter in the context of a notice claim can be brought as a matter of law, (3) Section 1981 applies to claims based on alleged immigration status discrimination, and (4) Plaintiff can satisfy the requirements of Federal Rule of Civil Procedure 23.

## IV.   Motions

The parties have proposed deadlines for filing each motion discussed below in section 17 (Scheduling) but disagree as to sequencing.

## A. **Plaintiff's Statement**:

On July 15, 2020, Plaintiff filed a Motion for Leave to File a Motion for Partial Reconsideration Under Civil Local Rule 7-9, requesting that the Court grant Plaintiff leave to move for partial reconsideration of the Court's December 23, 2019 order, specifically the order bifurcating discovery, because the Court's bifurcation order rested on factual contentions made by Wells Fargo about Plaintiff's loan application and denial that have been called into serious question by both existent and emergent evidence. ECF No. 63.

Plaintiff also anticipates filing a Motion for Rule 23 Class Certification and a Motion for Summary Judgment. Plaintiff requests that the parties brief Rule 23 class certification before briefing summary judgment but recognizes that the Court may decide in its discretion which motion to decide first. Plaintiff submits that resolving class certification first is the preferred approach in the Ninth Circuit and advances the goals of fairness, efficiency, and judicial economy. Because "Rule 23 clearly favors early determination of the class issue," *Wright v. Schock*, 742 F.2d 541, 545-46 (9th Cir. 1984), "district courts generally do not grant summary judgment on the merits of a class action until the class has been properly certified and notified." *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995); *see also, e.g.*, *Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 605 (S.D. Cal. 2010) (deciding that "[defendant's] summary judgment motion was premature," and "put[ting] off consideration of it, sensibly, until the class certification question is resolved"). A pre-certification summary judgment decision would bind only the named party. *See Schwarzschild*, 69 F.3d at 297 ("[W]hen defendants obtain summary judgment before the class has been properly certified or before notice has been sent, they effectively waive their right to have notice circulated to the class under Rule 23(c)(2); in such cases, the district court's decision binds only the named plaintiffs."). Accordingly, resolving summary judgment first would not be a good use of judicial resources. The efficient approach is to wait until class certification is resolved so that any decision on summary judgment will bind all class members.

If Wells Fargo does pursue summary judgment pre-certification, Plaintiff intends to cross-move for summary judgment at that time. If the Court does not reconsider and vacate its bifurcation

order, Plaintiff intends to move for summary judgment on his claims at the close of his individual discovery period. Wells Fargo's decision to seek bifurcation and stated intention of moving for summary judgment at the close of the individual discovery period on Plaintiff's individual claims confirms its desire for an early "liability judgment, without particular regard as to the vehicle for that ruling," making Plaintiff's potential cross-motion on individual liability particularly warranted and not barred by the rule against one-way intervention. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13 Civ. 5693, 2015 WL 4776932, at *2-5 (C.D. Cal. May 27, 2015) (holding that defendant consented to the plaintiff bringing a motion for summary judgment prior to certifying a class and that the one-way intervention rule did not later preclude the certification of a class). Courts have also held that the rule against one-way intervention does not apply where plaintiffs seek injunctive relief classes under Rule 23(b)(2), like Plaintiff brings his Section 1981 and ECOA claims here, because notice is not required, and class members may not opt out. *See, e.g.*, *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 433 (6th Cir. 2012); *Paxton v. Union Nat. Bank*, 688 F.2d 552, 558–59 (8th Cir. 1982); *Williams v. Lane*, 129 F.R.D. 636, 642 (N.D. Ill. 1990).

### B. <u>Wells Fargo's Statement</u>

As set forth in Wells Fargo's Motion to Stay, or in the alternative, Bifurcate Discovery under Federal Rule of Civil Procedure 42(b), there are serious issues to be addressed preliminarily as to the named Plaintiff's ability to state any of his claims, including the lack of factual basis for his pleading. Following this Court's granting of the Motion to Bifurcate Discovery, (ECF No. 54), Wells Fargo seeks to conduct a short period of individual discovery solely as to the basis for Plaintiff's alleged denial of credit, including a deposition of the Plaintiff and one deposition of a Wells Fargo representative, along with the exchange of Plaintiff's file relevant to the application at issue. Following this period of discovery, Wells Fargo would request an opportunity to then propose a case schedule to the Court, with the anticipation that Wells Fargo will be filing an immediate motion for summary judgment as to Plaintiff's individual claims. This bifurcation of discovery would not impact the one-way intervention rule. *See Hamm v. Mercedes-Benz, USA, LLC,* No. 5:16-CV-03370-EJD, 2019 WL 4751911, at *9 (N.D. Cal. Sept. 30, 2019) (finding

plaintiff's summary judgment motion in violation of the one-way intervention rule and denying it, regardless of defendant's decision to move for summary judgment, which was granted in part).

