# Exhibit A

*PEÑA v. WELLS FARGO BANK, N.A.*

**United States District Court**
**Northern District of California**
**Case No. 3:19-cv-04065-MMC**

**Settlement Agreement and Release**

**June 2020**

# TABLE OF CONTENTS

**Page**

RECITALS ............................................................................................................. 1

1. Definitions ...................................................................................................... 6

2. Conditions and Effectiveness of Agreement ................................................ 17

3. Settlement Consideration ............................................................................. 22

4. Qualified Settlement Fund ........................................................................... 25

5. Claims Process and Payments from the Settlement Fund ............................ 26

6. Retention and Duties of Settlement Administrator ...................................... 34

7. Notice to the Class and Settlement Website ............................................... 36

8. Covenants Not to Sue .................................................................................. 38

9. Representations and Warranties ................................................................... 38

10. Releases ........................................................................................................ 39

11. Opt Out Rights ............................................................................................. 41

12. Objections .................................................................................................... 43

13. Termination .................................................................................................. 45

14. Certification of Settlement Class For Settlement Purposes ......................... 48

15. Attorneys' Fees and Expenses, Incentive Awards, and Individual Payments ................ 48

16. Stay of Discovery and Other Proceedings .................................................. 51

17. Return/Destruction of Discovery Materials ................................................. 51

18. Media, Confidentiality, and Non-Disparagement ....................................... 52

19. Notices ......................................................................................................... 53

20. Miscellaneous Provisions ............................................................................ 54

DocuSign Envelope ID: 834E94D6-6B11-4354-92AA-3291781AB54B

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and among (i) Plaintiff Eduardo Peña ("Peña" or "Class Representative"), individually and as class representative on behalf of the Class, and (ii) Defendant Wells Fargo Bank, N.A. ("Wells Fargo") (collectively the "Parties"). The Parties intend and agree to resolve, discharge and settle fully, finally and forever all claims of the Class asserted in the class action captioned *Peña. v. Wells Fargo Bank, N.A.*, Case No. 3:19-cv-04065-MMC, pending in the United States District Court for the Northern District of California (the "Action"), subject to approval of the Court.

### RECITALS

A.      On or about July 16, 2019, Peña filed a putative class action complaint (the "Class Action Complaint") against Wells Fargo, with Peña seeking to represent two nationwide classes, each consisting of all non-United States citizens who resided in the United States and held DACA status at the time they applied for direct auto financing from Wells Fargo. Peña brought class allegations on behalf of DACA residents who were denied direct auto financing by Wells Fargo, as well as on behalf of all DACA residents who were declined direct auto financing by Wells Fargo and did not receive a written notice of adverse action with an accurate statement of the reasons for the denial. The relevant class period was defined as beginning on July 16, 2017. Peña asserted claims of alienage discrimination under 42 U.S.C. Section 1981, and a violation of the Equal Credit Opportunity Act (15 U.S.C. § 1691 and 12 C.F.R. § 1002.9(a)).

B.      On or about September 27, 2019, Peña filed a First Amended Class Action Complaint ("First Amended Class Action Complaint") against Wells Fargo, with Peña seeking to represent three nationwide classes, each consisting of all non-United States citizens who resided in the United States and held DACA status at the time they applied for direct auto financing from

Wells Fargo. Peña brought class allegations on behalf of DACA residents who were denied direct auto financing by Wells Fargo, as well as on behalf of all DACA residents who were declined direct auto financing by Wells Fargo and did not receive a written notice of adverse action with an accurate statement of the reasons for the denial, as well as on behalf of all DACA residents who were declined direct auto financing by Wells Fargo and for whom Wells Fargo conducted a hard credit inquiry. The relevant class period was defined as beginning on July 16, 2017. Peña asserted claims of alienage discrimination under 42 U.S.C. Section 1981, a violation of the Equal Credit Opportunity Act (15 U.S.C. § 1691 and 12 C.F.R. § 1002.9(a)), and a violation of the Fair Credit Reporting Act (15 U.S.C. § 1681b(f)).

C.      On or about October 28, 2019, Wells Fargo filed a Motion to Dismiss the First Amended Class Action Complaint and a Motion to Stay Discovery Pending Final Disposition of the Motion to Dismiss, and in the Alternative, Motion to Bifurcate Discovery. Wells Fargo moved to dismiss on the grounds that Peña failed to plead facts sufficient to show he was denied for a discriminatory reason, failed to plead facts to support his claim that the adverse action letter was inaccurate, that a cause of action under the Equal Credit Opportunity Act based on the accuracy of a letter was not recognized, and the he failed to plead facts sufficient to show that his credit was pulled for an improper purpose. Wells Fargo moved to stay, on in the alternative, bifurcate discovery on the grounds that the motion to dismiss could be decided on the face of the complaint and was case dispositive, and that bifurcation of class discovery from individual discovery was warranted.

D.      On or about December 23, 2019, and following full briefing, the Court granted in part and denied in part Wells Fargo's motion to dismiss the First Amended Class Action Complaint, and granted in part and denied in part Wells Fargo's Motion to Stay or Bifurcate

Discovery. The Court dismissed the claims for violation of the Equal Credit Opportunity Act and the Fair Credit Reporting Act, and granted leave to amend. The Court also bifurcated discovery to Peña's individual claims only.

E.     On or about January 15, 2020, Peña filed a Motion for Leave to File a Partial Motion for Reconsideration, seeking reconsideration of the order bifurcating discovery. On or about January 24, 2020, the Court denied the Motion for Leave to File the Motion for Reconsideration.

F.     On or about January 17, 2020, Peña filed a Second Amended Class Action Complaint ("Second Amended Class Action Complaint") against Wells Fargo, with Peña seeking to represent three nationwide classes, each consisting of all non-United States citizens who resided in the United States and held DACA status at the time they applied for direct auto financing from Wells Fargo. Peña brought class allegations on behalf of DACA residents who were denied direct auto financing by Wells Fargo, as well as on behalf of all DACA residents who were declined direct auto financing by Wells Fargo and received a written notice of adverse action with an inaccurate statement of the reasons for the denial, as well as on behalf of all DACA residents who were declined direct auto financing by Wells Fargo and whose consumer reports were obtained by Wells Fargo. The relevant class period was defined as beginning on July 16, 2017. Peña asserted claims of alienage discrimination under 42 U.S.C. Section 1981, a violation of the Equal Credit Opportunity Act (15 U.S.C. § 1691 and 12 C.F.R. § 1002.9(a)), and a violation of the Fair Credit Reporting Act (15 U.S.C. § 1681b(f)).

G.     On or about February 7, 2020, the Parties agreed to stay the case in order to continue discussions of potential resolution of the Action. On or about March 6, 2020, the Parties sought a further stay of the Action in order to document resolution.

H.     The Parties have engaged in discovery, including the exchange of written discovery requests and responses and the production of documents.  The Parties have also exchanged information as to Wells Fargo's systems and denial codes.  The Parties also have engaged in extensive briefing as set forth above, were in the process of addressing various discovery disputes with the Court, and briefed issues as to the confidentiality of discovery materials.

I.      The Parties engaged in a mediation session with experienced private mediator Hunter Hughes in Atlanta, Georgia on January 29, 2020.  The Parties continued discussions with the assistance of Hunter Hughes through the signing of a term sheet on March 4, 2020.

J.      Based upon their discovery, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, and following mediation, the Parties have agreed to settle this Action pursuant to the provisions of this Agreement.

K.     Simultaneous with the filing of the Motion for Preliminary Approval, the Parties agree to file a Joint Stipulation to Conditionally Amend the Complaint for Settlement Purposes, solely for purposes of conforming the Complaint to the scope of the Settlement.

L.     Wells Fargo has denied and continues to deny each and every allegation of liability, wrongdoing, and damages, as it has substantial factual and legal defenses to all claims and class allegations asserted in the Action.  Wells Fargo has always maintained, and continues to maintain, that it has acted in accordance with all governing law.  The Class Representative maintains the strength of his position.  This Agreement shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of the Parties with respect to any claim by any Class Member, any fault, liability, wrongdoing or damage, or any defenses that Wells Fargo asserted.  Wells Fargo nonetheless has concluded that continuing to defend against the Action would be protracted, expensive and disruptive to its business.  It therefore has decided that it is

desirable to fully and finally settle the Action on the terms and conditions set forth herein to avoid the further expense, inconvenience and distraction of the Action and to dispel any related uncertainty.

M.     The Class Representative and Class Counsel recognize the expense and length of proceedings necessary to continue the litigation through further motion practice, trial and any possible appeals.  They have taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation.  They are also aware of the burdens of proof necessary to establish liability and damages for the claims alleged in the Action and the defenses thereto.  Based upon their evaluation, the Class Representative and Class Counsel have determined that the Settlement set forth in the Agreement is in the best interests of the Class Representative, and the Class and is fair, adequate and reasonable.

N.     By this Agreement, and recognizing the consideration provided for under this Agreement, the Class Representative and Class Counsel intend to fully and finally resolve certain claims against Wells Fargo in connection with the Action, as more fully set forth herein.

O.     This Agreement and all associated exhibits or attachments are made for the sole purpose of attempting to consummate settlement of this Action on a class-wide basis.  This Agreement and the settlement it evidences are made in compromise of disputed claims.  Because the Action is pled as a class action, this Settlement must receive preliminary and final approval by the Court.  Accordingly, the Class Representative and Wells Fargo enter into this Agreement and associated Settlement on a conditional basis.   In the event that Wells Fargo or the Class Representative exercise a right herein to terminate or rescind this Agreement, the Court does not enter the Final Approval Order, or the associated Judgment does not become Final for any reason, this Agreement shall be deemed null and void *ab initio*, it shall be of no force or effect whatsoever,

DocuSign Envelope ID: 834E94D6-6B41-4354-92AA-229178113854B

it shall not be referred to or utilized for any purpose whatsoever by anyone, and the negotiation, terms and entry of the Agreement shall remain subject to the provisions of Federal Rule of Evidence 408, any and all state statutes of a similar nature, and the mediation privilege. Notwithstanding the foregoing, Wells Fargo may use, offer, admit, or refer to the Agreement and to the Settlement reached therein where necessary to defend itself in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding.

P.      The Parties expressly reserve all rights, claims and defenses and do not waive any such rights, claims or defenses in the event that the Agreement is not approved for any reason. The Parties agree that they each retain and reserve all rights, and agree not to take a position to the contrary.  The Class Representative and Class Counsel agree not to argue or present any argument, and hereby waive any argument, that Wells Fargo could not contest class certification and/or proceeding collectively on any grounds if the Action were to proceed or that this Agreement is evidence of or constitutes an admission that class certification may be appropriate.

1.      **Definitions.**

As used in all parts of this Agreement, including the recitals above, and the exhibits hereto, the following terms have the meanings specified below:

1.1     "Action" means the civil action captioned *Peña. v. Wells Fargo Bank, N.A.*, Case No. 3:19-cv-04065-MMC, filed on or about July 16, 2019 and currently pending in the United States District Court for the Northern District of California.

1.2     "Agreement" or "Settlement Agreement" means this Settlement Agreement and Release and all of its attachments and exhibits, which the Class Representative and Wells Fargo understand and agree sets forth all material terms and conditions of the Settlement of the Action between them and which is subject to Court approval.  It is understood and agreed that Wells

Fargo's obligations under this Agreement are conditioned on, *inter alia*, the occurrence of the Effective Date and other conditions set forth in this Agreement.

1.3    "Attorneys' Fees and Expenses" means such funds as may be awarded to Class Counsel to compensate them for their fees and expenses incurred in connection with the Action.

1.4    "California Class Member" means any person who is a member of the California Class.

1.5    "Claim" means a written request, submitted via a Claim Form, submitted by a Settlement Class Member to the Settlement Administrator, pursuant to the instructions set forth in the Claim Form, in substantially the form of Exhibit 2 to this Agreement.

1.6    "Claim Deadline" means the last date by which a Claim submitted to the Settlement Administrator by a Settlement Class member for Claim Settlement Relief must be postmarked and shall be thirty (30) days before the Final Approval Hearing.  All Claims postmarked on or before the Claim Deadline shall be timely and all Claims postmarked after the Claim Deadline shall be untimely and barred from entitlement to any Claim Settlement Relief.  The Claim Deadline shall be no earlier than sixty (60) days after the mailing of the Notice.

1.7    "Claim Form" means the form attached to the Notice, in the same or substantially the same form attached hereto as Exhibit 2, which includes pages to submit to Make a Claim, Object to, or Request to Opt Out of the Settlement.

1.8    "Claim Settlement Relief" means the cash payment to be made to Settlement Class Members who are entitled to relief under this Agreement and who submit properly completed, verified, and timely Claim Forms to the Settlement Administrator and who qualify for such relief under the terms of this Agreement.

1.9     "Class" means the collective group of all persons making up the National Class and the California Class, defined as follows:

1.9.1   "National Class" means those individuals who

- (i) applied for credit from the Wells Fargo direct auto line of business; (ii) between July 16, 2017 through the date of preliminary approval; (iii) who held valid and unexpired DACA status at the time they applied for credit; (iv) who were denied as set forth in the class data produced by Wells Fargo; and (v) who were not California residents at the time they applied for credit as set forth in the class data to be produced by Wells Fargo.

- Excluded from the National Class are Wells Fargo, all officers, directors, and employees of Wells Fargo, and their legal representatives, heirs, or assigns, and any Judges to whom the Action is assigned, their staffs, and their immediate families.

1.9.2   "California Class" means those individuals who

- (i) applied for credit from the Wells Fargo direct auto line of business; (ii) between July 16, 2017 through the date of preliminary approval; (iii) who held valid and unexpired DACA status at the time they applied for credit; (iv) who were denied as set forth in the class data to be produced by Wells Fargo; and (v) who were California residents at the time they applied for credit as set forth in the class data to be produced by Wells Fargo.

- Excluded from the California Class are Wells Fargo, all officers, directors, and employees of Wells Fargo, and their legal representatives, heirs, or

assigns, and any Judges to whom the Action is assigned, their staffs, and their immediate families.

1.10    "Class Counsel" means, collectively, Outten & Golden, LLP ("O&G") and Justice Catalyst Law ("JCL") and the attorneys from O&G and JCL who are the counsel of record representing the Class Representative in the Action.

1.11    "Class Member" means a member of the Class according to the Class definition herein.

1.12    "Class Representative" means Eduardo Peña, the named plaintiff and proposed class representative in the Action identified in the first paragraph of this Agreement.

1.13    "Complaint" and "Class Action Complaint" refer to the class action complaint filed in the Action, including any amended complaints.

1.14    "Confidential" means pursuant to the Protective Order entered in this Action.

1.15    "Court" means the United States District Court for the Northern District of California.

1.16    "DACA" means Deferred Action for Childhood Arrivals, a policy of temporary deferral of deportation and exercise of prosecutorial discretion as implemented by the June 15, 2012 memorandum from Secretary of Homeland Security Janet Napolitano, entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children."

1.17    "Defendant" refers to Wells Fargo Bank, N.A.

1.18    "Defense Counsel" means Wells Fargo's counsel of record in the Action.

1.19    "Effective Date" means the date when all of the conditions set forth in Section 2 have occurred, provided, however, that Wells Fargo has not exercised its right of termination under Section 13 of this Agreement.

DocuSign Envelope ID: 834E94D6-6B11-4354-921A-2201731AB54D

1.20    "Final" means five (5) business days after the latest of: (i) the date of final affirmance on an appeal of the Judgment; (ii) the date of final dismissal with prejudice of the last pending appeal from the Judgment; and (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal or writ review from the Judgment.  If the Judgment is set aside, modified, or overturned by any court including on appeal and is not fully reinstated on appeal, the Judgment shall not become final.

1.21    "Final Approval Hearing" means a hearing set by the Court to take place on or about the date which is forty-five (45) days after the Opt-Out Deadline for the purpose of:

      i.      Determining the fairness, adequacy and reasonableness of the Agreement and associated Settlement pursuant to class action procedures and requirements;

      ii.     Determining the good faith of the Agreement and associated Settlement; and

      iii.    Entering Judgment.

1.22    "Final Approval Order" means an order to be entered and filed by the Court entitled "Final Judgment and Order of Dismissal with Prejudice," in the same or substantially the same form as Exhibit 4 hereto.

1.23    "Judgment" means the Final Approval Order and judgment to be rendered by the Court pursuant to this Agreement, in the same or substantially the same form as Exhibit 4 hereto, or in a similar form without material changes thereto.

1.24    "Limitations Period" means the statute of limitations period for a claim under 42 U.S.C. § 1981, the Fair Credit Reporting Act (15 U.S.C. § 1681b(f)), the Equal Credit

Opportunity Act (15 U.S.C. § 1691 and 12 C.F.R. § 1002.9(a)), and the California Unruh Act (Cal. Civil Code §§ 51 and 52 *et seq.*).

1.25    "National Class Member" means any person who is a member of the National Class.

1.26    "Notice" or "Class Notice" means the notice that is provided to potential Class Members, in the same or substantially the same form as Exhibit 1 with Exhibit 2 hereto and/or as ultimately approved by the Court.

1.27    "Notice List" or "Class Data Produced by Wells Fargo" shall mean the Excel spreadsheets produced by (or to be produced by) Wells Fargo, to be treated as Confidential pursuant to the terms of the Protective Order and agreed by the Parties as the most reliable and accurate means possible for identifying potential Settlement Class Members:  (i) identifying individuals that were denied a direct auto product; (ii) during the class period; (iii) based on agreed to denial codes related to their residency status; (iv) where the individual provided a Social Security Number, a United States address, and were not listed as a U.S. citizen or permanent resident alien.  Individuals may be listed multiple times in the event of multiple applications and corresponding denials.  This group consists of approximately 1,625 individuals and includes individuals with a variety of temporary residency statuses, including DACA, as reflected in the business records of Wells Fargo.

1.28    "Objection Deadline" means the date identified in the Preliminary Approval Order and Notice by which a Settlement Class Member must serve written objections to the Settlement, if any, in accordance with Section 12 of this Agreement, to be able to object to the Settlement. The Objection Deadline shall be no later than forty-five (45) days prior to the Final Approval Hearing or as the Court may otherwise direct.

1.29    "Official Documentation" means a copy of either (1) an I-797 Approval Notice

from an I-821D; or (2) a Work Authorization Card containing the code "C-33" to show either

current, valid and unexpired DACA status, or valid and unexpired DACA status at the time of any

denied application contained in the Notice List pursuant to paragraph 1.27.

