Jahan C. Sagafi  (Cal. Bar No. 224887)
Rachel Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
jsagafi@outtengolden.com
rdempsey@outtengolden.com

Brian James Shearer*
Craig L. Briskin*
JUSTICE CATALYST LAW
718 7th Street NW
Washington, D.C. 20001
Telephone: (518) 732-6703
brianshearer@justicecatalyst.org
cbriskin@justicecatalyst.org

Ossai Miazad*
Michael N. Litrownik*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
om@outtengolden.com
mlitrownik@outtengolden.com

Benjamin D. Elga*
JUSTICE CATALYST LAW
81 Prospect Street, 7th Floor
Brooklyn, NY 11201
Telephone: (518) 732-6703
belga@justicecatalyst.org

*Attorneys for Plaintiff and the Proposed Class*
*admitted *pro hac vice*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO PEÑA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 19-cv-04065-MMC<br><br>**PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**<br><br>Judge: Maxine M. Chesney<br>Hearing Date: January 8, 2021<br>Hearing Time: 9:00 a.m.<br>Courtroom: 7, 19th floor |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 8, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7 on the 19th floor of this Court's San Francisco Courthouse, located at 450 Golden Gate Avenue in San Francisco, California, Plaintiff Eduardo Peña, individually and as a class representative on behalf of the Class, will, and hereby does, move this Court for (1) an award of $500,000 in attorneys' fees and costs; (2) approval of $50,000 for settlement administration expenses; and (3) a $5,000 service award for the Named Plaintiff for time spent in service of the Class.

As discussed more fully in the following memorandum, Class Counsel's request for attorneys' fees and costs is reasonable because, under the lodestar method for calculating fees, (1) the number of hours Class Counsel spent on this case is reasonable and (2) Class Counsel's hourly rates are reasonable. Further, a modest multiplier of 1.23 is appropriate in light of the outstanding result achieved in this complex and risky case. And, should the Court conclude it is appropriate to conduct a "constructive common fund" cross-check, the requested fee award is reasonable given the outstanding result and significant risk Class Counsel faced. Furthermore, the requested litigation expenses, including the requested settlement administration expenses of $50,000, were or will be necessarily and reasonably incurred. Finally, the proposed service award is reasonable and appropriate given the substantial time Plaintiff invested in making this complex and novel litigation possible, his contribution to its investigation and prosecution, and the significant risk to which he was exposed due to his public assertion of his and others' rights in this action.

The motion is based on this notice of motion and motion; the memorandum in support of the motion; the Declaration of Ossai Miazad in Support of Fees, Costs, and Service Awards ("Miazad Decl.") and accompanying exhibits; the Declaration of Craig Briskin ("Briskin Decl."); the Declaration of Jennifer Keough ("JND Decl."); the Declaration of Eduardo Peña ("Peña Decl."); the Court's record of this action; all matters of which the Court may take notice; and any oral evidence presented at the final approval hearing on the motion.

Dated: September 25, 2020

Respectfully submitted,

By: /s/ *Ossai Miazad*
Ossai Miazad

Ossai Miazad*
Michael N. Litrownik*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
om@outtengolden.com
mlitrownik@outtengolden.com

Jahan C. Sagafi (Cal. Bar No. 224887)
Rachel Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California St., 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
jsagafi@outtengolden.com
rdempsey@outtengolden.com

Benjamin D. Elga*
JUSTICE CATALYST LAW
81 Prospect Street, 7th Floor
Brooklyn, NY 11201
Telephone: (518) 732-6703
belga@justicecatalyst.org

Brian James Shearer*
Craig L. Briskin*
JUSTICE CATALYST LAW
718 7th Street NW
Washington, D.C. 20001
Telephone: (518) 732-6703
brianshearer@justicecatalyst.org
cbriskin@justicecatalyst.org

*admitted *pro hac vice*

*Attorneys for Plaintiff and the Proposed Class*

2

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................... 1

II. PROCEDURAL HISTORY ..................................................................... 1

III. ARGUMENT ........................................................................................ 3

    A.    Class Counsel's Requested Award for Fees and Costs is
Reasonable. ................................................................................... 3

        1.    The Lodestar Method of Calculating Fees is Appropriate
in this Case. ........................................................................ 3

        2.    Class Counsel's Request for Attorneys' Fees and Costs is
Reasonable Under the Lodestar Method. ............................. 5

              i.    The Number of Hours Class Counsel Spent
Litigating This Case is Reasonable. ........................... 6

                    a.    Class Counsel Achieved Excellent Results. ............... 7

                    b.    Class Counsel Prosecuted a Complex
Theory of Lending Discrimination. ............................ 7

                    c.    Class Counsel Used Appropriate Staffing
and Exercised Billing Judgment Regarding
the Number of Hours Worked. ................................... 9

              ii.    Class Counsel's Hourly Rates Are Reasonable. ...................... 9

        3.    A Multiplier to Enhance the Requested Lodestar is
Appropriate. ...................................................................... 12

        4.    A "Constructive Common Fund" Cross-Check Shows the
Request for Fees and Costs is Reasonable. ......................... 14

        5.    Class Counsel's Out-of-Pocket Expenses Are Reasonable. ............. 17

    B.    Class Counsel's Requested Cost for Settlement Administration Is
Reasonable for this Novel, Complex Settlement. .......................... 18

    C.    The Class Representative's Service Award Is Reasonable in Light
of His Significant Efforts in this Case and the Risk He Assumed
in Bringing It. .............................................................................. 18

IV. CONCLUSION ................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................................15

*Alvarez v. Farmers Ins. Exch.*,
    No. 14 Civ. 574, 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) .............................15

*Ballen v. City of Redmond*,
    466 F.3d 736 (9th Cir. 2006) ...................................................................................4

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) ...........................................................................18

*Betancourt v. Advantage Human Resourcing, Inc.*,
    No. 14 Civ. 1788, 2016 WL 344532 (N.D. Cal. Jan 28, 2016) .............................12

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ........................................................................ *passim*

*Blum v. Stenson*,
    465 U.S. 866 (1984) ..................................................................................................9

*Camacho v. Bridgeport Fin., Inc.*,
    523 F.3d 973 (9th Cir. 2008) .................................................................................10

*Charlebois v. Angels Baseball LP*,
    993 F. Supp. 2d 1109 (C.D. Cal. 2012) ...................................................................9

*Cicero v. DirecTV, Inc.*,
    No. 07 Civ. 1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) ..........................16

*Congdon v. Uber Techs., Inc.*,
    No. 16 Civ. 2499, 2019 WL 2327922 (N.D. Cal. May 31, 2019) ..........................14

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ...............................................................................19

*Cunningham v. Cty. of Los Angeles*,
    879 F.2d 481 (9th Cir. 1988) ...................................................................................5

*Davis v. City of San Francisco*,
    976 F.2d 1536 (9th Cir. 1992) ...............................................................................10

