Jahan C. Sagafi  (Cal. Bar No. 224887)
Rachel Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
jsagafi@outtengolden.com
rdempsey@outtengolden.com

Benjamin D. Elga*
Brian James Shearer*
Craig L. Briskin*
JUSTICE CATALYST LAW
81 Prospect Street, 7th Floor
Brooklyn, NY 11201
Telephone: (518) 732-6703
belga@justicecatalyst.org
brianshearer@justicecatalyst.org
cbriskin@justicecatalyst.org

Ossai Miazad*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
om@outtengolden.com

*Attorneys for Plaintiff and the Proposed Class*
*admitted *pro hac vice*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EDUARDO PEÑA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 19-cv-04065-MMC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM OF LAW FOR FINAL APPROVAL**<br><br>Judge: Maxine M. Chesney<br>Hearing Date: January 8, 2021<br>Hearing Time: 9:00 a.m.<br>Courtroom: 7, 19th floor |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 8, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard, via Zoom webinar at https://cand-uscourts.zoomgov.com/j/1606261089?pwd=Q3k3SEx5WC9BSm1FSWswOWM4bnB3Zz09, ID: 160 626 1089, Password: 091644, before the Honorable Maxine M. Chesney, Plaintiff Eduardo Peña, individually and as a class representative on behalf of the Class, will, and hereby does, move this Court for an order: (1) granting, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, final approval of the Parties' proposed class action settlement (the "Settlement"), and entry of judgment in accordance with the Settlement; and (2) granting, pursuant to Rules 23(a) and 23(b)(3), final class certification of the Settlement Class conditionally certified in the Preliminary Approval Order.  ECF No. 99.

Plaintiff makes this motion on the grounds that the Settlement is fair, adequate, and reasonable, was reached through arm's-length negotiations with an experienced mediator, and has drawn a favorable response from the Class, as described in the attached memorandum.  The motion is based on this notice of motion and motion; the memorandum in support of the motion; the Declaration of Ossai Miazad in Support of Final Approval ("Miazad FA Decl."); the Declaration of Jennifer Keough in Support of Final Approval ("JND Decl."); the Court's record of this action; all matters of which the Court may take notice; and any oral evidence presented at the hearing on the motion.

Dated: December 23, 2020

Respectfully submitted,

By: /s/ *Ossai Miazad*
      Ossai Miazad

Ossai Miazad*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile:  (646) 509-2060
om@outtengolden.com

-1-

Jahan C. Sagafi (Cal. Bar No. 224887)
Rachel Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California St., 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile:  (415) 638-8810
jsagafi@outtengolden.com
rdempsey@outtengolden.com

Benjamin D. Elga*
Brian James Shearer*
Craig L. Briskin*
JUSTICE CATALYST LAW
81 Prospect Street, 7th Floor
Brooklyn, NY 11201
Telephone: (518) 732-6703
belga@justicecatalyst.org
brianshearer@justicecatalyst.org
cbriskin@justicecatalyst.org

*admitted *pro hac vice*

*Attorneys for Plaintiff and the Proposed Class*

# **TABLE OF CONTENTS**

I. FACTUAL AND PROCEDURAL BACKGROUND ............................................................ 2

    A.    Class Counsel Engaged in Hard-Fought Litigation Prior to
Settlement. ................................................................................................. 2

    B.    The Settlement Class. ................................................................................ 2

    C.    The Settlement. .......................................................................................... 3

    D.    Notice and Claims Process. ....................................................................... 5

        1.    The Administrator Adhered to Class Notice
Requirements. ............................................................................... 5

        2.    Class Members Submitted Claim Forms. ..................................... 6

        3.    CAFA Notice Requirements Were Satisfied. ................................ 7

II. ARGUMENT .............................................................................................................. 8

    A.    The Best Practicable Notice of Settlement Has Been Provided to
the Class. ................................................................................................... 8

    B.    Final Approval Is Appropriate Under Rule 23. ......................................... 9

        1.    Plaintiff Faced Substantial Obstacles to Recovery. .................... 10

        2.    The Risk, Expense, Complexity, and Delay of Further
Litigation Support Final Approval. ............................................. 11

        3.    Plaintiff Faced a Risk of the Denial of Class Certification. ........... 12

        4.    The Settlement Fairly and Adequately Compensates the
Class. ........................................................................................... 12

        5.    The Extent of Discovery Supports Approval. .............................. 14

        6.    Counsel's Experience and Views Support Approval. ................... 14

        7.    Class Members Have Reacted Positively to the
Settlement. .................................................................................. 15

        8.    The Requirements for Approval Under Rule 23(e)(2) Are
Met. ............................................................................................. 17

    C.    Class Counsel Have Incurred Additional Fees and Costs Since
Filing Their Fee Petition. ......................................................................... 18

i

D.      The Court Should Certify the Class as Final. .................................................. 18

ii

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                   **Page(s)**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
    No. 17 Civ. 3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ...........................................17

*Bayer v. Neiman Marcus Grp., Inc.*,
    861 F.3d 853 (9th Cir. 2017) ................................................................................................11

*Bert v. AK Steel Corp.*,
    No. 02 Civ. 467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) .........................................17

*Betancourt v. Advantage Human Resourcing, Inc.*,
    No. 14 Civ. 1788, 2016 WL 344532 (N.D. Cal. Jan 28, 2016) ...........................................13

*Bostick v. Herbalife Int'l of Am., Inc.*,
    No. 13 Civ. 2488, 2015 WL 12731932 (C.D. Cal. May 14, 2015)........................................15

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ................................................................................................8

*Broomfield v. Craft Brew Alliance, Inc.*,
    No. 17 Civ. 1027, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020)..........................................15

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ..............................................................................................15

*Chun-Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010) ..................................................................................15

*Churchill Village, LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................................8, 16

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..............................................................................................12

*Cotter v. Lyft, Inc.*,
    176 F. Supp. 3d 930 (N.D. Cal. 2016) ..................................................................................10

*Cotter v. Lyft, Inc.*,
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) ................................................................................10

*In re Easysaver Rewards Litig.*,
    906 F.3d 747 (9th Cir. 2018) ................................................................................................13

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)................................................................................................................8

iii

*Ellis v. Naval Air Rework Facility*,
　87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ....................................14

*Ford v. CEC Entm't Inc.*,
　No. 14 Civ. 677, 2015 WL 11439033 (S.D. Cal. Dec. 14, 2015).............................................9

*Fraley v. Batman*,
　638 F. App'x 594 (9th Cir. 2016) ........................................................................................17

