Jahan C. Sagafi  (Cal. Bar No. 224887)
Rachel Dempsey (Cal. Bar No. 310424)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile:  (415) 638-8810
jsagafi@outtengolden.com
rdempsey@outtengolden.com

Ossai Miazad*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
om@outtengolden.com

Benjamin D. Elga*
Brian James Shearer*
Craig L. Briskin*
JUSTICE CATALYST LAW
81 Prospect Street, 7th Floor
Brooklyn, NY 11201
Telephone: (518) 732-6703
belga@justicecatalyst.org
brianshearer@justicecatalyst.org
cbriskin@justicecatalyst.org

*Attorneys for Plaintiff and the Proposed Class*
*admitted *pro hac vice*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| EDUARDO PEÑA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 19-cv-04065-MMC<br><br>**DECLARATION OF OSSAI MIAZAD IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL ORDER** |

I, Ossai Miazad, declare under penalty of perjury as follows:

1. I am a partner at the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiff's counsel herein, co-chair of O&G's Discrimination and Retaliation Practice Group, and a member of O&G's Class Action Practice Group. O&G is a 50+ attorney firm based in New York City, with offices also in San Francisco and Washington D.C., which focuses on representing plaintiffs in a wide variety of employment and civil rights matters, including class action litigation challenging systemic employment discrimination on the basis of protected characteristics such as race, gender, and nationality; discrimination on the basis of citizenship status; and disparate impact litigation regarding the use of criminal background checks in employment eligibility.

2. I am one of the lawyers primarily responsible for prosecuting Plaintiff's claims.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Background and Experience**

4. I received a Juris Doctor degree from American University Washington College of Law in 2004. Since joining O&G in 2007, I have exclusively represented plaintiffs in employment litigation and other employee rights matters, with a focus on representing employees in class action and impact litigation involving discrimination. I currently serve as plaintiffs' counsel in numerous major class action lawsuits involving these claims.

5. I am the Co-Chair of O&G's Discrimination and Retaliation Practice Group. I have served as a Co-Chair of the Subcommittee on USERRA for the American Bar Association's ("ABA") Labor and Employment Law Section, Fair Labor Standards Legislation Committee. I have also served on the New York City Bar Association's Committee on Civil Rights and as a board member of the New York affiliate of the National Employment Lawyers Association ("NELA").

6. I have been appointed as Class Counsel in many cases, including *Gonzalez v. Pritzker*, No. 10 Civ. 3105 (S.D.N.Y.), a nationwide class action litigation challenging, under

Title VII of the Civil Rights Act of 1964 ("Title VII"), the racially disparate impact of the U.S. Census Bureau's criminal history screening process. I have litigated numerous other discrimination class actions, such as *Long v. Southeastern Pennsylvania Transportation Authority*, No. 16. Civ. 1991 (E.D. Pa.) (FCRA and Pennsylvania Criminal History Record Information Act claims); *see also* 903 F.3d 312 (3d Cir. 2018) (substantially prevailing on appeal of dismissal of FCRA claims on standing grounds); *Keels v. Geo Group, Inc.*, No. 15 Civ. 6261 (E.D.N.Y.) (FCRA claims under Section 1681b(b)(3)); *The Fortune Society, Inc. v. Macy's Inc.*, No. 19 Civ. 5961 (S.D.N.Y.) (Title VII and New York City Human Rights Law criminal history discrimination claims); *Pickett v. SIMOS Insourcing Solutions, Corp.*, No. 17 Civ. 1013 (N.D. Ill.) (FCRA claims under Section 1681b(b)(2) and (b)(3)); *Millien v. The Madison Square Garden Co.*, No. 17 Civ. 4000 (S.D.N.Y.) (FCRA and New York City Human Rights Law criminal history discrimination claims); and *NAACP New York State Conference Metropolitan Council of Branches v. Philips Electronics North America Corporation*, Index No. 156382/2015 (Sup. Ct. N.Y. Cty.) (New York City Human Rights Law criminal history discrimination claims).