Plaintiff's claim as to new evidence is entirely contrived. The evidence was clearly in Plaintiff's possession prior to the ruling on the Motion to Bifurcate discovery, and the factual inferences that Plaintiff seeks to make from that evidence are incorrect and ignore the contrary information provided in the Declaration attached to the Motion to Bifurcate by a Lending Manager with knowledge of direct auto financing. In fact, the "new" account notes produced by Wells Fargo are directly consistent with the Declaration that Wells Fargo provided and show that Plaintiff was denied for failure to provide requested documentation to allow his application to move forward. However, rather than investigate these issues in discovery as to Plaintiff's individual claim or notice the deposition of someone at Wells Fargo, Plaintiff moved for reconsideration seeking to move directly to class discovery and making unfounded accusations against Wells Fargo.

Should the case go forward following the period of discovery as to the basis for Plaintiff's individual claims, Wells Fargo intends to file a motion for summary judgment prior to or contemporaneously with class certification. Plaintiff has articulated no legitimate basis for the Court to enter an order deviating from Federal Civil Rule 56(b) and prohibiting Wells Fargo from moving for summary judgment. Fed. R. Civ. Pr. 56(b) ("Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.) Wells Fargo specifically does not waive the one-way intervention rule, as its own motion for summary judgment does not in any way permit Plaintiff to violate the one-way intervention rule. *See Hamm v. Mercedes-Benz, USA, LLC,* No. 5:16-CV-03370-EJD, 2019 WL 4751911, at *9 (N.D. Cal. Sept. 30, 2019) (finding plaintiff's summary judgment motion in violation of the one-way intervention rule and denying it, regardless of defendant's decision to move for summary judgment, which was granted in part).

## V. Amendment of Pleadings

### A. Plaintiff's Statement:

Plaintiff anticipates that he may seek to further amend his complaint after he has had the opportunity to take discovery in the case. Plaintiff proposes that the deadline for amending the pleadings and/or joining additional parties be 90 days after the Initial CMC, or April 30, 2020, to afford Plaintiff adequate time, after discovery has begun, to determine whether to amend the pleadings and/or join additional parties.

### B. Wells Fargo's Statement:

Wells Fargo objects to a Plaintiff's proposal that the deadline for amending pleadings and/or joining additional parties, as Plaintiff is already on his Second Amended Complaint. Wells Fargo proposes that the deadline to amend be 60 days after the Initial CMC, or March 31, 2020.

## VI. Evidence Preservation

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and the ESI Checklist. The parties discussed evidence preservation obligations at their meet and confer session. The parties understand their duty to preserve records, including paper and electronic copies, and have taken reasonable, proportional steps to preserve documents relevant to this action in their possession.

## VII. Disclosures

### A. Plaintiff's Statement:

The parties exchanged initial disclosures on December 6 and 9, 2019 and Plaintiff also produced on December 9, 2019 the relevant emails with Wells Fargo regarding his application that were in his possession.

### B. Wells Fargo's Statement:

Wells Fargo provided its Initial Disclosures on December 6, 2019, in compliance with the Court's Order requiring disclosure prior to the then-scheduled Case Management Conference.

## VIII. Discovery

The parties recognize and jointly share a goal of being efficient and targeted in their

approach to discovery and will meet and confer to attempt to limit the burdens on each other, where appropriate. The parties do not anticipate limitations or modifications of the discovery rules at this time. Either party may respectfully request a departure from the Rules with respect to the number of depositions taken. The parties have submitted a stipulated protective order, which the Court entered on January 3, 2020, ECF No. 59, and continue to meet and confer regarding a stipulated protocol to govern the search and production of electronically stored information ("ESI").

The parties have commenced discovery. Both parties have served written discovery and have begun producing documents. The parties intend to pursue discovery by taking depositions and by serving document requests, interrogatories, and requests for admission, subject to the limits below. The parties are currently proceeding under the Court's order bifurcating discovery, which Plaintiff has sought leave to move to reconsider.

The parties have conferred and agreed to the following Discovery Plan.