1.30    "Opt-Out Deadline" means the date identified in the Preliminary Approval Order

and Notice by which a Request to Opt Out must be filed or submitted in writing to the Settlement

Administrator in accordance with Section 11 of this Agreement in order for a person who would

otherwise fall within the definition of Settlement Class to be excluded from the Settlement Class.

The Opt-Out Deadline shall be no earlier than forty-five (45) days after the mailing of the Notice

and no later than forty-five (45) days prior to the Final Approval Hearing, or as the Court may

otherwise direct.

1.31    "Party" or "Parties" means the Class Representative, on behalf of himself and all

Members of the Settlement Class, and Wells Fargo.

1.32    "Preliminary Approval Order" means an order to be executed and filed by the Court

entitled "Order Preliminarily Approving Settlement and Providing for Notice" in the same or

substantially the same form as Exhibit 3 hereto.

1.33    "Programmatic Relief" means the relief set forth in Section 3.2.

1.34    "Protective Order" means the Protective Order entered in the Action by the

Honorable Maxine M. Chesney on or about January 3, 2020.

1.35    "Released Claims" means any and all claims, defenses, demands, objections,

actions, causes of action, rights, offsets, setoffs, suits, damages, lawsuits, costs, relief for contempt,

losses, attorneys' fees, expenses, or liabilities of any kind whatsoever, in law or in equity, for any

relief whatsoever, including monetary, sanctions or damage for contempt, injunctive, or

declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, penalties, interest, attorneys' fees, costs, or expenses, whether a known or Unknown Claim, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, arise out of, or relate to allegations that were or could have been asserted in the Class Action Complaint related to Wells Fargo's alleged denial of Class Members' loan applications based on alienage, lack of U.S. citizenship and/or immigration status, including, but not limited to, any claims under 42 U.S.C. Section 1981, the California Unruh Act (Cal. Civil Code §§ 51 and 52 *et seq.*), or other state civil rights statutes, the Equal Credit Opportunity Act, and the Fair Credit Reporting Act.  It is the intention of the Class Representative to provide a general release of all Released Claims against the Releasees for claims related to the denial of his loan applications.

1.36  "Releasees," "the Releasees," or "the Released Parties" means each of (1) Wells Fargo; (2) each of Wells Fargo's past, present or future subsidiaries, parent companies, divisions, affiliates, partners or any other organizational units of any kind doing business under their names, or doing business under any other names, or any entity now or in the past controlled by, controlling, or under the common control with any of the foregoing and doing business under any other names, and each and all of their respective affiliates and subsidiaries, and each of their respective predecessors, successors, and assigns; and (3) each of the present and former officers, directors, partners, shareholders, agents, employees, attorneys (including any consultants hired by counsel), advisors, trustees and co-trustees, investment advisors, associates, investment bankers, independent contractors, representatives, beneficial owners, insurers, accountants, heirs, executors, and administrators, and each of their respective predecessors, successors, and assigns

of any person or entities in subparts (1) or (2) hereof.  This specifically includes Wells Fargo & Company.

1.37    "Releasors" means the Class Representative, all Settlement Class Members, and each of their respective heirs, executors, administrators, assigns, predecessors, and successors, and any other person claiming by or through any or all of them.

1.38    "Request to Opt Out" means the written request from a Class Member that seeks to exclude that person from the Settlement Class and that complies with the requirements set forth in Section 11 of this Agreement.

1.39    "Settlement" means the settlement terms set forth in this Agreement.

1.40    "Settlement Administrator" means a third-party agent or administrator that Class Counsel selected from Wells Fargo's list of approved administrators to help implement and effectuate the terms of this Agreement.

1.41    "Settlement Class" means the collective group of all of the Class Members who do not properly and timely exclude themselves from the Settlement, and thus means the collective group of all of the Class Members who will become bound by the Judgment when the Effective Date occurs.

1.42    "Settlement Class Member" or "Member of the Settlement Class" means any person who is a member of the Settlement Class.

1.43    "Settlement Fund" means the funds that Wells Fargo shall pay pursuant to Section 3 of the Agreement, comprised of the California Fund and the National Fund.  The Settlement Fund is for the benefit of the Settlement Class and will be used to pay Verified Claimants.

1.43.1 "California Fund" means that the funds that Wells Fargo shall pay pursuant to Section 3 of the Agreement, which will be funded based on the number of Verified Claimants from the California Class.

1.43.2 "National Fund" means the funds that Wells Fargo shall pay pursuant to Section 3 of the Agreement, which will be funded based on the number of Verified Claimants from the National Class.

1.44 "Settlement Website" means the website to be established by the Settlement Administrator as set forth in Section 7.

1.45 "Unknown Claims" mean any Released Claims which any Releasor does not know or suspect to exist in his or her favor at the time of the entry of the Judgment, and which, if known by him or her might have affected his or her settlement with and release of the Releasees, or might have affected his or her decision to opt out of the Settlement Class or to object to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Class Representative shall expressly and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have to the fullest extent allowed by law, waived the provisions, rights, and benefits of any statute or principle of common law similar to California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Each Releasor may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the Released Claims, but the Releasors, upon the Effective Date, shall be deemed to have, and by operation of the Judgment

shall have, fully, finally, and forever settled and released to the fullest extent allowed by law any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, contract, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Class Representative acknowledges, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material term of the Settlement of which this release is a part.

1.46    "Verified Claim" means a written request, submitted via the Claim Form, submitted by a Settlement Class Member to the Settlement Administrator, pursuant to the instructions set forth in the Claim Form, which includes Official Documentation in accordance with the terms of this Agreement.  Each Settlement Class Member, by making one "Verified Claim," shall be deemed to have made a "Verified Claim" per each denial of credit as contained in the "Notice List" in Paragraph 1.27.  To the extent there are Joint Borrowers on the same application, they may seek to submit one Verified Claim for each denied application.

1.47    "Verified Claim Form" means a Claim Form that is (a) fully completed and properly executed showing the Verified Claimant is entitled to Claim Settlement Relief, including a fully completed and properly executed Form W-9, (b) timely returned to the Settlement Administrator, (c) validated by the Settlement Administrator pursuant to the procedures set forth in this Agreement, and (d) which includes Official Documentation pursuant to the terms of this Agreement.

1.48    "Verified Claimant" means each Settlement Class Member who submits a Verified Claim Form, containing one or more Verified Claims.

1.49    "Wells Fargo" means Wells Fargo Bank, N.A., the defendant in the Action.

**2.      Conditions and Effectiveness of Agreement.**

2.1    This Agreement is expressly contingent upon the satisfaction, in full, of the material conditions set forth below.  The Effective Date of this Agreement shall be the date when all of the following listed below shall have occurred.

2.2    The Parties have signed the Agreement.

2.3    CAFA.  This Settlement shall be administered as if governed by 28 U.S.C. § 1715. Wells Fargo shall work with the Settlement Administrator to provide the notice to government officials under that statute but in no event shall the Final Approval Hearing take place prior to the provision of effective notices and the expiration of the statutory time.  The Final Approval Order shall make a finding that 28 U.S.C. § 1715 was fully complied with.

2.4    Court Approval.   The Court approves this Agreement in accordance with the following steps:

2.4.1    Motion for Preliminary Approval.   After good faith consultation with Defense Counsel, Class Counsel will present a Motion for Preliminary Approval to the Court  no later than June 16, 2020, including the Notice in the same or substantially the same form as Exhibit 1 and Exhibit 2 hereto, and the Preliminary Approval Order in the same or substantially the same form as Exhibit 3 hereto.

2.4.2    Certification of Class for Settlement Purposes.   In connection with the proceedings for Preliminary and Final Approval, the Class Representative shall seek orders

(Preliminary and Final, respectively) certifying the Class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for purposes of this Settlement only.

        2.4.3   <u>Entry of Preliminary Approval Order</u>.  The Court shall enter a Preliminary Approval Order in the same or substantially the same form as attached Exhibit 3 hereto, which shall among other things:

        a.     Preliminarily certify the proposed Class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for settlement purposes only;

        b.     Preliminarily approve this Agreement as fair, reasonable and adequate under Rule 23 of the Federal Rules of Civil Procedure subject to final determination by the Court;

        c.     Approve the appointment of the Class Representative as representative of the Class for the Settlement and the appointment of Class Counsel as counsel for the Class for the Settlement;

        d.     Approve a form of Notice in the same or substantially the same form as Exhibit 1 and Exhibit 2 hereto to be provided to the individuals on the Notice List;

        e.     Direct the Settlement Administrator, within thirty-five (35) days after entry by the Court of the Preliminary Approval Order, to mail the Notice in the same or substantially the same form as Exhibit 1 and Exhibit 2 hereto to each individual on the Notice List by first-class mail and email where available;

        f.     Direct the Settlement Administrator, within thirty-five (35) days after entry by the Court of the Preliminary Approval Order, to establish the Settlement Website, which shall contain copies of the Agreement and Exhibits, including the Notice in the same or substantially the same form as Exhibit 1 and Exhibit 2 hereto;

g.      Schedule a Final Approval Hearing on final approval of this Settlement at least one hundred twenty-five (125) days after entry of the Preliminary Approval Order;

h.      Establish a procedure for Class Members to exclude themselves and set an Opt-Out Deadline, no later than forty-five (45) days before the Final Approval Hearing, after which no Class Member shall be allowed to opt out of the Settlement and shall be bound to the terms of the Settlement;

i.      Establish a procedure for Settlement Class Members to appear and/or object to the Settlement and set an Objection Deadline, no later than forty-five (45) days before the Final Approval Hearing, after which no Settlement Class Member shall be allowed to object;

j.      Require any attorneys representing Settlement Class Members, at the Settlement Class Member's expense, to file a notice of appearance;

k.      Stay all proceedings in the Action against Wells Fargo, other than proceedings as may be necessary to carry out the terms and conditions of the Agreement;

l.      Pending Final Approval, and upon expiration of the Opt-Out Deadline, bar each Settlement Class Member from maintaining, commencing, prosecuting or pursuing directly, representatively, or in any other capacity any Released Claim subsumed and covered by the Release in this Agreement in any court or arbitration forum;

m.      Contain such other and further provisions consistent with the terms and provisions of this Agreement as the Court may deem advisable; and

n.      Authorize the Parties to take all necessary and appropriate steps to establish the means necessary to implement the terms of this Agreement.

2.5    <u>Notice to Class Members</u>.  The Settlement Administrator shall cause the Notice in the same or substantially the same form as Exhibit 1 and  Exhibit 2 hereto to be mailed; the Notice

in the same or substantially the same form as Exhibit 1 and Exhibit 2 hereto to be emailed where email addresses are available for those on the Notice List; and the Notice in the same or substantially the same form as Exhibit 1 and Exhibit 2 hereto to be posted to the Settlement Website, pursuant to the Preliminary Approval Order and the terms of this Agreement.

    2.6   <u>Order of Final Approval and Judgment</u>.  The Court shall enter the Final Approval Order in the same or substantially in the same form attached as Exhibit 4 hereto, which shall, among other things:

    a.   Find that (i) the Court has personal jurisdiction over the Settlement Class Members, (ii) the Court has subject matter jurisdiction over the claims asserted in the Action, and (iii) venue is proper;

    b.   Finally approve the Settlement;

    c.   Finally certify the Settlement Class for settlement purposes only;

    d.   Find that the form and means of disseminating the Notice complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution, and find that the Parties and procedures used complied with federal law so as to give full effect to the Settlement;

    e.   Enter Final Judgment with respect to the Released Claims of all Settlement Class Members and dismiss the Released Claims with prejudice;

    f.   Make the Releases in Section 10 of this Agreement effective as of the date of the Final Judgment;

    g.   Bar the Class Representative and all Settlement Class Members from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction for the Released Claims;

h.      Bar the Class Representative and all Settlement Class Members from organizing Settlement Class Members, or soliciting the participation of Settlement Class Members, or persons who would otherwise fall within the definition of Settlement Class Members but who have requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint or counterclaim to include class allegations, or seeking class certification in a pending action in any jurisdiction based on or relating to any of the Released Claims);

i.      Find that, by operation of the entry of the Judgment, the Class Representative and all of the Settlement Class Members shall be deemed to have forever released, relinquished, and discharged the Released Parties from any and all Released Claims;

j.      Authorize the Parties to implement the terms of this Agreement;

k.      Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Agreement, the Final Judgment, and for any other necessary purpose; and

l.      Issue related orders to effectuate the Final Approval of the Settlement and its implementation.

2.7     No Injunctive Relief.  The Final Approval Order and Judgment shall not provide for any injunctive relief against the Parties.

2.8     Finality of Judgment.  The Final Approval Order has become Final, including expiration of the time for filing any appeal or other form of objection to the Final Approval Order, full and final resolution of any appeal or objection that may be filed, and expiration of the time for seeking review of that disposition through an appeal, *en banc* hearing, or higher level of review.

3.      **Settlement Consideration.**

3.1      In consideration for the Releases set forth in Section 10, Wells Fargo will provide

the following benefits.

3.2      Programmatic Relief.

3.2.1   Wells Fargo represents and warrants that it will change its lending practices

for its direct auto line of business to extend credit to current and valid DACA recipients on the

same terms as U.S. citizens as long as there is an appropriate product (*e.g*, no investor products if

not permitted by the investor, like FHA mortgages) ("Programmatic Relief").  To the extent the

government's DACA policy is ended, revoked, repealed, or otherwise ceases to exist for any

reason, Wells Fargo shall have no obligation to extend credit pursuant to the terms of this

settlement to former DACA recipients.

3.2.2   Wells Fargo is not and will not be subject to any monitoring.  For a period

of two years, Wells Fargo will provide a written description annually to Class Counsel on a

Confidential basis explaining the status of the Programmatic Relief.

3.2.3   Nothing in Section 3.2.1 is an admission either about Wells Fargo's current

or past practices, or an admission that the terms are mandated by law or other requirement.

3.2.4   The relief set forth in this Section shall not operate as an injunction or

otherwise provide any Class Member or governmental official or agency, or any other person or

entity with any right or power to seek direct enforcement of its terms, except a Member of the

Settlement Class may seek relief from the Court as to a breach of the terms of the Settlement

Agreement.

3.3      Settlement Monetary Consideration.

3.3.1   Within twenty-one (21) days after the Court's entry of the Preliminary

Approval Order, Wells Fargo will initially fund the Settlement Fund by depositing into an escrow account, the terms of which shall be subject to Wells Fargo's approval, with the Settlement Administrator the sum of Fifty Thousand Dollars ($50,000.00) to cover initial costs and expenses for implementing the terms of the Settlement set forth herein. Any balance of this initial funding remaining following the implementation of the terms of the Settlement and payment of the Settlement Administrator shall revert to Wells Fargo.

      3.3.2 Within eighty (80) days of the Effective Date, Wells Fargo will fund the California Settlement Fund by depositing into the escrow account the remaining Settlement Fund balance, to be calculated as follows: For California Class Members who submit one or more Verified Claims and become a Verified Claimant, Wells Fargo shall contribute to the Settlement Fund as follows:

- First 110 Verified Claims from the California Class shall add $2,500 per claim to the fund up to $275,000.

- Any remaining Verified Claims from the California Class shall add $800 per claim to the fund.

      3.3.3 Members of the California Class who submit one or more Verified Claims shall be paid pro rata from the California Settlement Fund for each Verified Claim.

      3.3.4 The California Settlement Fund shall have a total floor of $225,000 and a total cap of $525,000. Under no circumstances shall Wells Fargo's total financial obligation to fund the California Settlement Fund exceed $525,000.

      3.3.5 Within eighty (80) days of the Effective Date, Wells Fargo will fund the National Settlement Fund by depositing into the escrow account the remaining Settlement Fund balance, to be calculated as follows:

3.3.6    For those National Class Members who submit one or more Verified Claims and become a Verified Claimant, Wells Fargo shall create a National Settlement Fund as follows:

- Every Verified Claim from the National Class shall add $300 to the fund up to a maximum of $105,000.

3.3.7    National Class Members who submit one or more Verified Claims shall be paid pro rata from the National Settlement Fund for each Verified Claim.

3.3.8    The National Settlement Fund shall have a total floor of $55,000 and a total cap of $105,000.  Under no circumstances shall Wells Fargo's total financial obligation to fund the National Settlement Fund exceed $105,000.

3.3.9    The Settlement Fund shall be used to pay: (i) the Settlement Administrator's costs associated with disseminating the Class Notice and completing the claim verification process, and any escrow, administrative and/or bank-related fees and costs associated with the Settlement Administrator's distribution of payments to Settlement Class Members beyond the initial funding of $50,000 in Section 3.3.1, and (ii) distributions to Settlement Class Members, as described in Section 5 of this Agreement.

In the event that the combined total payments to Settlement Class Members from the California Settlement Fund and the National Settlement Fund is less than Two Hundred Eighty Thousand ($280,000) after the distributions required by this Agreement are completed, the amount between the total distributions to Settlement Class Members and Two Hundred Eighty Thousand ($280,000) shall be distributed equally to the following *cy pres* recipients, as agreed upon by the Parties: United We Dream and Consumer Action.  Payment to any *cy pres* recipients shall occur eighty-five (85) days following the  Effective Date.

3.3.10  Within  fifty-nine  (59)  days  of  the  Effective  Date,  the  Settlement

Administrator shall provide to Wells Fargo the amount to be funded for the California Settlement Fund and the National Settlement Fund based on the number of Verified Claims as set forth in Section 3.

      3.3.11  Following the Effective Date and Wells Fargo's satisfaction of its payment obligations, Class Counsel will execute and file an acknowledgement that Wells Fargo has satisfied the payment obligations under the Settlement Agreement.

**4.**    **Qualified Settlement Fund.**

4.1    The Settlement Fund shall constitute a "qualified settlement fund" ("QSF") within the meaning of Treasury Regulation Section 1.468B-1 promulgated under Section 468B of the Internal Revenue Code of 1986 as amended.   The Settlement Administrator shall be the "administrator" within the meaning of Treasury Regulation § 1.468B-2(k)(3).

4.2    Upon or before establishment of the QSF, the Settlement Administrator shall apply for an employer identification number for the QSF in accordance with Treasury Regulation § 1.468B-2(k)(4), and shall provide Wells Fargo with that employer identification number on a properly completed and signed IRS Form W-9.