*del Toro Lopez v. Uber Techs., Inc.*,
    No. 17 Civ. 6255, 2018 WL 5982506 (N.D. Cal. Nov. 14, 2018)....................11, 13

Motion for Approval of
Fees and Service Award

*Donovan v. Poway Unified Sch. Dist.*,
    167 Cal. App. 4th 567 (2008) ................................................................14

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014) ...........................................................21

*Ellis v. Costco Wholesale Corp.*,
    No. 04 Civ. 3341, 2014 WL 12641574 (N.D. Cal. May 27, 2014) ...........4

*Fleury v. Richemont N. Am., Inc.*,
    No. 05 Civ. 525, 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008)................8

*Fulford v. Logitech, Inc.*,
    No. 08 Civ. 2041, 2010 WL 807448 (N.D. Cal. Mar. 5, 2010) (Chesney, J.) ..........................6

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (9th Cir. 1995) ....................................................................4

*Gomez v. H&R Gunlund Ranches, Inc.*,
    No. 10 Civ. 1163, 2011 WL 5884224 (E.D. Cal. Nov. 23, 2011) .....................15, 17

*Gutierrez v. Wells Fargo Bank, N.A.*,
    No. 07 Civ. 05923, 2015 WL 2438274 (N.D. Cal. May 21, 2015) .................11, 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................4, 5, 12

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ...............................................................................7

*In re Heritage Bond Litig.*,
    No. 02 ML 1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ............13

*In re High-Tech Employee Antitrust Litig.*,
    No. 11 Civ. 2509, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)............14

*Jefferson v. Chase Home Fin.*,
    No. 06 Civ. 6510, 2009 WL 2051424 (N.D. Cal. July 10, 2009) ............15

*Johnson v. Triple Leaf Tea Inc.*,
    No. 14 Civ. 1570, 2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) (Chesney, J.) ......................5

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ..................................................................12

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) .................................................................3

*Lee v. JPMorgan Chase & Co.*,
    No. 13 Civ. 511, 2015 WL 12711659 (C.D. Cal. Apr. 28, 2015)............13

iii

*In re Linkedin User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................................19

*Missouri v. Jenkins by Agyei*,
    491 U.S. 274 (1989) ........................................................................................................10

*Morales v. City of San Rafael*,
    96 F.3d 359 (9th Cir. 1996) ..............................................................................................4

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ...................................................................................5, 8, 9

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
    No. 14 MD 2541, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ......................................14

*Nat'l Fed'n of the Blind v. Target Corp.*,
    No. 06 Civ. 1802, 2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) .....................10, 14, 15, 17

*Nevarez v. Forty Niners Football Co., LLC*,
    No. 16 Civ. 07013, 2020 WL 4226517 (N.D. Cal. July 23, 2020) ....................................3

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .....................................................................15, 17

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .................................................................................18, 19, 20

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ............................................................................................15

*Parkinson v. Hyundai Motor Am.*,
    796 F. Supp. 2d 1160 (C.D. Cal. 2010) ..........................................................................14

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    483 U.S. 711 (1987) ........................................................................................................10

*Perez v. Wells Fargo*,
    No. 17 Civ. 454 (N.D. Cal.) ............................................................................................13

*Prison Legal News v. Schwarzenegger*,
    608 F.3d 446 (9th Cir. 2010) ..........................................................................................10

*Radcliffe v. Experian Info. Sols. Inc.*,
    715 F.3d 1157 (9th Cir. 2013) .........................................................................................20

*Rivas v. BG Retail, LLC*,
    No. 16 Civ. 6485, 2020 WL 264401 (N.D. Cal. Jan. 16, 2020) ................................15, 17

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..........................................................................................18

iv

*Rose v. Bank of Am. Corp.*,
No. 11 Civ. 2390, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)..........................14

*Rosenfeld v. U.S. Dep't of Justice*,
904 F. Supp. 2d 988 (N.D. Cal. 2012) ................................................................8, 10

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .........................................................................4, 5, 6, 18

*Steiner v. Am. Broadcasting Co., Inc.*,
248 F. App'x 780 (9th Cir. 2007) ...........................................................................13

*Stonebrae, L.P. v. Toll Bros., Inc.*,
No. 08 Civ. 221, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ..........................6, 9

*Superior Consulting Servs., Inc. v. Steeves-Kiss*,
No. 17 Civ. 6059, 2018 WL 2183295 (N.D. Cal. May 11, 2018) .........................11

*Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*,
460 F.3d 1253 (9th Cir. 2006) ..................................................................................10

*In re U.S. Bancorp Litig.*,
291 F.3d 1035 (8th Cir. 2002) ..................................................................................20

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
896 F.2d 403 (9th Cir. 1990) ....................................................................................10

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ....................................................................16, 19

*Vasquez v. USM Inc.*,
No. 13 Civ. 5449, 2016 WL 612906 (N.D. Cal. Feb. 16, 2016)...........................17

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ............................................................................13, 15

*Walsh v. CorePower Yoga LLC*,
No. 16 Civ. 05610, 2017 WL 4390168 (N.D. Cal. Oct. 3, 2017).....................11, 13

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
445 F. Supp. 3d 508 (N.D. Cal. 2020) .....................................................................19

*Wren v. RGIS Inventory Specialists*,
No. 06 Civ. 5778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ...........................12

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16 MDL 2752, 2020 WL 4212811 (N.D. Cal. July 22, 2020)........................20

*Zamora v. Lyft, Inc.*,
No. 16 Civ. 02558, 2018 WL 4657308 (N.D. Cal. Sept. 26, 2018)........................11

v

## Statutes

15 U.S.C. § 1681n(a)(3) ................................................................................................3

15 U.S.C. § 1691e(d) ...................................................................................................3

42 U.S.C. § 1988(b) .....................................................................................................3

Cal. Civil Code § 51 ....................................................................................................3

Cal. Civil Code § 52(a) ...............................................................................................7

## Other Authorities

5 Newberg on Class Actions § 15:52 (5th edition) ...................................................14

*Manual for Complex Litigation* § 21.7 (4th ed. 2020) .......................................6, 16

U.S. Citizenship & Immigration Servs., *Approximate Active DACA Recipients: Country of Birth as of February 28, 2019* at 5, https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/ ..........................................................................................................16

Motion for Approval of
Fees and Service Award

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION**

## I. INTRODUCTION

Plaintiff is a recipient of Deferred Action for Childhood Arrivals ("DACA") who was denied a direct automobile loan from Wells Fargo. Wells Fargo has agreed to settle his claims, and the claims of those similarly situated, in exchange for substantial monetary relief, and has committed to change its lending policies to make loans from its direct auto loan line of business available to DACA recipients on the same terms as to U.S. citizens, fully eliminating the harm challenged by the lawsuit. In conjunction with Plaintiff's forthcoming Motion for Final Approval of the Settlement, which will be submitted on December 23, 2020, Class Counsel respectfully move the Court for: (1) an award of attorneys' fees and reimbursement of reasonable out-of-pocket expenses of $500,000, (2) settlement administration expenses not to exceed $50,000, and (3) a service award of $5,000 for Plaintiff.