*Fraley v. Facebook, Inc.*,
　966 F. Supp. 2d 939 (N.D. Cal. 2013) .................................................................................16

*Gonzalez v. Pritzker*,
　No. 10 Civ. 3105, 2016 WL 5395905 (S.D.N.Y. Sept. 20, 2016).........................................17

*Hanlon v. Chrysler Corp.*,
　150 F.3d 1011 (9th Cir. 1998) .................................................................................9, 10, 16

*In re Heritage Bond Litig.*,
　No. 02 ML 1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...........................................13

*In re Hyundai & Kia Fuel Econ. Litig.*,
　926 F.3d 539 (9th Cir. 2019) ..............................................................................................11

*Ma v. Covidien Holding, Inc.*,
　No. 12 Civ. 2161, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014)...................................13

*In re Mego Fin. Corp. Sec. Litig.*,
　213 F.3d 454 (9th Cir. 2000) .........................................................................................14, 16

*Mills v. Capital One, N.A.*,
　No. 14 Civ. 1937, 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015).........................................17

*Mullins v. Direct Digital, LLC*,
　795 F.3d 654 (7th Cir. 2015) ................................................................................................8

*Nachshin v. AOL, LLC*,
　663 F.3d 1034 (9th Cir. 2011) .............................................................................................13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
　221 F.R.D. 523 (C.D. Cal. 2004) .........................................................................................16

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
　688 F.2d 615 (9th Cir. 1982) ..........................................................................................12, 13

*In re Pac. Enters. Sec. Litig.*,
　47 F.3d 373 (9th Cir. 1995) ................................................................................................14

*In re Packaged Ice Antitrust Litig.*,
　No. 08 MDL 01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)...................................15

iv

*Perez v. Wells Fargo*,
    No. 17 Civ. 454 (N.D. Cal.)................................................................2, 6, 7, 11, 14

*Quiruz v. Specialty Commodities, Inc.*,
    No. 17 Civ. 3300, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020)........................15

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..................................................................10, 14, 17

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ...............................................................................10

*Schneider v. Chipotle Mexican Grill, Inc.*,
    No. 16 Civ. 2200, 2020 WL 6484833 (N.D. Cal. Nov. 4, 2020)........................15

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...................................................................................9

*Stovall-Gusman v. W.W. Granger, Inc.*,
    No. 13 Civ. 2540, 2015 WL 3776765 (N.D. Cal. June 17, 2015) .........................13

*Thomas v. Albright*,
    139 F.3d 227 (D.C. Cir. 1998)...............................................................................16

*In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA)
    Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ..........................................................................13

*Tumampos v. Cathay Pac. Airways LTD.*,
    No. 16 Civ. 6208, 2018 WL 5603702 (N.D. Cal. Sept. 21, 2018).........................12

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)............................................................................................12

*United States v. Armour & Co.*,
    402 U.S. 673 (1971)................................................................................................12

*Victorino v. FCA US LLC*,
    No. 16 Civ. 1617, 2020 WL 5064295 (S.D. Cal. Aug. 27, 2020) ...........................8

**Statutes**

15 U.S.C. § 1681n ........................................................................................................11

15 U.S.C. § 1691e ........................................................................................................11

28 U.S.C. § 1715(d) .......................................................................................................7

42 U.S.C. § 1981 ..........................................................................................................11

v

NOTICE OF MOTION AND MEMORANDUM OF
LAW FOR FINAL APPROVAL

Cal. Civ. Code § 52(a) ...................................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................................................8, 9, 17, 18

NOTICE OF MOTION AND MEMORANDUM OF
LAW FOR FINAL APPROVAL

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Eduardo Peña, individually and as a class representative on behalf of the Class ("Plaintiff" or "Class Representative"), respectfully requests final approval of this Settlement of the claims between Wells Fargo Bank, N.A. ("Wells Fargo") and a class of consumers with temporary protection from deportation, federal work authorization, and Social Security numbers under the June 2012 program known as Deferred Action for Childhood Arrivals ("DACA"). Plaintiff's Second Amended Complaint alleges that Class Members submitted applications for and were denied auto loans from Wells Fargo's direct auto financing line of business on the basis of their alienage, in violation of 42 U.S.C. § 1981 ("Section 1981"). ECF No. 66 ¶¶ 109-17. It also alleges that Wells Fargo did not provide Class Members with a written notice of adverse action with an accurate statement of reasons for the denial, in violation of Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d)(2), and its implementing regulations, and that Wells Fargo obtained denied applicants' consumer reports without a proper purpose, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f). *Id.* ¶¶ 118-39. In connection with this Settlement, Wells Fargo has agreed to change its lending policies to make direct auto loans available to DACA recipients on the same terms and conditions as they are offered to United States citizens, and to provide monetary relief valued at up to $1.185 million, including payments to Class Members in a total amount ranging from $280,000 to $630,000; $50,000 in administration costs; a $5,000 service award for the Class Representative; and $500,000 in attorneys' fees and costs. *See* ECF No. 89-2, Settlement Agreement ("SA") §§ 3.2; 3.3; 15.2.

The Settlement, which received preliminary approval on August 21, 2020, has received a positive response from the Class. In total, members of the California Class submitted three Claim Forms and members of the National Class submitted four Claim Forms during the claims period. JND Decl. ¶ 18. No Class Members opted out of or submitted a valid objection to the Settlement. *Id.* ¶¶ 21, 23. Because the Settlement is fair, adequate, and reasonable, and provides excellent relief to the Class, Plaintiff respectfully requests that the Court confirm as final the certification of the Classes, appoint Plaintiff Eduardo Peña as the Class Representative and Plaintiff's Counsel as Class Counsel, and grant final approval to the Settlement.

# I.      FACTUAL AND PROCEDURAL BACKGROUND

## A.      Class Counsel Engaged in Hard-Fought Litigation Prior to Settlement.

Plaintiff filed this action as a putative class action on July 16, 2019 against Wells Fargo, after similar claims alleging discrimination against DACA recipients who applied for direct auto loans were struck from the complaint in *Perez v. Wells Fargo*, No. 17 Civ. 454 (N.D. Cal.). Plaintiff sought to represent two nationwide classes consisting of all non-United States citizens who resided in the United States and held DACA status at the time they applied for direct auto financing from Wells Fargo, were denied based on their citizenship or immigration status in violation of Section 1981, and did not receive an accurate statement of reasons for their denial in violation of ECOA, 15 U.S.C. § 1691(d)(2).  ECF No. 1.  Plaintiff Peña amended the complaint in September 2019, seeking to represent a third class of DACA recipients whose credit reports were pulled without a proper purpose, in violation of FCRA, 15 U.S.C. § 1681b(f).  ECF No. 27.