7. I have also litigated other discrimination class actions on behalf of DACA recipients, including *Juarez v. Northwestern Mutual Ins. Co.*, No. 14 Civ. 05107 (S.D.N.Y.) (employment discrimination); *Rodriguez v. The Procter & Gamble Co.*, No. 17 Civ. 22652 (S.D. Fla.) (employment discrimination; defendant's motion for summary judgment denied on June 10, 2020); *Peña v. Wells Fargo Bank, N.A.*, No. 19 Civ. 04065 (N.D. Cal.) (lending discrimination); and *Juarez v. Social Finance, Inc.*, No. 20 Civ. 03386 (N.D. Cal.) (lending discrimination).

**Discovery and Settlement Negotiations**

8. Plaintiff Peña filed this case as a putative class action on July 16, 2019, seeking to represent two nationwide classes of all non-United States citizens who resided in the United States and held DACA status at the time they applied for direct auto financing from Wells Fargo. ECF No. 1. Plaintiff asserted claims of alienage discrimination under 42 U.S.C. § 1981 ("Section 1981") on behalf of the first class, and a violation of the Equal Credit Opportunity Act ("ECOA") on behalf of the second class. *Id.*

3

9. In September 2019, Plaintiff amended the complaint seeking to represent a third class of DACA recipients who were declined direct auto financing and whose consumer reports were obtained by Wells Fargo in violation of the Fair Credit Reporting Act ("FCRA"). ECF No. 27.

10. On October 28, 2019, Wells Fargo moved to dismiss the First Amended Complaint on several grounds. ECF No. 39.

11. Beginning in November 2019, the parties engaged in discovery, including the exchange of written discovery requests and responses and the production of documents.

12. On December 23, 2019, the Court granted Wells Fargo's Motion to Dismiss as to the FCRA and ECOA claims, allowing Plaintiff leave to amend, and denied Wells Fargo's Motion as to the Section 1981 claims. ECF No. 54.

13. Plaintiff filed a Second Amended Complaint on January 17, 2020 that repleaded the claims under ECOA and FCRA. ECF No. 66.

14. During this period, the parties exchanged written discovery requests and responses, produced documents and data, including information as to Wells Fargo's systems and denial codes, briefed issues as to the confidentiality of discovery materials, and were in the process of negotiating several discovery disputes at the time the case settled.

15. In addition to the data produced in this action, the parties benefited from the rigorous and exhaustive discovery exchanged in the related case *Perez v. Wells Fargo*, No. 17 Civ. 454 (N.D. Cal.).

**Settlement Negotiations**

16. In late January 2020, the parties began discussing potential resolution of the case.

17. By this point, Plaintiff had a well-informed understanding of the scope of the legal issues and underlying facts.

18. On February 7, 2020, the parties agreed to stay the case and engage experienced private mediator Hunter Hughes to assist the parties in settlement negotiations.

19. Over the next several weeks, with the continued assistance of Mr. Hughes, the

1  parties intensively negotiated a binding term sheet, which was signed on March 4, 2020.

2      20.    After further negotiation and additional discovery including production of the
3  relevant auto policy documents, the parties executed a long-form settlement agreement
4  ("Settlement Agreement") on June 16, 2020.

### Damages Calculations

6      21.    The settlement amount for National Class Members reflects nominal damages
7  under Section 1981 and ECOA, because Plaintiff did not seek compensatory damages under
8  these statutes in the operative complaint. While prosecuting *Perez v. Wells Fargo*, No. 17 Civ.
9  454 (N.D. Cal.), a case involving related issues, Plaintiff's counsel consulted with a well-known
10 economist, who determined that there were significant obstacles to valuing and modeling actual
11 damages for a denial of credit where credit was potentially available elsewhere, or where Class
12 Members could turn to savings or loans from friends and family. It also reflects the statutory
13 damages available under FCRA, which range under the relevant statute from $100 to $1,000 per
14 violation if the plaintiff can prove willfulness. *See* 15 U.S.C. 1681. Although Plaintiff's FCRA
15 claims were dismissed, Class Counsel was developing a viable theory for the recovery of
16 statutory penalties under FCRA, which Wells Fargo was willing to take into account during
17 settlement talks.