**<u>Joint Proposal for Discovery Limits</u>**:

(a.) <u>Protective Order</u>: The parties have agreed that a stipulated Protective Order is necessary to protect material properly sealable for purposes of discovery, including Wells Fargo's confidential trade secrets and confidential and sensitive personal information. The Court has entered a stipulated Protective Order, ECF No. 59. Plaintiff reserves all rights to challenge the actual sealability of any material designated as confidential by Wells Fargo under the protective order that is used or attached to any public filing.

(b.) <u>Privilege Logs</u>: The parties agree to exchange privilege logs as appropriate and have agreed that privileged communications with counsel after the date the Complaint was filed do not need to be logged but are continuing to meet and confer on the exact scope of this agreement.

(c.) <u>Expert Reports</u>: The parties set out their responsive proposed expert discovery schedules in Section XVII below.

(d.) <u>Method of Service</u>: The parties agree that service by electronic mail will be treated as service by regular U.S. mail delivery.

<u>Electronic Discovery</u>: Pursuant to the ESI Guidelines, the parties agree to cooperate to develop protocols to lessen the burden of producing electronic discovery.

The Court has referred all discovery disputes to Magistrate Judge Hixson pursuant to Civil Local Rule 72-1, ECF Nos. 52, 53.

The parties set out their responsive positions on necessary discovery below:

## A.   **Plaintiff's Statement:**

Discovery will be needed on the following subjects within the relevant period (from July 16, 2017 through the present): (1) the individual and class claims of the named Plaintiff; (2) any defenses asserted by Wells Fargo in response to the individual and class allegations set forth in the Complaint; and (3) whether Plaintiff can meet the requirements of Fed. R. Civ. P. 23(a) and (b)(2) for his Section 1981 and ECOA claims, and 23(a) and (b)(3) for his FCRA claim.

Because Plaintiff's counsel has litigated similar consumer credit discrimination claims on behalf of DACA recipients against Wells Fargo in *Perez v. Wells Fargo Bank, N.A.*, No. 17 Civ. 00454-MMC, *see* ECF No. 289 (Plaintiffs' Class Certification Motion) at 3-10, Plaintiff sets out the following targeted individual and classwide discovery he intends to seek, without prejudice to seeking additional discoverable material as the case develops:

- **Discovery unique to Plaintiff**, including his paper and electronic application file, all application files notes, and all emails and audio recordings between Plaintiff and Wells Fargo;

- **Policies in the relevant period**, including the direct auto loan lending, eligibility, and underwriting policies, and policies and practices regarding adverse action notices sent and when and how Wells Fargo conducts hard credit pulls of consumer reports.

- **Whether Wells Fargo acted recklessly** in obtaining consumer reports for applicants it knew were ineligible for loans, including any contemporaneous legal interpretation explaining how or why the alleged conduct complies with FCRA.

- **Direct auto loan applicant data in the relevant period**:

  - To map as closely possible to Plaintiff's proposed classes, including the production of a class list that contains applicants who (1) have U.S. addresses; (2) selected non-resident alien in their applications; (3) have valid SSNs; (4) have DACA (if that field is available); and (5) were denied credit under denial codes that reflect the same reasons for denial as Plaintiff (even if those codes reflect an inaccurate reason, like Plaintiff's);

  - Regarding the form and content of adverse action notices sent to Plaintiff and the proposed classes;

  - Regarding whether a consumer report was obtained for proposed class members and whether it was used to determine eligibility for the direct auto loan.

  - The application data and application files for any DACA applicants who were granted an exception and offered a direct auto loan.

- **Email discovery** from the Wells Fargo direct auto loan custodians who are the most likely to have relevant information on (a) the relevant auto loan lending, eligibility, and underwriting policies; (b) any of Wells Fargo's defenses, including purported credit risk, regulatory risk, compliance risk, operational risk, or any other risk posed by extending direct auto loans to non-resident aliens or DACA recipients; (c) any efforts, analyses, or proposals, both formal and informal, to modify the bank's policies to make DACA recipients eligible for direct auto loans, as well as any underlying material and data considered in these efforts; and (d) exceptions made to DACA applicants.

Finally, on January 23, the parties have raised the issue of whether Wells Fargo may redact otherwise responsive documents to hide information about other business lines to Judge Hixson pursuant to his discovery procedures and this Court's discovery referral. ECF No. 70. Wells Fargo, however, seeks to litigate the issue here, which is an inappropriate venue. If Wells Fargo disagrees with Judge Hixson's decision on relevance redactions, it may object to his order under Rule 72.