4.3    If requested by either Wells Fargo or the Settlement Administrator, the Settlement Administrator and Wells Fargo shall fully cooperate in filing a relation-back election under Treasury Regulation § 1.468B-1(j)(2) to treat the QSF as coming into existence as a settlement fund as of the earliest possible date.

4.4    Following its remittances of the Settlement Fund monies as described in Section 3 of this Agreement, Wells Fargo shall have no responsibility, financial obligation or liability whatsoever with respect to the notifications to the Class required hereunder, the processing of claims and opt out letters, the allowance or disallowance of claims by Class Members, distributions

DocuSign Envelope ID: 834E94D6-6B11-4354-921A-2201731AB54D

to Settlement Class Members, payments to Class Counsel, Incentive Award to the Class Representative, investment of QSF funds, payment of federal, state, and local income, employment, unemployment, excise, and any other taxes, penalties, interest or other charges related to taxes imposed on the QSF or its disbursements, payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the QSF, since it is agreed that such deposits shall fully discharge Wells Fargo's obligation to the Class Representative, Settlement Class Members, Class Counsel and expenses of administration with respect to the disposition of the Settlement Fund.

4.5     The Settlement Administrator shall file or cause to be filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns, including, but not limited to, any Form 1099-series return, and tax withholdings statements, in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(l) and Treasury Regulation § l.468B-2(1)(2). Any contract, agreement or understanding with the Settlement Administrator relating to the QSF shall require the Settlement Administrator or its agent to file or cause to be filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns, including, but not limited to, any Form 1099-series return, and tax withholdings statements, in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(1) and Treasury Regulation § l.468B-2(1)(2). The Settlement Administrator may, if necessary, secure the advice of a certified public accounting firm in connection with its duties and tax issues arising hereunder.

5.     **Claims Process and Payments from the Settlement Fund.**

5.1     Payment to Settlement Class Members.  Distributions from the Settlement Fund shall be disbursed to Verified Claimants who submit a Verified Claim Form and successfully make

one or more Verified Claims as members of the California Class or National Class  pursuant to the terms of this Section.

5.2     <u>California Fund</u>.  To receive one or more payments from the California Fund, a California Class Member must fully complete, execute, and submit, per the instructions therein, the Claim Form, by completing the page of the form to "Make a Claim."  The Claim Form will be mailed with the Notice, will be provided via email where an email is available for a California Class Member, and will be posted on the Settlement Website.  Per the instructions on the Claim Form, the California Class Member must affirm:

- The individual applied for and was denied direct auto financing between July 16, 2017 and the present.

- The individual had current and valid DACA status, a United States address, and a Social Security Number at the time of each denied application for which the individual is making a Verified Claim.

- The individual is prepared to provide official documentation, consisting of a copy of one of the following: (1) an I-797 Approval Notice from an I-821D; or (2) a Work Authorization Card containing the code "C-33" to show either current, valid and unexpired DACA status or valid and unexpired DACA status at the time of a denied application for which the individual is seeking to make a Claim.

5.2.1   The Settlement Administrator shall then confirm that all returned Claim Forms seeking to "Make a Claim" are contained on the Notice List as a California Class Member.

5.2.2   Within three (3) days after the Effective Date, the Settlement Administrator shall contact those individuals that completed a Claim Form seeking to "Make a Claim" that are

DocuSign Envelope ID: 834E94D6-6B11-4354-921A-22017314B54D

also listed on the Notice List as a potential California Class Member, and ask them to submit the Official Documentation: (1) a copy of an I-797 Approval Notice from an I-821D; or (2) a copy of a Work Authorization Card containing the code "C-33" to show either valid and unexpired DACA status, or valid and unexpired DACA status at the time of a denied application for which the individual is seeking to make a Claim. The content of such request is attached as Exhibit 6 hereto. The deadline for submission of Official Documentation shall be twenty-one (21) days after the Effective Date, subject to a for-cause extension of no more than an additional seven (7) days from the original deadline for submission, as determined by the Settlement Administrator. Further, the settlement administrator shall permit one additional time period of fourteen (14) days to follow-up on deficient claims pursuant to Section 5.4 with a final deadline of forty-two (42) days after the Effective Date for the submission of Official Documentation. Upon successful submission of the above documentation and verification of authenticity by the Settlement Administrator, the Claim Form shall become a Verified Claim Form and the California Class Member shall become a Verified Claimant who has made one or more Verified Claims per each denial of credit as contained in the Notice List in Paragraph 1.27.

       5.2.3   <u>Joint Borrowers</u>. A California Class Member may make only one claim per denied application. Joint or multiple borrowers who are denied on a single application will be treated as a single application and their pro rata share will be divided equally per applicant who submits a Verified Claim Form and becomes a Verified Claimant.

       5.2.4   Each California Class Member who submits a Verified Claim Form demonstrating entitlement to payment from the California Fund, as determined by and in the sole discretion of the Settlement Administrator, shall be eligible to receive one or more award payments from the California Fund. The amount to be paid to the California Class Member shall be the pro

DocuSign Envelope ID: 834E94D6-6B11-4354-921A-2201731485AD

rata amount of the California Fund, as funded based on the number of Verified Claims from the California Class, pursuant to Section 3 of this Agreement. The Settlement Administrator shall make payments from the California Fund to California Class Members that submitted Verified Claim Forms within eighty-five (85) days after the Effective Date. The payments shall become void one hundred twenty (120) days following remittance. Any uncashed payments shall be paid to the *cy pres* recipients set forth in Section 3.3.11 within five (5) business days of the void date of any uncashed payments.

      5.3   <u>National Fund</u>. To receive one or more payments from the National Fund, a National Class Member must fully complete, execute, and submit, per the instructions therein, the Claim Form, by completing the page of the form to "Make a Claim." The Claim Form will be mailed with the Notice, will be provided via email where an email is available for a National Class Member, and will be posted on the Settlement Website. Per the instructions on the Claim Form, the National Class Member must affirm:

- The individual applied for and was denied a direct auto financing product between July 16, 2017 and the present.

- The individual had current and valid DACA status, a United States address, and a Social Security Number at the time of the application.

- The individual is prepared to provide Official Documentation, made up of one of the following: (1) a copy of an I-797 Approval Notice from an I-821D; and/or (2) a copy of a Work Authorization Card containing the code "C-33" to show either current, valid and unexpired DACA status or valid and unexpired DACA status at the time of a denied application for which the individual is seeking to make a Claim.

DocuSign Envelope ID: 834E94D6-6B11-4354-821A-2201731AB54D

5.3.1    The Settlement Administrator shall then confirm that all returned Claim Forms seeking to "Make a Claim" are contained on the Notice List as a National Class Member.

5.3.2    Within three (3) days after the Effective Date, the Settlement Administrator shall contact those individuals who completed a Claim Form seeking to "Make a Claim" that are also listed on the Notice List as a potential National Class Member, and ask them to submit the Official Documentation: (1) a copy of an I-797 Approval Notice from an I-821D; or (2) a copy of a Work Authorization Card containing the code "C-33" to show either current, valid and unexpired DACA status or valid and unexpired DACA status at the time of a denied application for which the individual is seeking to make a Claim.  The content of such request is attached as Exhibit 6 hereto.  The deadline for submission of Official Documentation shall be twenty-one (21) days after the Effective Date subject to a for-cause extension of no more than an additional seven (7) days from the original deadline for submission, as determined by the Settlement Administrator.  Further, the settlement administrator shall permit one additional time period of fourteen (14) days to follow-up on deficient claims pursuant to Section 5.4 with a final deadline of forty-two (42) days after the Effective Date for the submission of Official Documentation.  Upon successful submission of the above documentation and verification of authenticity by the Settlement Administrator, the Claim Form shall become a Verified Claim Form and the California Class Member shall become a Verified Claimant who has made one or more Verified Claims per each denial of credit as contained in the Notice List in Paragraph 1.27.

5.3.3    <u>Joint Borrowers</u>.  A National Class Member may make only one claim per denied application.  Joint or multiple borrowers who are denied on a single application will be treated as a single application and their pro rata share will be divided equally per applicant who submits a Verified Claim Form and becomes a Verified Claimant.

5.3.4   Each National Class Member who submits a Verified Claim Form demonstrating entitlement to payment for one or more Verified Claims from the National Fund, as determined by and in the sole discretion of the Settlement Administrator, shall be eligible to receive one or more award payments from the National Fund.  The amount to be paid to the National Class Member shall be the pro rata amount of the National Fund, as funded based on the number of Verified Claims from the National Class, pursuant to Section 3 of this Agreement.  The Settlement Administrator shall make payments from the National Fund to National Class Members that submitted Verified Claim Forms within eighty-five (85) days after the Effective Date. The payments shall become void one hundred twenty (120) days following remittance.  Any uncashed payments shall be paid to the *cy pres* recipients set forth in Section 3.3.11 within five (5) business days of the void date of any uncashed payments.

5.4   <u>Claim Review and Deficiency Process</u>.  Both prior to and after Final Approval of the Settlement, the Settlement Administrator shall confirm that each Claim Form submitted was facially valid, in that it is in the form required, that each Claim Form includes the required affirmations and information, that each Claim Form was submitted in a timely fashion, that the claimant is a Member of the California Class or National Class, and that the Claim Form otherwise meets the requirements of this Agreement, including being properly signed.  Full compliance with the requirements of the terms of this Agreement and the Claim Form, along with submission of Official Documentation, shall be necessary for the submission of a Verified Claim Form, and the absence of any of these requirements shall invalidate the proffered claim.  The Settlement Administrator shall verify the Official Documentation by comparing the documentation received to samples of the Official Documentation mutually agreed upon by the Parties.  All such claim criteria shall be strictly enforced.  Any Settlement Class Member's failure to provide any of the

required affirmation and information shall result in the putative claim being deemed invalid. Claim Forms that do not meet the requirements as set forth in this Agreement and in the Claim Form instructions shall be rejected. This shall include but is not limited to any failure to provide complete and accurate information, any failure to make the required representations and attestations, any failure to provide required supporting documentation, any failure to fully execute the Claim Form, and any failure to timely submit the Claim Form and Official Documentation. The Settlement Administrator shall have the authority to determine whether the submission of a Claim Form and Official Documentation is complete and timely. The Settlement Administrator's determinations in this regard shall be final and non-appealable. The Settlement Administrator shall promptly send a notice to any Settlement Class Member who submits a deficient Claim, identifying the deficiency and informing the individual that Class Counsel is available to assist in addressing deficiencies. To be considered, any revised Claim Form and Official Documentation or attempted cure of a Claim Form and Official Documentation must be mailed to the Settlement Administrator within fourteen (14) days after the date of the original notice of deficiency, and in no event shall a Claim Form be deemed timely if mailed more than forty-two (42) days after the Effective Date. Any Settlement Class Member whose claim is rejected shall be barred from receiving payment under the Settlement from the California Fund or the National Fund but shall in all other respects be bound by the terms of this Agreement and by the Order of Final Approval entered in the Action. No person shall have any claim against Releasees, Defense Counsel, the Class Representative, Class Counsel, or the Settlement Administrator based on any eligibility determinations made in accordance with the Agreement.

5.5     The Settlement Administrator shall pay each Verified Claimant his or her respective payment according to the terms, conditions, and procedures set forth in this Agreement. Each

Verified Claimant must properly and timely submit a Verified Claim Form, including a fully completed and properly executed Form W-9 and Official Documentation, in order to be eligible to receive one or more payments under this Paragraph. Notwithstanding the foregoing, no payments will be due and payable until eighty-five (85) days after the Effective Date.

5.6    For each payment made pursuant to this Agreement, Wells Fargo, itself or through the Settlement Administrator, may report each payment to government authorities including the Internal Revenue Service as required by law, and it shall make all required deductions and/or withholdings. The Settlement Administrator further may issue a Form 1099 to each Settlement Class Member. Settlement Class Members shall be solely responsible for the reporting and payment of any federal, state, and/or local income or other tax or any other withholdings, if any, on any of the payments made pursuant to this Agreement. Wells Fargo makes no representations and it is understood and agreed that Wells Fargo has made no representations as to the taxability of any portions of the settlement payments to any Settlement Class Members, the payment of any Attorneys' Fees and Expenses, or the payment of any Incentive Awards to the Class Representative. The Notice will advise Class Members to seek their own tax advice prior to acting in response to the Notice, and the Class Representative and Class Counsel agree that Class Members will have an adequate opportunity to seek tax advice prior to acting in response to the Notice.

5.7    The Releasees shall have no responsibility for, interest in, or liability whatsoever with respect to or arising out of the determination, administration, calculation, investment, allocation, distribution, or payment of award amounts or distributions, the payment or withholding of taxes, or any losses incurred in connection therewith. No person shall have any claim against

the Releasees, Class Counsel or any other agent designated pursuant to this Agreement based upon the distributions made substantially in accordance with this Agreement or any order of Court.

**6.**      **Retention and Duties of Settlement Administrator.**

6.1      Class Counsel selected the Settlement Administrator, JND Legal Administration, from Wells Fargo's list of approved vendors, using a competitive bid process.

6.2      The Settlement Administrator shall administer the Settlement pursuant to the terms of this Agreement.  The Settlement Administrator shall be responsible for Notice (including data standardization and de-duplication of the Notice List including updating addresses through the National Change of Address system or similar database, reasonable efforts to update addresses for undeliverable Notices, and printing and mailing the Notice), drafting and submitting the CAFA notice, processing Claims, evaluating Official Documentation and determination of Verified Claim Forms and Verified Claims, status reporting, creating and hosting a dual English-Spanish Settlement Website and deploying and operating a dual English-Spanish automated toll-free contact center, and disbursing the Settlement Funds including payments to Verified Claimants. The Settlement Administrator shall have the authority to request from any Settlement Member any necessary documentation to verify a Claim Form or the Official Documentation, or pay a Verified Claim, in its reasonable judgment, deems it necessary to do so before it issues a payment to that Settlement Member.  Wells Fargo or Class Counsel may direct the Settlement Administrator to assist with various additional administrative tasks in implementing the Settlement as Wells Fargo or Class Counsel shall deem appropriate in its sole discretion.  The Settlement Administrator shall also be responsible for additional tasks the Parties jointly agree are necessary to accomplish administration of the Settlement.

6.3     The Settlement Administrator shall not have any duties with respect to settlement administration apart from those expressly provided for in this Agreement.  Wells Fargo shall not be responsible for any costs of the Settlement Administrator for additional services provided outside the scope of this Settlement Agreement or separately beyond the $50,000 initial funding as set forth in Section 3.

6.4     The Parties will coordinate with the Settlement Administrator to provide Notice to the Class, as provided in this Settlement Agreement.  Because the information about Class Members that will be provided to the Settlement Administrator will consist of confidential information, non-public personal information, and other information protected by privacy laws, the Settlement Administrator will execute a non-disclosure agreement and will take all reasonable steps to ensure that any information provided to it by Wells Fargo will be used solely for the purpose of effecting this Settlement and otherwise shall comply with Wells Fargo's vendor and information security requirements.  The Settlement Administrator shall administer the Settlement in accordance with the terms of this Settlement Agreement and, without limiting the foregoing, shall treat any and all documents, communications and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications, or other information to any person or entity except as provided for in this Settlement Agreement or by court order.

6.5     The Settlement Administrator shall complete and provide to Wells Fargo any W-9 forms necessary for Wells Fargo to implement this Settlement.

6.6     The Settlement Administrator shall provide to Wells Fargo confirmation in writing upon its completion of the administration of the Settlement.

DocuSign Envelope ID: 834E94D6-6B11-4354-921A-2201731AB54D

7.     **Notice to the Class and Settlement Website**.

7.1     Subject to the Court's approval, the form of Notice shall be in the same or substantially the same form as Exhibit 1 and Exhibit 2 hereto.

7.2     Within fourteen (14) days of the Court's entry of the Preliminary Approval Order, Wells Fargo shall provide the Settlement Administrator with the Notice List.  The Settlement Administrator shall treat the Notice List as Confidential pursuant to the terms of the Protective Order and Paragraph 6.4 of this Agreement.  Within fourteen (14) days of the Court's entry of the Preliminary Approval Order, Wells Fargo shall also provide Class Counsel with the Notice List, except that names and contact information (mailing addresses and email addresses), and the first four digits of a Social Security number shall be redacted.  Class Counsel shall treat the Notice List as Confidential pursuant to the terms of the Protective Order and Paragraph 6.4 of this Agreement.

7.3     If, by entering an order approving the final form of the Notice, the Court provides authorization to send the Notice in the same or substantially the same form as Exhibit 1 and Exhibit 2 hereto to the individuals on the Notice List, the Settlement Administrator will email (where an email address is available) and mail the Notice (with the Claim Form) to the individuals on the Notice List via first class mail through the United States Postal Service, postage pre-paid, no later than thirty-five (35) days after the date of the Court's entry of the Preliminary Approval Order.  Prior to mailing, the Settlement Administrator shall attempt to update the last known addresses of the Class Members set forth on the Notice List through the National Change of Address system or a similar database.  The Agreement, Notice, and Claim Form in the same or substantially the same form as Exhibit 1 and Exhibit 2 hereto shall also be posted on the Settlement Website, as outlined in this Section.

DocuSign Envelope ID: 834E94D6-6B11-4354-921A-2201731B54D

7.4     Following the mailing of the Notice, the Settlement Administrator shall provide counsel with written confirmation of the mailing.

7.5     Unless the Settlement Administrator receives a Notice returned from the United States Postal Service for reasons discussed below in this paragraph, that Notice shall be deemed mailed and received by the individual to whom it was sent five (5) days after mailing.  In the event that subsequent to the first mailing of a Notice, and prior to fourteen (14) days before the Opt-Out Deadline, the Notice is returned to the Settlement Administrator by the United States Postal Service with a forwarding address for the recipient, the Settlement Administrator shall re-mail the Notice to that address, and the Notice will be deemed mailed at that point.  If any Notice is returned undeliverable, the Settlement Administrator will be instructed to attempt one skip-trace and if the skip-trace establishes an alternate address, the Settlement Administrator shall re-mail the Notice to that alternative address.  The Notice shall be deemed received by the individual once it is mailed for the second time.  Nothing in this paragraph shall be construed to extend the Opt-Out Deadline for any Class Member.

7.6     A reminder notice will be issued by email where readily available 30 days following the mailing of the Notice, in the form attached hereto as Exhibit 5.