Using the lodestar method, an award of fees and costs of $500,000 is reasonable given the excellent results obtained by Class Counsel on behalf of the Class, the number of hours Class Counsel spent working on this litigation, and Class Counsel's reasonable hourly rates, along with a modest multiplier. To date, Class Counsel's fees and costs amount to $408,982.38, an amount that will continue to increase throughout the claims period and after final approval is granted. Similarly, Wells Fargo's willingness to pay all appropriate settlement administration expenses up to a cap of $50,000 is reasonable considering the complex nature of the settlement administration in this case and the number of potential class members who will receive notice. Finally, a service award of $5,000 for Mr. Peña is appropriate here because he took significant risks in bringing this lawsuit, including through revealing his immigration status and subjecting himself to discovery, and he advocated forcefully on behalf of the class, yielding an extraordinary result for the Class Members' benefit.

## II. PROCEDURAL HISTORY

Before filing this lawsuit, Class Counsel spent several months investigating the claims. Declaration of Ossai Miazad ("Miazad Decl.") ¶ 10. They conducted research into the facts of Plaintiff's claims as well as potential claims under the Equal Credit Opportunity Act ("ECOA")

and the Fair Credit Reporting Act ("FCRA"). *Id.* ¶ 11. On July 16, 2019, Plaintiff filed a putative class action complaint against Wells Fargo Bank, N.A., seeking to represent all persons within the jurisdiction of the United States who (1) were denied the right to contract for an auto loan by Wells Fargo because they had DACA status, and (2) did not receive a written notice of adverse action with an accurate statement of the reasons for their denial. ECF No. 1. The complaint asserted claims of alienage discrimination under 42 U.S.C. § 1981, and a violation of ECOA (15 U.S.C. § 1691 and 12 C.F.R. § 1002.9(a)). *Id.* Subsequently, on September 27, 2019, Plaintiff filed a First Amended Complaint adding a novel claim alleging that Wells Fargo had violated FCRA, 15 U.S.C. § 1681b(f), by conducting a hard credit inquiry without a permissible purpose because it had obtained Plaintiff's consumer report without any intention of using it to determine his eligibility for credit. ECF No. 27.

Wells Fargo moved to dismiss the First Amended Complaint on several grounds, including that Plaintiff failed to plead facts sufficient to state claims under ECOA and FCRA. ECF No. 39. After full briefing, on December 23, 2019, the Court granted Wells Fargo's motion in part, dismissing Plaintiff's ECOA and FCRA claims but granting leave to amend. ECF No. 54. Plaintiff filed a Motion for Leave to File a Partial Motion for Reconsideration, which the Court denied. ECF Nos. 63, 75.

On January 17, 2020, Plaintiff filed a Second Amended Complaint, repleading his claims under ECOA and FCRA. ECF No. 66. Shortly thereafter, the parties agreed to stay the case on February 7, 2020 and engage experienced private mediator Hunter Hughes to assist them in settlement discussions. ECF Nos. 81, 82; ECF No. 89-1 (Miazad Preliminary Approval Decl.) ¶ 20. The parties executed a binding term sheet on March 4, 2020, and then spent several months negotiating a long-form settlement agreement, which they signed on June 16, 2020. *Id.* ¶¶ 21-23.

Prior to staying the case, the parties engaged in discovery, including the exchange of written discovery requests and responses and the production of documents. *Id.* ¶ 13. The parties also exchanged information as to Wells Fargo's systems and denial codes, briefed issues as to the confidentiality of discovery materials, and were in the process of negotiating several discovery disputes at the time the case settled. *Id.* ¶ 16. During settlement negotiations, Wells Fargo

2

1 produced the direct auto lending eligibility policy. *Id.* ¶ 22.

2 **III. ARGUMENT**

3     **A. Class Counsel's Requested Award for Fees and Costs is Reasonable.**

4     Class Counsel request that the Court approve an award of attorneys' fees and costs of

5 $500,000. This request is reasonable and should be approved because Class Counsel's actual

6 lodestar of $400,471.90, which when combined with costs totals $408,982.38, is based on both a

7 reasonable number of hours expended litigating these vigorously contested claims brought under

8 a novel legal theory and reasonable hourly rates. At this stage, Class Counsel's request includes

9 a modest multiplier, which is reasonable given the outstanding result in this complex and risky

10 case, and which will decrease before and after final approval because of the significant work that

11 remains in administering the settlement. Additionally, though the Court need not conduct a

12 "constructive common fund" cross-check, should it decide to conduct one, the cross-check

13 confirms that Class Counsel's request is reasonable because of the significant value of the non-

14 monetary, programmatic relief and the risk Class Counsel incurred in bringing this case. Finally,

15 Plaintiff's request for approval of costs in the amount of $8,510.48 is reasonable because these

16 costs, including research, filing fees, and media outreach, were necessary and would typically be

17 billed to paying clients.

18     **1. The Lodestar Method of Calculating Fees is Appropriate in this Case.**

19     Plaintiff brought claims in this lawsuit under Section 1981, ECOA, and FCRA, which are

20 all fee-shifting statutes that permit prevailing parties to recover attorneys' fees and costs.

21 42 U.S.C. § 1988(b); 15 U.S.C. § 1691e(d); 15 U.S.C. § 1681n(a)(3). The parties also negotiated

22 a resolution for California Class Members who could have brought claims under California's

23 Unruh Act, which is also a fee-shifting statute. Cal. Civil Code § 51. "A party that obtains a

24 judicially enforceable settlement agreement that provides some of the relief sought is a

25 'prevailing party' for purposes of fee-shifting statutes." *Nevarez v. Forty Niners Football Co.,*

26 *LLC*, No. 16 Civ. 07013, 2020 WL 4226517, at *5 (N.D. Cal. July 23, 2020); *see also La*

27 *Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir.

28 2010). Here, Plaintiff has prevailed under federal and California law by achieving a settlement

that resolves Plaintiff's claims, as well as the claims of California Class Members. As discussed further below, the settlement provides outstanding monetary and programmatic relief. Accordingly, for purposes of assessing the reasonableness of Class Counsel's attorneys' fees and costs only, Plaintiff is a prevailing party.