Wells Fargo filed a motion to dismiss the First Amended Complaint on several grounds, ECF No. 39, which the Court granted as to the FCRA and ECOA claims, but denied as to the claims based on alienage discrimination, ECF No. 54.  On January 17, 2020, Plaintiff filed a Second Amended Complaint that pleaded the FCRA and ECOA claims with more specificity. ECF No. 66.  During this time period, Plaintiff and Wells Fargo (jointly, "Parties") engaged in discovery, including the exchange of written discovery requests and responses and the production of documents.  Declaration of Ossai Miazad in Support of Final Approval ("Miazad FA Decl.") ¶ 14.  The Parties were in the process of negotiating several discovery disputes when, on February 7, 2020, the Parties agreed to stay the case and engage in mediation with the assistance of experienced private mediator Hunter Hughes.  *Id.* ¶¶ 14-18; *see also* ECF Nos. 81, 82.  The Parties executed a binding term sheet on March 4, 2020, and a long-form settlement agreement on June 16, 2020.  Miazad FA Decl. ¶¶ 18-19.

## B.      The Settlement Class.

On August 21, 2020, the Court preliminarily approved certification of two classes for settlement purposes only, defined as follows:

- The "**National Class**" consists of all individuals who (i) applied for credit from

2

the Wells Fargo direct auto line of business; (ii) between July 16, 2017 through the date of preliminary approval; (iii) who held valid and unexpired DACA status at the time they applied for credit; (iv) who were denied as set forth in the class data to be produced by Wells Fargo; and (v) who were not California residents at the time they applied for credit as set forth in the class data to be produced by Wells Fargo.

- The "**California Class**" consists of all individuals who applied for credit from the Wells Fargo direct auto line of business; (ii) between July 16, 2017 through the date of preliminary approval; (iii) who held valid and unexpired DACA status at the time they applied for credit; (iv) who were denied as set forth in the class data to be produced by Wells Fargo; and (v) who were California residents at the time they applied for credit as set forth in the class data to be produced by Wells Fargo.[1]

ECF No. 99 (Preliminary Approval ("PA") Order) ¶ 6.

Wells Fargo did not record whether loan applicants had DACA, but did keep track of why loan applications were denied. Miazad FA Decl. ¶ 23. To compile the list of potential Class Members to receive notice ("Notice List"), Wells Fargo identified all applications that were denied pursuant to agreed-upon denial codes that indicated that the denial was based on lack of citizenship or permanent residence ("Specified Denial Codes"). *Id.* ¶ 22. This data was further narrowed to include only applicants with U.S. addresses and valid Social Security numbers. *Id.* ¶ 24.

### C.   The Settlement.

In connection with the Settlement, Wells Fargo has agreed to change its lending practices for its direct auto loan line of business to extend loans to current DACA recipients on the same

---

[1]   Wells Fargo, its officers, directors, and employees, and any judges to whom this action is assigned, their staffs, and their immediate families are excluded from both the California and the National Classes. ECF No. 99 ¶ 6.

NOTICE OF MOTION AND MEMORANDUM OF
LAW FOR FINAL APPROVAL

terms and conditions as U.S. citizens, so long as there is an appropriate product.  SA § 3.2.
Access to credit is a necessary part of life in the United States, and making loans available to
people with DACA on the same terms as they are available to U.S. citizens is pivotal to ensuring
that people with DACA are able to fully participate in American life.  *See, e.g.*, ECF No. 103-9
(Declaration of Eduardo Peña) ¶ 3 (describing how Plaintiff was forced to move closer to his job
because he could not get a car loan due to having DACA).  The relief offered by this Settlement
also provides a remedy for Plaintiff's FCRA and ECOA claims, both of which stem from the
underlying policy that Plaintiff alleges categorically bars people with DACA from access to
credit due to their alienage or immigration status.

In addition to the programmatic relief, the Settlement provides payments of up to $2,500
per denial to members of the California Class, and $300 per denial to members of the National
Class.  To qualify for a payment, Class Members are required to submit a Verified Claim.
Submitting a Verified Claim involves two steps: first, Class Members must submit a Claim Form
during the claims period, and then, once the Court has granted final approval, Class Members
must provide the Settlement Administrator with a copy of either (1) an I-797 Approval Notice
from an I-821D, or (2) an Employment Authorization Card containing the code "C-33" to show
either current, valid and unexpired DACA status or valid and unexpired DACA status at the time
of a denied application ("Official Documentation").  SA § 5.2.2. The California Class will be
funded as follows: (1) the first 110 Verified Claims from California Class Members will add
$2,500 per claim to the fund, up to $275,000; and (2) any remaining Verified Claims from
California Class Members will add $800 per claim to the fund, with a floor of $225,000 and a
ceiling of $525,000.  *Id*. §§ 3.3.2, 3.3.4.  Each Verified Claim submitted by a member of the
National Class shall add $300 per claim, with a floor of $55,000 and a ceiling of $105,000.  *Id*.
§§ 3.3.6, 3.3.8.  Based on current claim rates, Plaintiff expects Wells Fargo's obligation for the
claims of the California and National Class combined to be equal to the floor for each Class,
which totals $280,000.  *See* JND Decl. ¶ 18.  Any of that amount that is not used to pay class
member claims will be distributed equally to United We Dream and Consumer Action as *cy pres*
recipients.  SA § 3.3.9.

1    As set forth in greater detail in the Motion for Attorneys' Fees, Costs, and Service

2    Awards ("Fee Motion"), ECF No. 102, the Settlement Agreement also provides for a service

3    award payment of $5,000 to the Class Representative, $500,000 in attorneys' fees and costs, and

4    up to $50,000 in settlement administration costs.

5    **D.    Notice and Claims Process.**

6    **1.    The Administrator Adhered to Class Notice Requirements.**

7    The Parties have followed the Court-approved notice plan, as set forth in the Settlement

8    and this court's Preliminary Approval Order.  PA Order ¶ 9; SA § 7.  On September 4, 2020,

9    Wells Fargo sent the Settlement Administrator the Notice List data, which consisted of 1,627

10   records of possible Class Members who applied for a loan from Wells Fargo's direct auto loan

11   line of business between July 16, 2017 and August 21, 2020, were denied under a Specified

12   Denial Code, and had a U.S. address and Social Security number.  JND Decl. ¶¶ 6-7. After de-

13   duplication, this left 1,456 unique records.  *Id*.  On September 25, 2020, the Settlement

14   Administrator mailed the Court-approved Notice, Claim Form, Objection Form, and Opt-Out

15   Form (collectively, the "Notice Packet") to all 1,456 potential Class Members.  *Id*. ¶ 9.  Of these

16   mailed Notice Packets, 189 were returned as undeliverable.  *Id*. ¶ 10.  Seven of the undeliverable

17   Notice Packet mailings included forwarding address information, and an additional 85 were re-

18   mailed after the Settlement Administrator performed a skip-trace to find updated addresses.  *Id*.