### Settlement Administration

19     22.    After the Court granted preliminary approval, Wells Fargo compiled and
20 submitted the Notice List to the Settlement Administrator. To compile the Notice List, Wells
21 Fargo identified all applications that were denied pursuant to agreed-upon denial codes that
22 indicated that the denial was based on lack of citizenship or permanent residence ("Specified
23 Denial Codes").

24     23.    Wells Fargo did not record whether loan applicants had DACA but did keep track
25 of the reason it denied a loan application. Accordingly, the list of possible Class Members who
26 received notice was substantially overinclusive, because there was no way to distinguish in Wells
27 Fargo's records between rejected applicants who had DACA and rejected applicants who had

some other form of immigration documentation, such as a work or other visa that would allow them to obtain a Social Security number.

24. The Notice List consisted of 1,456 records of possible Class Members who applied for a loan from Wells Fargo's auto loan line of business during the applicable time periods, were denied under a Specified Denial Code, and had a U.S. address and Social Security number. This number of potential Class Members is lower than Class Counsel believed at the time of preliminary approval, where it estimated the Notice List would comprise approximately 1,625 individuals.

25. The data in the Notice List was narrowed to include only applicants with U.S. addresses, valid Social Security numbers and who were not identified as U.S. citizens or Legal Permanent Residents.

26. Based on available information about the number of people in the United States with DACA, TPS, and work visas, Class Counsel estimate that approximately 25% of the people in the Notice List are DACA recipients, meaning that approximately 364 Class Members were sent the Notice Packet, along with approximately 1,092 people who were not members of the Class.

27. California Class Members who submit Verified Claim Forms will receive awards in the amount of approximately $2,500 for each application that Wells Fargo denied. National Class Members who submit Verified Claim Forms will receive awards in the amount of approximately $300 for each application that Wells Fargo denied.

28. The Settlement Administrator, JND, informed Plaintiffs on Monday, December 20, 2020 that 20 of the people who submitted claims in *Peña v. Wells Fargo*, No. 19. Civ. 4065 (N.D. Cal.) were not on the Notice List in *Peña*, but were on the Notice List in *Perez v. Wells Fargo*, No. 19. Civ. 454 (N.D. Cal.). The Settlement Administrator is checking the Claim Forms submitted in *Perez* to ensure that no additional Claim Forms from people on the Notice List in *Peña* inadvertently submitted their Claim Form to *Perez* instead of *Peña*. Plaintiffs will file a supplement when that process is complete.

29. Throughout the claims period, Outten & Golden and Justice Catalyst Law, who together serve as Class Counsel, received several calls and emails from potential Class Members.

### Class Counsel's Updated Lodestar

30. In the last three months, Class Counsel has incurred an additional $24,222.50 in fees and an additional $1,211.55 in costs, for a total of $424,694.40 in fees and $9,722.03 in costs. These amounts will increase through the completion of the claims and settlement distribution process.

### Exhibits

31. Attached hereto as **Exhibit A** is a true and correct copy of Class Counsel's Updated Lodestar Summary – by Timekeeper.

32. Attached hereto as **Exhibit B** is a true and correct copy of Class Counsel's Updated Lodestar Summary – Phase of Litigation.

33. Attached hereto as **Exhibit C** is a true and correct copy of Class Counsel's Updated Cost Summary.

Dated: December 23, 2020
New York, New York

Respectfully submitted,

By: _____
**OUTTEN & GOLDEN LLP**
Ossai Miazad
685 Third Avenue, 25th Floor
New York, New York 10017
Tel.: (212) 245-1000