Wells Fargo's assertion that Plaintiff "may have" violated a protective order in the *Perez*

case is baseless and frivolous. Plaintiff did not use any of the documents from the *Perez* case to bring or prosecute this case or in his opposition to Wells Fargo's Motion to Stay Discovery. Instead, in that opposition, his counsel appropriately expressed concerns under relevant ethical rules that Wells Fargo's factual contentions may lack evidentiary support and offered to submit the relevant material to the Court. Plaintiff's concern has been amply validated by both the existence and emergence of discovery material in this case. *See* ECF No. 63 (Plaintiff's Motion for Leave to File Partial Motion for Reconsideration) (discussing how this evidence confirms that Wells Fargo's factual contentions made to obtain the bifurcation order lack evidentiary support).

Moreover, documents produced in *Perez* do not in any way form the basis for Plaintiff's claims here. Indeed, Plaintiff's clearly stated allegation is that he was denied a direct auto loan because he had DACA due to Wells Fargo's lending policy of refusing to make DACA recipients eligible for direct auto loans. Although Plaintiff is not yet in possession of the lending policy, two sources of evidence confirm the policy: (1) *his own allegations* that he was denied because he had DACA, which Plaintiff amply pleads in his Second Amended Complaint; and (2) the email exchange he had with the Wells Fargo lending representative, which demonstrates that Wells Fargo's policy makes non-resident aliens (such as DACA recipients) ineligible for direct auto loans *unless* they can provide a U.S. visa, which by definition DACA recipients will not have.

The parties have also either raised or will shortly raise to Judge Hixson a dispute over Wells Fargo's production of documents that bear on Plaintiff's individual claim, including the relevant lending policies and all documents reviewed and considered by Kent Gerloff in preparing his declaration, ECF No. 40-1.

### B.      **Wells Fargo's Statement:**

Wells Fargo is actively seeking discovery as to the factual basis for Plaintiff's claims in the First and now Second Amended Complaint.  Should the case move forward, Wells Fargo will seek discovery as to Plaintiff's ability to satisfy the requirements of Federal Rule of Civil Procedure 23, as well as details as to Plaintiff's credit history to determine if he was otherwise qualified for the direct auto financing sought.  Wells Fargo intends to serve Requests for

Production of Documents, Requests for Admission, Interrogatories, and to seek depositions. Plaintiff's claims of "new" evidence that contradicts Wells Fargo's Declaration is a self-serving and desperate attempt to create doubt as to the lack of factual basis for Plaintiff's claims, which will come to light at the conclusion of individual discovery.

In addition, it appears that Plaintiff violated the protective order in the *Perez* case[1] by using Confidential documents in that case repeatedly as the basis for the factual allegations in this matter. For example, in opposing Wells Fargo's motion to bifurcate, Plaintiff argued he was "concerned that Mr. Gerloff's declaration contains factual contentions that do not have evidentiary support" as purportedly shown by confidential documents that Wells Fargo produced in discovery in *Perez*, which Plaintiff's counsel offered to submit to the Court for *in camera* review in this case. Dkt. 41 at 6:2-14. *See also* Dkt. 43 (Opp. to MTD) at 2:18-22 ("Wells Fargo should have known since January 2017 that it was denying DACA applicants loans for reasons entirely unrelated to their credit … because of the litigation in *Perez*…"); *Id.* at 2:22-24 ("Despite the *Perez* litigation, Wells Fargo has not changed its policies and practice of pulling consumer reports for DACA applicants when they apply for credit, including direct auto loans, for which they are ineligible."); Dkt. 63 (Reconsideration) at n.4 ("contentions made by Wells Fargo in support of its request for a stay or bifurcation did not appear to be consistent with material produced in the *Perez* litigation…"). While Plaintiff may not have actually submitted Confidential documents from *Perez* to the Court, he undisputedly relied upon Confidential information to prosecute his case and oppose Wells Fargo's filings.