7.7     No later than thirty (30) days after the Effective Date, the Settlement Administrator, upon the approval of the Court to file under seal pursuant to the Protective Order (to protect the names, addresses, and other personal information of Class Members), will cause to be filed with the Court a list of the names and addresses of all Class Members to whom the Notice was sent. The Parties agree that the list of names and addresses of all Class Members shall not be used for any purpose other than to enforce the terms of this Agreement.

7.8     No later than the mailing of the Notice, the Settlement Administrator shall establish the Settlement Website, which shall contain copies of this Agreement and Exhibits including the Notice and Claim Form.  The Settlement Administrator shall also post to the Settlement Website the entered Preliminary Approval Order, applications for Incentive Awards and Attorneys' Fees and Expenses, entered Final Approval Order, and any order approving Incentive Awards and Attorneys' Fees and Expenses.  The Settlement Website shall remain open and accessible for at least one hundred twenty (120) days after the distribution of payments.

**8.     Covenants Not to Sue.**

8.1     The Class Representative, on behalf of himself and the Settlement Class Members, covenant and agree: (i) not to file, commence, prosecute, intervene in, or participate in (as class members or otherwise) any action in any jurisdiction based on or relating to any of the Released Claims, or the facts and circumstances relating thereto, against any of the Released Parties; (ii) not to organize or solicit the participation of Settlement Class Members, or persons who would otherwise fall within the definition of the Settlement Class but who requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances relating thereto, against any of the Released Parties; and (iii) that the foregoing covenants and this Agreement shall be a complete defense to any of the Released Claims against any of the Releasees.

**9.     Representations and Warranties.**

9.1     The Class Representative represents and warrants that he has not assigned or otherwise transferred any interest in any of the Released Claims against any of the Released

Parties, and further covenant that he will not assign or otherwise transfer any interest in any of the Class Representative's Released Claims.

9.2     The Class Representative represents and warrants that he has no surviving claim or cause of action against any of the Released Parties with respect to any of the Released Claims.

9.3     The Parties, and each of them on his, her, or its own behalf only, represent and warrant that they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations among their counsel, that in executing the Settlement Agreement, they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing the Settlement Agreement by representations, statements or omissions pertaining to any of the foregoing matters by any Party or by any person representing any Party to the Settlement Agreement. Each of the Parties assumes the risk of mistake as to facts or law.

**10.    Releases.**

10.1    On the Effective Date, Releasors, including but not limited to the Class Representative, on his own behalf and on behalf of each Settlement Class Member, by operation of this Release and the Judgment set forth in the Final Approval Order, does hereby and shall be deemed to have fully, finally, conclusively, irrevocably, and forever released, settled, compromised, relinquished, and discharged any and all of the Releasees of and from any and all Released Claims and, without further action by any person or the Court, will be deemed:  (a) to have consented to dismissal of the Action and the dismissal with prejudice of any and all Released Claims; (b) to have released and forever discharged any and all Released Claims; and (c) to be

forever barred and enjoined from instituting or further prosecuting, in any forum whatsoever, including but not limited to any state, federal, or foreign court, or regulatory agency, or any arbitration forum, each and every Released Claim. The Parties agree that the Releasees will suffer irreparable harm if any Settlement Class Member takes action inconsistent with this paragraph, and that in that event, the Releasees may seek an injunction as to such action without further showing of irreparable harm in this or any other forum.

10.2    The Releasors acknowledge and agree that they are aware that they may hereafter discover material or immaterial facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of this Release, that it is possible that unknown facts, losses or claims exist, and that known losses may have been underestimated in amount or severity. This was explicitly taken into account in connection with this Agreement. It is the Releasors' intention to, and they do hereby, upon the Effective Date of this Agreement, fully, finally, and forever settle and release each and every one of the Releasees from each and every Released Claim.

10.3    Subject to Court approval, each Settlement Class Member shall be bound by this Agreement and all of their Released Claims shall be dismissed with prejudice and released even if they never received actual, prior notice of the Action or its Settlement in the form of the Notice or otherwise. The Release and agreements contained in this Section 10 shall apply to and bind all Settlement Class Members, including those Settlement Class Members whose Notices are returned as undeliverable, and those for whom no current address can be found, if any.

10.4    On the Effective Date, Releasors hereby release the Releasees from each and every Released Claim.

10.5    Promptly after the Effective Date, Settlement Class Members shall dismiss with prejudice all claims, actions or proceedings that are released pursuant to this Agreement.  In the event any such actions or proceedings are not dismissed and Wells Fargo learns of the action, Wells Fargo may provide notice to the Settlement Class Member of this Settlement and request dismissal of the action.

**11.    Opt Out Rights.**

11.1    A Settlement Class Member who wishes to be excluded from the Settlement Class must do so in writing.  In order to opt out, the Class Member must complete and send to the Settlement Administrator, at the address listed in the Notice and on the Settlement Website, the Request to Opt Out page of the Claim Form that is postmarked no later than the Opt-Out Deadline, as specified in the Notice.  The Request to Opt Out must: (a) identify the case name; (b) identify the name and address of the person requesting exclusion; (c) be personally signed by the person requesting exclusion; (d) contain a statement that indicates a desire to be excluded from the Settlement Class, such as "I hereby request that I be excluded from the proposed Settlement Class in the Action"; and (e) affirm that the individual had valid and unexpired DACA status and were denied one of the relevant credit products.  The Request to Opt Out must also include the Official Documentation, a copy of either (1) an I-797 Approval Notice from an I-821D; or (2) a Work Authorization Card containing the code "C-33" to show either current, valid and unexpired DACA status or valid and unexpired DACA status at the time of the denial of the application.  Mass or class opt outs shall be void.

11.2    Any Settlement Class Member who does not opt out of the Settlement in the manner described herein shall be deemed to be part of the Settlement Class upon the expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments.

11.2.1 <u>Review Process</u>.   Prior to the Final Approval of the Settlement, the Settlement Administrator shall confirm that each Request to Opt Out was facially valid, in that it is in the form required, that each Request to Opt Out includes the required affirmations and information, that each Request to Opt Out was submitted in a timely fashion, that the claimant is a Member of the California Class or National Class, and that the Request to Opt Out otherwise meets the requirements of this Agreement.  Full compliance with the requirements of the terms of this Agreement and the Request to Opt Out, along with submission of Official Documentation, shall be necessary for the submission of a Request to Opt Out, and the absence of any of these requirements shall invalidate the proffered claim.  The Settlement Administrator shall verify the Official Documentation by comparing the documentation received to samples of the Official Documentation mutually agreed upon by the Parties.  All such criteria shall be strictly enforced. Requests to Opt Out that do not meet the requirements as set forth in this Agreement shall be rejected.  This shall include but is not limited to any failure to provide complete and accurate information, any failure to make the required representations and attestations, any failure to provide required supporting documentation, any failure to fully execute the Request to Opt Out, and any failure to timely submit the Request to Opt Out and Official Documentation.  The Settlement Administrator shall have the authority to determine whether the submission of a Request to Opt Out and Official Documentation is complete and timely.   The Settlement Administrator's determinations in this regard shall be final and non-appealable.

11.3    Any Settlement Class Member who desires to opt out must take timely affirmative written action pursuant to this Section, even if the person desiring to opt out of the Class (a) files or has filed a separate action against any of the Released Parties, or (b) is, or becomes, a putative or actual class member in any other class action filed against any of the Released Parties.

11.4    Any Settlement Class Member who properly opts out of the Settlement Class shall not: (a) be bound by any orders or judgments relating to the Settlement; (b) be entitled to relief under, or be affected by, the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Settlement.

11.5    The Settlement Administrator shall provide Class Counsel and Defense Counsel with a list of all timely Requests to Opt Out within seven (7) business days after the Opt-Out Deadline.

11.6    Notwithstanding the foregoing, a Class Member shall have the right to revoke a properly and timely submitted request for exclusion if a notice of the Class Member's election to revoke his or her exclusion is sent to the Settlement Administrator, postmarked on or before the Opt-Out Deadline.

**12.    Objections.**

12.1    Overview.  Any Settlement Class Member may object to the Settlement.  To object, the Settlement Class Member must comply with the procedures and deadlines in this Agreement.

12.2    Process.  Any Settlement Class Member who wishes to object to the Settlement must do so in writing on or before the Objection Deadline, as specified in the Notice and Preliminary Approval Order.  The written objection must be sent to the Clerk of Court no later than the Objection Deadline.

12.3    Form of Objection.  The requirements to assert a valid written objection shall be set forth in the Notice and on the Settlement Website, and, to be valid, the written objection must be made on the Objection page of the Claim Form and include: (a) the case name and number; (b) the name, address, telephone number of the Settlement Class Member objecting and, if represented by counsel, of his/her counsel; (c) the reasons for the objection; (d) a statement of whether he/she

DocuSign Envelope ID: 834E94D6-6B11-4354-921A-2201731 4B54D

intends to appear at the Final Approval Hearing, either with or without counsel; and (e) affirm that the individual had valid and unexpired DACA status and was denied one of the relevant credit products. The Objection must also include the Official Documentation, either a copy of (1) an I-797 Approval Notice from an I-821D; or (2) a Work Authorization Card containing the code "C-33" to show either current, valid and unexpired DACA status or valid and unexpired DACA status at the time of the denial of the application. The Objection page of the Claim Form will instruct the Settlement Class Member to send the Official Documentation only to the Settlement Administrator, to ensure that Official Documentation is not placed on file on the public docket or otherwise disclosed to the public.

12.4   <u>Waiver of Objection</u>.  Any Settlement Class Member who fails to object to the Settlement in the manner described in the Notice and consistent with this Section shall be deemed to have waived any such objection subject to a final determination by the Court, and shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by appeal or other means.

12.4.1 <u>Review Process</u>.   Prior to the Final Approval of the Settlement, the Settlement Administrator shall confirm that each Objection meets the requirements set forth in this Agreement, including that each Objection is in the form required, that each Objection is signed and includes the required affirmations and information, that each Objection was submitted in a timely fashion, that each claimant is a Member of the California Class or National Class and has submitted Official Documentation. The Settlement Administrator shall verify the Official Documentation by comparing the documentation received to samples of the Official Documentation mutually agreed upon by the Parties. All such criteria shall be strictly enforced.

DocuSign Envelope ID: 834E94D6-6B11-4354-921A-2201731AB54D

The Settlement Administrator shall have the authority to determine whether the Objection meets the requirements of this Agreement and was submitted timely and whether the Official Documentation is valid.  The Settlement Administrator's determinations in this regard shall be final and non-appealable.  Within seven (7) business days of the Objection Deadline, the Settlement Administrator shall provide a report to the Court setting forth a list of Objections that meet the above guidelines.  The Court shall have the ultimate determination of whether an Objection has been appropriately made, and the Court may seek *in camera* review of Official Documentation if requested.

12.5    <u>Appearance</u>.  Subject to approval of the Court, any Class Member who submits a written objection in accordance with this Section and the Notice may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable. The Objection page of the Claim Form will request that if the objecting Settlement Class Member  files with the Clerk of the Court a notice of intention to appear at the Final Approval Hearing by the Objection Deadline ("Notice of Intention to Appear"), such notice shall include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing.

## 13.    <u>Termination</u>.

13.1    In the event that the Settlement set forth in this Agreement is not approved without changes by the Court or, if one of the conditions upon which the Agreement is based is not satisfied, or if the Court determines that it lacks jurisdiction to approve the Settlement, or if there is a court order from another court that takes jurisdiction over some or all of the Claims, or if there is a regulator determination that frustrates the purpose of and protection of the Settlement, or in

the event that the Effective Date does not occur, no further payments shall be made by Wells Fargo

to anyone in accordance with the terms of this Agreement, the Parties will bear their own costs

and fees with regard to the efforts to obtain Court approval, the Conditionally Amended Complaint

filed pursuant to the Joint Stipulation accompanying the Motion for Preliminary Approval of

Settlement will be deemed withdrawn and the prior Complaint shall again become the operative

Complaint, and this Agreement shall be deemed null and void with no effect on the Action

whatsoever.  Reductions in the amount of the requested Incentive Award or Attorneys' Fees and

Expenses shall not be deemed a substantial change necessitating termination of the Settlement.

13.2    Failure of the Court to enter the Preliminary Approval or Final Approval Order in

its entirety or in a similar form without material changes thereto as determined by Wells Fargo,

Class Counsel or the Class Representative will be grounds for Wells Fargo, Class Counsel or the

Class Representative to terminate the Settlement and the terms of this Agreement.  If any material

portion of the Agreement or the Final Approval Order is vacated, modified, or otherwise altered

on appeal, Wells Fargo, Class Counsel or the Class Representative may, in their sole discretion,

within fourteen (14) calendar days of such appellate ruling, declare that the Agreement has failed

to become effective, and in such circumstances the Agreement shall cease to be of any force and

effect.

13.3    In the event that there are not at least 50 Settlement Class Members making Claims,

or if more than 5 Settlement Class Members or more than 1% of the total Settlement Class

Members making Claims exclude themselves from the Settlement Class, Wells Fargo shall have

the absolute discretionary right (but not the obligation) to terminate this Settlement and Agreement

and in such case, each and every one of Wells Fargo's obligations under this Agreement shall

cease to be of any force and effect, and this Agreement and any orders entered into in connection

therewith shall be vacated, rescinded, cancelled, and annulled (except for any provision included in the Preliminary Approval Order in the same or substantially the same form as paragraph 21 of the Preliminary Approval Order attached as Exhibit 3 hereto). If Wells Fargo exercises this option, the Parties shall return to the status quo in the Action as if the Parties had not entered into this Agreement. In addition, in such event, the Agreement and all negotiations, court orders, and proceedings relating thereto shall be without prejudice to the rights of the Parties, and each of them, and evidence relating to the Agreement and all negotiations shall not be admissible or discoverable in the Action or in any other proceeding. Wells Fargo must exercise this option pursuant to this paragraph at least fifteen (15) days prior to the Final Approval Hearing, by giving written notice of such exercise to Class Counsel.

13.4    If one of the Parties exercises a right herein to terminate or rescind this Agreement or this Agreement is not approved by the Court pursuant to the proposed Final Approval Order, this Agreement, the conditional Class certification provided herein, the Settlement proposed herein (including any modifications made with the consent of the Parties), and any action taken or to be taken in connection therewith shall be terminated and shall become null and void and have no further force or effect, the Preliminary Approval Order shall be vacated (except for any provision included in the Preliminary Approval Order in the same or substantially the same form as paragraph 21 of the Preliminary Approval Order attached as Exhibit 3 hereto); the Parties shall be restored to their respective positions existing prior to the execution of this Agreement without prejudice; and the Parties' rights and obligations with respect to the use of this Agreement and the Settlement contemplated hereby will be subject to Section 14 hereof. In addition, neither this Agreement, the preliminary certification of the Class, the Preliminary Approval Order, nor any other document in any way relating to any of the foregoing, shall be relied on, referred to, or used

by anyone in any way for any purpose in connection with any further proceedings in this Action and/or any action, lawsuit, arbitration, or proceeding involving a Released Claim.

**14.**    **Certification of Settlement Class For Settlement Purposes**.

      14.1    After the Preliminary Approval Order and no later than fourteen (14) days before the Final Approval Hearing, the Class Representative shall move for Final Approval of the Settlement and entry of Final Judgment and shall request that the preliminary certification of the Settlement Class for settlement purposes be made final.

      14.2    If the Settlement is not granted final approval and the Final Approval Order is not entered in the same or substantially the same form as Exhibit 4 hereto, the certification of the above-described Settlement Class shall be automatically vacated and shall not constitute evidence or a binding determination that the requirements for certification of a class for any other purposes in this or any other action can be or have been satisfied.  In such circumstances, Wells Fargo reserves and shall have all rights to challenge certification of a Settlement Class or any other class for any other purpose in the Action or any other action on all available grounds as if no Settlement Class had been certified.

**15.**    **Attorneys' Fees and Expenses, Incentive Awards, and Individual Payments**.

      15.1    Attorneys' Fees and Expenses.

      15.1.1  Any application for Attorneys' Fees and Expenses shall not exceed Five Hundred Thousand Dollars ($500,000) and shall be filed at least thirty-five (35) calendar days prior to the Final Approval Hearing.

      15.1.2  Wells Fargo will not object to Class Counsel seeking preliminary and final approval from the Court for an award of Attorneys' Fees and Expenses in the Action in an amount not to exceed Five Hundred Thousand Dollars ($500,000).  Class Counsel agree that the amounts

of such costs and fees awarded shall compensate them for all legal work in the Action up to and including the date of Final Judgment, including any appeal of the Judgment, as well as for all legal work and costs that may be incurred in the Action after the date of Final Judgment.  In the event the Court awards Class Counsel less than $500,000 in Attorneys' Fees and Expenses, this Settlement Agreement shall nonetheless remain in full force and effect and the other benefits or payments due or to become due shall not be increased or changed.  In no event shall Wells Fargo be obligated to pay Attorneys' Fees and Expenses in an amount greater than $500,000 in connection with the Action.

15.1.3  The procedure for and the grant or denial or disallowance by the Court of the application for Attorneys' Fees and Expenses is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the applications for Attorneys' Fees and Expenses or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the Finality of Judgment approving the Agreement and the Settlement, except as provided for in Section 13.

15.1.4  Within twenty-one (21) days after the Effective Date or entry of the an order approving the application for attorneys' fees (whichever is later), Wells Fargo shall make payment of the Attorneys' Fees and Expenses awarded by the Court (not to exceed $500,000) to the Settlement Administrator, to be distributed, pursuant to wire instructions in writing from Class Counsel.  In accepting this payment, the Class Representative and Class Counsel, on behalf of themselves and all Settlement Class Members, acknowledge that the payment and method of payment under this Agreement are in full satisfaction of any and all claims, rights, and demands that Class Counsel, the Class Representative, or the Settlement Class had, have, or may claim to

have in the future for attorneys' fees, costs, expenses, or any other payment in connection with this Action or this Agreement, up to the date of final judgment. Wells Fargo shall have no responsibility for allocation or distribution of the award among Class Counsel.