The lodestar method is the appropriate method for assessing the reasonableness of attorneys' fees in cases brought under fee-shifting statutes where, as here, the relief is "not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("*In re Bluetooth*"); *see also Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003) (providing that for fee-shifting statutes, a fee request should be analyzed under the lodestar method); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (noting that "courts often use a lodestar calculation [in civil rights cases] because there is no way to gauge the net value of the settlement or any percentage thereof"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (9th Cir. 1995) ("Because the lodestar award is de-coupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation . . . an adequate fee irrespective of the monetary value of the final relief achieved for the class."); *Ellis v. Costco Wholesale Corp.*, No. 04 Civ. 3341, 2014 WL 12641574, at *3 (N.D. Cal. May 27, 2014) (applying lodestar method in case settled for both monetary and programmatic relief). Further, the Ninth Circuit has held that "the customary method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006) (citing *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996)); *see also Staton*, 327 F.3d at 965. Though the settlement provides significant monetary relief to Class Members, an important and highly valuable component of the settlement is programmatic: Wells Fargo has agreed to change its lending policies to make credit and loans available to DACA recipients on the same terms and conditions as it offers credit to U.S. citizens. Settlement Agreement, ECF No. 89-2 § 3.2.1. This relief is both "socially beneficial" and "not easily monetized." *In re Bluetooth*, 654 F.3d at 941-42. For these reasons, the lodestar method is the best approach for assessing the reasonableness

4

of Plaintiff's request for attorneys' fees and costs in this case.

**2.    Class Counsel's Request for Attorneys' Fees and Costs is Reasonable Under the Lodestar Method.**

Class Counsel's lodestar multiplier is currently 1.23, and given the added work to support final approval, address class member questions, and support class members who need assistance making use of the programmatic relief, this lodestar multiplier will decrease over time. Specifically, Class Counsel have worked more than 774 hours, with a lodestar value of $400,471.90, without being compensated for their time to date.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941; *see also Staton*, 327 F.3d at 965. Upon making that calculation, "[t]he district court may then adjust upward or downward based on a variety of factors." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Called a "multiplier," an upward adjustment recognizes, among other considerations, "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. *In re Bluetooth*, 654 F.3d at 942 (quoting *Hanlon*, 150 F.3d at 1029). The touchstone for analyzing a request for attorneys' fees is reasonableness. *In re Bluetooth*, 654 F.3d at 941. The lodestar figure is "presumptively reasonable." *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988).

Here, Class Counsel's requested award of attorneys' fees is reasonable. Class Counsel expended a reasonable number of hours on this vigorously contested litigation and their hourly rates are reasonable based on the market in this District and their experience in this field. Although Class Counsel seeks approval of a modest multiplier, Class Counsel's lodestar will increase – and that multiplier will decrease – during the coming months as Class Counsel continue to work to oversee the dissemination of notice, respond to Class Member inquiries, and seek final approval. *Johnson v. Triple Leaf Tea Inc.*, No. 14 Civ. 1570, 2015 WL 8943150, at *8 (N.D. Cal. Nov. 16, 2015) (Chesney, J.) (accounting for "future attorney time" in decision

whether attorneys' fees were reasonable).

Importantly, in this case Class Counsel negotiated fees and costs separately and subsequent to negotiating relief for the class. This fact supports a finding that the requested fee award is reasonable. *Fulford v. Logitech, Inc.*, No. 08 Civ. 2041, 2010 WL 807448, at *1 (N.D. Cal. Mar. 5, 2010) (Chesney, J.); *see also Manual for Complex Litigation* § 21.7 (4th ed. 2020) ("Separate negotiation of the class settlement before an agreement on fees is generally preferable."). Considering both the monetary and non-monetary value of the settlement, the Court should not find negotiated attorneys' fees unreasonable unless "the amount of fees [the defendant] agreed to pay in the settlement agreement [is] distinctly higher than the fees class counsel could have been awarded by the district court using the lodestar method" had the case been tried. *Staton*, 327 F.3d at 966. This is because "[a]bsent some unusual explanation, a defendant," fully informed and represented by counsel, "would not agree in a class action settlement to pay out of its own pocket fees measurably higher than it could conceivably have to pay were the fee amount litigated" and attorneys' fees awarded under the lodestar method. *Id.*

        **i.**       **The Number of Hours Class Counsel Spent Litigating This Case is Reasonable.**

Class Counsel devoted approximately 774.5 hours litigating this case. *See* Miazad Decl. ¶ 18. In accordance with Civil Local Rule 54, Class Counsel have attached affidavits summarizing the time spent and services provided by each timekeeper, as well as affidavits from attorneys at other law firms who have comparable hourly rates. *See, e.g.*, *Stonebrae, L.P. v. Toll Bros., Inc.*, No. 08 Civ. 221, 2011 WL 1334444, at *9 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521 F. App'x 592 (9th Cir. 2013). As set forth below, the number of hours that Class Counsel dedicated to this case is reasonable, given the excellent results that Class Counsel achieved and the complexity of the issues.[1]

---

[1]     At the Court's request, Class Counsel will submit *ex parte in camera*, under Civ. L.R. 54-5(b)(2), a true and correct copy of detailed billing records of time spent litigating the case-in-chief and settlement of this case, as well as detailed billing records of time spent preparing this motion. Class Counsel have not attached such records here because they include material

### a. Class Counsel Achieved Excellent Results.

"Where a plaintiff has obtained excellent results, his [or her] attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Here, the result Class Counsel obtained is excellent. First, Plaintiff secured the *maximum* degree of programmatic relief that Class Members could possibly obtain: Wells Fargo has agreed to extend loans through its direct auto line of business to current and valid DACA recipients on the same terms and conditions as U.S. citizens. Settlement Agreement, ECF No. 89-2 § 3.2.1. In other words, Wells Fargo will *not* consider DACA as a factor in evaluating credit risk or in underwriting, which benefits all DACA recipients nationwide. While it is difficult to quantify the value of this programmatic relief, even if 1,000 DACA recipients nationwide apply for credit each year for the next four years, and the availability of such credit is worth $2,000 (half the statutory penalty for depriving someone access to loans and credit under the Unruh Act), these changes are worth $2,000,000.

Second, California Class Members are eligible for individual awards of up to $2,500 per denial of a credit application, more than 60% of the statutory damages available under the Unruh Act for each discriminatory act. Cal. Civil Code § 52(a) (providing statutory damages of $4,000 per violation); ECF No. 89-1 (Miazad Preliminary Approval Decl.) ¶ 31. Third, National Class Members will also receive monetary relief – approximately $300 per denial, despite not having any statutory penalties available. *See* ECF No. 89 at 19. This is an excellent result because Plaintiff faced significant obstacles to valuing and modeling actual or economic damages for Wells Fargo's denial of credit to Class Members. *Id.* Class Counsel obtained this excellent result in the face of significant risk on both class certification and liability, as this case presented a novel theory with numerous unsettled issues.

### b. Class Counsel Prosecuted a Complex Theory of Lending Discrimination.

To achieve these extraordinary results, Class Counsel performed hundreds of hours of

protected by the attorney-client privilege and the attorney work product doctrine.

work. As the Ninth Circuit has explained, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112. In contingency fee cases, lawyers "are not likely to spend unnecessary time . . . in the hope of inflating their fees" because "[t]he payoff is too uncertain." *Id.* Courts in the Ninth Circuit have routinely considered the long hours of work necessary for such complex and protracted cases when calculating the "reasonable hours worked" component of the lodestar. *See, e.g.*, *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1004 (N.D. Cal. 2012); *Fleury v. Richemont N. Am., Inc.*, No. 05 Civ. 525, 2008 WL 3287154, at *5 (N.D. Cal. Aug. 6, 2008).