19   Also on September 25, 2020, the Settlement Administrator sent emails to the 1,059 email

20   addresses Wells Fargo provided with the Notice List.  *Id*. ¶ 8.  Of these e-mails, 118 were

21   returned as undeliverable.  *Id*.  In total, the Notice Packet was mailed or e-mailed and not

22   returned as undeliverable to 96.2% of the individuals on the Notice List.  *Id*. ¶ 11.

23   As noted above, the list of possible Class Members who received notice was substantially

24   overinclusive, because there was no way to distinguish in Wells Fargo's records between

25   rejected applicants who had DACA and rejected applicants who had some other form of

26   immigration documentation, such as a work or other visa that would allow them to obtain a

27   Social Security number.  Miazad FA Decl. ¶ 23.  While it is impossible to say with certainty,

28   based on available information about the number of people in the United States with DACA,

5

NOTICE OF MOTION AND MEMORANDUM OF
LAW FOR FINAL APPROVAL

1   TPS, and work visas, Class Counsel estimate that approximately 25% of the people in the Notice

2   List are DACA recipients, meaning that approximately 364 Class Members were sent the Notice

3   Packet, along with approximately 1,092 people who were not members of the Class.[2]  *Id.* ¶ 26.

4                  **2.      Class Members Submitted Claim Forms.**

5          In accordance with the Preliminary Approval Order, the claims period ran from

6   September 25, 2020 to November 24, 2020.  *See* PA Order ¶¶ 10-11; JND Decl. ¶ 17.  During

7   this period, the Settlement Administrator received 39 timely Claim Forms.  JND Decl. ¶ 18.

8   Seven of these Claim Forms (four from the National Class and three from the California Class)

9   were from people on the Notice List.  *Id.*  An additional 20 were from people on the Notice List

10  in *Perez v. Wells Fargo*, No. 17 Civ. 454 (N.D. Cal.).  Miazad FA Decl. ¶ 28.  The Settlement

11  Administrator is checking the Claim Forms submitted in *Perez* to ensure that no individuals on

12  the Notice List in *Peña* inadvertently submitted their Claim Form to *Perez* instead of *Peña*.  *Id.*

13  Plaintiff will file a supplement when that process is complete.  *Id.*

14         Pursuant to the Settlement Agreement, within three days of the effective date of the

15  Settlement (*i.e.*, the date on which the Final Approval Order becomes final and non-appealable,

16  *see* SA § 1.19), the Settlement Administrator will contact those individuals who have submitted a

17  Claim Form and request that they submit Official Documentation (in the form of an I-797

18  Approval Notice from an I-821D or a Work Authorization Card containing the code "C-33") to

19  demonstrate their DACA status.  SA §§ 5.2.2, 5.3.2.  Claimants will have 18 days to return their

20  Official Documentation and confirm their membership in the Class, at which point their Claim

21  Forms will become Verified Claim Forms.  *Id.*  The Settlement Administrator will send

22  payments to all Verified Claimants within 85 days after the Effective Date.  SA §§ 5.2.4, 5.3.4.

23         Class Members were also given the opportunity to either opt out or submit a comment or

24

25  _____

    [2]      At the time of Preliminary Approval, Plaintiff estimated that the Notice List would
26  comprise approximately 1,625 individuals, and that there would be approximately 400 Class
    Members.  *See* ECF No. 89 at 22.  Because the Notice List Wells Fargo ultimately produced was
27  smaller, Class Counsel has adjusted its estimated number of Class Members.  Miazad FA Decl.
    ¶ 24.
28

1    objection on the Settlement.  To opt out of the Settlement, Class Members were required to

2    submit a completed and signed Opt-Out Form from the Notice Packet to the Settlement

3    Administrator, as well as a form of Official Documentation.  SA § 11.1.  No class members

4    opted out of the Settlement.  JND Decl. ¶ 21.

5            To submit a valid objection, Class Members were required to submit a completed and

6    signed Objection Form directly to the Court.  SA § 12.3.  In addition, Class Members were

7    required to provide Official Documentation directly to the Settlement Administrator, but not to

8    the Court.  *Id.*  No Objection Forms were filed with the Court, and only one signed Objection

9    Form was sent to JND.  JND Decl. ¶¶ 23-24.  This Objection Form did not state an objection to

10   the Settlement, but instead appeared to express an intent to claim in the related case *Perez v.*

11   *Wells Fargo*, No. 17 Civ. 454.  *Id.* ¶ 24 and Ex. D.

12           Throughout the claims period, the Settlement Administrator received a total of 43 calls

13   regarding the Notice Packet and claims process.  JND Decl. ¶ 16.  In addition, the Settlement

14   Administrator set up a dual-language website in Spanish and English website at

15   www.WFDACALawsuit.com to provide Class Members with information on the Settlement and

16   a portal to submit claims.  The site received 85,930 pageviews from 20,379 unique users.[3]  *Id.* ¶

17   14.  Outten & Golden and Justice Catalyst Law, who together serve as Class Counsel, also

18   received several calls and emails from potential Class Members.  Miazad FA Decl. ¶ 29.

19                   **3.      CAFA Notice Requirements Were Satisfied.**

20           On June 26, 2020 Wells Fargo satisfied its obligation to serve the appropriate settlement

21   notice documents on the relevant federal and state attorneys general.  JND Decl. ¶ 5.  The Final

22   Approval Hearing, set for January 8, 2021, is being held more than 90 days after the issuance of

23   the CAFA notice, such that the final approval order may be entered in accordance with CAFA's

24   notice requirements if the Court finds that all other requirements are met.  28 U.S.C. § 1715(d).

25

26

27   [3]     This website was shared with *Perez v. Wells Fargo*, No. 17 Civ. 454 (N.D. Cal.), and this

28   number does not differentiate between visitors for these lawsuits.

NOTICE OF MOTION AND MEMORANDUM OF
                                                LAW FOR FINAL APPROVAL

## II.      ARGUMENT

### A.      The Best Practicable Notice of Settlement Has Been Provided to the Class.

The notice here was the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and was provided "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation and quotation marks omitted). Notice mailed to each class member "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974). "'[T]he rule does not insist on actual notice to all class members in all cases' and 'recognizes it might be *impossible* to identify some class members for purposes of actual notice.'" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015)). For any class certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion," stating "the time and manner for requesting exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).