As a result, Wells Fargo specifically requested that it be permitted to redact information as to lines of business that are not at issue in this matter in discovery. In *Perez*, Wells Fargo initially redacted irrelevant lines of business due to concerns of Plaintiffs' counsel misconstruing that

---

[1] Your Honor's protective order in *Perez* makes clear that the protected material shall not be used in any other litigation proceedings, and their actions should not be countenanced. *Perez,* Dkt. 83 ("A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case ***only*** for prosecuting, defending, or attempting to settle this litigation.") (emphasis added).

information and/or seeking to use that information to file another lawsuit. After litigating the issue before the Magistrate Judge, Wells Fargo voiced these concerns and was ordered to produce materials as to other lines of business unredacted. This lawsuit followed and Plaintiff has specifically referenced Confidential material from *Perez* as a basis for his claims here. Wells Fargo initially sought to have this issue heard before Your Honor at the Initial Case Management Conference, but Plaintiff instead filed a Motion for Protective Order, and now is pursuing a Joint Discovery Letter, in order to have the dispute adjudicated by Magistrate Judge Hixson instead.

## IX. Class Actions

### A. Plaintiff's Statement:

Pursuant to Civil L.R. 16.9(b):

(1) Plaintiff contends that this class action is maintainable under Federal Rule of Civil Procedure 23(a) and (b)(2) on behalf of Plaintiff's proposed Section 1981 class, ECOA class, and FCRA class, and also maintainable under (b)(3) on behalf of Plaintiff's proposed FCRA class. Plaintiff seeks injunctive and declaratory relief on behalf of the Section 1981 and ECOA classes, and injunctive and declaratory relief and statutory penalties on behalf of the FCRA class.

(2) Plaintiff brings his class allegations on behalf of three nationwide classes, each consisting of all non-United States citizens who resided in the United States and held DACA status at the time they applied for a Wells Fargo direct auto loan ("DACA Residents") from July 16, 2017 through the date of final judgment in this action ("Covered Period").

  a. Plaintiff brings class allegations under Fed. R. Civ. P. 23(a) and (b)(2) on behalf of DACA Residents in the Covered Period who were declined an auto loan by Wells Fargo (the "Section 1981 Class").

  b. Plaintiff brings class allegations under Fed. R. Civ. P. 23(a) and (b)(2) on behalf of DACA Residents in the Covered Period who were declined an auto loan by Wells Fargo and did not receive a written notice of adverse action with an accurate statement of the reasons for the denial (the "ECOA Class").

  c. Plaintiff brings class allegations under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3)

on behalf of DACA residents in the Covered Period who were declined an auto loan by Wells Fargo and for whom Wells Fargo conducted a hard credit inquiry (the "FCRA Class").

(3)     Members of each class are so numerous that joinder of all members is impractical, if not impossible. Wells Fargo is a leading provider in the United States of direct auto loans. The federal government has granted or renewed DACA applications for over a million persons within the United States and there are currently 650,000 DACA recipients residing in the U.S.. Accordingly, Plaintiff believes that the total number of class members is likely to be thousands of individuals. Membership in each class will be determined by analysis of Wells Fargo's application data and records. If Wells Fargo's databases do not identify which applicants have DACA, Plaintiff will use Wells Fargo's data and fields to approximate the characteristics of DACA applicants. Plaintiff may also seek to survey that population during the discovery period in order to discover who has DACA. Plaintiff may also propose that class notice include a self-identification process that will require class members to demonstrate their eligibility (by demonstrating they have DACA) to be class members. In any event, there are no obstacles to certifying this case as a class action due to Wells Fargo's failure to record whether applicants have DACA.

Plaintiff's claims are typical of those of each class because Plaintiff, like each member of the Class, is a non-citizen with DACA and a valid SSN within the jurisdiction of the United States who (a) was denied the right to contract for direct auto loan by Wells Fargo pursuant to the bank's policy making DACA recipients ineligible for direct auto loans; (b) was sent an adverse action notice that inaccurately stated the reason for the denial; and (c) was subject to a hard credit pull by Wells Fargo even though the bank did not use the consumer reports it obtained to determine eligibility for credit. Plaintiff is an adequate representative of each class because Plaintiff's claims are typical of those of each class, and Plaintiff has the same interests in the litigation of this case as the other class members. Plaintiff is committed to vigorous prosecution of this case, and has retained competent counsel, experienced in litigating complex discrimination and consumer class actions of this nature, including *Perez v. Wells Fargo Bank, N.A.*, No. 17 Civ. 00454-MMC.

A class may be certified and maintained under Federal Rule of Civil Procedure 23(b)(2) because Wells Fargo has acted on grounds generally applicable to each class by discriminating against class members because they non-citizens with DACA, failing to send them written notice that accurately stated the reason for the denial as required by ECOA, and pulling their consumer reports without a permissible purpose to do so, thereby making appropriate final injunctive or corresponding declaratory relief with respect to each class as a whole.