15.1.5 A Form 1099 for this payment will be filed. Class Counsel shall cooperate with the Settlement Administrator to provide all information necessary to process the payment including completing any requested tax forms (e.g., IRS Form W-9 and applicable tax identification numbers). The Settlement Administrator and Wells Fargo shall have no responsibility for, and no liability whatsoever with respect to any tax obligations or any allocation among the Class Representative and Class Counsel, and/or any other person who may assert some claim thereto, of any award, payment or credit issued or made in this Action or pursuant to this Agreement, including but not limited to any award or payment pursuant to this Section 15. Class Counsel and the Class Representative shall alone be responsible for the reporting and payment of any federal, state, and/or local income or other form of tax on any payment made pursuant to this Section 15. No Party shall be deemed the prevailing party for any other purposes of the Action.

15.2   <u>Incentive Awards to Class Representative</u>. Class Counsel shall be entitled, subject to Court approval, to apply to the Court for an incentive award to the Class Representative in an amount not to exceed $5,000 to Peña in recognition of the time and effort he expended in his role as a class representative (the "Incentive Award"). Wells Fargo will not oppose Class Counsel's request for the Incentive Awards provided it is consistent with this Agreement.

15.2.1 Within twenty-one (21) days after the Effective Date or entry of an order approving the application for the Incentive Award to the Class Representative (whichever is later), and upon the Class Representative's submission of a Form W-9 to the Settlement Administrator, Wells Fargo shall make the Incentive Award payment to the Settlement Administrator, to be

distributed pursuant to payment instructions in writing from Class Counsel.  Class Counsel shall

be responsible for delivering payment on the Incentive Award to the Class Representative after

receipt of payment from the Settlement Administrator.  A Form 1099 for the payment of any

Incentive Award will be filed.

**16.**   **Stay of Discovery and Other Proceedings.**

16.1    To the extent the Action has not already been stayed by the Court, upon execution

of this Agreement, the Parties shall discontinue all discovery activity or related proceedings in the

Action.

16.2    Upon the Effective Date, and notwithstanding any of the other provisions in this

Agreement, the Defendants shall have no obligation to preserve documents and evidence with

respect to Released Claims, and the Class Representative and Class Counsel shall not pursue any

spoliation claims or other actions or sanctions against Wells Fargo with respect to documents or

evidence related to the Released Claims.

**17.**   **Return/Destruction of Discovery Materials.**

17.1    The Parties agree that the terms of the Protective Order govern the dealings of the

Parties with respect to materials produced in discovery in this Action and shall continue in force

after the Effective Date of the Settlement.  Accordingly, within sixty (60) days of the Effective

Date, the Parties and their counsel of record, and any consultants or experts retained by the Parties

or their counsel of record, shall use their best efforts to locate all Confidential and Attorney's Eyes

Only Discovery Material (as the terms are defined in the Protective Order) produced in the Action

and return such Confidential and Attorney's Eyes Only Discovery Material to counsel of record

for the producing party or destroy all originals or reproductions (whether in electronic, hard copy,

or other form) of the Confidential and Attorney's Eyes Only Discovery Material subject to the

exceptions contained in paragraph 13 of the Protective Order.  The Parties acknowledge that their duty to return or destroy all Confidential and Attorney's Eyes Only Discovery Material is a continuing duty and the Parties agree to return or destroy any such material found in the future.

17.2     Within sixty (60) days of the Effective Date, counsel of record shall make written certification that they have used their best efforts to search for all Confidential Information, that they have instructed the Class Representative, Wells Fargo, and all consultants or experts to return or destroy Confidential Information, and that, to the best of their knowledge, they have retained no originals or copies of any Confidential Information.  The Parties acknowledge that their duty to return or destroy all Confidential Information is a continuing duty and the Parties agree to return or destroy any such information found in the future.

17.3     Notwithstanding this Section, the Parties shall be excused from any duty to return or destroy Confidential and Attorney's Eyes Only Discovery Material to the extent necessary to comply with outstanding court orders or with judicial and non-judicial subpoenas, civil investigative demands or other compulsory process.

17.4     The Court shall retain jurisdiction to ensure compliance with the Protective Order.

**18.     Media, Confidentiality, and Non-Disparagement.**

18.1     The Parties, including their Counsel, agree that the terms of this Settlement shall remain confidential and not be disclosed by any Party until the Settlement Agreement is filed in connection with the Class Representative's Motion for Preliminary Approval.

18.2     The Parties agree that any press release must be approved by the Parties. The Parties further agree that Class Counsel will issue press statements to address the Agreement and that statements will be negotiated with Wells Fargo in advance of issuance.  Class Counsel and the Class Representative agree not to make any direct written solicitations to Class Members to make

DocuSign Envelope ID: 834E94D6-6B11-4354-921A-22017311B54D

claims, opt out of the settlement or object to the settlement, unless approved by Wells Fargo in writing.  This provision shall not restrict Class Counsel's ability to communicate with and/or advise individual Class Members or individuals on the Notice List, or prevent Class Counsel from describing to Class Members or individuals on the Notice List in non-disparaging language the basic terms of the settlement and how to make a claim, through social media or other means.

18.3    Neither Plaintiff nor Class Counsel will make any disparaging statements (oral or written), directly or indirectly, to the media or general public about Wells Fargo related to this case or settlement.  Similarly, neither Wells Fargo nor Defense Counsel will make any disparaging statements (oral or written), directly or indirectly, to the media or general public about Plaintiff related to this case or settlement.  Disparaging statements are statements that are false, misleading, or might tend to cast the Parties in a negative light, regardless of their truth or falsity

## 19.    Notices.

19.1    All notices (other than the Notice to Class Members) required by the Agreement shall be made in writing and communicated by mail and email to the following addresses:

All notices to Class Counsel shall be sent to Class Counsel c/o:

Ossai Miazad
Michael N. Litrownik
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
om@outtengolden.com
mlitrownik@outtengolden.com

All notices to Wells Fargo or Defense Counsel shall be sent to Defense Counsel c/o:

K. Issac deVyver
Karla Johnson
McGuireWoods LLP
Tower Two-Sixty

DocuSign Envelope ID: 834E94D6-6B11-4354-821A-2201731AB54D

260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Telephone: (412) 667-6000
kdevyver@mcguirewoods.com
kjohnson@mcguirewoods.com

**20.    Miscellaneous Provisions.**

20.1    Cooperation.  The Parties: (a) acknowledge that it is their intent to consummate this

Agreement; and (b) agree to cooperate to the extent reasonably necessary to effect and implement

all terms and conditions of the Agreement and to exercise their best efforts to accomplish the

foregoing terms and conditions of the Agreement.

20.2    No Admission.  The Agreement compromises claims which are contested in good

faith, and it shall not be deemed an admission by any of the Parties as to the merits of any claim

or defense.  The Parties agree that the amounts paid in settlement and the other terms of the

Agreement were negotiated in good faith by the Parties and at arm's length with the assistance of

a mediator and reflect a settlement that was reached voluntarily after consultation with competent

legal counsel.  Neither the Agreement nor the Settlement, nor any act performed or document

executed pursuant to, or in furtherance of, the Agreement or the Settlement:  (a) is or may be

deemed to be or may be used as an admission of, or evidence of, the validity of any Released

Claim, or of any wrongdoing or liability of the Releasees, or any of them; or (b) is or may be

deemed to be or may be used as an admission of, or evidence of, any fault or omission of the

Releasees, or any of them, in any civil, criminal, or administrative proceeding in any court,

administrative agency, or other tribunal.  The Class Representative and Class Counsel agree not to

argue or present any argument, and hereby waive any argument, that Wells Fargo could not contest

(or is estopped from contesting) class certification and/or proceeding collectively on any grounds

if this Action were to proceed; this Agreement shall not be deemed an admission by, or ground for

estoppel against, Wells Fargo that class certification and/or proceeding collectively in the Action is proper or cannot be contested on any grounds.

20.3 <u>Exhibits</u>. All of the exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

20.4 <u>Amendment/Modification</u>. The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest. The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement. Class Counsel, on behalf of the Class, are expressly authorized by the Class Representative to take all appropriate action required or permitted to be taken by the Class pursuant to the Agreement to effect its terms, and also are expressly authorized to enter into any modifications or amendments to the Agreement on behalf of the Class which they deem appropriate.

20.5 <u>Entire Agreement</u>. The Agreement and the related documents entered at the time of this Agreement or referenced herein constitute the entire agreement among the Parties hereto concerning the Settlement of the Action. No representations, warranties, or inducements have been made to any Party concerning the Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, each Party shall bear its own costs and attorney fees.

20.6 <u>Authority</u>. Each person executing the Agreement or any of its exhibits on behalf of any Party hereto hereby warrants that such person has the full authority to do so. The Parties agree that electronic signatures for each Party are acceptable.

20.7   <u>Counterparts</u>.  The Agreement may be executed in one or more counterparts, including by signature transmitted by facsimile or by email in PDF format.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

20.8   <u>Successors and Assigns</u>.  The Agreement shall be binding upon, and inures to the benefit of, the heirs, executors, successors, and assigns of the Parties hereto; but this Agreement is not designed to and does not create any third-party beneficiaries. However, the terms of this Agreement shall not be binding on any third-party purchaser of loans or assets subject to this Agreement.

20.9   <u>No Third-Party Rights or Beneficiaries</u>.  Except as expressly provided for herein, no government agency or official can claim any rights under this Agreement or Settlement, whether with respect to the conduct that is the subject of the Releases, or the funds (or remainder of funds) paid or used in the Settlement.  There are no third party beneficiaries created or implied.

20.10   <u>Jurisdiction</u>. The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement until such time that the Court enters an order dismissing the Action with prejudice.

20.11   <u>Governing Law</u>. The Agreement and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of California, and the rights and obligations of the Parties to the Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to its choice of law principles.

20.12   <u>Drafting</u>. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either Party.  No Party shall

be deemed the drafter of this Agreement.  The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the Parties and their counsel.  Each Party and their counsel cooperated in the drafting and preparation of the Agreement.  In any construction to be made of the Agreement, the Agreement shall not be construed against any Party and the canon of contract interpretation to the contrary shall not be applied.

20.13   <u>Recitals</u>.   The recitals set forth above shall be and hereby are terms of this Agreement as if set forth herein.  The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

20.14   <u>No Collateral Attack</u>.  The Settlement Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of notices of the Settlement after the Final Judgment is entered.

20.15   <u>Dispute Resolution</u>.   In the event a Party, a Class Member, or any individual claiming to be a Class Member raises a dispute as to an individual's membership in the Class or the determination of the Class Member's distribution, the Parties shall meet and confer as to how to resolve the dispute.  If the Parties are unable to resolve the dispute, it will be resolved by mediator Hunter J. Hughes.

*Remainder of Page Left Blank*

Dated: _____ 6/16/2020 _____, 2020     CLASS REPRESENTATIVE
EDUARDO PEÑA

By: _____

EDUARDO PEÑA


Dated: _____, 2020     WELLS FARGO BANK, N.A.

By: _____

Name: _____

Title: _____

Dated: _____, 2020          CLASS REPRESENTATIVE
                                          EDUARDO PEÑA

                                          By: _____
                                              EDUARDO PEÑA

Dated: _____, 2020          WELLS FARGO BANK, N.A.
       2020-06-16 20:32:22 GMT
                                                 E-SIGNED by Craig Baldauf
                                          By: ___on 2020-06-16 20:32:22 GMT___

                                          Name: Craig Baldauf_____

                                          Title: _Deputy General Counsel_____

# Exhibit 1

*Eduardo Peña v. Wells Fargo Bank, N.A.*,
**[Case No. 19-cv-4065-MMC]**

**United States District Court**
**Northern District of California**

# If you had Deferred Action for Childhood Arrivals ("DACA") at the time you applied for and were denied a direct auto loan from Wells Fargo, you could get one or more cash payments from this class action settlement.

*This is a court-authorized notice.  This is not a solicitation from a lawyer.*

An individual with DACA who applied for and was denied a direct auto loan ("Plaintiff") sued Wells Fargo Bank, N.A. ("Wells Fargo") under federal civil rights law (Section 1981 of the Civil Rights Act of 1866) and fair lending and credit laws (the Equal Credit Opportunity Act and the Fair Credit Reporting Act), alleging that Wells Fargo discriminated against him by denying his application due to his immigration status, provided him with an inaccurate statement of reasons for the denial of credit, and conducted a hard credit check without a permissible purpose.  The Plaintiff and Wells Fargo have now settled this lawsuit.  In connection with the settlement, Wells Fargo will change its lending practices for its direct auto loan lines of business to make loans available to current and valid DACA recipients.  Wells Fargo will also make cash payments to DACA recipients who were denied credit.

- If you live anywhere in the United States other than California, you may be eligible for a cash payment of up to $300 for each denial of a direct auto loan.  If you live in California, you may be eligible for a cash payment of up to $2,500 for each denial of a direct auto loan.

- You are receiving this notice because Wells Fargo has identified you as a potential DACA recipient who applied to Wells Fargo and was denied a direct auto loan between July 16, 2017 and the present, due to your immigration status.  **Because Wells Fargo's records do not identify which applicants had or have DACA, you must establish your eligibility to be a class member and receive payment.**

- Visit the settlement website at www.WFDACALawsuit.com for additional details about the settlement.  You may also get additional information by calling the Settlement Administrator at XXX-XXX-XXXX.

- Your legal rights may be affected whether you act or don't act.  Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT |
|---|
| | If you applied for and were denied a direct auto loan from Wells Fargo and had valid, unexpired DACA status at the time of your application, you may demonstrate your eligibility to receive up to $300 per each denial of credit or, if you lived in California, up to $2,500 per each denial of credit by completing the enclosed Claim Form. |

*You may also submit this form online at www.WFDACALawsuit.com.

| | |
|---|---|
| **SUBMIT A CLAIM AND BE PREPARED TO DEMONSTRATE YOUR ELIGIBILITY** | If you did not have DACA at the time you were denied a direct auto loan by Wells Fargo, then you are not a part of the settlement, you cannot submit a Claim Form, and you will receive no settlement money, but you will also not be bound by any judgment or settlement.<br><br>To submit a claim, you need to complete and submit the enclosed form on or before [**DATE**].  The Claim Form requires that you affirm: (i) that you applied for and were denied at least one direct auto loan from Wells Fargo; (ii) between July 16, 2017 and [DATE]; (iii) that at the time of each denial, you had current and valid DACA status, a Social Security number, and a United States address; and (iv) that you are prepared to provide official documentation of your current, valid and unexpired DACA status or your valid and unexpired DACA status at the time of your denied application for which you are making a Claim, either via an I-787 Approval notice or a work authorization card containing the code "C-33."  You can submit your Verified Claim Form via mail, email to [**e-mail address**], or online at: www.WFDACALawsuit.com.  After you submit the form, someone will follow up with you to confirm your documentation. |
| **DO NOTHING** | If you had DACA at the time you were denied a direct auto loan by Wells Fargo and you do nothing, you will not receive **any** payment and will not be able to sue Wells Fargo separately about the same legal claims in this lawsuit. |
| **EXCLUDE YOURSELF** | If you wish to exclude yourself ("opt out") from the settlement you must follow the directions outlined in Paragraph 10 below. If you exclude yourself, you will receive no payment and you cannot object to the settlement. **Your exclusion request must be postmarked no later than XX, 2020.** |
| **OBJECT** | You may write to the Court about why you believe the settlement is not fair or reasonable.  You must object in writing in order to appear at the Fairness Hearing to speak to the Court about the fairness of the settlement.  **You must send a written objection postmarked no later than XX, 2020.** |

- Your rights and options, and the deadlines to exercise them, are explained in this notice.  To demonstrate your eligibility and either stay in the class or exclude yourself, you must act before [DATE].

The Court in charge of this case still has to decide whether to give final approval to the settlement. Class Member payments will be made if the Court approves the settlement and after appeals, if any, are resolved.  Please be patient.

# BASIC INFORMATION

## 1. Why did I get this notice and what is this lawsuit about?

This lawsuit claims that Wells Fargo unlawfully discriminated against DACA recipients by making them ineligible for direct auto loans.  It also claims that Wells Fargo unlawfully pulled DACA recipients' credit reports without a permissible purpose, and unlawfully misstated the reason their applications for credit were denied.  This settlement obtained different relief for people who lived in California at the time their application was denied (the "California Class") and everyone else (the "Nationwide Class"), due to the different protections available under California and federal laws.

Wells Fargo denies Plaintiff's claims and maintains that its policies complied with the law.

The Parties have now settled this lawsuit and a Settlement Administrator has issued this notice.  In connection with this settlement, Wells Fargo has agreed to change its lending policies to make DACA recipients eligible for direct auto loans and to make cash payments to members of the California Class and the Nationwide Class.

Wells Fargo's records show that you (1) submitted one or more applications to Wells Fargo for a direct auto loan during the time period covered by this case; (2) had a U.S. address at the time of each application; (3) had a valid Social Security number at the time of each application(s); and (4) were denied at least one direct auto loan under certain denial codes related to citizenship or residency status.  Wells Fargo's records do not indicate who had DACA at the time of these applications, which means that you and others receiving this notice may or may not have DACA, and those who do have DACA will need to demonstrate that they do to receive one or more cash payments.

The Court ordered that you be sent this notice because the proposed settlement may apply to you and you have a right to know about it and all your options before the Court decides whether to approve the settlement.

## 2. Why is this a class action and who is involved?

In a class action, one or more people called "Class Representatives" sue on behalf of other people who have similar claims. All those people together are the "Class" or "Class Members." The Class Representative and Class Members together are the "Plaintiffs," and in this case Wells Fargo is the "Defendant."  One court resolves the issues for everyone in the Class.

## 3. Why is there a settlement?

The Court did not decide in either Plaintiff's or Defendant's favor.  Both sides believe they would have won this lawsuit, but there was no ruling in favor of either party.  Instead, both sides agreed to a settlement, which avoids the costs, delays, and uncertainties associated with a trial, and ensures that you and other Class Members get a payment.  Plaintiff and Plaintiff's lawyers think the settlement is the best result for all Class Members and that the terms and conditions of the settlement are fair, reasonable, and adequate.

# WHO IS IN THE SETTLEMENT

## 4. How do I know if I am part of the Settlement?

You are a member of the **Nationwide Class** if you resided in anywhere in the United States other than California as noted in Wells Fargo's records and had valid, unexpired DACA status at the time you applied to and were denied at least one direct auto loan between July 16, 2017 and [DATE].

You are a member of the **California Class** if you resided in California as noted in Wells Fargo's records and had valid, unexpired DACA status at the time you applied to Wells Fargo and were denied at least one direct auto loan between July 16, 2017 and [DATE].