Here, Class Counsel were required to spend a significant amount of time on the case to succeed at each phase of this litigation. The core theory – that civil rights law prohibited a bank from refusing to lend to DACA recipients – was complex and involved numerous unsettled issues. In addition, Plaintiff had brought ECOA and FCRA claims, which had not been litigated in the related *Perez* lawsuit. ECF Nos. 1, 27. The FCRA claim in particular had not been brought before in any federal or state litigation. Wells Fargo sought to dismiss the complaint, which Plaintiff opposed. ECF Nos. 39, 43. After the Court granted the motion in part, ECF No. 54, Plaintiff sought reconsideration of that decision, ECF No. 63. In total, Plaintiff amended his complaint twice to refine his claims. ECF Nos. 27, 66. The parties also exchanged written discovery and produced documents, including documents and data relating to Wells Fargo's systems and denial codes, and were in the process of addressing various discovery disputes at the time they reached a settlement in principle. ECF No. 89-1 (Miazad Preliminary Approval Decl.) ¶¶ 13; 16. Wells Fargo also produced critical discovery for settlement purposes, including the direct auto financing lending policy. *Id.* ¶ 22. Throughout, Class Counsel confronted new issues and had to diligently research, prepare, and confer on strategy. Miazad Decl. ¶ 20. Class Counsel undertook this work with significant risk and uncertainty with respect to whether Plaintiff would succeed in certifying a class – not to mention winning on the merits. Courts have found that substantial fee requests in "contested and protracted" cases such as this one are reasonable. *Rosenfeld*, 904 F. Supp. 2d at 1004; *Fleury*, 2008 WL 3287154, at *5 (concluding that, while the hours billed were "substantial," they were spread out over several years and

8

involved "an extensive amount of work").  The hours Class Counsel spent prosecuting this case was essential to developing the claims and, as a direct result, led to the outstanding outcome achieved for Plaintiff and Class Members.

### c. Class Counsel Used Appropriate Staffing and Exercised Billing Judgment Regarding the Number of Hours Worked.

A core team of attorneys did the vast majority of the work in this case.  Three attorneys and one paralegal put in approximately 65% of the total hours expended on this case, and only six attorneys put in approximately 86% of the attorney hours on the case.  Miazad Decl. ¶ 19.  Wherever possible, Class Counsel assigned work to the lowest-billing attorney capable of doing the work.  *Id.* ¶ 22; *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1123 (C.D. Cal. 2012).

Due to the complexity and novelty of the claims, it was critical that Class Counsel confer regularly on strategy and the substance of the claims, which benefited the case and Class Members.  Miazad Decl. ¶ 21; *see also Charlebois*, 993 F. Supp. 2d at 1125 (declining to reduce class counsel's hours for "reviewing another's work or [for time] on internal communications"); *Moreno*, 534 F.3d at 1115 (holding that district courts should not speculate about whether "different staffing decisions might have led to different fee requests").

In calculating their hours worked, Class Counsel exercised sound billing judgment.  *Stonebrae, L.P.*, 2011 WL 1334444, at *7 (noting that counsel should make an effort to reduce "excessive, redundant, or otherwise unnecessary" hours).  First, Class Counsel from Outten & Golden eliminated any hours billed by time-keepers who worked on the case for fewer than five hours.  Miazad Decl. ¶ 23.  Second, Class Counsel analyzed their billing records and eliminated certain hours in the exercise of billing judgment.  *Id.* ¶ 25.

### ii. Class Counsel's Hourly Rates Are Reasonable.

Class Counsel's hourly rates are reasonable, as they are consistent with the market and in fact routinely paid by individual clients on an hourly basis.  An attorney's hourly rate is reasonable if it is in line with (1) those of attorneys who have "comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 866, 895 n.11 (1984), and (2) "prevailing market rates in

9

the relevant community," *Davis v. City of San Francisco*, 976 F.2d 1536, 1545-46 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993). "As a general rule, the forum district represents the relevant legal community." *Nat'l Fed'n of the Blind v. Target Corp.*, No. 06 Civ. 1802, 2009 WL 2390261, at *3 (N.D. Cal. Aug. 3, 2009); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).[2]

Recognizing the delay and risk of nonpayment of attorneys' fees, Courts typically base attorneys' fee awards based on current rates. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 282 (1989) ("In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987))); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 453-54 (9th Cir. 2010) (providing that courts have discretion to adjust attorneys' fee awards to current rates).[3] "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Class Counsel's rates are consistent with the market for attorneys with comparable experience in this district. Class Counsel are highly respected and accomplished class action and civil rights attorneys, who have secured significant victories in high-profile lawsuits, including other discrimination class actions on behalf of DACA recipients. Miazad Decl. ¶¶ 4-9; Ex. D (Declaration of Craig Briskin ("Briskin Decl.")) ¶¶ 4-7;[4] Ex. E (Declaration of Todd Jackson

---

[2]    The rates for paralegals and law clerks are likewise determined by "market rates." *Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006); *see also, e.g.*, *Rosenfeld*, 904 F. Supp. 2d at 1002.

[3]    Class Counsel have used current hourly rates for most timekeepers. However, some modified historical rates may be used for timekeepers who left the firm earlier in the case or for attorneys who moved from law clerk to associate status or associate status to partner during the pendency of the case. Miazad Decl. ¶¶ 28-29.

[4]    Unless otherwise stated, all exhibits referenced herein are attached to the Declaration of

10

("Jackson Decl.")) ¶¶ 6, 9; Ex. F (Declaration of Jim Finberg ("Finberg Decl.")) ¶ 18; Ex. G (Declaration of David A. Lowe ("Lowe Decl.")) ¶ 12.

Given their accomplishments, as well as their years of experience, Class Counsel's rates are reasonable. Miazad Decl. ¶¶ 4-9; Briskin Decl. ¶¶ 4-17; Jackson Decl. ¶ 10; Lowe Decl. ¶ 14. Further, Class Counsel's rates are reasonable compared to attorneys with comparable experience in this district. Miazad Decl. ¶¶ 36-37; Jackson Decl. ¶¶ 10-11; Feinberg Decl. ¶¶ 15-18; Lowe Decl. ¶ 13; *see also Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 17 Civ. 6059, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) ("[D]istrict courts in Northern California have found that rates of $475-$975 per hour for partners and $300–$490 per hour for associates are reasonable."); *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07 Civ. 05923, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (finding reasonable rates for Bay Area attorneys of $475-$975 for partners and $300-$490 for associates).