As described above, the mailing and emailing of Notices to Class Members and the administration of the notice process ensured that the best notice practicable was sent to Class Members. Although the Notice List was overinclusive, courts widely recognize that notice mailed to "a broader group than the class definition" meets the definition of the best notice practicable under the circumstances "as long as there is some link or connection between the method of class notice and the class definition." *Victorino v. FCA US LLC*, No. 16 Civ. 1617, 2020 WL 5064295, at *2 (S.D. Cal. Aug. 27, 2020) (collecting cases). Here, the Notice List was developed from a database of all Wells Fargo auto loan applicants who were denied based on their citizenship status, and then filtered by characteristics common to people with DACA. *See* Miazad FA Decl. ¶¶ 22, 24. In accordance with the Northern District's Procedural Guidance for Class Action Settlements, the Notice was easily understandable, and included contact information to Class Counsel, the address for the settlement administration website, and

8

1  instructions on how to access the case docket.  Ex. 1-A to PA Order (Class Notice); JND Decl.

2  Exs. B & C.

3       The Parties and the Settlement Administrator have complied with the notice procedures

4  of the Settlement, which the Court endorsed in its Preliminary Approval Order.  *See* PA Order

5  ¶ 9.  Because Class Members have been given a full and fair opportunity to consider the terms of

6  the proposed Settlement and make an informed decision on whether to participate, the Court

7  should find that the notice was adequate and the best practicable.  *See Ford v. CEC Entm't Inc.*,

8  No. 14 Civ. 677, 2015 WL 11439033, at *3 (S.D. Cal. Dec. 14, 2015) (finding notice standards

9  satisfied when claims administrator provided notice in accordance with the procedures

10  previously approved by the court in its preliminary approval order).

11       **B.       Final Approval Is Appropriate Under Rule 23.**

12       The touchstone for the final approval inquiry is whether the settlement is "fair, adequate

13  and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual

14  component parts, that must be examined for overall fairness."  *Staton v. Boeing Co.*, 327 F.3d

15  938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)

16  (internal quotation marks and alterations omitted)).  Pursuant to Rule 23(e)(2), a court must

17  consider whether "(A) the class representatives and class counsel have adequately represented

18  the class; (B) the proposal was negotiated at arms' length; (C) the relief provided for the class is

19  adequate . . . [and] (D) the proposal treats class members equitably to each other."  In analyzing

20  whether class relief is adequate, the court must consider the costs, risks, and delay of trial and

21  appeal; the method of processing class member claims and distributing relief; the terms of any

22  attorneys' fee awards; and any agreement made in connection with the settlement proposal.  Fed.

23  R. Civ. P. 23(e)(2)(C)(i)-(iv); (e)(3).

24       This standard overlaps with the requirement set forth in *Hanlon v. Chrysler Corp.* that

25  courts balance the following factors in assessing a class action settlement proposal:

26       [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely
         duration of further litigation; [3] the risk of maintaining class action status
27       throughout the trial; [4] the amount offered in settlement; [5] the extent of
         discovery completed and the stage of the proceedings; [6] the experience and
28

9

NOTICE OF MOTION AND MEMORANDUM OF
LAW FOR FINAL APPROVAL

1    views of counsel; [7] the presence of a governmental participant; and [8] the
2    reaction of the class members to the proposed settlement.

3  *Hanlon*, 150 F.3d at 1026; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir.

4  2009) (same).  The inquiry required upon settlement is heightened where a case is settled prior to

5  formal class certification.  *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir.

6  2019).

7    Because further developments between preliminary and final approval, as well as the

8  comments of objectors, may reveal unfairness in the settlement, even a "rigorous inquiry" at the

9  preliminary approval stage does not "convert final review to a mere formality."  *Cotter v. Lyft,*

10 *Inc.*, 193 F. Supp. 3d 1030, 1036-37 (N.D. Cal. 2016).  Here, a rigorous review of the Settlement

11 confirms that it merits final approval, as evidenced by a consideration of the factors set forth in

12 *Hanlon*.

13        **1.       Plaintiff Faced Substantial Obstacles to Recovery.**

14    The Parties balanced "plaintiffs' expected recovery . . . against the value of the settlement

15 offer," taking into account "the relative strengths and weaknesses of the plaintiffs' case."  *Cotter*

16 *v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal citation and quotation marks

17 omitted).  While Plaintiff believes that he can prevail on all issues and will recover full damages

18 and other relief for the Class, he would have to survive Wells Fargo's likely motion to dismiss

19 and/or strike, secure class certification, survive a possible motion for summary judgment, and

20 then prevail at trial.  Plaintiff's claims raise several untested legal issues, and Wells Fargo may

21 point to specific incidents in which it extended credit to applicants with DACA through a process

22 allowing for formal exceptions to its lending policies to argue that it did not have a uniform

23 policy of denying loans to DACA recipients.  It may also argue that some members of the

24 putative class may have been ineligible for credit for reasons other than having DACA.  Because

25 it was not possible to identify with specificity who in Wells Fargo's records was denied because

26 they had DACA, as opposed to another immigration status, Wells Fargo could also have argued

27

28

1   that the case presented manageability issues that made it unsuited to proceed as a class action.[4]

2        In addition, Plaintiff believes that actual damages for the violations at issue in this lawsuit

3   could be difficult to prove, based on consultations with economic experts in the process of

4   litigating similar claims in *Perez v. Wells Fargo*, No 17 Civ. 454 (N.D. Cal.).  Miazad FA Decl.

5   ¶ 21.  These experts determined that there were significant obstacles associated with accurately

6   modeling money damages associated with a specific denial of credit.  *Id.*  FCRA provides

7   penalties of $100 to $1,000 per violation, but only if noncompliance is willful.  15 U.S.C.

8   § 1681n.  Section 1981 and ECOA do not have a provision for statutory damages.  42 U.S.C.

9   § 1981; 15 U.S.C. § 1691e.  Thus, at trial, the National Class may only have been able to achieve

10  injunctive and equitable relief in the form of nominal damages for these claims.  *See* ECF No. 66

11  ¶¶ 140-49.  Nominal damages, which "are divorced from any compensatory purpose," are

12  "damages 'in name only' and by nature minimal in amount."  *Bayer v. Neiman Marcus Grp.,*

13  *Inc.*, 861 F.3d 853, 872 (9th Cir. 2017).