Plaintiff's proposed FCRA Class may also be certified and maintained under Federal Rule of Civil Procedure 23(b)(3) for all purposes because common questions of fact and law predominate over any questions affecting only individual members of the FCRA Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members is impracticable. The FCRA Class members have been damaged by Wells Fargo obtaining their consumer report without a permissible purpose to do so, thereby invading their privacy, and they are entitled to recovery of statutory penalties. Statutory damages will be capable of measurement on a classwide basis, as FCRA provides statutory penalties of $100 to $1,000 per violation. The propriety and amount of punitive damages are based on Wells Fargo's conduct, making these issues common to each class. Plaintiff and each class will rely on common evidence to resolve their legal and factual questions. There are no pending actions raising similar claims. Wells Fargo engages in continuous, permanent, and substantial activity in California.

**B.    Wells Fargo's Statement:**

Plaintiff cannot sustain his own individual claims, which are all based on the factual premise that Wells Fargo has a policy that categorically excludes DACA recipients from obtaining direct auto financing.  As such, Plaintiff will be unable to represent any putative class based on such an allegation.

Regardless, Plaintiff cannot meet the requirements of Federal Rule of Civil Procedure 23(a), 23(b)(2), or 23(b)(3).  There are no common issues or application as to any discriminatory policy, Plaintiff's claims will not be typical of any putative class members, individual factual

issues will predominate as a class action is not the superior way to adjudicate individual lending decisions in this context. Further, Plaintiff's proposed injunctive relief is likely to be vague and not appropriately scoped to any alleged class.

**X.**     **Related Cases**

The parties are unaware of any related cases. The parties note that the plaintiffs in *Perez v. Wells Fargo Bank, N.A.*, No. 17 Civ. 00454-MMC are also asserting a Section 1981 class claim arising out of similar conduct, but as to other consumer credit lines. Outten & Golden LLP, one of Plaintiff's counsel, and McGuireWoods LLP, Wells Fargo's counsel, are also counsel in the *Perez* litigation.

**XI.**     **Relief**

Plaintiff seeks, on behalf of himself and each class: (1) certification of the case as a class action on behalf of the proposed class; (2) designation of Plaintiff as a representatives on behalf of each class; (3) designation of Plaintiff's counsel of record as Class counsel; (4) a declaratory judgment that the practices complained of herein are unlawful and violate Section 1981, ECOA, and FCRA; (5) a preliminary and permanent injunction against Wells Fargo and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein; (6) statutory damages under the FCRA to the extent allowable by law; (7) exemplary and punitive damages in an amount commensurate with Wells Fargo's ability to pay and to deter future conduct; (8) nominal damages; (9) injunctive remedies including restitution; (10) costs incurred, including reasonable attorneys' fees to the extent allowable by law; (11) pre-judgment and post-judgment interest, as provided by law; and (12) such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Plaintiff cannot presently calculate statutory damages for the FCRA Class without discovery on the proposed class.

**XII.**     **Settlement and ADR**

The parties have not engaged in settlement discussions to date. The parties have met and

conferred regarding ADR pursuant to Civil Local Rule 16-8 and ADR Local Rule 3-5 and have reviewed the ADR procedures in ADR Local Rule 3-5.

### A.  Plaintiff's Statement:

Plaintiff wishes to discuss ADR selection at the Initial CMC. Although Plaintiff believes that private mediation may be the most appropriate ADR method in this case and Plaintiff is open to good-faith settlement discussions, counsel's experience suggests that private mediation in this case would not be productive until the case is further into discovery. Accordingly, Plaintiff proposes that the Court set a deadline, approximately seven months after the initial CMC, for the parties to meet and confer as to whether private mediation would be productive at that point and report back to the Court on either a mediation date or request an extension to report back to the Court at a later date.

### B.  Wells Fargo's Statement:

Wells Fargo proposes the parties participate in private mediation by no later than 60 days prior to the close of fact discovery.

## XIII.  Consent to Magistrate Judge for All Purposes

The Parties do not consent to a magistrate judge for all purposes.

## XIV.  Other References

The parties agree that the case is not suitable for reference to a special master.

## XV.  Narrowing of Issues

Plaintiff, in this Joint Case Management Statement, has narrowed the scope of his proposed classes indicating that he will seek to certify his Section 1981 Class and ECOA class only under Rule 23(b)(2), and that he will seek to certify his FCRA Class under Rule 23(b)(2) and as to statutory damages only under Rule 23(b)(3). Plaintiff also intends to withdraw his claims for actual damages under Section 1981, ECOA, and FCRA. Plaintiff's Second Amended Complaint reflects this narrowing of issues and claims.