**If you do not have DACA now and did not have DACA in the past, you are not a Class Member, and your rights are not affected by this settlement.**

If you aren't sure about whether you qualify as a Class Member, you can contact the Claims Administrator at the address and phone number identified on the first page of this Notice.

# WHAT YOU GET FROM THE SETTLEMENT

## 5. What does the Settlement provide?

The Settlement provides cash payments and changes to Wells Fargo's lending policies.  First, Wells Fargo has agreed to change its policies so that DACA recipients are eligible for direct auto loans on the same terms and conditions as those loans are offered to U.S. citizens as long as there is an appropriate product.  In other words, Wells Fargo will not consider whether an applicant has DACA in deciding whether to offer credit.

Second, Wells Fargo has agreed to make cash payments to Class Members who timely submit a Verified Claim Form.  The number of cash payments will be based on each Class Member's number of applications and denials of direct auto loans from July 16, 2017 through [DATE] that are contained in Wells Fargo's direct auto loan application database.

**Nationwide Class Members**:  Wells Fargo has agreed to pay Nationwide Class Members (i.e., those outside California) who timely submit a Verified Claim Form up to $300 for each eligible credit denial, for a maximum Settlement Fund of $105,000 and a minimum Settlement Fund of $55,000 for the Nationwide Class.  In other words, for Nationwide Class Members, the payment amount per claim will start at $300 and will decrease if the number of claims exceeds 350.  For example, if individuals submit 400 claims, the payment amount per claim will be $262.50 (i.e., the capped amount of $105,000 divided by 400).

**California Class Members**:  Wells Fargo has also agreed to pay California Class Members who timely submit a Verified Claim Form up to $2,500 for each denial of credit during the applicable time period. The settlement will be funded based on how many claims are submitted via Verified Claim Forms, as follows:

• The first 110 claims from Verified Claimants from the California Class shall add $2,500 per claim to the fund up to $275,000.

- Any remaining claims from Verified Claimants from the California Class shall add $800 per claim to the fund up to $525,000.

In other words, for California Class Members the payment amount per claim (for each denial of credit) will start at $2,500 for each claim and will decrease if the number of claims exceeds the total amounts above.  For example, if individuals submit 200 claims, the cash payment for each claim will be $1,735 (i.e., (110 x $2,500) plus (90 x $800), all divided by 200).  If individuals submit 600 claims, the cash payment for each claim will be $875 (i.e., the capped amount of $525,000 divided by 600).

**Settlement Floor and Ceiling and Cy Pres**:  The maximum amount in the Settlement Funds for both classes is $630,000, and the minimum is $280,000, regardless of the number of claimants.  If the total amount of cash payments does not reach $280,000, the difference in the total amount of cash payments and $280,000 will be split evenly and distributed to United We Dream, a nonprofit that supports and advocates for the DACA community and other immigrant youth, and Consumer Action, a consumer rights nonprofit.

**Attorneys' Fees and Costs, Service Award, and Settlement Administration**:  Wells Fargo has also agreed to pay an additional amount of up to $500,000 to cover Class Counsel's attorneys' fees and costs, a $5,000 service award to the Class Representative, and $50,000 to cover the cost of administering the settlement.

## 6. How can I make a claim and when would I get my payment?

To receive a payment under the settlement, you must send in the Make A Claim section of the Claim Form, which is attached to this Notice.  Please read the instructions and certification carefully, fill out the forms completely and accurately, and submit the forms and any documents when requested, as applicable.  **Claim Forms must be sent to the Settlement Administrator, postmarked no later than [DATE] or submitted online pursuant to the instructions at** www.WFDACALawsuit.com**, by [DATE].**

You must complete the <u>entire</u> Claim Form and submit any required documentation to the settlement administrator.  Failure to do so may result in the denial of your Claim which means that you will receive <u>no</u> cash payment from this settlement.

Once the deadline for making claims has passed, the Court will hold a hearing on [insert fairness hearing date], to decide whether to approve the settlement.  If the judge approves the settlement, and there are no appeals, we estimate that checks will be mailed around [insert approximate date].  However, because it is always possible for there to be unexpected delays or appeals, it is possible that the payments will be delayed by a year or more, or that an appeals court will determine that the payments cannot be made.

We will provide regular updates of the status of the Settlement at www.WFDACALawsuit.com.  If your contact information changes, please submit your new contact information to the Settlement Administrator or Class Counsel via that website.

## 7. What am I giving up to get a payment?

If the Court grants final approval of the settlement, all Class Members who do not opt out of the Settlement are giving up (also called "releasing") their right to sue Wells Fargo for discrimination in connection with a denial of a direct auto loan due to a lack of U.S. citizenship or immigration status,

for conducting a credit check without permissible purpose, or for providing an inaccurate statement of reasons for the denial of credit.  This release includes, but is not limited to, claims under Section 1981 of the Civil Rights Act of 1866, the Unruh Act, FCRA, and ECOA.  Both California and Nationwide Class Members will give up these rights whether or not they choose to submit a Verified Claim Form.

# THE LAWYERS REPRESENTING YOU

**8. Do I have a lawyer in this case?**

The Court has decided that the lawyers at Outten & Golden LLP and Justice Catalyst Law are qualified to represent you and all Class Members.  These lawyers have been designated as "Class Counsel" based on a determination that they are capable and experienced in handling complex class actions, including discrimination and consumer class actions.

You can contact Class Counsel at:

OUTTEN & GOLDEN LLP
Ossai Miazad
Michael N. Litrownik
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000
Email: mlitrownik@outtengolden.com

Rachel Dempsey
One California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 638-8800
Email: rdempsey@outtengolden.com

JUSTICE CATALYST
Benjamin D. Elga
Brian James Shearer
Craig L. Briskin
JUSTICE CATALYST LAW
718 7th Street NW
Washington, D.C. 20001
518-732-6703
Email: brianshearer@justicecatalyst.org

**9. How will the lawyers be paid?**

Class Counsel will ask the Court to approve payment of up to $500,000 for their attorneys' fees and costs.  The Court may award less than these requested amounts.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to be able to sue Wells Fargo for the claims that are covered by the release in this lawsuit, you must exclude yourself from the Class.  This process is also sometimes referred to as "opting out."

**10. How do I opt out of the Settlement?**

To exclude yourself from the Settlement, you must submit the Request to Opt Out Page of the Claim Form to the Settlement Administrator with the following information: (a) the case name; (b) your name and address; (c) a signature; (d) a statement that indicates a desire to be excluded from the Settlement Class, such as "I hereby request that I be excluded from the proposed Settlement Class in the Action"; and (e) an affirmation that you were denied a direct auto loan and that you had valid and unexpired DACA status at the time of your application.  It must also include either a copy of your I-797 Approval Notice or a work authorization card containing the code "C-33" that is either current or was valid at the

time of your denied application or applications.  Your exclusion request must be postmarked no later than XX, 2020, and must be mailed to:

Peña v. Wells Fargo<br>
XXX

If you ask to be excluded, you will not receive a settlement payment, and you cannot object to the Settlement, but you will be able to separately sue Wells Fargo.

**However, if your request for exclusion is <u>late or deficient</u>, you will still be considered a part of the Settlement Class, you will be bound by the settlement and by all other orders and judgments in this lawsuit, and you will not be able to participate in any other lawsuits based on the claims in this case.**

# OBJECTING TO THE SETTLEMENT

If you remain in the class, you can tell the Court you do not agree with the Settlement or some part of it.

| **11. How do I tell the Court I don't like the Settlement?** |
| --- |

You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney.  All written objections must be made on the Objection page of the Claim Form and include: (a) the case name and number (*Peña v. Wells Fargo*, Case Number 19 Civ. 4065); (b) the name, address, telephone number of the Settlement Class Member objecting and, if represented by counsel, of his/her counsel; (c) the reasons for the objection; (d) a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel; and (e) an affirmation that the individual had valid and unexpired DACA status and was denied one of the relevant credit products.  Objections may be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Ave, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California, and must be filed or postmarked on or before [DATE].

Additionally, if you choose to make a written objection, you must send either a copy of (1) an I-797 Approval Notice from an I-821D; or (2) a Work Authorization Card containing the code "C-33," to show valid and unexpired DACA status that is either current or was valid at the time of the denial of your application or applications, as well as a copy of the objection page of the Claim Form, to the Settlement Claims Administrator at the address below.  **DO NOT SEND THESE DACA/WORK AUTHORIZATION DOCUMENTS TO THE COURT.**

[address]

# THE COURT's FAIRNESS HEARING

The Court will hold a fairness hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you do not have to.

### 12. When and where will the Court decide whether to approve the Settlement?

The Court will hold a fairness hearing at [insert time and date], at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, in Courtroom 7 on the 19th Floor, before the Honorable Maxine Chesney, United States District Judge. Due to the ongoing COVID-19 pandemic, the fairness hearing may be conducted telephonically or virtually. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Chesney will listen to people who wish to speak at the hearing, if any. The Court may also decide how much to pay Class Counsel and the Representative. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take. The fairness hearing may be postponed without further notice to the Class. If you plan to attend the hearing, you should check www.WFDACALawsuit.com or the Court's PACER site at https://ecf.cand.uscourts.gov to confirm that the date has not been changed.

### 13. Do I have to come to the hearing?

No. Class Counsel represent you and will answer any questions Judge Chesney may have. But you are welcome to come at your own expense. If you send a comment (including an objection), you do not have to come to Court to talk about it. As long as you submitted it on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

### 14. May I speak at the hearing?

You may ask the Court for permission to speak at the fairness hearing. To do so, you must send a letter to the Class Action Clerk at the address listed in section 11, saying that it is your "Notice of Intention to Appear at the Fairness Hearing in *Peña v Wells Fargo*, Case Number 19 Civ. 4065." You must include your name, address, telephone number, and signature. Your Notice of Intention to Appear must be postmarked or emailed no later than [insert deadline]. This requirement may be excused upon a showing of good cause.

You cannot speak at the hearing if you have opted out or excluded yourself, because the case no longer affects you.

# GETTING MORE INFORMATION

### 15. Are there more details about the Settlement?

This Notice is intended to be a summary of the terms of the Settlement. The Settlement Agreement, Second Amended Complaint, and this Notice are all available at www.WFDACALawsuit.com.

You may also obtain this information by contacting the Settlement Administrator at [insert phone number], class counsel at Outten & Golden LLP at (415) 638-8800, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States

District Court for the Northern District of California at 450 Golden Gate Avenue, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

By order of the United States District Court for the Northern District of California.


Dated:  [DATE]

# Exhibit 2

*Peña v. Wells Fargo, N.A.*
**Class Action Settlement**
**Claim Form and Instructions**

---

**You may be eligible to receive one or more cash payments if you had DACA at the time you applied for and were denied a direct auto loan from Wells Fargo between July 16, 2017 and [DATE].**

**Please read this Claim Form carefully.**

---

<u>**Instructions**</u>

1.  **The purpose of this Claim Form.** To receive money from this Settlement, you must sign and submit Section A of this Claim Form either (a) via www.WFDACALawsuit.com, (b) to [email address], or (c) to [mailing address]. To be valid, completed Claim Forms must be postmarked or received by [deadline]. If you do not sign and submit this Claim Form by [deadline], you will receive no money from this Settlement. To opt out of this Settlement, you must complete and submit Section B of this Claim Form pursuant to the instructions therein. To object to this Settlement, you must complete and submit Section C of this Claim Form pursuant to the instructions therein.

2.  **This is confidential.** All information you provide on this Claim Form will be kept confidential to the greatest extent possible. This information will be viewed only by: (a) the Court-appointed Settlement Administrator, (b) Class Counsel, (c) Wells Fargo's lawyers, including persons in Wells Fargo's Office of the General Counsel, as necessary, and (d) the Court (if the Court requests it, and subject to appropriate confidentiality protections).

3.  **Completeness**. To receive money from this Settlement, you must complete the applicable section of the Claim Form and be prepared to submit documentation supporting your eligibility upon request.

## Section A: Make A Claim

Wells Fargo's credit application databases and records indicate that you applied for and were denied a direct auto loan sometime between July 16, 2017 and [Preliminary Approval Date], and that you may be a DACA recipient.  Each credit denial will be referred to as a "Timely Denial."

If you had DACA status at the time of each Timely Denial, you may be eligible for a payment of up to $300 per Timely Denial (if you live in any state other than California) or up to $2,500 per Timely Denial (if you live in California).  To be eligible for this payment, you must sign and date the following sworn statement and provide your address and the last four digits of your Social Security Number:

I, (print your name, address, and last 4 digits of SSN)

_____

_____,
declare, under penalty of perjury, that I applied to Wells Fargo for and was denied at least one direct auto loan sometime between July 16, 2017 and [Preliminary Approval Date] and therefore have one or more Timely Denials from Wells Fargo. I further declare that at the time of each such Timely Denial, I had valid, unexpired DACA status, a U.S. address, and a valid Social Security number. I further declare that upon request, I can provide documentary proof of either current, valid and unexpired DACA status or valid and unexpired DACA status at the time of a denied application for which I am making this Verified Claim for inspection in the form of either a copy of (1) an I-797 Approval Notice from an I-821D; or (2) a Work Authorization Card containing the code "C-33." I understand that intentionally submitting false information on this form is a violation of the law.

I declare under penalty of perjury under the law of the United States of America that the foregoing information is true and correct.

_____   _____, 2020
              Your signature                              Date

Your Claim Form must be received by the Settlement Administrator or postmarked by [DATE]. A self-addressed envelope has been enclosed for returning the Claim Form.

Please submit this Claim Form to:
CLAIMS ADMINISTRATOR
[address]
[email address]
[fax number]
[website]

More information, including copies of the Notice sent to you by mail and e-mail, is available at www.WFDACALawsuit.com.  Please read the Notice carefully before completing this form.

**All documentation, including any copy you submit of an I-797 Approval Notice from an I-821D or a Work Authorization Card containing the code "C-33," will be requested at a later date, will be kept highly confidential, and will not be disclosed to the public or**

revealed on the court docket.  You will also need to provide a completed W-9 in order to receive payment.

## Section B: Request to Opt Out

*Only* submit this page if you do *not* want to be included in the Settlement and do *not* want to receive a payment.  If you did not have valid, unexpired DACA status at the time of your Timely Denial(s), you do not need to submit this form and your rights will not be affected by the Settlement.

**Name:** _____

**Address:** _____


I, (print your name) _____, declare, under penalty of perjury, that I applied to Wells Fargo for and was denied at least one direct auto loan between July 16, 2017 and [Preliminary Approval Date] and therefore have one or more Timely Denials from Wells Fargo. I further declare that at the time of each such Timely Denial, I had valid, unexpired DACA status, a U.S. address, and a valid Social Security number. I hereby request to be excluded from the proposed Settlement Class in *Peña v. Wells Fargo*, No. 19 Civ. 4065 (N.D. Cal.) and will provide documentary proof of either my current, valid and unexpired DACA status or valid and unexpired DACA status at the time of my denied application for inspection in the form of either a copy of (1) an I-797 Approval Notice from an I-821D; or (2) a Work Authorization Card containing the code "C-33."

I declare under penalty of perjury under the law of the United States of America that the foregoing information is true and correct.


_____  _____, 2020
              Your signature                                  Date


Please submit this opt-out form, along with a copy of either (1) an I-797 Approval Notice from an I-821D; or (2) a Work Authorization Card containing the code "C-33" to the Settlement Administrator on or before [DATE] at:

SETTLEMENT ADMINISTRATOR
[address]
[email address]
[fax number]
[website]

In order to be considered valid, this opt-out must be personally signed and submitted by you. Mass or class opt-outs shall be considered void and unenforceable.

## Section C: Objection

<u>***Only***</u> submit this page if you *do* want to be included in the Settlement, but would like to provide the Court with your objections to or other comments on the Settlement.  If you did not have valid, unexpired DACA status at the time of your Timely Denial(s), you do not have standing to object and your rights will not be affected by the Settlement.

***Peña v. Wells Fargo, N.A.***, No. 19 Civ. 4065 (N.D. Cal.)

Name: _____

Address: _____

Telephone Number: _____

Counsel's name and address (if represented):

_____

Reasons For Objection (continue on additional pages as necessary):

_____

_____

_____

_____

State whether you intend to appear at the hearing (please note whether with or without counsel):

_____

_____

I, (print your name) _____, declare, under penalty of perjury, that I applied to Wells Fargo for and was denied at least one direct auto loan sometime between July 16, 2017 and [Preliminary Approval Date] and therefore have one or more Timely Denials from Wells Fargo. I further declare that at the time of each such Timely Denial, I had valid, unexpired DACA status, a U.S. address, and a valid Social Security number and that I will provide documentary proof of either current, valid and unexpired DACA status or valid and unexpired DACA status at the time of my denied application for inspection in the form of either a copy of (1) an I-797 Approval Notice from an I-821D; or (2) a Work Authorization Card containing the code "C-33." I understand that intentionally submitting false information on this form is a violation of the law.

I declare under penalty of perjury under the law of the United States of America that the foregoing information is true and correct.

_____   _____, 2020
          Your signature                                  Date

## To submit your objection you must take *both* of the following steps by [DATE]:

1. Mail the above Objection Page to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Ave, San Francisco, CA 94102, or file it in person at any location of the United States District Court for the Northern District of California.

2. Submit a copy of either (1) an I-797 Approval Notice from an I-821D; or (2) a Work Authorization Card containing the code "C-33" to the Settlement Administrator at:

SETTLEMENT ADMINISTRATOR
[address]
[email address]
[fax number]
[website]

**Do not send your I-797 Approval Notice or Work Authorization Card to the District Court's Class Action Clerk. This documentation should be sent only to the Settlement Administrator so that it will be kept highly confidential and will not be disclosed to the public or revealed on the court docket.**

## If you intend to appear at the Final Approval Hearing:

1. You must file a Notice of Intention to Appear with the Class Action Clerk by the [Objection Deadline DATE] and include copies of any papers, exhibits, or other evidence that you or your counsel will present to the Court at the Final Approval Hearing.