Class Counsel have been awarded attorneys' fees at or near the rates they request here. Miazad Decl. ¶ 37; *see also, e.g.*, *del Toro Lopez v. Uber Techs., Inc.*, No. 17 Civ. 6255, 2018 WL 5982506, at *4 (N.D. Cal. Nov. 14, 2018) (appointing Outten & Golden as class counsel and approving Outten & Golden's hourly rates of $250 to $850); *Zamora v. Lyft, Inc.*, No. 16 Civ. 02558, 2018 WL 4657308, at *3 (N.D. Cal. Sept. 26, 2018) (appointing Outten & Golden as class counsel in wage and hour case on behalf of drivers, and approving rates ranging from $280 to $850 as "reasonable in light of the market for legal services of this type and quality"); *Walsh v. CorePower Yoga LLC*, No. 16 Civ. 05610, 2017 WL 4390168, at *10 (N.D. Cal. Oct. 3, 2017) (approving Outten & Golden attorney rates ranging from $200 to $775 per hour as "in line with the overall range of market rates in this District for attorneys and for litigation support staff of similar abilities and experience"). Finally, the hourly rates of Class Counsel at Outten & Golden LLP are rates that comparable attorneys at Outten & Golden LLP charge paying clients.[5] Miazad

Ossai Miazad.

[5] Class Counsel from Justice Catalyst Law do not provide legal services for which they charge by the hour. Briskin Decl. ¶ 10.

Decl. ¶¶ 30-32.  Similarly, Class Counsel from Justice Catalyst Law have charged rates either lower than or similar to those charged by attorneys with at least as many years of experience. *See* Briskin Decl. ¶¶ 4-17.

### 3.    A Multiplier to Enhance the Requested Lodestar is Appropriate.

A modest multiplier of 1.23 is appropriate here given the outstanding results Class Counsel secured for the Class Members and the time expended, risk involved, and uncertainty of payment.[6]  The Court has discretion to adjust Class Counsel's lodestar upward based on a multiplier reflecting a host of "reasonableness" factors, including "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.[7]  *In re Bluetooth*, 654 F.3d at 942 (quoting *Hanlon*, 150 F.3d at 1029); *see also Kerr*, 526 F.2d at 70.  "Foremost among these considerations, however, is the benefit obtained for the class." *Id.*

The California Class Members are eligible for individual awards of up to $2,500 per denial, which is more than 60% of the statutory damages available under the Unruh Act for each discriminatory act, Cal. Civil Code § 52(a), a remarkable result.  *See, e.g., Betancourt v. Advantage Human Resourcing, Inc.*, No. 14 Civ. 1788, 2016 WL 344532, at *5 (N.D. Cal. Jan 28, 2016) (granting final approval of settlement providing approximately 9.7% of total maximum

---

[6]     This multiplier is calculated by dividing the total amount requested, less Class Counsel's expenses, by the lodestar (*i.e.*, $500,000 minus $8,510.48, which is $491,489.52, divided by the lodestar of $400,471.90).

[7]     In *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), the Ninth Circuit identified the following twelve factors relevant to determining whether a multiplier is appropriate: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Wren v. RGIS Inventory Specialists*, No. 06 Civ. 5778, 2011 WL 1230826, at *17 (N.D. Cal. Apr. 1, 2011) (quoting *Kerr*, 526 F.2d at 70).  Because many of these factors are considered to be "subsumed" by the lodestar analysis, "the court may examine the remaining factors to determine whether an enhancement or decrease in the lodestar figure is warranted." *Id.*

potential recovery if class members had prevailed on all claims); *In re Heritage Bond Litig*., No. 02 ML 1475, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (calling a recovery of 36% of the total net loss an "exceptional result"). The individual awards for National Class Members – up to $300 per denial – are an excellent result given the challenges Plaintiff faced in proving Section 1981 damages and the fact that Plaintiff's FCRA claims had been dismissed by the Court. ECF No. 54. Finally, Plaintiff obtained the maximum degree of programmatic relief possible, which not only benefits Class Members but DACA recipients nationwide who need access to credit. The claims brought in this case were novel and complex and presented a number of unresolved issues. Miazad Decl. ¶¶ 20-21.

Class Counsel litigated this risky case on a contingency basis, forgoing other matters to prosecute Plaintiff's claims here. Miazad Decl. ¶¶ 33-35. Though Class Counsel do not view this case as undesirable, they believe that many other lawyers may have been unwilling to bring this case given the risk posed by the number of untested legal claims, as well as the aggressive defense mounted by Wells Fargo in *Perez v. Wells Fargo*. Miazad Decl. ¶¶ 20-21; 35; *see also Perez v. Wells Fargo*, No. 17 Civ. 454 (N.D. Cal.). Class Counsel were uniquely well-suited to bring this case because they are experienced and widely-respected civil rights and class action litigators with decades of combined experience. Miazad Decl. ¶¶ 4-9; Briskin Decl. ¶¶ 4-7; *see also* Jackson Decl. ¶¶ 6-10; Finberg Decl. ¶ 18; Lowe Decl. ¶¶ 9-13. Indeed, this experience was instrumental in bringing about the outstanding result – Class Counsel skillfully and aggressively prosecuted the case, which positioned Plaintiff to negotiate this historic settlement. Finally, Class Counsel have been awarded multipliers greater than 1.23 in this District and beyond. *See, e.g.*, *del Toro Lopez*, 2018 WL 5982506, at *4 (awarding Outten & Golden 2.9 multiplier); *Walsh*, 2017 WL 4390168, at *11 (awarding Outten & Golden 1.36 multiplier); *Lee v. JPMorgan Chase & Co.*, No. 13 Civ. 511, 2015 WL 12711659, at *8 (C.D. Cal. Apr. 28, 2015) (awarding Outten & Golden 1.27 multiplier).

Moreover, multipliers ranging up to 3.0 or more are routinely awarded in this District. *See, e.g.*, *Steiner v. Am. Broadcasting Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) (6.85 multiplier was "well within the range" of permissible multipliers); *Vizcaino v. Microsoft Corp.*,

290 F.3d 1043, 1048 (9th Cir. 2002) (affirming multiplier of 3.65); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 14 MD 2541, 2017 WL 6040065, at *1 (N.D. Cal. Dec. 6, 2017) (3.66 multiplier was reasonable); *In re High-Tech Employee Antitrust Litig.*, No. 11 Civ. 2509, 2015 WL 5158730, at *10 (N.D. Cal. Sept. 2, 2015) (awarding fees with 2.2 and 1.5 multipliers); *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07 Civ. 5923, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015) (approving "multiplier of 5.5" based on results achieved, quality of work, and delayed payment); *Rose v. Bank of Am. Corp.*, No. 11 Civ. 2390, 2014 WL 4273358, at *12 (N.D. Cal. Aug. 29, 2014) (2.59 multiplier); *Nat'l Fed'n of the Blind*, 2009 WL 2390261, at *9 (1.65 multiplier). California courts have also awarded multipliers "in successful cases brought under the Unruh Act and federal law, placing special emphasis on the results obtained." *Nat'l Fed'n of the Blind*, 2009 WL 2390261, at *9; *Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 628 (2008) (affirming award of 1.25 multiplier). For these reasons, a multiplier of 1.23 is appropriate in this case.