14       Particularly in light of these obstacles, this Settlement offers excellent value to members

15  of the Class.  National Class Members, who have Section 1981, ECOA, and FCRA claims only,

16  will receive awards of $300 per denied application.  And California Class Members with claims

17  under the Unruh Act are estimated to receive awards of $2,500 per denied application, which is

18  62.5 percent of the $4,000 statutory penalty recoverable under the statute.  Cal. Civ. Code

19  § 52(a).

20       **2.    The Risk, Expense, Complexity, and Delay of Further Litigation**
              **Support Final Approval.**

21

22       Settlement now saves Class Members from the significant risk of no recovery, the cost of

23  individual litigation, and the delay inherent in further litigation and possible appeals.  Plaintiff's

24

25  ───────────────
    [4]     Notably, "[t]he criteria for class certification are applied differently in litigation classes

26  and settlement classes.  In deciding whether to certify a litigation class, a district court must be
    concerned with manageability at trial.  However, such manageability is not a concern in

27  certifying a settlement class where, by definition, there will be no trial."  *In re Hyundai & Kia*

28  *Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019).

claims in this action are highly complex, both procedurally and substantively.  Settling Class

Members' claims saves the Parties from conducting substantial additional discovery, including

taking depositions and written discovery, and engaging in expert discovery and pre-trial motion

practice.  For these reasons, the law strongly favors settlements, particularly where complex class

litigation is concerned.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

1992) (describing the "strong judicial policy that favors settlements, particularly where complex

class action litigation is concerned").  This principle is particularly true where, as here, Plaintiff's

claims present "novel legal questions."  *Tumampos v. Cathay Pac. Airways LTD*., No. 16 Civ.

6208, 2018 WL 5603702, at *5 (N.D. Cal. Sept. 21, 2018).

### 3.    Plaintiff Faced a Risk of the Denial of Class Certification.

As noted above, Plaintiff would have risked an adverse decision had this action

proceeded to the class certification stage.  Although Plaintiff believes that this case is well-suited

for resolution on a class-wide basis, because it involves Wells Fargo's uniform policy of denying

loans to people with DACA, Wells Fargo may have argued that individual issues would

predominate over questions that are common to the class, *see Tyson Foods, Inc. v. Bouaphakeo*,

136 S. Ct. 1036, 1045 (2016), and that the ability to make exceptions to its uniform policy of

denying loans to DACA recipients defeated commonality.

### 4.    The Settlement Fairly and Adequately Compensates the Class.

The Settlement amount, as with any settlement, represents a compromise between

receiving full damages and other relief on the one hand, and total defeat on the other.  "Naturally,

the agreement reached normally embodies a compromise; in exchange for the saving of cost and

elimination of risk, the parties each give up something they might have won had they proceeded

with litigation." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615,

624 (9th Cir. 1982) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)).  Given

the risks and complexity of this litigation and the cost savings obtained through settlement, the

compromise amount here is fair and adequate.

As noted above, the Settlement provides Class Members who submit a Verified Claim

with as substantial portion of their maximum possible recovery, along with programmatic relief

1   that effectively eliminates the harm that Plaintiff alleged.  The financial compensation to Class

2   Members of a large proportion of the potential maximum recovery at trial constitutes an

3   "exceptional result."  *See In re Heritage Bond Litig.*, No. 02 ML 1475, 2005 WL 1594403, at

4   *19 (C.D. Cal. June 10, 2005) (calling a recovery of 36% of the total net loss an "exceptional

5   result"); *see also In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA)*

6   *Litig.*, 295 F.R.D. 438, 454 (C.D. Cal. 2014) (approving a settlement for coupons worth $5 to

7   $30 in a case where Class Members could have recovered between $100 and $1,000 in statutory

8   damages, and calling the value of the coupons "not a *de minimis* amount").[5]  The high value of

9   the programmatic relief, which entirely eliminates the harm Plaintiff alleges and makes direct

10  auto loans available to people with DACA on the same terms as United States citizens, makes

11  the Settlement even stronger, as even "a cash settlement amounting to only a fraction of the

12  potential recovery will not per se render the settlement inadequate or unfair . . . where monetary

13  relief is but one form of the requested by the plaintiffs."  *Officers for Justice*, 688 F.2d at 628.

14      In addition, to the extent that Class Members do not submit claims valuing at least

15  $225,000 for the California Class and $55,000 for the National Class—which appears to be the

16  case here—the Settlement provides for *cy pres* relief to be distributed equally between United

17  We Dream and Consumer Action. SA § 3.3.9.  "*Cy pres* provides a mechanism for distributing

18  unclaimed funds 'to the 'next best' class of beneficiaries.'"  *In re Easysaver Rewards Litig.*, 906

19  F.3d 747, 760 (9th Cir. 2018) (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir.

20  2011)).  Recipients of *cy pres* awards "should be selected in light of 'the objectives of the

21  underlying statute(s)' and 'the interests of the silent class members.'"  *Id*. at 761.  United We

22

23  _____

    [5]      Indeed, California courts frequently approve settlements that provide Class Members

24  with a far lower percentage of the total maximum recovery. *See, e.g.*, *Betancourt v. Advantage
    Human Resourcing, Inc.*, No. 14 Civ. 1788, 2016 WL 344532, at *5 (N.D. Cal. Jan 28, 2016)

25  (granting final approval of settlement providing approximately 9.7% of total maximum potential
    recovery if class members had prevailed on all claims); *Stovall-Gusman v. W.W. Granger, Inc.*,

26  No. 13 Civ. 2540, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (finding that a settlement
    constituting 7.3% of plaintiff's estimated trial award to be "within the range of reasonableness"

27  (quoting *Ma v. Covidien Holding, Inc.*, No. 12 Civ. 2161, 2014 WL 360196, at *5 (C.D. Cal. Jan.
    31, 2014))).

28

                                              13

1  Dream and Consumer Action are both appropriate *cy pres* recipients for the reasons set forth in

2  Plaintiff's Motion for Preliminary Settlement Approval ("PA Motion"), ECF No. 89 at 20-21,

3  Plaintiff's Supplemental Brief in Support of Preliminary Approval, ECF No. 95, and counsel's

4  supporting declarations.  *See* ECF No. 98-5 (Decl. of K. Issac DeVyver in Support of *Cy Pres*

5  Recipient); ECF No. 89-1 (Decl. of Ossai Miazad in Support of Preliminary Approval) ¶¶ 55-57.

6  Accordingly, the Settlement amount and programmatic relief strongly favors granting final

7  approval.