The parties are presently unaware of any other issues that can be narrowed by agreement or by motion, and do not have any suggestions to expedite the presentation of evidence at trial.

# XVI. Expedited Trial Procedure

The parties do not believe that the case can be handled on an expedited basis with streamlined procedures given the nature and complexity of the claims and defenses in this action.

# XVII. Scheduling:

| PLAINTIFF'S PROPOSAL: | | WELLS FARGO'S PROPOSAL: | |
|---|---|---|---|
| **EVENT** | **DATE** | **EVENT** | **DATE** |
| Either party may serve written discovery on or after | November 15, 2019 | Either party may serve written discovery on or after | A ruling on Wells Fargo's Motion to Stay or Bifurcate Discovery |
| Last Date to Amend Pleadings without leave of court | 90 days after the initial CMC, or April 30, 2020 | Last Date to Amend Pleadings without leave of court | 60 days after the initial CMC, or March 31,, 2020 |
| Deadline for Mediation | See Section XII, above | Deadline for Mediation | See Section XII, above |
| All Fact Discovery Closes | Approximately 12 months after the Initial CMC, or January 28, 2021 | Fact Discovery Closes (including bifurcated discovery on Plaintiff's individual claims) | 12 months after the Initial CMC, or January 28, 2021 |
| Fact Discovery Closes as to Plaintiff's Individual Claims[2] | 90 days after resolution of Wells Fargo's anticipated motion to dismiss the repleaded ECOA and FCRA claims in Plaintiff's Second Amended Complaint | Fact Discovery As to Plaintiff's Individual Claims Closes | 60 days after the Initial CMC, or March 31, 2020 |
| Deadline for Cross-Motions for Summary Judgment as to Plaintiff's Individual Claims | 30 days after the close of Individual Fact Discovery, with agreed briefing schedule | Deadline for Motion for Summary Judgment as to Plaintiff's Individual Claims | 30 days after the close of Individual Fact Discovery, or April 30, 2020, with agreed briefing schedule |

---

[2]  Although Plaintiff does not believe the bifurcation order can stand, if the Court sustains it, Plaintiff proposes the following discovery schedule for Plaintiff's individual claims.

| PLAINTIFF'S PROPOSAL: | | WELLS FARGO'S PROPOSAL: | |
|---|---|---|---|
| **EVENT** | **DATE** | **EVENT** | **DATE** |
| Opening Expert Reports on issues where the party bears the burden of proof | 6 weeks after the close of all fact discovery, or March 11, 2021 | Plaintiff's Expert Reports | 6 weeks after the close of all fact discovery, or March 11, 2021 |
| Rebuttal Expert Reports | 4 weeks after the deadline for Opening Expert Reports, or April 8, 2021 | Wells Fargo's Expert Reports | 4 weeks after the deadline for Opening Expert Reports, or April 8, 2021 |
| Expert Discovery Closes | 4 weeks after the deadline for Rebuttal Expert Reports, or May 6, 2021 | Expert Discovery Closes | 6 weeks after the deadline for Rebuttal Expert Reports, or May 6, 2021 |
| Deadline for filing Class Certification Motion | 4 weeks month after the close of expert discovery, or June 3, 2021 | Deadline for filing Class Certification Motion | 4 weeks after the close of expert discovery, or June 3, 2021 |
| Opposition to Class Certification Motion | 4 weeks after deadline for Class Certification Motion, or July 1, 2021 | Opposition to Class Certification Motion | 6 weeks after deadline for Class Certification Motion, or July 15, 2021 |
| Reply to Class Certification Motion | 3 weeks after deadline for Opposition to Class Certification Motion, or July 22, 2021 | Reply to Class Certification Motion | 3 weeks after deadline for Opposition to Class Certification Motion, or August 5, 2021 |
| Hearing on Class Certification Motion | To be set by the Court | Hearing on Class Certification Motion | To be set by the Court |
| Deadline for filing dispositive motions (neither party may file a dispositive motion until the Court has resolved class certification) | 60 days after Rule 23 class certification order | Deadline for filing dispositive motions | 60 days after Rule 23 class certification order, but any party may move for summary judgment at any time prior to that date (subject to Wells Fargo's right to raise the one-way intervention rule) |
| Opposition to dispositive motions | 30 days after filing of the dispositive motion | Opposition to dispositive motions | 42 days after filing of the dispositive motion |
| Replies to dispositive motions | 30 days after filing of the dispositive motion | Replies to dispositive motions | 30 days after filing of the dispositive motion |