# Exhibit 3

1    Jahan C. Sagafi   (Cal. Bar No. 224887)          Jamie D. Wells (SBN 290827)
2    Rachel Dempsey (Cal. Bar No. 310424)             **McGuireWoods LLP**
     OUTTEN & GOLDEN LLP                              Two Embarcadero Center
3    One California Street, 12th Floor                Suite 1300
     San Francisco, CA 94111                          San Francisco, CA  94111-3821
4    Telephone: (415) 638-8800                        Telephone:  (415) 844-9944
     Facsimile:  (415) 638-8810                       Facsimile:  (415) 844-9922
5    jsagafi@outtengolden.com
     rdempsey@outtengolden.com                        K. Issac deVyver (*pro hac vice*)
6                                                     Karla Johnson (*pro hac vice*)
7    Ossai Miazad (*pro hac vice*)                    Tower Two-Sixty
     Michael N. Litrownik (*pro hac vice*)            260 Forbes Avenue
8    685 Third Avenue, 25th Floor                     Suite 1800
     New York, NY 10017                               Pittsburgh, PA 15222
9    Telephone: (212) 245-1000                        Telephone: (412) 667-6000
     Facsimile:  (646) 509-2060                       Facsimile:  (412) 667-6050
10   om@outtengolden.com
     mlitrownik@outtengolden.com
11

12   *Attorneys for Plaintiff and the Proposed Classes*     *Attorneys for Wells Fargo Bank, N.A.*

13                         UNITED STATES DISTRICT COURT
14                        NORTHERN DISTRICT OF CALIFORNIA
                              SAN FRANCISCO DIVISION
15

16   EDUARDO PEÑA, individually and on behalf          CASE NO: 3:19-cv-04065-MMC
17   of all others similarly situated,
                                                        **[PROPOSED] ORDER PRELIMINARILY**
18                 Plaintiff,                           **APPROVING SETTLEMENT AND**
                                                        **PROVIDING FOR NOTICE**
19   vs.

20   WELLS FARGO BANK, N.A.,

21                 Defendant.

22

23

24

25

26

27

28
                                              1

1    WHEREAS, the above-entitled action is pending before this Court (the "Action");

2    WHEREAS, the parties having made application, pursuant to Federal Rule of Civil

3    Procedure 23(e), for an order approving the settlement of this Action, in accordance with the

4    Settlement Agreement and Release dated June 16, 2020 (the "Agreement"), which, together with

5    the exhibits annexed thereto, sets forth the terms and conditions for a proposed settlement of the

6    Action and for dismissal of the Action with prejudice upon the terms and conditions set forth

7    therein; and the Court having read and considered the Agreement and the exhibits annexed thereto;

8    and

9    WHEREAS, all defined terms herein have the same meanings as set forth in the Agreement;

10    WHEREAS, on June __, 2020, a hearing was held on the motion of Plaintiff to (1)

11    conditionally certify the Settlement Class; (2) preliminarily approve the parties' proposed class

12    action settlement; (3) appoint Plaintiff Eduardo Peña as the Class Representative, his counsel as

13    Class counsel, and JND Legal Administration as Settlement Administrator; (4) set the deadlines

14    for filing claims, written exclusions, or objections to the Agreement; (5) approve the forms of

15    notice to the Settlement Class and the claim form; and (6) schedule a hearing on the final approval

16    of the Agreement for _____, 2020 (the "Preliminary Approval Motion").

17    NOW, THEREFORE, IT IS HEREBY ORDERED:

18    1.    **Nature of Action.**  Plaintiff alleges that Defendant Wells Fargo Bank, N.A.

19    ("Wells Fargo") engaged in lending discrimination on the basis of alienage or immigration status

20    in violation of federal and California state law by excluding DACA recipients from access to

21    direct auto loans.

22    Wells Fargo disputes and denies all of Plaintiff's claims.  Wells Fargo contends that it has

23    fully complied with all applicable laws at issue in this matter.

24    2.    **Settlement.**  Plaintiff Eduardo Peña, individually and as class representative on

25    behalf of the Class, and  Wells Fargo (collectively the "Parties") have negotiated a potential

26    settlement to the Action to avoid the expense, uncertainties, and burden of protracted litigation, and

27

28

2

1   to resolve the Released Claims (as defined in the Agreement) against Wells Fargo and the

2   Releasees.

3        3.   **Review.**  At the preliminary approval stage, the Court's task is to evaluate whether

4   the settlement is within the "range of reasonableness."  4 Newberg on Class Actions § 11.26 (4th

5   ed. 2010).  In determining whether class action settlements should be approved, "[c]ourts judge the

6   fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits

7   against the amount and form of the relief offered in the settlement. [Citation omitted] . . . They do

8   not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands,*

9   *Inc.*, 450 U.S. 79, 88 n.14 (1981).  To determine if a class action settlement is "fair, reasonable,

10  and adequate," the district court must consider eight factors: "(1) the strength of the plaintiff's case;

11  (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining

12  class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of

13  discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7)

14  the presence of a governmental participant; and (8) the reaction of the class members of the

15  proposed settlement."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).

16  "[A] settlement agreement is presumptively valid...."  *Ruonavaara v. Harris Corp.*, No. CV 2:17-

17  2463 WBS CKD, 2018 WL 746498, at *1 (E.D. Cal. Feb. 6, 2018) (citation omitted).  Settlement

18  negotiations that involve arm's length, informed bargaining with the aid of experienced counsel

19  support a preliminary finding of fairness. *See Manual for Complex Litigation*, Third, § 30.42 (West

20  1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement

21  reached in arms'-length negotiations between experienced, capable counsel after meaningful

22  discovery.") (internal quotation marks omitted).

23       The Court has carefully reviewed the Agreement, including the plan of allocation and the

24  release of claims, as well as the files, records, and proceedings to date in the Action.  The Court

25  has also reviewed the declarations of Ossai Miazad and Craig Briskin in support of preliminary

26  approval.  The terms and conditions in the Agreement are hereby incorporated as though fully set

27

28

1   forth in this Order, and, unless otherwise indicated, capitalized terms in this Order shall have the

2   meanings attributed to them in the Agreement.

3       4.  **Jurisdiction.**  This Court has jurisdiction over the subject matter of the Action and

4   over all parties to the Action, including all Members of the Class, and venue in this Court is proper.

5       5.  **Preliminary Approval.**  Based on the review the Court has conducted, as set forth

6   in paragraph 3, the Court does hereby preliminarily approve the Agreement and the Settlement set

7   forth therein as fair, reasonable, and adequate, subject to further consideration at the Final Approval

8   Hearing described below.  The Court finds on a preliminary basis that the Settlement as set forth

9   in the Agreement falls within the range of reasonableness and was the product of informed, good-

10  faith, arms'-length negotiations between the Parties and their counsel, and therefore meets the

11  requirements for preliminary approval.  The Court finds and concludes that the assistance of an

12  experienced mediator in the settlement process supports the finding that the Settlement is non-

13  collusive.

14      6.  **Settlement Class.**  The Court conditionally certifies, for settlement purposes only

15  (and for no other purpose and with no other effect upon the Action, including no effect upon the

16  Action should the Agreement not receive Final Approval or should the Effective Date not occur),

17  a class defined as the collective group of all persons making up the National Class and the

18  California Class, defined as follows:

19      • "National Class" means those individuals who:

20          o (i) applied for credit from the Wells Fargo direct auto line of business; (ii)

21              between July 16, 2017 through the date of preliminary approval; (iii) who held

22              valid and unexpired DACA status at the time they applied for credit; (iv) who

23              were denied as set forth in the class data to be produced by Wells Fargo; and

24              (v) who were not California residents at the time they applied for credit as set

25              forth in the class data to be produced by Wells Fargo.

26          o Excluded from the National Class are Wells Fargo, all officers, directors, and

27              employees of Wells Fargo, and their legal representatives, heirs, or assigns,

28

4

and any Judges to whom the Action is assigned, their staffs, and their immediate families.

- "California Class" means those individuals who:

  o (i) applied for credit from the Wells Fargo direct auto line of business; (ii) between July 16, 2017 through the date of preliminary approval; (iii) who held valid and unexpired DACA status at the time they applied for credit; (iv) who were denied as set forth in the class data to be produced by Wells Fargo; and (v) who were California residents at the time they applied for credit as set forth in the class data to be produced by Wells Fargo.

  o Excluded from the California Class are Wells Fargo, all officers, directors, and employees of Wells Fargo, and their legal representatives, heirs, or assigns, and any Judges to whom the Action is assigned, their staffs, and their immediate families.

The Court finds, for settlement purposes only, that class certification under Fed. R. Civ. P. 23(b)(3) is appropriate in that, in the settlement context: (a) the Members of the Class are so numerous that joinder of all Class Members in the class action is impracticable; (b) there are questions of law and fact common to the Class which predominate over any individual question; (c) the claims of the Class Representative is typical of the claims of the Class; (d) the Class Representative and his counsel will fairly and adequately represent and protect the interests of the Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

7.      **Designation of Class Representatives and Class Counsel.**  The Court finds and concludes that Plaintiff Eduardo Peña as Class Representative has claims typical of and is an adequate representative of the members classes he proposes to represent.  The Court hereby appoints Eduardo Peña to serve as Class Representative.  The Court finds and concludes that Outten & Golden LLP and Justice Catalyst Law have extensive experience in prosecuting discrimination,

civil rights, and consumer rights class actions.  The Court hereby appoints Outten & Golden and Justice Catalyst Law as Class Counsel.

8.    **Final Approval Hearing.**  A hearing (the "Final Approval Hearing") shall be held before this Court, on _____, 2020, at _____.m., at the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102 to determine, among other things: (i) whether the proposed Settlement of the Action on the terms and conditions provided for in the Agreement is fair, reasonable, and adequate to the Class and should be approved by the Court; (ii) whether a Judgment as provided in Paragraph 1.24 of the Agreement should be entered; (iii) whether Settlement Class Members should be bound by the Release set forth in the Agreement; (iv) any amount of fees and expenses that should be awarded to Class Counsel and any award to the Class Representative for his representation of and service to the Class; (vi) to consider any Settlement Class Member's objections to the Settlement and/or any application by Class Counsel for payment or reimbursement of attorneys' fees, costs, and expenses and any application for an award to the Class Representative; and (vii) to rule upon such other matters as the Court may deem appropriate.  The Parties shall include the date of the Final Approval Hearing in the Notice to be mailed to the Settlement Class.

9.    **Class Notice.**  The Court approves the form, substance and requirements of the Notice of Proposed Settlement of Class Action (the "Notice") and the Claim Form annexed hereto as Exhibits 1-A and 1-B, respectively, as well as the reminder notice, annexed hereto as Exhibit 1-C, and the proposed communication to claimants regarding Official Documentation, annexed hereto as Exhibit 1-D.  The Court further finds that the form, content and mailing of the Notice, substantially in the manner and form set forth in Paragraph 9 of this Order, meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.  The Notice is based on the model forms supplied by the Federal Judicial Center and the Northern District of California's Procedural Guidance for Class Action Settlements, and it fairly, plainly, accurately, and reasonably informs potential Class Members of appropriate information about (1) the nature of this action, the definition of each Settlement Class, the identity of Class Counsel, and the essential

6

terms of the Settlement, including the plan of allocation and the programmatic relief, and includes the address for a website maintained by the Settlement Administrator that has links to the notice, motions for approval and for attorneys' fees and any other important documents in the case; (2) Plaintiff's forthcoming application for the Plaintiff's Service Award and Class Counsel's attorneys' fees and costs award; (3) how Class Members' individual settlement payments will be calculated, with examples; (4) this Court's procedures for final approval of the Settlement; (5) how to submit a Claim Form, object to, or opt out of the Settlement; (6) how to obtain additional information regarding this action and the Settlement, including instructions on how to access the case docket via PACER or in person at any of the Court's locations; and (7) the date of the Final Approval Hearing and that the date may change without further notice to the Settlement Class, and that Class Members may check the settlement website or the Court's PACER site to confirm that the date has not been changed.

The Court further finds and concludes that the proposed plan for distributing the Notice likewise is a reasonable method calculated to reach all individuals who would be bound by the Settlement.  Under this plan, the Settlement Administrator will distribute the Notice to all individuals on the Notice List by first-class mail and e-mail to their last known mailing and e-mail address, where the email address is readily available.  There is no additional method of distribution that is cost-effective and would be reasonably likely to notify potential Class Members who may not receive notice under this proposed distribution plan.  In addition, the Settlement Administrator will send reminder notices by email (where the email address is readily available) to those who have not submitted a claim, form, opt out form, or objection form as the response deadline approaches.

The Court further finds and concludes that the Notice List contains individuals with and without DACA who were denied direct auto loans by Defendant.  The Court further finds that because the Notice List also contains individuals without DACA, it is necessary for Class Members to demonstrate that they have DACA and that the proposed Notice plan does so in a reasonable method by requiring the submission of Official Documentation after final approval is

granted.  The Court further finds that the Settlement contains reasonable protections to maintain the confidentiality of such Official Documentation, including ensuring that Class Members submit it only to the Settlement Administrator, which will treat it with the highest level of confidentiality.

The Court hereby concludes that the proposed Notice and Notice plan are the best practicable under the circumstances and are reasonably calculated, under all the circumstances, to apprise potential Class Members of the pendency of the Action, to apprise persons who would otherwise fall within the definition of the Class of their right to exclude themselves from the proposed Class, and to apprise Class Members of their right to object to the proposed Settlement and their right to appear at the Final Approval Hearing.  The Court further finds that the Notice constitutes due and sufficient notice to all persons entitled thereto.

10.     **Settlement Administrator.**  Pursuant to Rule 53(c) of the Federal Rules of Civil Procedure, the Court appoints JND Legal Administration ("Settlement Administrator") to supervise and administer the notice procedure as more fully set forth below:

(a)     No later than thirty-five (35) days from the entry of this Order (the "Notice Mailing Date"), the Settlement Administrator shall cause a copy of the Notice, substantially in the form annexed as Exhibit 1-A hereto, together with the Claim Form, substantially in the form annexed as Exhibit 1-B hereto (though the Settlement Administrator shall have discretion to format the Notice in a reasonable manner to minimize mailing or administration costs), to be mailed by first class U.S. mail and e-mailed (to the extent email is readily available) to the last known mailing address and e-mail address of each individual on the Notice List;

(b)     No later than the Notice Mailing Date, the Settlement Administrator shall establish a website at www.WFDACALawsuit.com, and shall post on the website the Agreement and Exhibits including the Notice and Claim Form, and the operative Complaint in this Action;

(c)     Following the mailing of the Notice, the Settlement Administrator shall provide counsel with written confirmation of the mailing and publication via website;

8

(d)      No later than 30 days following the Notice Mailing Date, the Settlement Administrator shall cause a copy of the reminder notice, substantially in the form annexed as Exhibit 1-C hereto, to be emailed (where the email address is readily available) to each individual on the Notice List; and

(e)      The Settlement Administrator has prepared the CAFA notice in conformity with 28 U.S.C. § 1715.  The Court finds that Wells Fargo's obligations under CAFA are satisfied.

(f)      The Settlement Administrator shall otherwise carry out its duties as set forth in Section 6 of the Agreement.

11.    **Submission of Claim Forms.**  Class Members who wish to receive payment under the Settlement shall complete, sign, and return their Claim Form in accordance with the instructions contained therein.  Unless the Court orders otherwise, all Claim Forms must be postmarked no later than thirty (30) days before the Final Approval Hearing.  <u>Any Class member who does not timely and validly submit a Verified Claim Form within the time provided shall be barred from receiving payment under the Settlement, unless otherwise ordered by the Court, but shall nevertheless be bound by any Final Judgment entered by the Court.</u>

12.    **Exclusion from the Class.**  Any Class Member may, upon request, be excluded from the Class.  Any such Class Member must submit a written Request to Opt Out, postmarked no later than forty-five (45) days before the Final Approval Hearing.  The written Request to Opt Out must be sent to the Settlement Administrator.  To be valid, the Request to Opt Out must be made on the Request to Opt Out page of the Claim Form and (a) identify the case name, (b) identify the Class Member's name and address, (c) be personally signed by the person requesting exclusion, (d) contain a statement that indicates a desire to be excluded from the Settlement Class, (e) affirm valid and unexpired DACA status at the time of the denial, and (f) include Official Documentation as set forth in Section 11 of the Settlement Agreement.  All Class Members who submit valid, verified, and timely Requests to Opt Out in the manner set forth in this Paragraph shall have no rights under the Agreement and shall not be bound by the Agreement or any Final Judgment.  Mass or class opt outs shall not be allowed.  A Class Member who desires to opt out must take timely

9

affirmative written action pursuant to this Order and the Agreement, even if the person desiring to opt out of the Class (a) files or has filed a separate action against any of the Released Parties, or (b) is, or becomes, a putative class member in any other class action filed against any of the Released Parties.

13.   **Copies of Requests to Opt Out.**  The Settlement Administrator shall provide Class Counsel and Defense Counsel with a list of all timely Requests to Opt Out within seven (7) business days after the Opt-Out Deadline.

14.   **Entry of Appearance.**  Any member of the Class who does not exclude himself or herself from the Settlement Class may enter an appearance in the Action, at his or her own expense, individually or through counsel of his or her own choice.  If he or she does not enter an appearance, he or she will be represented by Class Counsel.

15.   **Binding Effect on Class.**  All Members who do not exclude themselves from the Settlement Class by properly and timely submitting an exclusion form shall be bound by all determinations and judgments in the Action concerning the Settlement, whether favorable or unfavorable to the Class.

16.   **Objections.**  Any Class Member who does not timely and validly exclude himself or herself from the Settlement Class may appear and show cause, if he or she has any reason why the proposed Settlement of the Action should not be approved as fair, reasonable and adequate, why a Final Judgment should not be entered thereon, why attorneys' fees and expenses should not be awarded to Class Counsel, or why an award should not be made to the Class Representative; provided, however, that no Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, or, if approved, the Final Judgment to be entered thereon approving the same, or any attorneys' fees and expenses to be awarded to Class Counsel or award made to the Class Representative, unless a written objection is filed with the Clerk of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, on or before forty-five (45) days before the Final Approval Hearing.  A copy of the objection must also be

mailed to Class Counsel and Defense Counsel, postmarked on or before forty-five (45) days before the Final Approval Hearing.  To be valid, the objection must be made on the objections page of the Claim Form and set forth, in clear and concise terms: (a) the case name and number (*Eduardo Peña, et al. v. Wells Fargo Bank, N.A.*, No. 3:19-cv-04065-MMC); (b) the name, address, and telephone number of the Settlement Class Member objecting and, if represented by counsel, of his/her counsel; (c) the reasons for the objection; (d) a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel; and (e) affirm that the individual had valid and unexpired DACA status and was denied one of the credit products.  The Objection must also include the Official Documentation as set forth in Section 12 of the Agreement, to be provided only to the Settlement Administrator.  Within seven (7) business days of the Objection Deadline, the Settlement Administrator shall provide a report to the Court setting forth a list of Objections that meet the above guidelines.  The Court shall have the ultimate determination of whether an Objection has been appropriately made, and the Court may seek in camera review of Official Documentation if requested.