### 4. A "Constructive Common Fund" Cross-Check Shows the Request for Fees and Costs is Reasonable.

Where the Court applies the lodestar method for awarding attorneys' fees and costs, it may cross-check the reasonableness of the fee request by creating a "constructive common fund" and comparing the request against the total recovery. *In re Bluetooth*, 654 F.3d at 944-45. However, "[i]n fee-shifting cases like this one, a percentage cross-check is of less usefulness." *Congdon v. Uber Techs., Inc.*, No. 16 Civ. 2499, 2019 WL 2327922, at *3 (N.D. Cal. May 31, 2019), *appeal dismissed*, 2019 WL 4854343 (9th Cir. July 12, 2019); *see also* 5 Newberg on Class Actions § 15:52 (5th edition) ("[W]hen awarding fees in *fee-shifting* cases, courts do not—indeed typically cannot—utilize a percentage cross-check because of the absence of a significant enough recovery fund to make the cross-check feasible."). Fee-shifting statutes are designed to "encourage litigation" in cases where, like here, the relief is partly non-monetary or the class size is small. *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1171 (C.D. Cal. 2010) (declining to conduct percentage cross-check); *see also Nat'l Fed'n of the Blind*, 2009 WL 2390261, at *9 (same). This is particularly the case for settlements implicating consumer rights

in California, where Courts have indicated that "the size of Plaintiffs' recovery as compared to the fees award sought does not determine whether a deduction should be taken from the lodestar." *Jefferson v. Chase Home Fin.*, No. 06 Civ. 6510, 2009 WL 2051424, at *3 (N.D. Cal. July 10, 2009).

Where Courts conclude that a constructive common fund cross-check is appropriate, the Ninth Circuit has held that an allocation of attorneys' fees constituting 25% of a settlement fund is "a starting point for analysis," but the Court must "take into account all the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. Courts consider, *inter alia*, the results achieved for the class, the risk assumed by Class Counsel, and the benefits conferred on Class Members beyond the monetary relief. *Id.* at 1048-49. "The [C]ourt need not limit itself to monetary damages or cash settlement funds in assessing the benefits of a litigation. Some important benefits are difficult to quantify, such as clarifying a certain area of the law [or] forcing changes in corporate policies affecting thousands of individuals . . . ." *Nat'l Fed'n of the Blind*, 2009 WL 2390261, at *9 (internal citations omitted).

In practice, most attorneys' fee awards exceed the 25% benchmark, some reaching well into the 30% range or higher. *See, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming attorneys' fee award constituting 33% of the settlement fund because of the complexity of the issues, the risk, and the non-monetary benefits); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (noting that "in most common fund cases, the award exceeds [the 25%] benchmark"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) (surveying citing cases approving attorneys' fees ranging from 19% to 46% of the settlement fund). In fact, where, as here, the constructive common fund is relatively small – less than $10 million – courts "commonly" grant attorneys' fee awards in the 30-50% range. *Rivas v. BG Retail, LLC*, No. 16 Civ. 6485, 2020 WL 264401, at *8 (N.D. Cal. Jan. 16, 2020) (granting attorneys' fee request constituting 45% of settlement fund due, in part, to "the modest amount of overall recovery"); *Alvarez v. Farmers Ins. Exch.*, No. 14 Civ. 574, 2017 WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017) ("Fee award percentages generally are higher in cases where the common fund is below $10 million."); *Gomez v. H&R Gunlund Ranches, Inc.*, No. 10

15

Civ. 1163, 2011 WL 5884224, at *5 (E.D. Cal. Nov. 23, 2011) (fee award representing 45% of $915,000 settlement reasonable); *Cicero v. DirecTV, Inc.*, No. 07 Civ. 1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (noting that case law surveys "suggest that 50% is the upper limit, with 30-50% commonly being awarded in case[s] in which the common fund is relatively small"); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (noting that cases in which 30-50% of the fund were awarded "involved relatively smaller funds of less than $10 million").

Here, the "constructive common fund" amounts to $1,185,000 – the sum of the class recovery ($685,000) plus the request for attorneys' fees and costs ($500,000). *See In re Bluetooth*, 654 F.3d at 945 (providing that the common fund figure includes the allotment for attorneys' fees and costs); *Manual for Complex Litigation* § 21.7 (4th ed. 2020) (the sum of the fund for class members' benefit and attorneys' fees and expenses "should be treated as a settlement fund for the benefit of the class"). The $500,000 request for attorneys' fees and costs constitutes 42% of the constructive common fund. This percentage is reasonable in this case in light of the outstanding results for the class, the significant risk Class Counsel incurred in bringing this case, and the non-monetary benefits to Class Members and DACA recipients throughout the country. Specifically, as discussed above, the estimated value of the programmatic relief – at least $2,000,000 – is more than three times the value of the class recovery. All DACA recipients nationwide – not just Class Members – will benefit from this programmatic relief. DACA recipients have a great need for access to credit and have encountered significant difficulty in obtaining it.[8] As one of the largest lenders in the country, the programmatic relief offered by Wells Fargo is a significant benefit to Class Members (and DACA recipients nationwide) and is likely better than what could be obtained by protracted

---

[8] More than 800,000 individuals have been approved under DACA in the United States. *See* U.S. Citizenship & Immigration Servs., *Approximate Active DACA Recipients: Country of Birth as of February 28, 2019* at 5, https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/2_Approximate_Active_DACA_Recipients_Demographics_-_Feb_28_2019.pdf.

litigation and trial. *Cf. Nat'l Fed'n of the Blind*, 2009 WL 2390261, at *9 n.2 (noting that there was "ample evidence" that the programmatic changes implemented through that settlement "greatly increased access to [defendant's website] for tens of thousands of blind people").

Additionally, Class Counsel took this case on a contingency basis and, as discussed herein and in Plaintiff's motion for preliminary approval, assumed significant risk of nonpayment given the number of unsettled issues. ECF No. 89 at 17; *supra* § III.A.3. Courts in this District have approved high percentages under a constructive common fund cross-check where the lodestar request is reasonable. *Rivas*, 2020 WL 264401, at *8 (granting fee award at 45% of fund); *Vasquez v. USM Inc.*, No. 13 Civ. 5449, 2016 WL 612906, at *3 (N.D. Cal. Feb. 16, 2016) (approving lodestar fee request with a percentage cross-check of 50% "in light of the challenges in this case" and because the settlement "will be paid separately from, and will not be taken out of, the money due to the plaintiffs"); *Gomez*, 2011 WL 5884224, at *5 (granting fee award at 45% of fund). For these reasons, should the Court decide to conduct a constructive common fund cross-check, the cross-check supports the reasonableness of the requested award.