### 5.   The Extent of Discovery Supports Approval.

9  Adequate discovery is required to justify any class settlement.  Before agreeing to stay

10  the case to explore settlement, the Parties exchanged formal written discovery and produced

11  documents, including documents and data relating to Wells Fargo's systems and denial codes.

12  Miazad FA Decl. ¶ 14.  Wells Fargo also produced critical discovery for settlement purposes,

13  including the direct auto financing lending policy.  *Id*. ¶ 20.  The Parties also benefitted from the

14  rigorous and exhaustive discovery that the Parties exchanged in *Perez v. Wells Fargo*, No. 17

15  Civ. 454 (N.D. Cal.).  *Id*. ¶ 15.  This factor favors settlement.  *See, e.g., In re Mego Fin. Corp.*

16  *Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (stating the touchstone of the analysis is whether

17  "the parties have sufficient information to make an informed decision about settlement,"

18  including formal and informal discovery).

### 6.   Counsel's Experience and Views Support Approval.

20  The judgment of experienced counsel regarding the settlement is entitled to great weight.

21  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th

22  Cir. 1981).  "Parties represented by competent counsel are better positioned than courts to

23  produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*,

24  563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).  Here,

25  Class Counsel strongly endorse the Settlement as fair, adequate, and reasonable.  Class Counsel

26  are some of the most experienced and active class action litigators in the country, with extensive

27  experience in prosecuting and litigating civil rights and consumer actions.  *See* ECF No. 102-1

28  (Declaration of Ossai Miazad in Support of Fee Motion) ¶¶ 4-9; ECF No. 102-5 (Declaration of

14

1  Craig E. Briskin).  The fact that qualified and well-informed counsel endorse the Settlement as

2  fair, reasonable, and adequate favors final approval of the Settlement.  *See, e.g.*, *Campbell v.*

3  *Facebook, Inc.*, 951 F.3d 1106, 1122 (9th Cir. 2020) (advocacy of "highly experienced" class

4  counsel weighed in favor of settlement).

5          **7.      Class Members Have Reacted Positively to the Settlement.**

6          Class Members in this case have reacted positively to the Settlement.  Out of an estimated

7  364 Class Members, at least seven submitted Claim Forms, which is approximately two percent

8  of the Class.  The Settlement Administrator is reviewing claim forms to determine if any

9  additional people on the Notice List in this action inadvertently submitted a Claim Form in

10  *Perez*.  Miazad FA Decl. ¶ 28.  Although an estimated two percent claims rate falls below the

11  range Plaintiff estimated at Preliminary Approval, it may increase based on the Settlement

12  Administrator's review.  Even if it does not, this rate "is on par with other consumer cases."

13  *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16 Civ. 2200, 2020 WL 6484833, at *9 (N.D. Cal.

14  Nov. 4, 2020) (finding that a "0.83% claims rate . . . is on par with other consumer cases"); *see*

15  *also Broomfield v. Craft Brew Alliance, Inc.*, No. 17 Civ. 1027, 2020 WL 1972505, at *7 (N.D.

16  Cal. Feb. 5, 2020) (approving settlement with a two percent claims rate); *Bostick v. Herbalife*

17  *Int'l of Am., Inc.*, No. 13 Civ. 2488, 2015 WL 12731932, at *27 (C.D. Cal. May 14, 2015)

18  (granting final approval of a settlement and holding that a one percent claims rate "'should not be

19  given great significance' because 'many factors affect response rates'" (quoting *In re Packaged*

20  *Ice Antitrust Litig.*, No. 08 MDL 01952, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011))).

21          In addition, no Class Members opted out of the Settlement.  JND Decl. ¶ 21.  This factor

22  strongly favors settlement, as even "[o]pt-out percentages of nearly 5% have been deemed so

23  'overwhelmingly positive' as to support approval of the class action settlement."  *Quiruz v.*

24  *Specialty Commodities, Inc.*, No. 17 Civ. 3300, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9,

25  2020) (quoting *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010))

26  (approving settlement where 23 class members of the 25,005 who received notice opted out).

27          Further, no Objection Forms were filed with the Court and supported with Official

28  Documentation sent to the Settlement Administrator, as was required by the Settlement

15

1  Agreement for the objection to be valid.  JND Decl. ¶ 23.  Only a single Objection Form was

2  submitted to the Settlement Administrator but not filed with the Court, *id*. ¶ 24, and this

3  Objection Form does not express a substantive objection, *id*. Ex. D.  Instead, it states, "I applied

4  3 times for a personal loan and credit loan, and I got denied because of D.A.C.A."  *Id*.  This

5  Objection Form appears to express an intent to submit a claim in the related *Perez v. Wells Fargo*

6  action, and Plaintiff respectfully requests that the objector be permitted to submit a claim in that

7  case to the extent he or she has not already done so.

8      On the whole, the response from the Class to the Settlement was favorable, with no opt-

9  outs and no substantive objections.  Courts have found a favorable reaction to class settlements

10  with far greater numbers of opt-outs or objectors.  *See, e.g.*, *Churchill Village, LLC*, 361 F.3d at

11  577 (finding that objections from only 45 class members out of 90,000 favored final approval);

12  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (one opt-out and a "handful" of objectors out

13  of 5,400 potential class members favored final approval); *see also Nat'l Rural Telecomms. Coop.*

14  *v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of

15  objections to a proposed class action settlement raises a strong presumption that the terms of a

16  proposed class settlement action are favorable to the class members.").  For example, the D.C.

17  Circuit affirmed final approval of a settlement when "15% of the class members objected,"

18  because that means "85% accepted the settlement" and the "paramount consideration" must be

19  "the best interests of the class as a whole."  *Thomas v. Albright*, 139 F.3d 227, 232-33 (D.C. Cir.

20  1998).  Thus, "a settlement can be fair even though a significant portion of the class and some of

21  the named plaintiffs object to it."  *Id.* at 232 (collecting cases from the Second, Fourth, Seventh

22  and Fifth Circuits in which settlements were approved despite large portions of the class

23  members objecting, including objections from 70% of class members in one case).

24      "Settlement is the offspring of compromise; the question [courts] address is not whether

25  the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free

26  from collusion."  *Hanlon*, 150 F.3d at 1027.  Here, as in *Hanlon*, "the fact that the overwhelming

27  majority of the class willingly approved the offer and stayed in the class presents at least some

28  objective positive commentary as to its fairness."  *Id.*; *see also Fraley v. Facebook, Inc.*, 966 F.