| PLAINTIFF'S PROPOSAL: | | WELLS FARGO'S PROPOSAL: | |
|---|---|---|---|
| **EVENT** | **DATE** | **EVENT** | **DATE** |
| Motions to Exclude Experts/*Daubert* briefing | The parties will meet and confer on a briefing schedule and submit a stipulation | Motions to Exclude Experts/*Daubert* briefing | The parties will meet and confer on a briefing schedule and submit a stipulation |
| Hearing on dispositive motions | To be set by the Court | Hearing on dispositive motions | To be set by the Court or the Party noticing the Motion |
| Pre-Trial Conference | To be set by the Court | Pre-Trial Conference | To be set by the Court |
| Trial Commences | To be set by the Court | Trial Commences | To be set by the Court |

## XVIII. Trial

### A. Plaintiff's Trial Estimate:

Plaintiff has requested a jury trial on all claims as legally appropriate. Plaintiff will be in a better position to estimate the length of trial after the Court has resolved Rule 23 class certification and dispositive motions. Accordingly, Plaintiff proposes that the length of trial be addressed after the Court's rulings. As of today, however, Plaintiff estimates that the expected total length of trial will be 3-5 days, if a class is certified. The parties will submit all issues regarding the exclusion of claims or evidence to the Court pursuant to its Civil Pretrial Order.

### B. Wells Fargo's Trial Estimate:

Wells Fargo proposes that the length of trial be addressed after the Court has resolved summary judgment and class certification motions. As of today's date, however, Wells Fargo estimates that the expected total length of trial will be 2-3 days if class certification is denied or 5-7 days, if a class is certified.

## XIX. Disclosure of Non-Party Interested Entities or Persons

The parties have filed the "Certification of Interested Entities or Persons" documents required by Civil Local Rule 3-15. Wells Fargo has also filed the Corporate Disclosures as required by Federal Rule of Civil Procedure 7.1. The parties are unaware of other non-party interested

entities or persons.

**XX.**   **Professional Conduct**

       All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**XXI.**   **Other Matters**

       The parties have no other matters to bring before the Court at this time.

Dated:   New York, New York                      Respectfully submitted,
          January 24, 2020

By:    /s/ *Ossai Miazad*              *By:*   /s/ *K. Issac deVyver*

**OUTTEN & GOLDEN LLP**            **MCGUIREWOODS LLP**

Ossai Miazad*                        K. Issac deVyver*
Michael N. Litrownik*               Karla Johnson*
685 Third Avenue, 25th Floor        625 Liberty Avenue, 23rd Floor
New York, NY 10017                 Pittsburgh, PA 15222
Telephone:  (212) 245-1000          Telephone: (412) 667-6000
Facsimile:   (646) 509-2060          Facsimile: (412) 667-6050
om@outtengolden.com
mlitrownik@outtengolden.com       ***Attorneys for Defendant Wells Fargo***
                                 ***Bank, N.A.***
Brian James Shearer*
Craig L. Briskin*
JUSTICE CATALYST LAW
718 7th Street NW                    *admitted *pro hac vice*
Washington, D.C. 20001
Telephone: (518) 732-6703
brianshearer@justicecatalyst.org
cbriskin@justicecatalyst.org

Benjamin D. Elga*
JUSTICE CATALYST LAW
81 Prospect Street
Brooklyn, NY 11201
Telephone: 518-732-6703
belga@justicecatalyst.org

***Attorneys for Plaintiff and the Proposed Classes***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDUARDO PEÑA, individually and on behalf
of all others similarly situated,

        Plaintiff,

   vs.

WELLS FARGO BANK, N.A.,

        Defendant.

CASE NO. 19-cv-04065-MMC

## **CASE MANAGEMENT ORDER**

     The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER
is approved as the Case Management Order for this case and all parties shall comply with its
provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated: _____

_____
Hon. Maxine M. Chesney
United States District Court Judge

## <u>SIGNATURE ATTESTATION</u>

Pursuant to Civil Local Rule 5-1, I attest that concurrence in the filing of this document has been obtained from the signatory listed above.

Dated:  January 24, 2020                    By:    /s/ *Ossai Miazad*
                                                   Ossai Miazad
                                                   Outten & Golden LLP

                                                   *Attorney for Plaintiff and the Proposed Class*