17.     Any Class Member who does not make his or her objection in the manner provided shall be deemed to have waived such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement as incorporated in the Agreement, and to the award of attorneys' fees and expenses to Class Counsel and the payment of an award to the Class Representatives for their representation of the Class, unless otherwise ordered by the Court.

18.     **Appearance of Objectors at Final Approval Hearing.**  Any Class Member who files and serves a written objection in accordance with Paragraph 16 of this Order may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objector: (a) files with the Clerk of the Court a notice of intention to appear at the Final Approval Hearing by the Objection Deadline ("Notice of Intention to Appear").  The Notice of Intention to

Appear must include the identity of any witnesses that may be called to testify and copies of any papers, exhibits, or other evidence that the objector will present to the Court in connection with the Final Approval Hearing.  Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in the Agreement and Class Notice shall not be entitled to appear at the Final Approval Hearing and raise any objections.

19.     **Service of Motion for Final Approval.**  The motion in support of final approval of the Settlement shall be filed and served no later than fourteen (14) calendar days prior to the Final Approval Hearing and any responsive papers shall be filed and served no later than seven (7) calendar days prior to the Final Approval Hearing.

20.     **Fees, Expenses, and Awards.**  Class Counsel's application for Attorneys' Needs and Expenses shall be filed and served no later than thirty-five (35) calendar days prior to the Final Approval Hearing.  Neither Wells Fargo nor the Releasees shall have any responsibility for any application for Attorneys' Fees and Expenses submitted by Class Counsel, and such matters will be considered separately from the fairness, reasonableness, and adequacy of the Settlement.  At or after the Final Approval Hearing, the Court shall determine whether any application for Attorneys' Fees and Expenses, and any award to the Class Representatives for their representation of the Class, should be approved.

21.     **Releases.**  If the Settlement is finally approved, the Releasors shall release the Releasees from all Released Claims.

22.     **Use of Order.**  Neither this Order, the fact that a settlement was reached and filed, the Agreement, nor any related negotiations, statements, or proceedings shall be construed as, offered as, admitted as, received as, used as, or deemed to be an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of Wells Fargo.  This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. In no event shall this Order, the fact that a settlement was reached, the Agreement, or any of its provisions or any negotiations, statements, or proceedings relating to it in any way be used, offered, admitted, or referred to in the Action, in any other action, or in any judicial, administrative,

12

1  regulatory, arbitration, or other proceeding, by any person or entity, except by the Parties and only

2  the Parties in a proceeding to enforce the Agreement.

3        23.        **Continuance of Final Approval Hearing.** The Court reserves the right to continue

4  the date of the Final Approval Hearing without further notice to the Members of the Class, and

5  retains jurisdiction to consider all further applications arising out of or connected with the proposed

6  Settlement.  The Court may approve the Settlement, with such modifications as may be agreed to

7  by the Parties, if appropriate, without further notice to the Class.

8        24.        **Stay of Proceedings.**  All proceedings in this Action are stayed until further Order

9  of this Court, except as may be necessary to implement the Settlement or comply with the terms of

10  the Agreement.

11        25.        **Preliminary Injunction.**  Pending final determination of whether the Settlement

12  should be approved, and upon expiration of the Opt-Out Deadline, all Class Members who do not

13  timely and validly exclude themselves from the Settlement Class, and each of them, and anyone

14  who purports to act on their behalf, are preliminarily enjoined from directly or indirectly

15  maintaining, commencing, prosecuting, or pursuing directly, representatively, or in any other

16  capacity, any Released Claim subsumed and covered by the Release in the Agreement, including

17  in any court or arbitration forum.

18        26.        **Termination of Settlement.**  If:  (a) the Agreement is terminated as provided in

19  Section 13 of the Agreement; or (b) any specified material term or condition of the Settlement as

20  set forth in the Agreement is not satisfied as provided in Section 13 of the Agreement, then this

21  Order may not be introduced as evidence or referred to in any actions or proceedings by any person

22  or entity and shall be treated as vacated, *nunc pro tunc* (except Paragraph 22 of this Order shall

23  remain in effect), and each party shall be restored to his, her, or its respective position in this Action

24  as it existed prior to the execution of the Agreement.

25        27.        **No Merits Determination.**  By entering this Order, the Court does not make any

26  determination as to the merits of this case.

27

28

28.     **Authority.**   The Court hereby authorizes the Parties to take such further steps as necessary and appropriate to establish the means necessary to implement the terms of the Agreement.

29.     **Jurisdiction.**   This Court retains exclusive jurisdiction over the Action to consider all further matters arising out of or connected with the Agreement and the Settlement.

IT IS SO ORDERED.

DATED: _____          _____
                                THE HONORABLE MAXINE M. CHESNEY
                                SENIOR UNITED STATES DISTRICT JUDGE

14

# Exhibit 4

1 Jahan C. Sagafi   (Cal. Bar No. 224887)        Jamie D. Wells (SBN 290827)
2 Rachel Dempsey (Cal. Bar No. 310424)           **McGuireWoods LLP**
  OUTTEN & GOLDEN LLP                            Two Embarcadero Center
3 One California Street, 12th Floor              Suite 1300
  San Francisco, CA 94111                        San Francisco, CA  94111-3821
4 Telephone: (415) 638-8800                      Telephone:  (415) 844-9944
  Facsimile:  (415) 638-8810                     Facsimile:  (415) 844-9922
5 jsagafi@outtengolden.com
  rdempsey@outtengolden.com                      K. Issac deVyver (*pro hac vice*)
6                                                Karla Johnson (*pro hac vice*)
7 Ossai Miazad (*pro hac vice*)                  Tower Two-Sixty
  Michael N. Litrownik (*pro hac vice*)          260 Forbes Avenue
8 685 Third Avenue, 25th Floor                   Suite 1800
  New York, NY 10017                             Pittsburgh, PA 15222
9 Telephone: (212) 245-1000                      Telephone: (412) 667-6000
  Facsimile:  (646) 509-2060                     Facsimile:  (412) 667-6050
10 om@outtengolden.com
11 mlitrownik@outtengolden.com

12 *Attorneys for Plaintiff and the Proposed Classes*      *Attorneys for Wells Fargo Bank, N.A.*

13                        **UNITED STATES DISTRICT COURT**

14                       **NORTHERN DISTRICT OF CALIFORNIA**

15

16
17 EDUARDO PEÑA, individually and on behalf        CASE NO: 3:19-cv-04065-MMC-TSH
   of all others similarly situated,
                                                   **[PROPOSED] FINAL JUDGMENT AND**
18                Plaintiff,                        **ORDER OF DISMISSAL WITH**
                                                   **PRUJUDICE**
19 vs.
20
   WELLS FARGO BANK, N.A.,
21
                  Defendant.
22

23

24    **[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE**

25          This matter came before the Court for hearing pursuant to the Order of this Court dated

26 _____, 2020, on the application of the Parties for approval of the Settlement set forth in

27 the Settlement Agreement and Release dated _____, 2020 (the "Agreement").  On

28 _____, 2020, this Court granted preliminary approval to the proposed class action

settlement set forth in the Agreement between Plaintiff Eduardo Peña, individually and as class representative on behalf of the Class, and Defendant Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, the "Parties").  This Court also provisionally certified the Class for settlement purposes, approved the procedure for giving Class Notice to the members of the Class, and set a Final Approval Hearing to take place on _____, 2020.  The Court finds that due and adequate notice was given to the Settlement Class as required in the Court's Order.

The Court has reviewed the papers filed in support of the motion for Final Approval, including the Settlement Agreement and exhibits thereto, memoranda and arguments submitted on behalf of the Settlement Class, and supporting affidavits.

On _____, 2020, this Court held a duly noticed Final Approval Hearing to consider: (1) whether the terms and conditions of the Agreement are fair, reasonable and adequate; (2) whether a judgment should be entered dismissing the Settlement Class Members' Released Claims on the merits and with prejudice; and (3) whether and in what amount to award attorneys' fees and expenses to Class Counsel; and any award to the Class Representative for his representation of the Class.

Based on the papers filed with the Court and the presentations made to the Court by the Parties and by other interested persons at the Final Approval Hearing, it appears to the Court that the Settlement Agreement is fair, adequate, and reasonable, and in the best interests of the Settlement Class.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. **Definitions.**  This Judgment incorporates by reference the definitions in the Agreement, and all capitalized terms used, but not defined herein, shall have the same meanings as in the Agreement.

2. **Jurisdiction.**  This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Members of the Class, and venue in this Court is proper.

3. **No Merits Determination.**  By entering this Order, the Court does not make any determination as to the merits of this case.

4.     **Settlement Class.**  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally certifies this Action as a class action, with the Class defined as the collective group of all persons making up the National Class and the California Class, defined as follows:

- "National Class" means those individuals who:
  - (i) applied for credit from the Wells Fargo direct auto line of business; (ii) between July 16, 2017 through the date of preliminary approval; (iii) who held valid and unexpired DACA status at the time they applied for credit; (iv) who were denied as set forth in the class data produced by Wells Fargo; and (v) who were not California residents as indicated in the "home state" data field at the time they applied for credit as set forth in the class data to be produced by Wells Fargo.
  - Excluded from the National Class are Wells Fargo, all officers, directors, and employees of Wells Fargo, and their legal representatives, heirs, or assigns, and any Judges to whom the Action is assigned, their staffs, and their immediate families.

- "California Class" means those individuals who:
  - (i) applied for credit from the Wells Fargo direct auto line of business; (ii) between July 16, 2017 through the date of preliminary approval; (iii) who held valid and unexpired DACA status at the time they applied for credit; (iv) who were denied as set forth in the class data to be produced by Wells Fargo; and (v) who were California residents as indicated in the "home state" data field at the time they applied for credit as set forth in the class data produced by Wells Fargo.
  - Excluded from the California Class are Wells Fargo, all officers, directors, and employees of Wells Fargo, and their legal representatives, heirs, or assigns, and any Judges to whom the Action is assigned, their staffs, and their immediate families.

The Court finds, for settlement purposes only, that class certification under Fed. R. Civ. P. 23(a) and (b)(3) is appropriate in that, in the settlement context:  (a) the Members of the Classes

are so numerous that joinder of all Class Members in the class action is impracticable; (b) there are questions of law and fact common to each Class which predominate over any individual question; (c) the claims of the Class Representatives are typical of the claims of each Class; (d) the Class Representatives will fairly and adequately represent and protect the interests of the Class Members because their interests are co-extensive with those of the Class Members, and they have retained experienced counsel to represent them and the Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

5. **Designation of Class Representatives and Class Counsel.** The Court confirms the prior appointment of the Plaintiff Eduardo Peña as Class Representative, and the counsel of record representing the Class Representative in the Action as Class Counsel.

6. **Settlement Approval.** Pursuant to Federal Rule of Civil Procedure 23, this Court hereby approves the Settlement set forth in the Agreement and finds that the Settlement is, in all respects, fair, reasonable and adequate to the Parties. The Court further finds that the Settlement set forth in the Agreement is the result of good faith arm's-length negotiations between experienced counsel representing the interests of the Parties.  Accordingly, the Settlement embodied in the Agreement is hereby finally approved in all respects, there is no just reason for delay, and the Parties are hereby directed to perform its terms.

7. **Dismissal with Prejudice.** Final Judgment is hereby entered with respect to the Released Claims of all Settlement Class Members, and the Released Claims in the Action are hereby dismissed in their entirety with prejudice and without costs.  All claims in the Action are dismissed, and the case shall be closed pursuant to Paragraph 22 of this Order.  Nothing herein is intended to waive or prejudice the rights of Class Members who have timely excluded themselves from the Class, as identified on Exhibit 1 hereto.

8. **Releases.** The releases as set forth in Section 10 of the Agreement together with the definitions in Sections 1.1-1.49 relating thereto are expressly incorporated herein in all respects and made effective by operation of this Judgment.  The Court hereby approves the release provisions as contained and incorporated in Section 10 of the Agreement, including but not limited to the definitions of Released Claims, Releasors, Releasees and Unknown Claims.  The Releasors shall

be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged all Released Claims (including Unknown Claims) against the Releasees.

9.      **Permanent Injunction.**  The Releasors, including the Class Representative and all Settlement Class Members, and anyone claiming through or on behalf of any of them, are forever barred and enjoined from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction for the Released Claims.  The Releasors further are forever barred and enjoined from organizing Settlement Class Members, or soliciting the participation of Settlement Class Members, or persons who would otherwise fall within the definition of Settlement Class Members but who have requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint or counterclaim to include class allegations, or seeking class certification in a pending action in any jurisdiction based on or relating to any of the Released Claims).

10.      **Approval of Class Notice.**  The form and means of disseminating the Class Notice as provided for in the Order Preliminarily Approving Settlement and Providing for Notice constituted the best notice practicable under the circumstances, including individual notice to all Members of the Class who could be identified through reasonable effort.  Said Notice provided the best notice practicable under the circumstances of the proceedings and the matters set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice, and said Notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution.

11.      **Attorneys' Fees and Expenses.**  Plaintiff and Class Counsel have moved for an award of attorneys' fees, costs and expenses in the amount of $_____.  The Court has considered this application separately from this Judgment.  The Court finds that an award of $_____ in attorneys' fees, costs and expenses is fair and reasonable, and the Court approves of Class Counsel attorneys' fees, costs and expenses in this amount.

12.      **Class Representative Incentive Awards.**  The Court further finds that an incentive award for Plaintiff Eduardo Peña in the amount of $_____is fair and reasonable, and the

Court approves of the incentive award in this amount.  The Court directs the Settlement Administrator to disburse this award to Plaintiff Eduardo Peña as provided in the Settlement Agreement.

13.    **Use of Order.**  Neither this Order, the fact that a settlement was reached and filed, the Agreement, nor any related negotiations, statements or proceedings shall be construed as, offered as, admitted as, received as, used as, or deemed to be an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of Wells Fargo.  This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. In no event shall this Order, the fact that a settlement was reached, the Agreement, or any of its provisions or any negotiations, statements, or proceedings relating to it in any way be used, offered, admitted, or referred to in the Action, in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding, by any person or entity, except by the Parties and only the Parties in a proceeding to enforce the Agreement.

14.    **Continuing Jurisdiction.**  Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over the administration, consummation, enforcement, and interpretation of the Agreement, the Final Judgment, and for any other necessary purpose, including to ensure compliance with the Protective Order.

15.    **Termination of Settlement.**  In the event that the Settlement does not become effective in accordance with the terms of the Agreement, or the Agreement is terminated pursuant to Section 13 of the Agreement, the Parties shall be restored to their respective positions in the Action prior to the execution of the Agreement, the certification of the Settlement Class shall be automatically vacated, and this Judgment shall be rendered null and void (except Paragraph 13 of this Order shall remain in effect) to the extent provided by and in accordance with the Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

16.    **Implementation of the Agreement.**  The Parties are hereby authorized to implement the terms of the Agreement.

17. **Claim Review and Deficiency Process.**  The Settlement Administrator shall validate each Claim Form as directed in Section 5 of the Agreement.  Full compliance with the requirements of the terms of the Agreement and the Claim Form shall be necessary for the submission of a Verified Claim.  The Settlement Administrator shall have the authority to determine whether the submission of a Claim Form is complete and timely.  The Settlement Administrator's determinations in this regard shall be final and non-appealable.  Any Settlement Class Member whose claim is rejected shall be barred from receiving payment under the Settlement for that Claim but shall in all other respects be bound by the terms of the Agreement and by this Order.

18. **Reasonable Extensions.**  Without further order of this Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Agreement.

19. **Class Action Fairness Act (CAFA) Notice.**  Wells Fargo, through the Settlement Administrator, has provided notification to all appropriate federal and state officials regarding the Settlement as required by 28 U.S.C. § 1715.

20. **Class Notice List.**  No later than thirty (30) days after the Effective Date (as defined in the Agreement), the Settlement Administrator shall file with this Court, under seal pursuant to the Protective Order entered in this litigation (in order to protect the names, addresses, and other personal information of Class Members), a list of the names and addresses of all Members of the Class to whom the Class Notice was sent.

21. **Entry of Final Judgment.**  There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is hereby directed.

22. **Action Closed.**  The Clerk of the Court is hereby directed to close the Action.

1

2          IT IS SO ORDERED.

3

4

5   DATED: _____          _____
                                    THE HONORABLE MAXINE M. CHESNEY
6                                   SENIOR UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 5

## <u>REMINDER REGARDING WELLS FARGO DACA<br>LENDING DISCRIMINATION LAWSUIT</u>

Within the past month, you should have received a notice explaining that you may be eligible to participate in a class action settlement involving lending discrimination claims against Wells Fargo on behalf of DACA recipients.  **If you did not receive or no longer have the notice, please contact [Claims Administrator] or visit [website].**

**IMPORTANT:  Our records indicate that you have not yet submitted a Claim Form.  If you have DACA and would like to participate in the Settlement, you must complete the form and mail, fax, or email it to:**

**[Insert Settlement Administrator Address and Contact Information]**

**You can also submit the Claim Form at [insert website address].**

**<u>To participate, your form must be submitted no later than [end of claim period].</u>**

# Exhibit 6

Dear XXXX,

You recently received a court-authorized notice regarding the class action settlement in *Peña v. Wells Fargo, N.A.*, No. 19 Civ. 4065 (N.D. Cal.) and submitted a claim form.  As you were informed in the notice and affirmed in your claim form, you understood that you are required to provide official documentation regarding your DACA status to receive one or more cash payments from the settlement. You may satisfy this requirement by submitting a copy of either (1) an I-797 Approval Notice from an I-821D; or (2) a Work Authorization Card containing the code "C-33" to show either your current, valid, and unexpired DACA status, or your valid and unexpired DACA status at the time you were denied credit, at [email], [insert link here], or [address].  These documents must be received by no later than [DATE] for your claim to be processed.  In addition, you need to provide a completed copy of tax form W-9 in order to receive payment.

We understand that these documents contain sensitive personal information and can assure you that they will be kept highly confidential and will not be shared with third parties or filed publicly with the Court.  If you have any concerns related to the document validation process, please contact Counsel for Plaintiffs at:

[contact info]

Sincerely,
[JND]