### 5. Class Counsel's Out-of-Pocket Expenses Are Reasonable.

Class Counsel have spent $8,510.48 in actual litigation expenses. Miazad Decl. ¶ 38. Attorneys are entitled to be reimbursed for their out-of-pocket expenses incurred in creating a common fund for the benefit of a class so long as the submitted expenses are reasonable, necessary, and would typically be billed to paying clients. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1048 (approving costs for "photocopying, printing, postage and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants, and the costs of travel for various attorneys and their staff throughout the case"). The costs for which Class Counsel seek reimbursement here include legal research fees, telephone conference calls, mailing expenses, and other reasonable litigation-related costs. Miazad Decl. ¶ 39. All these costs were necessary to prosecute this action and incurred for the benefit of the Class. *Id.* ¶ 43.

**B.     Class Counsel's Requested Cost for Settlement Administration Is Reasonable for this Novel, Complex Settlement.**

"Courts regularly award administrative costs associated with providing notice to the class." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015).  Without the work of the Court-appointed Settlement Administrator in this case, JND Legal Consulting, Class Members will not receive notice or have an opportunity to make a claim in this case.  Class Counsel's request for $50,000 in Settlement Administrator costs is reasonable.  Administering the claims process in this case will be labor-intensive and costly due to the dual-phase settlement structure.  Ex. H (Declaration of Jennifer Keough) ¶¶ 6-7.  In addition to mailing and emailing notice to an overinclusive list of 2,000 potential Class Members, the Settlement Administrator is expecting to spend time responding to inquiries relating to the settlement and will need to review the official documentation of every potential Class Member seeking to make a claim.  *Id.*  JND has concluded that $50,000 is a realistic fee for handling the notice and claims process in this case.  *Id.*

**C.     The Class Representative's Service Award Is Reasonable in Light of His Significant Efforts in this Case and the Risk He Assumed in Bringing It.**

Mr. Peña seeks a service award of $5,000 in recognition of the risks he took in prosecuting this action and the work he put into representing the interests of the Class.  "[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement.  *Staton*, 327 F.3d at 977.  Such payments are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (service awards "are intended to compensate class representatives for work undertaken on behalf of a class [and] 'are fairly typical in class action cases'" (quoting *Rodriguez*, 563 F.3d at 958)); *Staton*, 327 F.3d at 977 (courts assessing service awards consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those

actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] . . . retaliation.").

Especially in civil rights cases like this one, service awards incentivize individuals to bring important cases that have a broad impact benefiting a class of individuals, not just themselves. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."). When evaluating the reasonableness of a service award, courts may consider factors such as:

> (1) the risk to the class representative in commencing a suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken*, 901 F. Supp. at 299 (citations omitted).

Here, these factors all weigh strongly in favor of approving Mr. Peña's requested service award. He spent approximately 60 hours working with Class Counsel, including participating in interviews with Class Counsel, talking with Class Counsel about the case, participating in discovery, reviewing filings and other documents, and reviewing the settlement agreement to ensure it protected the interests of the Class. Ex. I (Declaration of Eduardo Peña ("Peña Decl.")) ¶ 7. In addition, the risks he took on in attaching his name to this action are unusually high, especially compared to a more typical consumer lawsuit. Mr. Peña has DACA, which makes him a target for harassment and vulnerable to potential immigration consequences related to his status within the United States. *Id.* ¶ 8. Accordingly, the Court should approve Mr. Peña's request for a $5,000 service award, an amount that is considered "presumptively reasonable" in this district. *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015); *see also In re Online DVD-Rental*, 779 F.3d at 948 (approving a service award of $5,000 to each of nine class representatives where unnamed class members received a $12 individual award); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) ("An

19

incentive award of $5,000 is presumptively reasonable . . . .").

Moreover, the service award that Mr. Peña requests does not undermine his adequacy as a class representative because there are no conflicts of interest between him and other class members, and because he has consistently and forcefully advocated for the interests of the class. *See In re Online DVD-Rental*, 779 F.3d at 943 (courts considering whether service awards affect adequacy consider: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"). <u>First</u>, Mr. Peña's support for the settlement is not contingent on whether the service awards are approved. *See Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (noting potential conflict between class representative and the class where service award was contingent on representative's support for the settlement). To the contrary, his first priority was challenging a policy he believed to be unfair, and securing adequate relief for the Class. Peña Decl. ¶¶ 2-5. <u>Second</u>, California class members stand to receive up to $2,500 per claim, which represents a high proportion of their possible damages. And the $300 awards for non-California class members are a substantial victory given the hurdles Plaintiff would face trying to prove actual damages – much less damages on a classwide scale. Therefore, it does not defeat adequacy that Mr. Peña's service award is likely to be larger than most class member awards. *See, e.g.*, *In re Online DVD-Rental*, 779 F.3d at 942 (service awards over 400 times the amount of the standard class member award did not defeat adequacy where the awards were reasonable and did not involve "intra-class structural conflict"); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1037 (8th Cir. 2002) (affirming $2,000 service awards in $3 million settlement on behalf of 4 million class members); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16 MDL 2752, 2020 WL 4212811, at *6 (N.D. Cal. July 22, 2020) (approving service awards that were "only 187.5 times larger than a $40 individual award" because that was not an excessively high factor and because of the class representatives' "role in protecting the interests of the Settlement Class by being deposed and having their personal devices forensically imaged"). <u>Third</u>, "the settlement requires Wells Fargo to pay the incentive award[], so class members will not fund the awards," meaning that it is not, as is sometimes the case, a zero-sum

20

game between Plaintiff and members of the class. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 336 (N.D. Cal. 2014).

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) award Class Counsel attorneys' fees and costs in the amount of $500,000; (2) authorize settlement administration expenses not to exceed $50,000, and (3) approve a service award of $5,000 to Plaintiff Peña.

Dated: September 25, 2020          Respectfully submitted,

By: /s/ *Ossai Miazad*
        Ossai Miazad

Ossai Miazad*
Michael N. Litrownik*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
om@outtengolden.com
mlitrownik@outtengolden.com

Jahan C. Sagafi (Cal. Bar No. 224887)
Rachel Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California St., 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
jsagafi@outtengolden.com
rdempsey@outtengolden.com

Benjamin D. Elga*
JUSTICE CATALYST LAW
81 Prospect Street, 7th Floor
Brooklyn, NY 11201
Telephone: (518) 732-6703
belga@justicecatalyst.org

Brian James Shearer*
Craig L. Briskin*

21

JUSTICE CATALYST LAW
718 7th Street NW
Washington, D.C. 20001
Telephone: (518) 732-6703
brianshearer@justicecatalyst.org
cbriskin@justicecatalyst.org

*admitted *pro hac vice*

*Attorneys for Plaintiff and the Proposed Class*