16

1   Supp. 2d 939, 945 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th

2   Cir. 2016) (holding that "in evaluating a settlement, the question is not whether it is perfect, or

3   even whether a better result could be envisioned").  Accordingly, the Court should grant final

4   approval to the Settlement.

5   **8.     The Requirements for Approval Under Rule 23(e)(2) Are Met.**

6        As noted above, Rule 23(e)(2) specifies several requirements for approval of a class

7   action settlement.  Each of these requirements is met here.  **First**, the Class Representative and

8   Class Counsel must have adequately represented the Class. Fed. R. Civ. P. 23(e)(2)(A).  As set

9   forth in greater detail in Plaintiff's PA Motion, ECF No. 89, and Fee Motion, ECF No. 102, this

10  requirement has been met.  The Class Representative has the same interests as other Class

11  Members and has advocated strongly on the Class's behalf.  *See* ECF No. 102 at 27-30.  And, as

12  noted above, Class Counsel are highly experienced and well-regarded in the field of class action

13  civil rights and consumer litigation.  *Supra* § II.B.6; *see also Gonzalez v. Pritzker*, No. 10 Civ.

14  3105, 2016 WL 5395905, at *4 (S.D.N.Y. Sept. 20, 2016) (noting that Outten & Golden are

15  "nationally recognized employment class action litigators" in a Title VII disparate impact case);

16  *Mills v. Capital One, N.A.*, No. 14 Civ. 1937, 2015 WL 5730008, at *11 (S.D.N.Y. Sept. 30,

17  2015) (noting Outten & Golden's "excellent and well-deserved reputation").

18       **Second**, the Settlement was negotiated at arms' length.  Fed. R. Civ. P. 23(e)(2)(B).  The

19  Parties negotiated the Settlement Agreement over the course of several months with the

20  assistance of mediator Hunter Hughes, who is a "a nationally-respected and experienced class

21  action neutral."  *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. 17 Civ. 3852, 2019 WL

22  387409, at *1 (S.D. Tex. Jan. 30, 2019).  This is precisely the type of "arms-length, non-

23  collusive, negotiated resolution" in which Ninth Circuit courts place "a good deal of stock."

24  *Rodriguez*, 563 F.3d at 965; *see also Bert v. AK Steel Corp.*, No. 02 Civ. 467, 2008 WL

25  4693747, at *2 (S.D. Ohio Oct. 23, 2008) (noting, in approving a settlement reached after a

26  mediation with Mr. Hughes, that "participation of an independent mediator in settlement

27  negotiations virtually insures that the negotiations were conducted at arm's length and without

28  collusion between the parties").

17

**Third**, as discussed above in greater detail, the relief provided by the Settlement is adequate, particularly considering the untested nature of Plaintiff's claims.  Fed. R. Civ. P. 23(e)(2)(C); *supra* § II.B.1.  Settlement checks will be distributed to Class Members who submitted valid Claim Forms within 85 days of the Effective Date of the Settlement once their claims have been verified pursuant to the procedures set forth in the Settlement Agreement, and Class Members will have 120 days from the date of issuance to cash their checks.  SA §§ 5.2.4; 5.3.4.  Attorneys' fees, which are described in greater detail in the Fee Motion, ECF No. 102, will be paid 21 days after the Effective Date.  *Id*. § 15.1.4.

**Fourth**, the Settlement treats similarly-situated Class Members the same.  All California Class Members who submit Verified Claim Forms will receive awards in the amount of approximately $2,500 for each denied application.  *Id*. § 1.47, 3.3.2.  All National Class Members who submit Verified Claim Forms will receive awards in the amount of approximately $300 for each denied application.  Id. § 1.47, 3.3.5.  As described above, *supra* § II.B.1, the difference in award amounts for the different subclasses is justified by the difference in possible financial recovery for claims brought under the Unruh Act and claims brought under Section 1981, FCRA, and ECOA.

### C.    Class Counsel Have Incurred Additional Fees and Costs Since Filing Their Fee Petition.

On September 25, 2020, Plaintiff filed a Motion for Attorneys' Fees, Costs, and Service Awards.  ECF No. 102.  As of that date, Class Counsel had incurred a total lodestar of $400,471.90, and costs amounting to $8,510.48.  *Id*. at 10.  In the last three months, Class Counsel has incurred an additional $24,222.50 in fees and an additional $1,211.55 in costs, for a total of $424,694.40 in fees and $9,722.03 in costs.  Miazad FA Decl. ¶ 30.  These amounts will increase through the completion of the claims and settlement distribution process.  *Id.*

### D.    The Court Should Certify the Class as Final.

The Court's Preliminary Approval Order provisionally certified the Settlement Class pursuant to Rule 23(a) and (b)(3).  PA Order ¶ 6.  The Court ruled that, for the purposes of the Settlement, the Class meets Rule 23's requirements.  *Id*.  The Court also conditionally

18

1  appointed the named Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel.

2  *Id.* ¶ 7.

3       The Settlement has drawn a favorable response from the Class.  For the foregoing

4  reasons, and the reasons set forth in Plaintiff's PA Motion, Plaintiff respectfully requests that

5  the Court grant Final Approval to the Settlement, grant final certification to the Class, designate

6  Plaintiff Peña as Class Representative, and appoint Plaintiff's counsel as Class Counsel.

7

8  Dated: December 23, 2020        Respectfully submitted,

9                       By:  */s/ Ossai Miazad*
                         Ossai Miazad

10

11                       Ossai Miazad*
                     OUTTEN & GOLDEN LLP

12                       685 Third Avenue, 25th Floor
                     New York, NY 10017

13                       Telephone: (212) 245-1000
                     Facsimile:  (646) 509-2060

14                       om@outtengolden.com

15                       Jahan C. Sagafi (Cal. Bar No. 224887)

16                       Rachel Dempsey (Cal. Bar No. 310424)
                     OUTTEN & GOLDEN LLP

17                       One California St., 12th Floor
                     San Francisco, California 94111

18                       Telephone: (415) 638-8800
                     Facsimile:  (415) 638-8810

19                       jsagafi@outtengolden.com

20                       rdempsey@outtengolden.com

21                       Benjamin D. Elga*

22                       Brian James Shearer*
                     Craig L. Briskin*

23                       JUSTICE CATALYST LAW
                     81 Prospect Street, 7th Floor

24                       Brooklyn, NY 11201
                     Telephone: (518) 732-6703

25                       belga@justicecatalyst.org

26                       brianshearer@justicecatalyst.org
                     cbriskin@justicecatalyst.org

27                       *admitted *pro hac vice*

28                       *Attorneys for Plaintiff and the Proposed Class*

19